DECOTIIS, FITZPATRICK, COLE & GIBLIN, LLP
Vincent M. Giblin, Esq. - #021011995
61 South Paramus Road, Suite 250
Paramus, New Jersey 07652
Tel.: (201) 928-1100
*Counsel for Movant Charles Bethune III,*
*and Proposed Liaison Counsel for the Class*

[*Additional counsel on signature page*]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and ALESIA J. HAAS, <br><br> Defendants. | Case No. 2:22-cv-04915-BRM-LDW <br><br> **MEMORANDUM OF LAW IN SUPPORT OF CHARLES BETHUNE III'S MOTION TO CONSOLIDATE ACTIONS, APPOINT LEAD PLAINTIFF AND APPROVE SELECTION OF COUNSEL** <br><br> **<u>CLASS ACTION</u>** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **MOTION DATE: November 7, 2022** |
| DENNIS DEAN LAFFOON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, and EMILIE CHOI, <br><br> Defendants. | Case No. 2:22-cv-05744-BRM-LDW |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   PROCEDURAL BACKGROUND ...............................................................2

III.  STATEMENT OF FACTS..........................................................................4

IV.   ARGUMENT............................................................................................7

      A.   The Related Actions Should Be Consolidated .....................................7

      B.   Mr. Bethune Should Be Appointed as Lead Plaintiff ..........................8

            1.   Notice Is Sufficient and Mr. Bethune's Motion is Timely .........9

            2.   Mr. Bethune Possesses the Largest Financial Interest in the Relief Sought by the Class..........................................................10

            3.   Mr. Bethune Meets the Requirements of Rule 23 ....................11

      C.   This Court Should Approve Mr. Bethune's Choice of Counsel .........13

V.    CONCLUSION.......................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bangzheng Chen v. CytRx Corp.*,
  2014 U.S. Dist. LEXIS 194696 (C.D. Cal. 2014) .............................. 14

*Bucks Cnty. Emps. Ret. Fund v. Newell Brands, Inc.*,
  2018 U.S. Dist. LEXIS 165879 (D.N.J. 2018) .............................. 7, 13

*Chao Sun v. Han*,
  2015 U.S. Dist. LEXIS 64060 (D.N.J. 2015) .............................. 9-10

*Church v. Glencore PLC*,
  2018 U.S. Dist. LEXIS 210229 (D.N.J. 2018) ................................ 12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804, 131 S. Ct. 2179 (2011) ................................ 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) ................................ 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .............................. 1, 10, 12, 13

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*,
  2020 U.S. Dist. LEXIS 49786 (S.D.N.Y. 2020) ........................ 13-14

*In re Health Ins. Innovations Secs. Litig.*,
  2021 U.S. Dist. LEXIS 61051 (M.D. Fla. 2021) .............................. 15

*Kabak v. Becton, & Co.*,
  2020 U.S. Dist. LEXIS 100941 (D.N.J. 2020) ........................ 11-12, 12

*Kanefsky v. Honeywell Int'l Inc.*,
  2022 U.S. Dist. LEXIS 80328 (D.N.J. 2022) .............................. 13

*Karimi v. Deutsche Bank AG.*,
  2020 U.S. Dist. LEXIS 262737 (D.N.J. 2020) ................................ 11

*Kasper v. AAC Holdings, Inc.*,
  2017 U.S. Dist. LEXIS 109608 (M.D. Tenn. 2017) ........................ 13

*Khoja v. Orexigen Therapeutics*,
  2021 U.S. Dist. LEXIS 230105 (S.D. Cal. 2021) .............................. 14

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................ 14

*Lovallo v. Pacira Pharms., Inc.*,
   2015 U.S. Dist. LEXIS 43106 (D.N.J. 2015) ...................................... 9

*Odeh v. Immunomedics, Inc.*,
   2019 U.S. Dist. LEXIS 228212 (D.N.J. 2019) ................................... 10

*Pearlstein v. Blackberry Ltd.*,
   2022 U.S. Dist. LEXIS 177786 (S.D.N.Y. 2022) ............................... 15

*Phetteplace v. Cancer Genetics, Inc.*,
   2018 U.S. Dist. LEXIS 147275 (D.N.J. 2018) ................................... 7

*Ragan v. Appharvest, Inc.*,
   2021 U.S. Dist. LEXIS 238168 (S.D.N.Y. 2021) ............................... 2

*Roby v. Ocean Power Techs.*,
   2015 U.S. Dist. LEXIS 42388 (D.N.J. 2015) ................................... 7, 8

*Smith v. Antares Pharm., Inc.*,
   2018 U.S. Dist. LEXIS 126964 (D.N.J. 2018) ................................... 9

*Stires v. Eco Sci. Sols., Inc.*,
   2018 U.S. Dist. LEXIS 25088 (D.N.J. 2018) ............................... 2, 7, 8

*Villare v. Abiomed, Inc.*,
   2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. 2020) ............................... 2

**Statutes**

15 U.S.C. § 78u-4 ........................................................................ *passim*

15 U.S.C. § 78j ........................................................................ 1, 3, 7

15 U.S.C. § 78t ........................................................................ 1, 3, 7

**Other**

17 C.F.R. § 240.10b-5 ............................................................ 1, 3, 6, 7

Fed. R. Civ. P. 23 ................................................................ 2, 11, 12

Fed. R. Civ. P. 42 ................................................................ 1, 7

iii

## I.    INTRODUCTION

Charles Bethune III respectfully submits this memorandum of law in support of his motion to: (i) consolidate the above-captioned actions; (ii) appoint him as Lead Plaintiff in the above-referenced actions pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (iii) approve his selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel and DeCotiis, FitzPatrick, Cole & Giblin, LLP ("DeCotiis") as Liaison Counsel for the putative Class. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262-69 (3d Cir. 2001).

The two lawsuits pending in this District involve common questions of law and fact and therefore warrant consolidation. *See* FED. R. CIV. P. 42 ("RULE 42"); s*ee also* § IV.A, *infra*. Further, as described in the Certification and Loss Chart attached to the Declaration of Vincent M. Giblin, Esq. in Support of Charles Bethune III's Motion to Consolidate Actions, Appoint Lead Plaintiff and Approve Selection of Counsel ("Giblin Decl.") (Exhibits A & B), Mr. Bethune suffered losses exceeding $470,000 from his purchases of Coinbase Global, Inc. ("Coinbase") securities

between April 14, 2021 through September 21, 2022, inclusive ("Class Period").[1]

To the best of his knowledge, this represents the largest financial interest of any

investor seeking to be appointed lead plaintiff. In addition, Mr. Bethune's

Certification and Declaration demonstrate his awareness of a lead plaintiff's

fiduciary duties to the putative Class. *See* Giblin Decl., Ex's. A & C. As set forth

below, Mr. Bethune also satisfies Rule 23's applicable typicality and adequacy

requirements. Accordingly, he seeks an order: (i) consolidating the above-captioned

securities fraud actions in this district; (ii) appointing him as Lead Plaintiff; and (iii)

approving his selection of KSF as Lead Counsel and DeCotiis as Liaison Counsel

for the putative Class.

## II.     PROCEDURAL BACKGROUND

Two lawsuits alleging substantially similar claims have been filed in this

District: (i) *Patel v. Coinbase Global, Inc., et al.*, No. 2:22-cv-04915-BRM-LDW

---

[1]     Mr. Bethune provides his losses herein based on longest-pled Class Period purportedly alleged in the *Laffoon* Action while reserving all rights to contest it. *Compare Stires v. Eco Sci. Sols., Inc.*, 2018 U.S. Dist. LEXIS 25088, at *3 n.2 (D.N.J. 2018) ("For the purpose of determining Lead plaintiff, this Court finds that the use of the longer period proposed . . . is proper.") *with Ragan v. Appharvest, Inc.*, 2021 U.S. Dist. LEXIS 238168, at *18-19 (S.D.N.Y. 2021) ("The concern is heightened, as it is here, when a complaint alleging the longer class period is filed on the eve of the expiration of the statutory sixty-day period for the filing of lead plaintiff motions."); *Villare v. Abiomed, Inc.*, 2020 U.S. Dist. LEXIS 114684, at *11 (S.D.N.Y. 2020) ("numerous courts have cautioned that 'blindly accepting the longest class period without any inquiry' may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest.").

(D.N.J.) ("*Patel* Action"); and (ii) *Laffoon v. Coinbase Global, Inc., et al.*, No. 2:22-cv-05744-BRM-LDW (D.N.J.) ("*Laffoon* Action"; together, "Related Actions").[2]

The Related Actions each allege violations of §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder, against Defendants Coinbase, Armstrong, and Haas. *Patel* Compl., ¶¶ 11, 16-18; *Laffoon* Compl., ¶¶ 12, 17-19. The *Laffoon* Action also names one additional Defendant—Coinbase's COO Emilie Choi. *Id.* at ¶ 20. The Related Actions also have overlapping Class definitions. *See Patel* Compl., ¶ 1 (claims on behalf of those who "purchased or otherwise acquired Coinbase securities between April 14, 2021 and July 26, 2022, both dates inclusive[.]"); *Laffoon* Compl., ¶ 1 (claims on behalf of those who "purchased or otherwise acquired Coinbase securities between April 14, 2022 and September 21, 2022, inclusive[.]").

Notice of the *Patel* Action was published on August 4, 2022 in *Globe Newswire*, informing investors who wished to serve as lead plaintiff that they must so move the Court within sixty days of publication. *See* Giblin Decl., Ex. D. Then, on September 27, 2022, notice of the *Laffoon* Action was published in *BusinessWire*, reiterating the deadline to seek appointment as lead plaintiff. *See id.*[3]

---

[2]    "Compl., ¶__" or "Compl., ¶¶__" refer to the complaint filed in each Related Action, as indicated. All emphasis added and internal citations omitted unless otherwise indicated.

[3]    *Globe Newswire* and *BusinessWire* are widely circulated, national business-oriented wire services, which this District routinely finds adequate to advise putative

## III.   STATEMENT OF FACTS

Coinbase provides financial infrastructure and technological products and services for the cryptocurrency economy, both in the United States and globally. *Patel* Compl., ¶¶ 16, 22. Defendants Brian Armstrong, Alesia Haas, and Emilie Choi served as Coinbase's CEO, CFO, and COO, respectively, throughout the Class Period. *Patel* Compl., ¶¶ 17-18; *Laffoon* Compl., ¶¶ 18-20.

The Class Period begins on April 14, 2021, when the Company's class A common stock began trading on the NASDAQ *via* direct listing under the ticker symbol "COIN." *Patel* Compl., ¶¶ 16, 25; *Laffoon* Compl., ¶¶ 26-28. Throughout the Class Period, Coinbase made a series of false and misleading misstatements and omissions concerning its business, operations, and compliance policies. *Patel* Compl., ¶¶ 5, 25-38; *Laffoon* Compl., ¶¶ 28-64. Generally, plaintiffs allege that Defendants knew and/or recklessly disregarded that: (i) crypto assets held by Coinbase on behalf of its customers could be considered part of the Company's bankruptcy estate, should it ever file for bankruptcy, placing its investors in a role analogous to unsecured creditors; (ii) its American customers were trading digital assets which should have been registered as securities with the SEC; and (iii) as a

---

class members of their right to seek appointment as lead plaintiff in a securities class action such as this one. *See* § IV.B.1, *infra*.

result of the foregoing conduct, the Company was subject to heightened regulatory scrutiny, and enforcement action. *Patel* Compl., ¶ 3; *Laffoon* Compl., ¶ 3.

Coinbase purportedly further misled investors by publicly claiming that it did not take proprietary risk on its institutional side by using its own money to invest in short-term profiteering on cryptocurrencies, though in reality it did. *Laffoon* Compl., ¶¶ 3, 42-43, 61-63. During an analyst call on December 7, 2021, Coinbase's COO Emilie Choi assured a Goldman Sachs analyst that the Company "had a clear line about not doing that[,]" citing the potential conflict of interest such proprietary trading creates: "institutions don't want to feel like you're going to be trading against them." *Id.* at ¶ 42. The following day, Defendant Haas testified before a Congressional committee that "Coinbase is an agency-only platform" which "do[es] not engage in proprietary trading[,]" insisting that it did not actively trade crypto assets for profit, instead only buying them for long-term investment purposes. *Id*. at ¶ 43.

But the truth was revealed in a series of partial disclosures in May, July, and September 2022. First, on May 10, 2022 the Company updated its risk disclosures, adding a bankruptcy-related risk factor stating that, if it should file for bankruptcy, then its "custodially held crypto assets may be considered to be the property of a bankruptcy estate," and "crypto assets we hold in custody on behalf of our customers could be subject to bankruptcy proceedings and such customers could be treated as

our general unsecured creditors." *Patel* Compl., ¶ 40; *Laffoon* Compl., ¶ 54. Defendant Armstrong further tweeted that Coinbase "should have updated [its] retail terms sooner," further acknowledging that Coinbase did not "communicate proactively when this risk disclosure was added[,]" and offering his "deepest apologies[.]" *Patel* Compl., ¶ 42; *Laffoon* Compl., ¶ 55. Afterward, the trading price of Coinbase's class A common stock fell by $19.27 per share, or 26.4%, to close at $53.72 per share on May 11, 2022. *Patel* Compl., ¶ 41; *Laffoon* Compl., ¶ 56.

Then, after the markets closed on July 25, 2022, *Bloomberg* published an article titled "Coinbase Faces SEC Probe on Crypto Listings; Shares Tumble." *Patel* Compl., ¶ 44. According to the article, Coinbase was facing a previously undisclosed investigation by the SEC concerning whether Coinbase improperly let American investors trade digital assets which should have been registered as securities—but were not. *Id.* The article further alleged that this investigation predated another SEC investigation concerning insider trading allegations against at least three Coinbase insiders. *Id.* Following this news, on July 26, 2022 the trading prices of Coinbase Class A Common Stock fell $14.14 per share, or 21.08%, to close at $52.93. *Id.* at ¶ 45; *see Laffoon* Compl., ¶¶ 58-60.

Finally, on September 22, 2022, *The Wall Street Journal* reported that Coinbase had created an internal unit which used the Company's own cash to speculate on cryptocurrencies, trading and 'staking' (*i.e.*, locking up

6

cryptocurrencies), in what the *Journal* called "'proprietary' trading." *Laffoon* Compl., ¶¶ 9, 61. Following this news, Coinbase's share price declined by $4.70 per share, or 6.9%, on September 22, 2022. *Laffoon* Compl., ¶ 64.

## IV.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

Consolidation of securities class actions is appropriate where, as here, the actions involve common questions of law and fact. *See Bucks Cnty. Emps. Ret. Fund v. Newell Brands, Inc.*, 2018 U.S. Dist. LEXIS 165879, at *7 (D.N.J. 2018); *Phetteplace v. Cancer Genetics, Inc.,* 2018 U.S. Dist. LEXIS 147275, at *6-7 (D.N.J. 2018). The PSLRA further "directs that cases should be consolidated where there is 'more than one action on behalf of a class asserting substantially the same claim or claims.'" *Roby v. Ocean Power Techs.*, 2015 U.S. Dist. LEXIS 42388, at *8-9 (D.N.J. 2015). Here, the Related Actions are ideally suited for consolidation even if the longer alleged *Laffoon* Class Period is of questionable vintage.

As noted above, the Related Actions bring near-identical claims on behalf of Coinbase investors against common Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. And while the *Laffoon* Action adds one additional Defendant and extends the putative Class Period, neither factor precludes consolidation. "'Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated.'" *Stires*, 2018 U.S.

Dist. LEXIS 25088, at *6.

Where common questions of law and fact are present, consolidation is appropriate even if the named defendants or proposed class periods are not identical. *See id.* at *6-8 (consolidating cases, finding extended class period and additional defendant were "minor differences"); *Roby*, 2015 U.S. Dist. LEXIS 42388, at *8-9 ("slight differences" did not preclude consolidation where "[a]ll four cases involve the same subject matter, are based on substantially the same conduct, and largely name the same defendants."). Accordingly, the Related Actions should be consolidated. *See* n.1, *supra*.

### B. Mr. Bethune Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure to appoint a lead plaintiff in a securities fraud class action. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, the plaintiff who files the initial action must publish a notice within 20 days of filing the action advising the class of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Here, notice of the first-filed lawsuit in this matter was published on August 4, 2022 *via Globe Newswire*. *See* Giblin Decl., Ex. D.

Next, within 60 days of publication, members of the proposed class are entitled to seek appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)-(B). The Court then appoints as lead plaintiff the member of the class that is determined to be

8

"most capable" of adequately representing the interest of class members. 15 U.S.C.

§ 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> > (aa) has either filed the complaint or made a motion in response to a notice . . .;
> >
> > (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). Once the presumption attaches, it can only be

overcome upon a showing of proof that the presumptive lead plaintiff will not fairly

and adequately represent the class or is subject to unique defenses that will render

the presumptive lead plaintiff incapable of doing so. *See* 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(II).

### 1.    Notice Is Sufficient and Mr. Bethune's Motion is Timely

The first-filed plaintiff published notice pursuant to the PSLRA on August 4,

2022 over *Globe Newswire*. *See* Giblin Decl., Ex. D. *Globe Newswire* is a widely

circulated national business-oriented wire service which is routinely found to satisfy

the PSLRA's statutory notice requirements in this District. *See Lovallo v. Pacira

Pharms., Inc.*, 2015 U.S. Dist. LEXIS 43106, at *3 (D.N.J. 2015) (accepting notice

published in *Globe Newswire*); *Smith v. Antares Pharm., Inc.*, 2018 U.S. Dist.

LEXIS 126964, at *3 (D.N.J. 2018) (same); *Chao Sun v. Han*, 2015 U.S. Dist.

9

LEXIS 64060, at *4 (D.N.J. 2015) (same).[4] Here, the notice satisfied the requirements of the PSLRA by advising members of the pendency of the Action, the claims asserted, and the putative class period. *See* Giblin Decl., Ex. D; 15 U.S.C. § 78u-4(a)(3)(A)(i)(I). Investors were further advised that they had until October 3, 2022 (*i.e.*, 60 days from publication) to seek appointment as lead plaintiff. *See* Giblin Decl., Ex. D; 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Accordingly, notice was adequate and Mr. Bethune's motion is timely.

**2.     Mr. Bethune Possesses the Largest Financial Interest in the Relief Sought by the Class**

Courts in this Circuit generally consider three factors to determine which movant possesses the largest financial interest sought by the class: (i) the number of shares purchased during the class period; (ii) the total net funds expended during the class period; and (iii) the approximate losses suffered. *Cendant*, 264 F.3d at 262; *Odeh v. Immunomedics, Inc.*, 2019 U.S. Dist. LEXIS 228212, at *4 (D.N.J. 2019). Here, Mr. Bethune purchased 1,914 shares of Coinbase common stock at a total net cost of $737,425, retained 1,300 shares through the end of the Class Period and sustained a loss exceeding $470,000 for the extended Class Period alleged in the

---

[4]     Where, as here, multiple actions assert substantially similar claims, the PSLRA only requires publication for the first-filed action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(ii) (". . . only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published[.]").

*Laffoon* Action.[5] *See* Giblin Decl., Ex. B. Accordingly, to the best of his knowledge, Mr. Bethune has the largest financial interest in the relief sought by the putative Class.

### 3.    Mr. Bethune Meets the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of lead plaintiffs, Rule 23(a) requires generally that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interest of the class. *See* FED. R. CIV. P. 23. As detailed below, Mr. Bethune satisfies the typicality and adequacy requirements of Rule 23(a).

To satisfy the typicality requirement of Rule 23(a)(3), "a plaintiff's claims must arise from the same conduct from which the other class members' claims and injuries arise" *Karimi v. Deutsche Bank AG.*, 2020 U.S. Dist. LEXIS 262737, at *4 (D.N.J. 2020). Mr. Bethune's claims are typical to those of other putative class members. *See Kabak v. Becton, & Co.*, 2020 U.S. Dist. LEXIS 100941, at *6-7

---

[5]    Should the Court elect to apply the original Class Period pled in the *Patel* Action, his loss is approximately $457,700, as the mean trading price for the ninety-day period beginning after July 26, 2022 is approximately $73.45. *See* 15 U.S.C.§78u-4(e).

(D.N.J. 2020). Like other putative class members, he: (i) purchased or otherwise acquired Coinbase securities during the Class Period; (ii) did so in reliance upon the allegedly materially false and misleading statements issued by Defendants; and (iii) suffered damages by purchasing artificially inflated securities and then suffered harm when the truth was revealed. *See Church v. Glencore PLC*, 2018 U.S. Dist. LEXIS 210229, at *6-7 (D.N.J. 2018)*; see also* Giblin Decl, Ex's. A, B, & C.

A representative party must "fairly and adequately protect the interests of the class." Rule 23(a)(4); *see Kabak*, 2020 U.S. Dist. LEXIS 100941, at *6. The Third Circuit requires heightened Rule 23 scrutiny only for a proposed "group," which is inapplicable to Mr. Bethune here.[6] Mr. Bethune's interests are clearly aligned with the members of the class and there is no antagonism between his interests and those of other class members. Mr. Bethune is a resident of Rockledge, Florida, veteran of the United States Air Force, and has worked in aeronautics and astronautics for more than thirty years, including at Kennedy Space Center. *See* Giblin Decl., Ex. C at ¶¶ 2-3. Bringing more than three decades of experience investing in the capital markets (*id.* at ¶ 4), he has amply demonstrated his adequacy as a class representative by signing a sworn certification and declaration affirming his willingness to serve as,

---

[6]    "If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *Cendant*, 264 F.3d at 266.

12

and assume the fiduciary responsibilities of, a lead plaintiff. *See* Giblin Decl., Ex's. A & C. In addition, Mr. Bethune has selected counsel highly experienced in prosecuting securities class actions as proposed lead counsel. *Id*., Ex. E (KSF firm résumé).

### C.    This Court Should Approve Mr. Bethune's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 265-66, 273-77; *Bucks Cnty. Emps. Ret. Fund*, 2018 U.S. Dist. LEXIS 165879, at \*7. Here, Mr. Bethune has selected KSF to serve as Lead Counsel for the putative class, a firm with substantial expertise prosecuting securities class actions in federal and state courts across the country, following his own independent assessment of the firm's qualifications. *See* Giblin Decl., Ex's. C & E.

Courts throughout the country (including the District Court of New Jersey) have found KSF well-qualified to serve as Lead Counsel in securities class actions such as this. *See, e.g., Kanefsky v. Honeywell Int'l Inc.*, 2022 U.S. Dist. LEXIS 80328, at \*26-27 (D.N.J. 2022) (approving KSF as co-class counsel, noting it "committed considerable time, resources, and skills to the successful representation of the Class, and [is] qualified to fairly and adequately represent the interests of the Class."); *Kasper v. AAC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 109608, at \*42-43 (M.D. Tenn. 2017) (appointing KSF class counsel pursuant to FED. R. CIV. P. 23(g));

13

*In re Chi. Bridge & Iron Co. N.V. Sec. Litig.*, 2020 U.S. Dist. LEXIS 49786, at *29 (S.D.N.Y. 2020) (same); *Bangzheng Chen v. CytRx Corp.*, 2014 U.S. Dist. LEXIS 194696, at *9 (C.D. Cal. 2014) ("Based on the firm's résumé and experience with class action securities litigation, the Court is satisfied that Kahn, Swick & Foti, LLC is qualified to serve as lead counsel in this case.").

KSF also prevailed on behalf of the court appointed lead plaintiff in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom.* 139 S. Ct. 2615 (2019), which significantly altered the federal securities laws (and civil pleading practice generally) in the Ninth Circuit. *See* Giblin Decl., Ex. E. In the court's order granting final approval in *Khoja*, Judge Sammartino highlighted KSF's "extensive experience prosecuting complex securities class actions[,]" and explained that the "***settlement may not have been reached without Lead Counsel's skill and expertise***." *Khoja v. Orexigen Therapeutics*, 2021 U.S. Dist. LEXIS 230105, at *21 (S.D. Cal. 2021) (emphasis added).

KSF also served as counsel to the lead plaintiff in the *Halliburton* securities litigation matter, where lead plaintiff twice prevailed before the United States Supreme Court and ultimately obtained a $100 million recovery for the class. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 131 S. Ct. 2179 (2011). More recently, KSF recovered $165 million this year on behalf of a class of investors in the

14

*Blackberry* securities litigation just prior to the commencement of trial. *See Pearlstein v. Blackberry Ltd.*, 2022 U.S. Dist. LEXIS 177786, at *3-7 (S.D.N.Y. 2022). The firm's experience and successes should assure the Court that in granting this motion, the Class will receive legal representation of the highest caliber from KSF. *See In re Health Ins. Innovations Secs. Litig.*, 2021 U.S. Dist. LEXIS 61051, at *34 (M.D. Fla. 2021) (noting KSF "practices extensively in complex federal civil litigation, particularly securities class actions, and has successfully litigated these types of actions in courts throughout the country.").

The Court should also approve Mr. Bethune's selection of DeCotiis as Liaison Counsel given the firm's substantial litigation and trial experience in this District.

## V.    CONCLUSION

For the foregoing reasons, Mr. Bethune respectfully requests that the Court: (i) consolidate the Related Actions; (ii) appoint him as Lead Plaintiff; and (iii) approve his selection of KSF as Lead Counsel and DeCotiis as Liaison Counsel for the putative Class.

Dated: October 3, 2022

Respectfully submitted,

**DECOTIIS, FITZPATRICK,
COLE & GIBLIN, LLP**

By:   *s/ Vincent M. Giblin*
Vincent M. Giblin, Esq.
(#021011995)
DECOTIIS, FITZPATRICK, COLE
& GIBLIN, LLP

15

61 South Paramus Road, Suite 250
Paramus, New Jersey 07652
Telephone: (201) 928-1100

*Counsel for Movant Charles Bethune III, and Proposed Liaison Counsel for the Class*

-and-

Ramzi Abadou
(to be admitted *pro hac vice*)
KAHN SWICK & FOTI, LLP
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 459-6900
Facsimile: (504) 455-1498
ramzi.abadou@ksfcounsel.com

-and-

Lewis S. Kahn
(to be admitted *pro hac vice*)
Alexander L. Burns
(to be admitted *pro hac vice*)
Morgan M. Embleton
(to be admitted *pro hac vice*)
KAHN SWICK & FOTI, LLC
1100 Poydras Street, Suite 3200
New Orleans, Louisiana 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com
alexander.burns@ksfcounsel.com
morgan.embleton@ksfcounsel.com

*Counsel for Movant Charles Bethune III, and Proposed Lead Counsel for the Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper *via* the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Vincent M. Giblin*
VINCENT M. GIBLIN, ESQ.

17