**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700

*Proposed Liaison Counsel for the Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and ALESIA J. HAAS,<br><br>        Defendants. | Case No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>District Judge<br><br>Hon. Leda D. Wettre<br>Magistrate Judge<br><br>**MOTION DAY:** November 7, 2022<br><br>ORAL ARGUMENT REQUESTED |

[Additional caption on following page.]

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

DENNIS DEAN LAFFOON,
Individually and on Behalf of All
Others Similarly Situated,

                    Plaintiff,

        v.

COINBASE GLOBAL, INC., BRIAN
ARMSTRONG, ALESIA J. HAAS,
and EMILIE CHOI,

                    Defendants.

Case No. 2:22-cv-05744-BRM-LDW

Hon. Brian R. Martinotti
District Judge

Hon. Leda D. Wettre
Magistrate Judge

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND....................................................................................4

III. ARGUMENT.........................................................................................................6

    A.   The Related Actions Should Be Consolidated .....................................6

    B.   AP7 Is the Most Adequate Plaintiff .....................................................7

        1.   AP7 Has Timely Moved for Appointment as Lead
            Plaintiff.............................................................................................8

        2.   AP7 Asserts the Largest Financial Interest in the Relief
            Sought by the Class...........................................................................9

        3.   AP7 Is Typical and Adequate ...................................................9

            a.   AP7's Claims Are Typical...............................................9

            b.   AP7 Is Adequate ...........................................................10

    C.   The Court Should Approve AP7's Selection of Lead Counsel...........12

IV.  CONCLUSION....................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
    Nos. 06 Civ. 13761(CM)(KNF), *et al.*,
    2007 WL 2197836 (S.D.N.Y. June 26, 2007) ...................................................1

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...........................................................2, 9, 11, 12

*Lewis v. Lipocine Inc.*,
    Nos. 16-4009-BRM-LHG, *et al.*,
    2016 WL 7042075 (D.N.J. Dec. 2, 2016)................................................6, 7, 9, 10

**Statutes**

15 U.S.C. § 78u-4(a) ..........................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)...........................................................................10

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ......3, 11

Lead Plaintiff Movant Sjunde AP-Fonden ("AP7") respectfully submits this Memorandum of Law in support of its motion for: (1) consolidation of the above-captioned actions (the "Related Actions"); (2) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (3) approval of AP7's selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class and Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne") as Liaison Counsel for the class.

## I.    INTRODUCTION

The Related Actions are securities class actions brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), against Coinbase Global, Inc. ("Coinbase" or the "Company") and certain of its executive officers (collectively, "Defendants"). The Related Actions are brought on behalf of all persons who purchased Coinbase securities between April 14, 2021, and September 21, 2022, inclusive (the "Class Period").[1] As detailed below, the Related Actions involve common issues of law and fact and

---

[1]    For purposes of this motion, AP7 has used the longest-pled class period in the Related Actions to calculate its financial interest and refers to the broadest set of claims. *See, e.g.*, *Bhojwani v. Pistiolis*, Nos. 06 Civ. 13761(CM)(KNF), *et al.*, 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007), *R. & R. partially adopted*, 2007 WL 9228588 (S.D.N.Y. July 30, 2007) (applying more inclusive class period).

1

should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)").  *See infra* Section III.A.

After consolidation, the PSLRA allows any member of the purported class to move for appointment as lead plaintiff and sets forth the process for determining which movant is the "most adequate plaintiff."  Specifically, the PSLRA requires a court to appoint as lead plaintiff the movant: (1) making a timely motion under the PSLRA's sixty-day deadline; (2) asserting the largest financial interest among the movants seeking appointment as lead plaintiff; and (3) that satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (describing the PSLRA's process for selecting a lead plaintiff).[2]  AP7 meets all of the relevant criteria for appointment as Lead Plaintiff under the analysis required by the PSLRA.  *See Cendant*, 264 F.3d at 263.

AP7 respectfully submits that it is the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  AP7's motion is timely, and its losses of approximately $10,015,637 under a last-in, first-out ("LIFO") basis in connection with its transactions in Coinbase securities during the Class Period represent the largest known financial interest in the relief sought by the class.  *See*

---

[2]    Unless otherwise noted, all emphases are added and all internal citations and quotation marks are omitted.

Declaration of James E. Cecchi ("Cecchi Decl."), Exs. A & B.  In addition to asserting the largest financial interest, AP7 easily satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the class and because it will fairly and adequately represent the class.

Moreover, as an institutional investor with approximately $80 billion in assets under management and substantial experience serving as a lead plaintiff in several high-profile securities class actions across the United States, AP7 is exactly the type of plaintiff that Congress envisioned would serve as lead plaintiff under the PSLRA. Therefore, AP7's appointment would fulfill a critical legislative purpose.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  Indeed, AP7 has recovered hundreds of millions of dollars on behalf of injured investors as a lead plaintiff and class representative in securities class actions proceeding under the PSLRA in the last decade.  *See infra* Section III.B.3.b.

Lastly, AP7 has retained experienced and competent counsel to represent the class.  As the "most adequate plaintiff" under the PSLRA, AP7's selection of Kessler Topaz as Lead Counsel for the class should be approved.  15 U.S.C. § 78u-4(a)(3)(B)(v).  Kessler Topaz has an extensive history of prosecuting complex

actions under the PSLRA.  Thus, the class can be assured of zealous representation if AP7's selection of Kessler Topaz as Lead Counsel for the class and Carella Byrne as Liaison Counsel for the class is approved.

## II.    FACTUAL BACKGROUND

Coinbase operates one of the world's largest crypto asset exchanges.  The Related Actions allege that, during the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose that: (1) crypto assets Coinbase held as a custodian on behalf of its customers could qualify as property of a bankruptcy estate—and not the Company's customers—in the event Coinbase filed for bankruptcy; (2) Coinbase allowed Americans to trade crypto assets that the Company knew or recklessly disregarded should have been registered as securities with the U.S. Securities and Exchange Commission (the "SEC"); (3) Coinbase had plans to, and did in fact, engage in proprietary trading of crypto assets; and (4) as a result, Defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis and misled investors regarding material risks attendant to Coinbase's operations.

Investors began to learn the truth on May 10, 2022, when the Company disclosed for the first time that "because custodially held crypto assets may be

4

considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [the Company] hold[s] in custody on behalf of our customers could be subject to bankruptcy proceedings and such customers could be treated as our general unsecured creditors." That same day, Defendant Brian Armstrong—the Company's co-founder, Chief Executive Officer, and Chairman—admitted on Twitter that Coinbase had failed to appropriately communicate this risk to investors, stating that the Company "should have updated [its] retail terms sooner" and acknowledging that the Company "didn't communicate proactively." On this news, the price of Coinbase common stock declined $19.27 per share, or more than 26%, from a close of $72.99 per share on May 10, 2022, to close at $53.72 per share on May 11, 2022.

Then, on July 25, 2022, *Bloomberg* published an article revealing that the SEC was investigating whether Coinbase "let Americans trade digital assets that should have been registered as securities" and explaining that "[i]f those products were deemed securities, the firm could need to register as an exchange with the SEC." On this news, the price of Coinbase common stock declined $14.14 per share, or approximately 21%, from a close of $67.07 per share on July 25, 2022, to close at $52.93 per share on July 26, 2022.

Finally, on September 22, 2022, *The Wall Street Journal* reported that, in July 2021, Coinbase had created a business group intended to generate profit by "using

5

the [C]ompany's cash to trade and 'stake,' or lock up, cryptocurrencies," which sources at the Company characterized as "'proprietary' trading." On this news, the price of Coinbase common stock declined $4.70 per share, or nearly 7%, from a close of $67.64 per share on September 21, 2022, to close at $62.94 per share on September 22, 2022.

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Here, there are at least two related securities class actions asserting claims under the federal securities laws on behalf of investors:

| Case Caption | Date Filed | Claims/Class Period |
|---|---|---|
| *Patel v. Coinbase Global, Inc., et al.*, No. 2:22-cv-04915-BRM-LDW (D.N.J.) | August 4, 2022 | Sections 10(b) and 20(a) of the Exchange Act; April 14, 2021, through July 26, 2022 |
| *Laffoon v. Coinbase Global, Inc., et al.*, No. 2:22-cv-05744-BRM-LDW (D.N.J.) | September 27, 2022 | Sections 10(b) and 20(a) of the Exchange Act; April 14, 2021, through September 21, 2022 |

Consolidation is appropriate under Rule 42(a) where the actions involve "common questions of law or fact." *Lewis v. Lipocine Inc.*, Nos. 16-4009-BRM-

6

LHG, *et al.*, 2016 WL 7042075, at *2 (D.N.J. Dec. 2, 2016) (Martinotti, J.).  Here, the Related Actions assert claims under the Exchange Act against common defendants, across overlapping class periods, and concerning substantially the same conduct.  Accordingly, consolidation is appropriate.  *See id.*

### B.   AP7 Is the Most Adequate Plaintiff

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws.  *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice.  *See id.* § 78u-4(a)(3)(A)(i).  Within sixty days of the publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have filed a complaint in the action.  *See id.* § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the class member the court determines to be the "most adequate plaintiff."  *Id.* § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the

7

PSLRA provides that the court shall adopt a presumption that the "most adequate plaintiff" in any private action arising under the PSLRA is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I).

AP7 is the "most adequate plaintiff" because it: (1) timely moved for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23" for this motion. *Id*.

### 1.    AP7 Has Timely Moved for Appointment as Lead Plaintiff

The PSLRA allows members of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed. *See id*. § 78u-4(a)(3)(A)(i)(II).  Here, in connection with the filing of the first of the Related Actions, *Patel v. Coinbase Global, Inc.*, *et al*., No. 2:22-cv-04915-BRM-LDW (D.N.J.), notice was published in *Globe Newswire* on August 4, 2022, alerting investors to the pendency of the action and informing them of the October 3, 2022 deadline to seek appointment as Lead Plaintiff.  *See* Cecchi Decl., Ex. C. Accordingly, AP7 has timely moved this Court for appointment as Lead Plaintiff.

8

### 2. AP7 Asserts the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  AP7 suffered substantial losses of approximately $10,015,637 under a LIFO basis in connection with its Class Period transactions in Coinbase securities.  Cecchi Decl., Exs. A & B.  To the best of AP7's knowledge, no other applicant seeking Lead Plaintiff appointment has a larger financial interest in this litigation.  *See Cendant*, 264 F.3d at 243 ("The Reform Act establishes a presumption that the class member most capable of adequately representing the interests of class members is the shareholder with the largest financial stake in the recovery sought by the class.").

### 3. AP7 Is Typical and Adequate

AP7 also satisfies the applicable requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  At the lead plaintiff stage, movants need to make only a "*prima facie* showing of typicality and adequacy." *Cendant*, 264 F.3d at 263.

### a. AP7's Claims Are Typical

The typicality requirement is satisfied when the movant can show "that his circumstances are not 'markedly different' from those of the putative class and that the legal theory upon which his claims are based does not 'differ from that upon

9

which the claims of other class members will perforce be based.'" *Lipocine*, 2016 WL 7042075, at *4 (quoting *Cendant*, 264 F.3d at 265). AP7 satisfies the typicality requirement because, just like all other proposed class members, AP7 seeks recovery for the losses on its investments in Coinbase common stock that it incurred as a result of Defendants' misrepresentations and omissions. Thus, AP7's claims arise from the same conduct as those of the other class members and AP7 satisfies Rule 23's typicality requirement. *See Lipocine*, 2016 WL 7042075, at *5.

### b.    AP7 Is Adequate

The adequacy element of Rule 23 is satisfied where the Lead Plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating whether a movant satisfies the adequacy requirement, courts consider whether: (1) the movant "has the ability and incentive to represent the claims of the class vigorously"; (2) the movant "has obtained adequate counsel"; and (3) "there is a conflict between the movant's claims and those asserted on behalf of the class." *Lipocine*, 2016 WL 7042075, at *4 (quoting *Cendant*, 264 F.3d at 265).

AP7 satisfies the adequacy requirement because its interest in vigorously pursuing claims against Defendants—given its substantial financial loss—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and misleading statements. There is no potential conflict between AP7's interests and those of the other members of the class, and AP7 is

10

fully committed to vigorously pursuing claims on behalf of the class. AP7 has also proved its adequacy through the selection of Kessler Topaz as Lead Counsel for the class and Carella Byrne as Liaison Counsel for the class. *See Cendant*, 264 F.3d at 265 ("[O]ne of the best ways for a court to ensure that [the lead plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel . . . ."). As discussed more fully below, Kessler Topaz and Carella Byrne are highly qualified and experienced in the area of securities class action litigation and have repeatedly demonstrated their ability to prosecute complex securities class action litigation in an efficient, effective, and professional manner. Moreover, Kessler Topaz and Carella Byrne have already demonstrated their commitment to the class by filing the second of the Related Actions and expanding the class's claims.

In addition to satisfying the typicality and adequacy requirements of Rule 23, AP7—as a sophisticated institutional investor with approximately $80 billion in assets under management—is also the prototypical investor Congress sought to encourage to lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34, *as reprinted in* 1995 U.S.C.C.A.N. at 733 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Cendant*, 264

11

F.3d at 273 ("[T]he purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff.").

In fact, AP7 has significant prior experience serving as a lead plaintiff under the PSLRA, including actions prosecuted by Kessler Topaz and Carella Byrne in this District, and has recovered hundreds of millions of dollars for investors. *See In re Luckin Coffee Inc. Sec. Litig.*, No. 1:20-cv-01293-JPC (S.D.N.Y.) ($175 million recovery); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y.) ($150 million recovery); *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 2:16-cv-09449-KSH-CLW (D.N.J.) ($130 million recovery, with Kessler Topaz serving as co-lead counsel and Carella Byrne serving as liaison counsel) (Waldor, J.); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, No. 9:14-cv-81057-WPD (S.D. Fla.) ($56 million recovery); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-00289-WKS (D. Vt.) ($36.5 million recovery); *Monk v. Johnson & Johnson*, No. 3:10-cv-04841-FLW-DEA (D.N.J.) ($23 million recovery, with Kessler Topaz serving as lead counsel and Carella Byrne serving as liaison counsel).

### C.   The Court Should Approve AP7's Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). AP7 has selected Kessler Topaz to serve as Lead Counsel for the class and Carella Byrne to

12

serve as Liaison Counsel for the class.  AP7's selection of counsel should be approved.  *See id*.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field.  *See* Cecchi Decl., Ex. D.  The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery).  Kessler Topaz is also currently serving as lead or co-lead counsel in several high profile securities class actions across the country, including several actions where AP7 is currently serving as a lead plaintiff: *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, No. 18-cv-12084 (VSB) (S.D.N.Y.); *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (RMD) (N.D. Ill.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.).

Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA.  Specifically, the firm obtained a rare jury

13

verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

In addition, Carella Byrne maintains an office in this District, has substantial experience litigating class actions, and is well qualified to represent the class as Liaison Counsel. *See* Cecchi Decl., Ex. E. Among its most notable accomplishments, Carella Byrne has served as liaison counsel in many securities class actions in this District and this Court, including: *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, No. 05-cv-1151 (SRC) (CLW) (D.N.J.) ($1.062 billion recovery); *In re Schering-Plough Corp./ENHANCE Securities Litigation*, No. 08-cv-397 (ES) (JAD) (D.N.J) ($473 million recovery); and *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, No. 08-cv-2177 (ES) (JAD) (D.N.J.) ($215 million recovery).

14

Thus, the Court can be assured that the class will receive the highest caliber of legal representation should it approve AP7's selection of Kessler Topaz as Lead Counsel for the class and Carella Byrne as Liaison Counsel for the class.

## IV.   CONCLUSION

For these reasons, AP7 respectfully requests that the Court consolidate the Related Actions, appoint AP7 as Lead Plaintiff, and approve AP7's selection of Kessler Topaz as Lead Counsel for the class and Carella Byrne as Liaison Counsel for the class.

Dated:  October 3, 2022

Respectfully submitted,

s/ *James E. Cecchi*

James E. Cecchi
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Barbara A. Schwartz
Karissa J. Sauder
280 King of Prussia Road

15

Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
bschwartz@ktmc.com
ksauder@ktmc.com

*Counsel for Sjunde AP-Fonden and
Proposed Lead Counsel for the Class*

16