POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for Movant Maria Scagliotti
and Proposed Lead Counsel for the
Class*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and ALESIA J. HAAS,<br><br>Defendants. | Case No. 2:22-cv-04915-BRM-LDW<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MARIA SCAGLIOTTI FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL<br><br>Motion Date: November 7, 2022 |

| | |
|---|---|
| DENNIS DEAN LAFFOON, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, and EMILIE CHOI, <br><br> Defendants. | Case No. 2:22-cv-05744-BRM-LDW |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................2

STATEMENT OF FACTS .........................................................................................4

ARGUMENT ............................................................................................................7

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.........................................................................7

    B.    SCAGLIOTTI SHOULD BE APPOINTED LEAD PLAINTIFF........9

        1.    Scagliotti Is Willing to Serve as a Class Representative ..........10

        2.    Scagliotti Has the "Largest Financial Interest" ........................10

        3.    Scagliotti Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure.............................12

        4.    Scagliotti Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses .................................................................................15

    C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED..................................................................................16

CONCLUSION ......................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................14

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ........................................................................................13

*Bassin v. Decode Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005) ...............................................................................8

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ..............................................................................13, 14

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................7

*Fischler v. Amsouth Bancorp.*, No. 96-1567-CIV-T-17A,
   1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997)...........................................12

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ..............................................................................11, 14

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
   2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009)...........................................8

*In re Lucent Techs. Sec. Litig.*,
   194 F.R.D. 137 (D.N.J. 2000)...................................................................................12

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) .................................................................................16

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ...............................................................................7

*In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW),
   2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6, 2007).............................................14

ii

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ...............................................................................7

*Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715 *et al.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ....................................11

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ...............................................................................7

*Patel v. Zoompass Holdings, Inc.*, No. 17-3831 (JLL),
    2017 U.S. Dist. LEXIS 153765 (D.N.J. Sept. 20, 2017) ...................................11

*Rubenstahl v. Philip Morris Int'l, Inc.*, No. 17-13504 (ES) (MAH),
    2019 U.S. Dist. LEXIS 23309 (D.N.J. Feb. 13, 2019) ......................................11

*Sklar v. Coinbase Corp. PLC*, Nos. 13-cv-06663 (FLW) (TJB),
    2014 U.S. Dist. LEXIS 103051 (D.N.J. July 29, 2014) ....................................12

*Smith v. Antares Pharma, Inc.*, No. 17-8945 (MAS) (DEA),
    2018 U.S. Dist. LEXIS 126964 (D.N.J. July 27, 2018) ....................................11

## Statutes

15 U.S.C. § 78u-4 ............................................................................................*passim*

Private Securities Litigation Reform Act of 1995 ...........................................*passim*

## Rules

Fed. R. Civ. P. 23 ............................................................................................*passim*

Fed. R. Civ. P. 42 .................................................................................................1, 2, 7

Movant Maria Scagliotti ("Scagliotti") respectfully submits this Memorandum of Law in support of her motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Scagliotti as Lead Plaintiff on behalf of a class consisting of all persons and entities other than the above-captioned defendants ("Defendants") who purchased or otherwise acquired Coinbase Global, Inc. ("Coinbase" or the "Company") securities between April 14, 2021 and September 21, 2022, both dates inclusive (the "Class Period") (the "Class"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

---

[1] On August 4, 2022, the first-filed of the Related Actions was filed in this Court, styled *Patel v. Coinbase Global, Inc. et al.*, No. 2:22-cv-04915 (D.N.J.) (the "Patel Action"), alleging a class including all persons and entities other than Defendants that purchased or otherwise acquired Coinbase securities between April 14, 2021 and July 26, 2022, both dates inclusive. *See* Patel Action, Dkt. No. 1 ¶¶ 1, 47. Then, on September 27, 2022, a second action alleging substantially the same wrongdoing as the Patel Action against overlapping defendants was filed in this Court, styled *Laffoon v. Coinbase Global, Inc. et al.*, No. 2:22-cv-05744 (D.N.J.) (the "Laffoon Action"), on behalf of a more expansive class of investors including all persons and entities other than Defendants who purchased or otherwise acquired Coinbase securities between April 14, 2021 and September 21, 2022, inclusive. *See* Laffoon Action, Dkt. No. 1 ¶¶ 1, 65. Therefore, without conceding that this is the appropriate

1

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that Defendants defrauded investors in violation of the Exchange Act.  Coinbase investors, including Scagliotti, incurred significant losses following the disclosures of the alleged fraud, which caused the prices of Coinbase securities to fall sharply, damaging Scagliotti and other Coinbase investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact.  Here, the Related Actions are putative class actions alleging violations of the federal securities laws by an overlapping group of defendants arising from substantially the same alleged wrongful misconduct.  As such, the Related Actions involve common questions of both law **and** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Scagliotti: (i) purchased 8,608 shares of Coinbase securities; (ii) expended $1,814,601 on her purchases of Coinbase securities; (iii) retained 2,000 of her shares of Coinbase securities; and (iv)

---

class, to avoid excluding any potential class members, this motion has adopted the more expansive class alleged in the Laffoon Action.

as a result of the disclosures of the fraud, incurred losses of approximately $262,667 in connection with her Class Period purchases of Coinbase securities. *See* Declaration of Thomas H. Przybylowski in Support of Motion ("Przybylowski Decl."), Exhibit ("Ex.") A. Accordingly, Scagliotti believes that she has the largest financial interest in the relief sought in the Related Actions.

Beyond her considerable financial interest, Scagliotti also meets the applicable requirements of Rule 23 because her claims are typical of absent Class members and because she will fairly and adequately represent the interests of the Class.

To fulfill her obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Scagliotti has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Scagliotti respectfully requests that the Court enter an order consolidating the Related Actions, appointing her as Lead Plaintiff for the Class, and approving her selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaints in the Related Actions, Coinbase provides financial infrastructure and technology products and services for the cryptocurrency economy (or "cryptoeconomy") in the United States and internationally. The Company purportedly offers the primary financial account in the cryptoeconomy for retailers, a marketplace with a pool of liquidity for transacting in crypto assets for institutions, and technology and services that enable ecosystem partners to build crypto-based applications and securely accept crypto assets as payment.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Coinbase custodially held crypto assets on behalf of its customers, which assets Coinbase knew or recklessly disregarded could qualify as the property of a bankruptcy estate, making those assets potentially subject to bankruptcy proceedings in which Coinbase's customers would be treated as the Company's general unsecured creditors; (ii) Coinbase allowed Americans to trade digital assets that Coinbase knew or recklessly disregarded should have been registered as securities with the U.S. Securities and Exchange Commission ("SEC"); (iii) the foregoing conduct subjected the Company to a heightened risk

4

of regulatory and governmental scrutiny and enforcement action; (iv) Coinbase had plans to, and did in fact, engage in proprietary trading of crypto assets; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

On May 10, 2022, in its quarterly report for the first quarter of 2022, released after the markets closed, Coinbase disclosed that: "[B]ecause custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets we hold in custody on behalf of our customers could be subject to bankruptcy proceedings and such customers could be treated as our general unsecured creditors."

Following this disclosure, the price of Coinbase's Class A common stock fell $19.27 per share, or 26.4%, to close at $53.72 per share on May 11, 2022.

In a subsequent tweet commenting on the disclosure, Coinbase's Chief Executive Officer, Defendant Brian Armstrong, stated: "We should have updated our retail terms sooner, and we didn't communicate proactively when this risk disclosure was added. My deepest apologies, and a good learning moment for us as we make future changes."

On May 12, 2022, Professor Adam J. Levitin, a professor of law at Georgetown University Law Center, published a draft of an article entitled "Not Your Keys, Not Your Coins: Unpriced Credit Risk in Cryptocurrency," set to

appear in the Texas Law Review, which argues that in the event a cryptocurrency exchange files for bankruptcy, bankruptcy courts are likely to deem custodial holdings of cryptocurrencies to be property of the bankrupt exchange, rather than the property of its customers.

On July 25, 2022, after the markets closed, *Bloomberg* reported that Coinbase is facing an SEC probe into whether it improperly let Americans trade digital assets that should have been registered as securities.

On this news, the price of Coinbase's Class A common stock fell $14.14 per share, or 21.08%, to close at $52.93 per share on July 26, 2022.

Then, on September 22, 2022, *The Wall Street Journal* reported that Coinbase had created a business group—Coinbase Risk Solutions—in July 2021 "to generate profit, in part, by using the [C]ompany's cash to trade and 'stake,' or lock up, cryptocurrencies," a practice that sources at the Company characterized as "'proprietary' trading." According to *The Wall Street Journal*, the group completed a $100 million investment in 2022 to "profit in cryptocurrency markets," and the transaction generated an "eagerness to make additional such transactions" within the Company.

On this news, the price of Coinbase common stock declined $4.70 per share, or nearly 7%, from a close of $67.64 per share on September 21, 2022, to close at $62.94 per share on September 22, 2022.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the plaintiffs in the Related Actions and other Class members have suffered significant losses and damages.

## ARGUMENT

**A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES**

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render

7

consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4-*8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against Coinbase, as well as certain officers of the Company, in connection with violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Coinbase's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## B.     SCAGLIOTTI SHOULD BE APPOINTED LEAD PLAINTIFF

Scagliotti should be appointed Lead Plaintiff because, to the best of her counsel's knowledge, she has the largest financial interest in the Related Actions and otherwise strongly satisfies the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint Lead Plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as Lead Plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

9

As set forth below, Scagliotti satisfies all three of these criteria and thus is entitled to the presumption that she is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. Scagliotti Is Willing to Serve as a Class Representative

On August 4, 2022, Pomerantz, counsel for the plaintiff in the first-filed of the Related Actions, caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Coinbase and certain officers of the Company, and which advised investors of Coinbase securities that they had until October 3, 2022—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as Lead Plaintiff. *See* Przybylowski Decl., Ex. B.

Scagliotti has filed the instant motion pursuant to the Notice and has attached a signed Certification attesting that she is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C. Accordingly, Scagliotti satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Scagliotti Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

10

To the best of her counsel's knowledge, Scagliotti has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered). The *Lax* factors have been adopted by courts nationwide, including this Judicial District. *See, e.g.*, *Rubenstahl v. Philip Morris Int'l, Inc.*, No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309, at *5 (D.N.J. Feb. 13, 2019) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)); *Smith v. Antares Pharma, Inc.*, No. 17-8945 (MAS) (DEA), 2018 U.S. Dist. LEXIS 126964, at *4-*5 (D.N.J. July 27, 2018); *Patel v. Zoompass Holdings, Inc.*, No. 17-3831 (JLL), 2017 U.S. Dist. LEXIS 153765, at *2-*3 (D.N.J. Sept. 20, 2017).

During the Class Period, Scagliotti: (i) purchased 8,608 shares of Coinbase securities; (ii) expended $1,814,601 on her purchases of Coinbase securities; (iii) retained 2,000 of her shares of Coinbase securities; and (iv) as a result of the disclosures of the fraud, suffered a loss of $262,667 in connection with her Class Period purchases. *See* Przybylowski Decl., Ex. A. Because Scagliotti possesses the

11

largest financial interest in the outcome of this litigation, she may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.      Scagliotti Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In determining that Lead Plaintiff satisfies the requirements of Rule 23, "[a] wide-ranging analysis under Rule 23 is not appropriate [at this stage of the litigation] and should be left for consideration of a motion for class certification."  *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 149 (D.N.J. 2000) (quoting *Fischler v. Amsouth Bancorp.*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-*8 (M.D. Fla. Feb. 6, 1997)); *see also Sklar v. Coinbase Corp. PLC*, Nos. 13-cv-06663 (FLW) (TJB), 2014 U.S. Dist. LEXIS 103051, at *20 (D.N.J. July 29, 2014) ("only a preliminary showing of both typicality and adequacy is necessary").  Moreover,

12

"[t]he Rule 23 inquiry focuses [only] on the 'typicality' and 'adequacy' requirements at this stage of the litigation." *Id.*

The typicality requirement of Rule 23(a)(3) is satisfied where "the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory")).

Scagliotti's claims are typical of those of the Class. Scagliotti alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Coinbase, or omitted to state material facts necessary to make the statements they did make not misleading. Scagliotti, like all Class members, alleges damages based on Class Period purchases and/or acquisitions in Coinbase securities at prices artificially inflated by Defendants' misrepresentations or omissions, with such damages realized upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise

13

from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

"In making the *prima facie* determination of adequacy, a court should consider whether the movant 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *19 (D.N.J. Sept. 6, 2007) (quoting *Cendant*, 264 F.3d at 265); *see also Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent'" (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997))).

Scagliotti is an adequate representative for the Class. As set forth in greater detail below, Scagliotti has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits her choice of Pomerantz to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Scagliotti's interests and the interests of the Class. Scagliotti has submitted a signed Certification declaring her commitment to protecting the interests of the Class (*see* Przybylowski Decl., Ex. C), and Scagliotti's significant financial interest in this

14

litigation demonstrates that she has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating her adequacy, Scagliotti has submitted a Declaration attesting to, *inter alia*, her background, investing experience, understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, decision to seek appointment as Lead Plaintiff, and the steps that she is prepared to take to prosecute this litigation on behalf of the Class. *See* Przybylowski Decl., Ex. D.

### 4. Scagliotti Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Scagliotti as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or

> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Scagliotti to fairly and adequately represent the Class has been discussed above. Scagliotti is not aware of any unique defenses Defendants could raise that would render her inadequate to represent the Class. Accordingly, Scagliotti should be appointed Lead Plaintiff for the Class.

15

## C.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel."). The Court should not interfere with Lead Plaintiff's selection unless it is necessary to do so to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Scagliotti has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Przybylowski Decl., Ex. E. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the

16

$225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

Scagliotti's chosen counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute the Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Scagliotti's selection of Pomerantz as Lead Counsel for the Class, the members of the Class will receive the best legal representation available.

## **CONCLUSION**

For the foregoing reasons, Scagliotti respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Scagliotti as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  October 3, 2022                    Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski
Jeremy A. Lieberman
(*pro hac vice*)
J. Alexander Hood II
(*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100

17

Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Movant Maria Scagliotti
and Proposed Lead Counsel for the
Class*

WOHL & FRUCHTER LLP
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Telephone: (845) 290-6818
jfruchter@wohlfruchter.com

*Additional Counsel for Movant Maria
Scagliotti*

18