SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com
cayers@seegerweiss.com

Liaison Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 2:22-cv-04915-BRM-LDW |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) | BRIEF IN SUPPORT OF MOTION FOR CONSOLIDATION OF RELATED ACTIONS, |
| COINBASE GLOBAL, INC., et al., | ) ) ) | APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF |
| Defendants. | ) ) ) | LEAD PLAINTIFF'S SELECTION OF COUNSEL |

[Caption continued on following page.]

MOTION DAY:    November 7, 2022

4860-2031-5957.v1

DENNIS DEAN LAFFOON, Individually and on Behalf of All Others Similarly Situated,

           Plaintiff,

vs.

COINBASE GLOBAL, INC., et al.,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 2:22-cv-05744-BRM-LDW

<u>CLASS ACTION</u>

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................1

II.   FACTUAL BACKGROUND........................................................................3

III.  LEGAL ARGUMENT ................................................................................6

      A.    The Related Actions Should Be Consolidated .....................................6

      B.    Dr. Saraf Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff ........................................................................7

            1.    Dr. Saraf Has Satisfied the PSLRA's Procedural Requirements by Filing a Timely Motion and Signing Certifications ..................................................................................9

            2.    Dr. Saraf Has the Largest Financial Interest in the Relief Sought by the Class.....................................................................9

            3.    Dr. Saraf Otherwise Satisfies Rule 23's Requirements............10

      C.    The Court Should Approve Dr. Saraf's Choice of Counsel.................12

IV.  CONCLUSION.........................................................................................14

4860-2031-5957.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*City of Warren Gen. Emps.' Ret. Sys. v. Celgene Corp.*,
2018 WL 4629570 (D.N.J. Sept. 26, 2018) ..........................................................6

*Hall v. Johnson & Johnson*,
No. 3:18-cv-01833-FLW-TJB (D.N.J. Nov. 26, 2018) ......................................13

*HsingChing Hsu v. Puma Biotechnology, Inc.*,
No. 8:15-cv-00865-AG-JCG (C.D. Cal.) .............................................................14

*In re Cardinal Health, Inc. Sec. Litig.*,
No. 2:04-cv-00575-ALM (S.D. Ohio) .................................................................14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ..........................................................................10, 11

*In re CIGNA Corp. Sec. Litig.*,
No. 2:02-cv-02088 (E.D. Pa.) .............................................................................13

*In re Enron Corp. Sec. Litig.*,
No. 4:01-cv-03624 (S.D. Tex.) ............................................................................14

*In re HealthSouth Corp. Sec. Litig.*,
No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ........................................................14

*In re KLA Tencor Sec. Litig.*,
No. 3:06-cv-04065 (N.D. Cal.) ............................................................................13

*In re Merrill Lynch Co., Inc. Sec., Derivative & ERISA Litig.*,
No. 1:07-cv-09633 (S.D.N.Y.) ............................................................................13

*In re Novo Nordisk Sec. Litig.*,
No. 3:17-cv-00209-BRM-LHG (D.N.J. June 1, 2017) ......................................13

*In re Party City Sec. Litig.*,
189 F.R.D. 91 (D.N.J. 1999) ...........................................................................7, 11

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
No. 1:01-cv-01451-REB-KLM (D. Colo.) ..........................................................14

4860-2031-5957.v1

**Page**

*In re Rite Aid Corp. Sec. Litig.*,
    No. 2:99-cv-01349 (E.D. Pa.) ................................................................................13

*In re Sotheby's Holding, Inc. Sec. Litig.*
    No. 1:00-cv-01041 (S.D.N.Y.) ...............................................................................13

*In re UnitedHealth Grp. Inc. Sec. Litig.*,
    No. 0:06-cv-01691-JMR-FLN (D. Minn.)..............................................................14

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
    No. 3:15-cv-07658-MAS-LHG (D.N.J. May 31, 2016)........................................13

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
    No. 1:02-cv-05893 (N.D. Ill.)................................................................................14

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(1) ...........................................................................................................7
    §78u-4(a)(3)(A)(i).................................................................................................7
    §78u-4(a)(3)(A).................................................................................................8, 9
    §78u-4(a)(3)(B).................................................................................................8, 9
    §78u-4(a)(3)(B)(i)............................................................................................2, 8
    §78u-4(a)(3)(B)(ii)..........................................................................................1, 6
    §78u-4(a)(3)(B)(iii).......................................................................................9, 10
    §78u-4(a)(3)(B)(v)........................................................................................2, 12

Federal Rule of Civil Procedure
    Rule 23 ..........................................................................................................2, 8, 10
    Rule 23(a)(3) .........................................................................................................10
    Rule 23(a)(4) .........................................................................................................11
    Rule 42 ...............................................................................................................1, 2
    Rule 42(a).................................................................................................................6

4860-2031-5957.v1

## I.    PRELIMINARY STATEMENT

Presently pending before this Court are two related securities class action lawsuits (the "Related Actions") brought on behalf of investors who purchased or otherwise acquired securities of Coinbase Global, Inc. ("Coinbase" or the "Company") who were damaged by defendants' alleged violations of the Securities Exchange Act of 1934 (the "1934 Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  Proposed lead plaintiff Rahul Saraf, D.M.D. hereby moves this Court for an order (i) consolidating the above-captioned Related Actions pending in this District pursuant to Federal Rule of Civil Procedure 42; (ii) appointing Dr. Saraf as Lead Plaintiff; and (iii) approving his selection of Berger Montague PC and Robbins Geller Rudman & Dowd LLP to serve as Lead Counsel.

Pursuant to the PSLRA, the Court must decide whether to consolidate the Related Actions before selecting a movant to lead this litigation on behalf of the putative class. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  This motion is made on the

---

[1]    The Related Actions are: (1) *Patel v. Coinbase Global, Inc.*, No. 2:22-cv-04915, filed August 4, 2022, on behalf of investors who purchased or otherwise acquired Coinbase securities between April 14, 2021 and July 26, 2022, both dates inclusive; and (2) *Laffoon v. Coinbase Global, Inc.*, No. 2:22-cv-05744, filed September 27, 2022, on behalf of investors who purchased or otherwise acquired Coinbase securities between April 14, 2021 and September 21, 2022, inclusive.  Dr. Saraf seeks to represent the broadest class of investors alleged in the two complaints, that being the Class Period alleged in *Laffoon*.

- 1 -

grounds that the Related Actions pending before this Court involve common questions of law and fact, rendering consolidation appropriate under Rule 42. Further, the PSLRA directs courts to appoint as lead plaintiff the class member or group of members it "determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Here, Dr. Saraf is the most adequate plaintiff, as defined by the PSLRA, because he possesses a significant financial interest in the relief sought by the putative class – a $7 million loss on both a last-in-first-out ("LIFO") and first-in-first-out ("FIFO") basis – and otherwise satisfies the requirements of Federal Rule of Civil Procedure 23 in that his claims are typical of the claims of the putative class and he will fairly and adequately represent the interests of the class.

Finally, pursuant to the PSLRA, Dr. Saraf respectfully requests that the Court approve his selection of Berger Montague and Robbins Geller as Lead Counsel and Seeger Weiss as liaison counsel for the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Berger Montague and Robbins Geller are nationally recognized leaders representing investors in shareholder litigation and securities class actions for decades, and have the expertise and resources necessary to handle this complex litigation. Seeger Weiss, as liaison ounsel, also has extensive

- 2 -

4860-2031-5957.v1

experience representing investors in securities class actions and other complex litigation.

Accordingly, Dr. Saraf's motion should be granted.

## II.    FACTUAL BACKGROUND

Coinbase provides financial infrastructure and technology products and services for the cryptocurrency economy in the U.S. and internationally.  The Company purportedly offers the primary financial account in the cryptocurrency economy for retailers, a marketplace with a pool of liquidity for transacting in crypto assets for institutions, and technology and services that enable ecosystem partners to build crypto-based applications and securely accept crypto assets as payment.

As alleged in the complaints of the Related Actions, Coinbase is a Delaware corporation, and one of the world's largest crypto asset exchanges.  Among other things, Coinbase provides retail investors with crypto wallets that allow those investors to securely buy, sell, and receive crypto assets.  Similarly, the Company offers institutional investors access to the Coinbase Prime platform, which allows investors to access and transact in crypto markets while also providing advanced trading, custody, analytics, and financing solutions. In connection with these services, Coinbase also acts as a crypto asset custodian for individuals and institutions.

The Class Period commences on April 14, 2021, when Coinbase filed a prospectus on a Form 424B4 with the U.S. Securities and Exchange Commission

- 3 -

4860-2031-5957.v1

("SEC") in connection with the registration the Company filed with the SEC on February 25, 2021 (collectively, the "Listing Documents"), in connection with the Company's initial listing of common stock on the NASDAQ (the "Direct Listing"). The Listing Documents highlighted the customers' ability to rely on Coinbase as a crypto asset custodian. Defendants emphasized Coinbase's ability to "support over 90 crypto assets for trading or custody" and touted that, "[a]s of December 31, 2020, [Coinbase] stored and custodied over $90 billion in total fiat and crypto assets on behalf of [its] customers."

Investors first began to learn the true state of Coinbase's financial and operational picture on May 10, 2022, when the Company filed its first quarter 2022 financial report on a Form 10-Q with the SEC. In the report, defendants disclosed for the first time that crypto assets the Company holds in custody on behalf of customers could be treated as the Company's assets in the event of bankruptcy. On this news, the price of Coinbase common stock declined $19.27 per share, or more than 26%, from a close of $72.99 per share on May 10, 2022, to close at $53.72 per share on May 11, 2022.

Investors continued to learn the truth about the Company's operations on July 25, 2022, after the markets closed, when *Bloomberg* published an article revealing that the SEC was investigating whether Coinbase "let Americans trade digital assets that should have been registered as securities." ECF 1 at ¶44. On this news, the price of

- 4 -

4860-2031-5957.v1

Coinbase common stock declined $14.14 per share, or approximately 21%, from a close of $67.07 per share on July 25, 2022, to close at $52.93 per share on July 26, 2022.

Then, on September 22, 2022, *The Wall Street Journal* reported that Coinbase had created a unit, Coinbase Risk Solutions, in July 2021 "to generate profit, in part, by using the [C]ompany's cash to trade and 'stake,' or lock up, cryptocurrencies," a practice that sources at the Company characterized as "'proprietary' trading." *Laffoon* ECF 1 at ¶9. On this news, the price of Coinbase common stock declined $4.70 per share, or 6.9%, from a close of $67.64 per share on September 21, 2022, to close at $62.94 per share on September 22, 2022.

The Related Actions alleged that throughout the Class Period, defendants misrepresented and/or failed to disclose that: (1) crypto assets Coinbase held as a custodian on behalf of its customers could qualify as property of a bankruptcy estate – and not the Company's customers – in the event Coinbase filed for bankruptcy; (2) Coinbase allowed Americans to trade crypto assets that the Company knew or recklessly disregarded should have been registered as securities with the SEC; (3) Coinbase had plans to, and did in fact, engage in proprietary trading of crypto assets; and (4) as a result, defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis and misled investors regarding material risks attendant to Coinbase's operations.

- 5 -

4860-2031-5957.v1

## III.   LEGAL ARGUMENT

### A.   The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered."  15 U.S.C. §78u-4(a)(3)(B)(ii); *see also City of Warren Gen. Emps.' Ret. Sys. v. Celgene Corp.*, 2018 WL 4629570, at *1 (D.N.J. Sept. 26, 2018) (addressing issue of consolidation before lead plaintiff).  Under Rule 42(a), consolidation is appropriate when actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).  In these instances, courts maintain that, in order to avoid the unnecessary waste of judicial resources and the additional costs and delay to the parties, lawsuits which involve similar questions of law and fact should be consolidated.  *See Celgene*, 2018 WL 4629570, at *1 (consolidating two matters clearly involving common questions of law and fact, such that "consolidation will promote efficiency and avoid unnecessary costs or delay").

Here, the Related Actions are well-suited for consolidation.  Each action alleges a substantially similar fraudulent scheme relating to similar parties, transactions, and events.  Each action asserts that defendants made materially false and misleading statements and omissions concerning the crypto assets Coinbase held as a custodian on behalf of its customers and that Coinbase allowed Americans to trade crypto assets

- 6 -

4860-2031-5957.v1

that the Company knew or recklessly disregarded should have been registered as securities with the SEC.

As such, the Related Actions present virtually identical factual and legal issues during overlapping class periods and name overlapping defendants.[2]  Because the Related Actions pending before this Court are based on the same facts and involve the same subject matter, the same discovery will be relevant to all lawsuits. Thus, consolidation is appropriate here.

**B.    Dr. Saraf Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff**

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(A)(i).  The plaintiff in the first-filed action caused a notice regarding the pendency of the action to

---

[2]    For purposes of this motion, the longest and most inclusive alleged class period is used – April 14, 2021 through September 21, 2022 (the "Class Period").  *See*, *e.g.*, *In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite* Action is relied upon for the purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants.").

4860-2031-5957.v1

be published on *Globe Newswire*, a national, business-oriented newswire service, on October 4, 2022. *See* Declaration of Christopher A. Seeger in Support of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Seeger Decl."), Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the Court shall adopted a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa)   has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

- 8 -

4860-2031-5957.v1

15 U.S.C. §78u-4(a)(3)(B)(iii).  Dr. Saraf satisfies the "Lead Plaintiff" requirements of the PSLRA

### 1. Dr. Saraf Has Satisfied the PSLRA's Procedural Requirements by Filing a Timely Motion and Signing Certifications

According to the published notice, the time period in which class members may move to be appointed lead plaintiff herein under the PSLRA expires on October 3, 2022, the same day this motion is being filed.  *See* 15 U.S.C. §78u-4(a)(3)(A) & (B). In addition, Dr. Saraf has duly signed a Certification stating that he is willing to serve as the representative parties on behalf of the class.  *See* Seeger Decl., Ex. B. Accordingly, because Dr. Saraf has complied with the PSLRA's procedural requirements, Dr. Saraf is entitled to have his application for appointment as lead plaintiff considered and approved by the Court.

### 2. Dr. Saraf Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed Certification and loss chart, Dr. Saraf incurred losses of over $7 million on both a LIFO and FIFO basis on his transactions in Coinbase stock in reliance on defendants' allegedly materially false and misleading statements.  *See* Seeger Decl., Exs. B, C.  To the best of Dr. Saraf's counsel's knowledge, there are no other plaintiffs with a larger financial interest.  Accordingly, Dr. Saraf satisfies the

- 9 -

PSLRA's prerequisite of having a significant financial interest in the relief sought by the putative class.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

### 3.    Dr. Saraf Otherwise Satisfies Rule 23's Requirements

According to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii).  "The initial inquiry (i.e., the determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (citation omitted).  Dr. Saraf satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff in this case.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  In making the *prima facie* determination of typicality, the Court should apply traditional Rule 23 principles, including whether the circumstances of the movant with the largest losses "are markedly different or the legal theory upon which the claims of that movant are based differ from that upon which the claims of other class members will perforce be based."  *Id.* at 265 (cleaned up).  Thus, typicality exists if claims "arise from the same event or course of conduct that gave rise to the claims of the other class members and are premised upon the

- 10 -

same legal theory." *Party City*, 189 F.R.D. at 107 n.13.  Dr. Saraf satisfies this requirement because, he, like other members of the proposed class, seeks to recover for the losses incurred as a result of defendants' alleged misrepresentations and omissions.

Under Rule 23(a)(4), the representative parties must also fairly and adequately protect the interests of the class.  The PSLRA directs this Court to limit its inquiry regarding the adequacy of Dr. Saraf to represent the class to the existence of any conflicts between his interests and the members of the class.  The Court must evaluate adequacy of representation by considering whether Dr. Saraf "has the ability and incentive to represent the claims of the class vigorously, whether it has obtained adequate counsel, and whether there is a conflict between the movant's claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265 (cleaned up).

As evidenced by the substantial financial harm Dr. Saraf suffered in purchasing Coinbase stock at prices artificially inflated by defendants' allegedly materially false and misleading statements, and by the injury suffered based on materially false and misleading statements, Dr. Saraf's interests are clearly aligned with the interests of the class and he possesses the resources and motivation sufficient to pursue the above-captioned action to a successful conclusion.  He is a sophisticated, experienced investor committed to overseeing and directing his counsel, Berger Montague and Robbins Geller, in this litigation.  Dr. Saraf is a Georgia-based endodontist with

- 11 -

significant experience investing in equities. His investment in Coinbase represents a very substantial portion of his equities portfolio and he is committed to maximizing the recovery for the class of investors he represents. Finally, Dr. Saraf has retained competent and experienced counsel to prosecute these claims.

Accordingly, Dr. Saraf *prima facie* satisfies each of the PSLRA's requirements and should be appointed Lead Plaintiff.

### C.     The Court Should Approve Dr. Saraf's Choice of Counsel

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). In this regard, Dr. Saraf has selected Berger Montague and Robbins Geller to serve as Lead Counsel.[3]

Berger Montague has a long record of success in securities litigation and has achieved many of the largest securities recoveries since Congress enacted the PSLRA. The firm advises clients on litigation and recovery options in securities proceedings throughout the United States and internationally. Berger Montague has served as lead or co-lead counsel in numerous other major securities class action cases, both within this District and beyond, where substantial settlements were achieved on behalf of investors, including the following, without limitation: *In re Merrill Lynch Co., Inc. Sec., Derivative & ERISA Litig.*, No. 1:07-cv-09633 (S.D.N.Y.) (recovery of $475

---

[3]   Copies of the firm resumes of Berger Montague, Robbins Geller, and Seeger Weiss can be furnished upon the Court's request.

- 12 -

4860-2031-5957.v1

million); *In re Sotheby's Holding, Inc. Sec. Litig.*, No. 1:00-cv-01041 (S.D.N.Y.) (a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant); *In re KLA Tencor Sec. Litig.*, No. 3:06-cv-04065 (N.D. Cal.) (settlement of $65 million); *In re CIGNA Corp. Sec. Litig.*, No. 2:02-cv-02088 (E.D. Pa.) (settlement of $93 million); and *In re Rite Aid Corp. Sec. Litig.* No. 2:99-cv-01349 (E.D. Pa.) (settlements totaling $334 million).

Robbins Geller, a 200-attorney firm with offices nationwide, regularly represents clients in complex class action litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. District courts throughout the country, including this District, have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG, ECF 67 (D.N.J. May 31, 2016) (appointing Robbins Geller as lead counsel in securities case); *Hall v. Johnson & Johnson*, No. 3:18-cv-01833-FLW-TJB, ECF 20 (D.N.J. Nov. 26, 2018) (appointing Robbins Geller as lead counsel in securities case); *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209-BRM-LHG, ECF 42 (D.N.J. June 1, 2017) (appointing Robbins Geller, along with co-counsel, as lead counsel in securities class action case). Additionally, Robbins Geller has obtained the

- 13 -

largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.[4]  And, while trials in shareholder class actions are rare, Robbins Geller has tried several cases to verdict, most recently a February 2019 trial in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.

Because Dr. Saraf's selection of Berger Montague and Robbins Geller is reasonable, his motion should be granted.

## IV.   CONCLUSION

For all the foregoing reasons, Dr. Saraf respectfully requests that the Court grant his Motion and enter an Order (i) consolidating the Related Actions; (ii) appointing Dr. Saraf as Lead Plaintiff in the action; and (iii) approving his selection of Lead Counsel.

---

[4]   *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

- 14 -

4860-2031-5957.v1

DATED:  October 3, 2022

Respectfully submitted,

s/ Christopher A. Seeger
CHRISTOPHER A. SEEGER

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com
cayers@seegerweiss.com

Liaison Counsel

BERGER MONTAGUE PC
SHERRIE R. SAVETT
MICHAEL DELL'ANGELO
ANDREW D. ABRAMOWITZ
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: 215/875-3000
ssavett@bm.net
mdellangelo@bm.net
aabramowitz@bm.net

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

- 15 -

4860-2031-5957.v1

- 16 -

Proposed Lead Counsel for Proposed Lead Plaintiff

4860-2031-5957.v1