**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700

*Proposed Liaison Counsel for the Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and ALESIA J. HAAS,<br><br>Defendants. | Case No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>District Judge<br><br>Hon. Leda D. Wettre<br>Magistrate Judge<br><br>**MOTION DAY:** November 7, 2022<br><br>ORAL ARGUMENT REQUESTED |

[Additional caption on following page.]

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

| | |
|---|---|
| DENNIS DEAN LAFFOON, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, and EMILIE CHOI,<br><br>      Defendants. | Case No. 2:22-cv-05744-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>District Judge<br><br>Hon. Leda D. Wettre<br>Magistrate Judge |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................1

II.     ARGUMENT..........................................................................................6

      A.      The Related Actions Should Be Consolidated .....................................6

      B.      AP7 Is the Most Adequate Plaintiff ....................................................6

            1.      AP7 Has the Largest Financial Interest in the Relief
                  Sought by the Class........................................................................7

            2.      AP7 Satisfies the Requirements of Rule 23...............................9

      C.      The Court Should Approve AP7's Selection of Counsel....................11

      D.      The Competing Motions Should Be Denied .......................................11

            1.      No Movant Asserts a Larger Financial Interest than
                  AP7...............................................................................................11

            2.      Dr. Saraf Is Also Subject to Unique Defenses and Is
                  Inadequate ..................................................................................12

                  a.      Dr. Saraf's Frenzied Trading Activity Exposes
                        Him to Unique Defenses..............................................12

                    b.      Dr. Saraf's Conduct Raises Serious Questions
                        about His Adequacy......................................................16

III.    CONCLUSION.....................................................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applestein v. Medivation Inc.*,
No. C 10–00998 MHP,
2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)...................................................14

*Bang v. Acura Pharms., Inc.*,
No. 10 C 5757,
2011 WL 91099 (N.D. Ill. Jan. 11, 2011)..........................................................14

*Batter v. Hecla Mining Co.*,
Nos. 19-cv-4883 (ALC), *et al.*,
2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020)...................................................15

*Bo Young Cha v. Kinross Gold Corp.*,
No. 12 Civ. 1203(PAE),
2012 WL 2025850 (S.D.N.Y. May 31, 2012) .....................................................2

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19 CV 2394,
2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...................................................17

*Camp v. Qualcomm Inc.*,
No. 18-cv-1208-AJB-BLM,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019) .....................................................17

*Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*,
306 F.3d 726 (9th Cir. 2002) ...........................................................11, 12, 18, 19

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ......................................................................*passim*

*Cohen v. U.S. Dist. Court for N. Dist. of Cal.*,
586 F.3d 703 (9th Cir. 2009) ............................................................................11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..........................................................................................13

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*,
   529 F. Supp. 3d 385 (E.D. Pa. 2021)................................................................7, 8

*Lewis v. Lipocine Inc.*,
   Nos. 16-4009-BRM-LHG, *et al.*,
   2016 WL 7042075 (D.N.J. Dec. 2, 2016)...............................................................6

*Marcus v. J.C. Penney Co.*,
   Nos. 6:13-CV-736, *et al.*,
   2014 WL 11394911 (E.D. Tex. Feb. 28, 2014)...............................................14, 15

*In re Netflix, Inc., Sec. Litig.*,
   Nos. 12–0225 SC, *et al.*,
   2012 WL 1496171 (N.D. Cal. Apr. 27, 2012)...............................................15, 16

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014)........................................................................11

*In re Pfizer Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) ..........................................................................18

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
   566 F. Supp. 3d 712 (S.D. Tex. Oct. 6, 2021) ...............................................*passim*

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) ......................................................................3, 8

*Schaffer v. Horizon Pharma plc*,
   No. 16-CV-1763 (JMF),
   2016 WL 3566238 (S.D.N.Y. June 27, 2016) .......................................................15

*Shaffer v. Digit. Generation, Inc.*,
   No. 3:13-CV-1684-N,
   2013 WL 12430537 (N.D. Tex. Sept. 19, 2013) ...................................................14

*Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
   Nos. 11-6247 (JBS/KMW), *et al.*,
   2012 WL 3638629 (D.N.J. Aug. 22, 2012) .....................................................15, 16

*Tsirekidze v. Syntax-Brillian Corp.*,
   Nos. CV–07–2204-PHX-FJM, *et al.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ............................................................14

iii

**Statutes**

15 U.S.C. § 78u-4(a) ...................................................................................2, 6, 11

**Other Authorities**

Fed. R. Civ. P. 23(a)..................................................................................9

iv

Presumptive Lead Plaintiff AP7 respectfully submits this Memorandum of Law in further support of its motion for consolidation of related actions, appointment as Lead Plaintiff, and approval of its selection of counsel (ECF No. 20), and in opposition to the competing motions.[1]

## I.    INTRODUCTION

On October 3, 2022, AP7 timely moved under the PSLRA seeking: (1) consolidation of the above-captioned Related Actions; (2) appointment of AP7 as Lead Plaintiff; and (3) approval of AP7's selection of Kessler Topaz as Lead Counsel for the class and Carella Byrne as Liaison Counsel for the class.

In addition to AP7's motion, motions seeking appointment as Lead Plaintiff were also filed by:

1.    Rahul Saraf, D.M.D. ("Dr. Saraf") (ECF No. 22):

2.    Darren Wright (ECF No. 12);

3.    Charles Bethune III (ECF No. 13);

4.    Maria Scagliotti (ECF No. 21); and

5.    Henry Gotlob (ECF No. 18).

Darren Wright, Maria Scagliotti, and Henry Gotlob have since filed notices of non-

---

[1]    Unless otherwise noted, all references to "ECF No. __" are to docket entries in *Patel v. Coinbase Global, Inc., et al.*, No. 2:22-cv-04915-BRM-LDW (D.N.J.), all capitalized terms are defined in AP7's opening brief, *see* ECF No. 20-1, all emphasis is added, and all internal citations and quotation marks are omitted.

opposition, and have not challenged AP7's appointment as Lead Plaintiff.  *See* ECF Nos. 23, 24, & 25.

A straightforward application of the PSLRA presumes that the "most adequate plaintiff"—the plaintiff entitled to appointment as lead plaintiff—is the movant asserting the largest financial interest that also makes a *prima facie* showing of typicality and adequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001).  Here, AP7 is the presumptive Lead Plaintiff under the analysis required by the PSLRA and Third Circuit law.

***First***, as detailed below, AP7 indisputably has the "largest financial interest" in this litigation.  In fact, AP7, with losses of approximately ***$10,015,637*** on a LIFO basis,[2] suffered larger losses than all five other movants ***combined***:

| **Movant** | **LIFO Losses[3]** |
|---|---|
| **AP7 [ECF No. 20]** | **$10,015,637** |
| Dr. Saraf [ECF No. 22] | $7,046,068 |
| ~~Darren Wright~~ [ECF No. 12; non-opposition in ECF No. 25] | ~~$726,600~~ |
| Charles Bethune III [ECF No. 13] | $470,789 |

---

[2]     LIFO is the preferred and most widely accepted methodology for calculating movants' losses.  *See Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203(PAE), 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) (observing that "the overwhelming trend . . . nationwide has been to use LIFO").  AP7's losses are identical under the less-favored first-in, first-out ("FIFO") methodology.

[3]     The movants' losses are taken from their respective filings.

| | |
|---|---|
| ~~Maria Scagliotti~~ [ECF No. 21; non-opposition in ECF No. 24] | ~~$262,667~~ |
| ~~Henry Gotlob~~ [ECF No. 18; non-opposition in ECF No. 23] | ~~$165,899~~ |

In addition to asserting the largest losses (the most important metric used to evaluate financial interest), AP7 also purchased the most net shares and expended the most net funds (the second and third most important metrics). *See infra* Section II.B.1; *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011) (observing that "the loss suffered . . . is the most important" metric and that a fourth metric, "the number of shares purchased," is less important than net shares purchased and net funds expended).

**Second**, not only does AP7 clearly assert the largest financial interest of any movant, but it also readily satisfies the PSLRA's adequacy and typicality requirements. In fact, AP7—the only institutional investor (the ideal movant under the PSLRA) before the Court—is perfectly situated to represent all class members. As explained in its opening brief, AP7 is a sophisticated institutional investor responsible for overseeing approximately $80 billion in assets and is the only movant with a proven track record of successfully resolving multiple class action lawsuits as a lead plaintiff under the PSLRA, including several actions litigated **in this District**. Securities class actions under AP7's leadership prosecuted in the District of New Jersey (including an action with AP7 as the sole lead plaintiff) have resulted

3

in investors' recoveries exceeding $150 million. *See infra* Section II.B.2; *Cendant*, 264 F.3d at 273 (finding that "the purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff"). AP7's total recoveries across all district courts approach ***$1 billion***. No other movant claims a similar record. Accordingly, there can be no doubt that AP7, as it has in prior cases, will zealously represent the interests of the class here.

The presumption, once triggered in AP7's favor, "may be rebutted ***only upon proof*** by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly represent the interests of the class." *Cendant*, 264 F.3d at 263. Given that no "proof" has been—or can be—offered to rebut AP7's presumptive status, AP7 should be appointed Lead Plaintiff and the competing motions should be denied.

Moreover, even if Dr. Saraf (the movant with the second largest losses) had the largest financial interest in this litigation, he must still be disqualified because he is "subject to unique defenses that render [him] incapable of adequately representing the class" and he has not established that he will "fairly and adequately protect the interests of the class." *Id.* As an initial matter, Dr. Saraf's frenzied, high-frequency trading activity—in which he bought and sold Coinbase stock more than ***five hundred*** times, including simultaneously buying and selling on thirty-nine days during the Class Period—exposes him to arguments undermining his ability to use

4

the fraud-on-the-market doctrine to establish reliance on Defendants' misrepresentations. *See, e.g.*, *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719 (S.D. Tex. Oct. 6, 2021) (rejecting movant whose high-frequency trading "raise[s] serious concerns about [his] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions"). Courts routinely reject high-frequency traders like Dr. Saraf because their unique risks jeopardize all class members' claims.

Separately, Dr. Saraf has provided no evidence that he can simultaneously manage his endodontic practice, this litigation, *and* the other pending securities class action where he is serving as a lead plaintiff. In fact, Dr. Saraf's failure to exercise oversight has already manifested here because, while he proposes the appointment of two law firms as co-lead counsel (with no explanation or justification for appointing multiple law firms), his sworn PSLRA certification explicitly identifies only *one* of the two proposed firms as his "selected counsel." *See infra* Section II.D.2.b. There is no explanation for the inconsistency between Dr. Saraf's sworn certification and his motion—raising questions about whether he even knew a second law firm was added to his motion.

Given these multiple concerns, "[t]here is simply no reason to subject the putative class to the [plethora of] unique defenses that would undoubtedly take center stage if [Dr. Saraf] were appointed lead plaintiff." *Apache*, 566 F. Supp. 3d

at 720.  For these reasons, AP7 respectfully submits that it is entitled to appointment as Lead Plaintiff and the competing motions should be denied.

## II.    ARGUMENT

### A.    The Related Actions Should Be Consolidated

The Related Actions involve numerous "common questions of law or fact" and should be consolidated.  *Lewis v. Lipocine Inc.*, Nos. 16-4009-BRM-LHG, *et al.*, 2016 WL 7042075, at *2 (D.N.J. Dec. 2, 2016) (Martinotti, J.).  Specifically, the Related Actions assert identical claims under the Exchange Act against common defendants, across overlapping class periods, and concerning substantially the same conduct.  Moreover, no movant opposed consolidation of the Related Actions.  *See* ECF Nos. 12, 13, 18, 21, & 22.  Accordingly, consolidation is appropriate.  *See Lipocine*, 2016 WL 7042075, at *2.

### B.    AP7 Is the Most Adequate Plaintiff

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA further provides that "the court shall adopt a presumption that the most adequate plaintiff . . . is the person . . . in the determination of the court, [which] has the largest financial interest in the relief sought by the class; and . . . otherwise satisfies the requirements of Rule 23." *Id*. § 78u-4(a)(3)(B)(iii)(I); *see also Cendant,* 264 F.3d at 222 ("The PSLRA . . . instruct[s] [courts] to 'adopt a

6

presumption' that the most adequate plaintiff is the movant that 'has the largest financial interest in the relief sought by the class[.]'"). AP7 meets both prerequisites and should therefore be appointed Lead Plaintiff.

### 1. AP7 Has the Largest Financial Interest in the Relief Sought by the Class

Based on the movants' respective submissions to the Court, it is indisputable that AP7 has sustained the largest losses in connection with its transactions in Coinbase securities during the Class Period:



In addition to possessing the largest losses, the critical measure at this juncture, AP7 also has the largest financial interest under the second and third most important metrics commonly used by courts to determine financial interest under the PSLRA. *See Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus. Ltd.*, 529 F. Supp. 3d 385, 396 (E.D. Pa. 2021) (applying four financial interest

7

factors as set forth in *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715, *et al.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997): "the number of shares that the movant purchased during the putative class period"; "the total net funds expended by the plaintiffs during the class period"; "the number of net shares purchased by the movant during the Class Period"; and, most importantly, "the approximate losses suffered by the plaintiffs"); *Goldman*, 274 F.R.D. at 476 (identifying the loss suffered as "the most important" factor and the number of shares purchased as "the least important" of the four *Lax* factors). AP7 purchased the most net shares during the Class Period and had the greatest net expenditures on its transactions during the Class Period:

| Movant | Net Shares | Net Expenditures |
|---|---|---|
| **AP7** | **141,484** | **$19,032,412** |
| Dr. Saraf | 68,388 | $11,404,437 |
| ~~Darren Wright~~ | ~~2,247~~ | ~~$897,391~~ |
| Charles Bethune III | 1,300 | $553,226 |
| ~~Maria Scagliotti~~ | ~~2,000~~ | ~~$389,493~~ |
| ~~Henry Gotlob~~ | ~~200~~ | ~~$60,955~~ |

It cannot be disputed that AP7 possesses the largest financial interest of any movant before the Court.

### 2.    AP7 Satisfies the Requirements of Rule 23

As noted by the Third Circuit, at the lead plaintiff appointment stage, the Rule 23 inquiry "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy." *Cendant*, 264 F.3d at 263.

Here, AP7 has made a *prima facie* showing of typicality because its claims are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see also* ECF No. 20-1 at 9-10.   Like other members of the proposed class, AP7: (1) purchased Coinbase securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby.  AP7 has also made a *prima facie* showing of adequacy because it is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4); ECF No. 20-1 at 10-12.  AP7's interests are clearly aligned with other class members and there is no evidence of any conflict. With losses exceeding that of all other movants **combined**, AP7 has a sufficient interest in this case to ensure its vigorous prosecution, and has established its commitment to prosecuting this action efficiently and in the best interests of the class.  *See Cendant*, 264 F.3d at 265 (holding that representation is adequate when the lead plaintiff "has the ability and incentive to represent the claims of the class vigorously," has "obtained adequate counsel," and its interests are sufficiently aligned with those of absent class members).

9

Moreover, as a sophisticated institutional investor that oversees approximately $80 billion in assets under management and has a proven record of serving as a lead plaintiff (and class representative) in a number of class actions under the PSLRA across the United States, AP7 has repeatedly demonstrated its ability to successfully prosecute securities class actions. Over the course of more than a decade of leading cases under the PSLRA, AP7 has secured settlements in excess of $950 million for investors as a lead plaintiff and/or a certified class representative, including more than $150 million secured in actions litigated in this District. *See In re Allergan Generic Drug Pricing Sec. Litig.*, No. 2:16-cv-09449-KSH-CLW (D.N.J.) (AP7 appointed as lead plaintiff; $130 million settlement); *Monk v. Johnson & Johnson*, No. 3:10-cv-04841-FLW-DEA (D.N.J.) (AP7 appointed as sole lead plaintiff; $23 million settlement); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H-14-3428 (S.D. Tex.) (AP7 certified as class representative; $389.6 million settlement); *In re Luckin Coffee Inc. Sec. Litig.*, No. 1:20-cv-01293-JPC (S.D.N.Y.) (AP7 appointed as lead plaintiff and certified as class representative; $175 million settlement); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y.) (AP7 appointed as lead plaintiff; $150 million settlement); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Fin. Corp.*, No. 9:14-cv-81057-WPD (S.D. Fla.) (AP7 appointed as sole lead plaintiff and certified as class representative; $56 million settlement); *La. Mun.*

10

*Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-00289-WKS (D. Vt.) (AP7 appointed as lead plaintiff and certified as class representative; $36.5 million settlement).

### C.   The Court Should Approve AP7's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.").  AP7's selection of Kessler Topaz as Lead Counsel for the class and Carella Byrne as Liaison Counsel for the class should be approved.

### D.   The Competing Motions Should Be Denied

#### 1.   No Movant Asserts a Larger Financial Interest than AP7

As demonstrated above, each opposing movant's claimed loss is lower than AP7's loss.  Additionally, no "proof" exists to rebut AP7's presumptive status as the most adequate plaintiff under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (requiring "proof" to rebut presumption); *see also Cendant,* 264 F.3d at 264 (same); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("Mere speculation . . . does not meet this standard.").  This, without more, is

11

sufficient to deny the competing movants' motions under the PSLRA's "straightforward" lead plaintiff selection process. *Cavanaugh v. U.S. Dist. Court for N. Dist. of Cal.*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status[.]").

### 2. Dr. Saraf Is Also Subject to Unique Defenses and Is Inadequate

In addition to failing to assert the largest financial interest, which is dispositive here, Dr. Saraf (whose loss is $3 million less than AP7's loss) is also subject to unique defenses based on his trading activity and his conduct in this litigation that preclude his appointment as lead plaintiff. *See Cendant*, 264 F.3d at 263 (noting that the presumption of most adequate plaintiff can be rebutted by proof that the movant "is subject to unique defenses that render such plaintiff incapable of adequately representing the class").

### a. Dr. Saraf's Frenzied Trading Activity Exposes Him to Unique Defenses

First, Dr. Saraf is subject to arguments that his frenzied, high-frequency trading activity—in which he repeatedly bought and sold hundreds or thousands of shares, often on the same day, *see* ECF No. 22-4—precludes him from employing the fraud-on-the-market presumption of reliance that serves as bedrock for the

class's claims.[4]  *See, e.g., Apache*, 566 F. Supp. 3d at 719 (rejecting movant whose high-frequency trading "raise[s] serious concerns about [his] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions").  Specifically, Dr. Saraf engaged in more than ***five hundred*** transactions during the Class Period, frequently amassing, and then quickly liquidating, hundreds or thousands of shares.  *See* ECF No. 22-4.  In fact, starting with his first purchase on September 10, 2021, Dr. Saraf proceeded to buy or sell Coinbase stock on eighty-five of the next 255 trading days (including thirty-nine days in which he bought ***and*** sold Coinbase stock).  *Id.*

The court's recent analysis in *Apache* is instructive.  There, the court disqualified the lead plaintiff movant with the largest financial interest because he "repeatedly bought and sold" stock during the class period, including multiple purchases of shares that were resold "on the same day or within a matter of days." 566 F. Supp. 3d at 719-20.  Specifically, the court concluded that the movant's "frenzied trading activity in [company] stock renders him atypical and subject to unique defenses" that "he was trading in response to information other than the alleged misstatements and omissions," and precludes his appointment as lead

---

[4]   Under Section 10(b) of the Exchange Act, which governs the principal claims in this litigation, plaintiffs are required to prove reliance on defendants' alleged misrepresentations. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

plaintiff. *Id.* at 719; *see also, e.g.*, *Tsirekidze v. Syntax-Brillian Corp.*, Nos. CV–07–2204-PHX-FJM, *et al.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (rejecting movant because its "frantic trading belies any true reliance on company reports or even the integrity of the stock price itself"); *Shaffer v. Digit. Generation, Inc.*, No. 3:13-CV-1684-N, 2013 WL 12430537, at *3 (N.D. Tex. Sept. 19, 2013) (rejecting movant whose "high volume trading activity, including buying and selling [company] stock on the same day, raises serious concerns about his typicality and his susceptibility to unique defenses"); *Bang v. Acura Pharms., Inc.*, No. 10 C 5757, 2011 WL 91099, at *6 (N.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high-frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions."); *Applestein v. Medivation Inc.*, No. C 10–00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (rejecting lead plaintiff movant that engaged in frequent trading and sold out of his position "as many as three times").

Here, rather than being typical of the class, Dr. Saraf's transactions more plausibly suggest a "day trading" strategy designed to capitalize "on the market's daily volatility" and "relies more on speculation rather than investing." *Marcus v. J.C. Penney Co.*, Nos. 6:13-CV-736, *et al.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (rejecting movant engaged in "rapid trading activity," as "[t]his activity would not be typical of the class because the proposed class's damages stem

14

from reliance on Defendant's financial statements"). Accordingly, "[t]here is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage" given the likelihood Defendants will argue that Dr. Saraf did not rely on their alleged misstatements in making his investment decisions. *Apache*, 566 F. Supp. 3d at 720.

Whether Dr. Saraf can ultimately defeat these arguments later in litigation is irrelevant for assessing his candidacy as lead plaintiff. As courts have repeatedly recognized, a movant must be disqualified if it "is subject to unique defenses that are likely to become a major focus at litigation," even if the movant may ultimately prevail. *Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*, Nos. 11-6247 (JBS/KMW), *et al.*, 2012 WL 3638629, at *9 (D.N.J. Aug. 22, 2012); *see also Batter v. Hecla Mining Co.*, Nos. 19-cv-4883 (ALC), *et al.*, 2020 WL 1444934, at *7 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a **potential** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Schaffer v. Horizon Pharma plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected appointments of lead plaintiffs based on *potential* risks.") (emphasis in original); *In re Netflix, Inc., Sec. Litig.*, Nos. 12–0225 SC, *et al.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove

15

a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial.").

Courts in this District recognize the importance of disqualifying movants who are subject to unique defenses. As explained by the Honorable Jerome B. Simandle, this rule "protect[s] the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole." *Cent. Eur. Distrib. Corp.*, 2012 WL 3638629, at *9 (quoting *Netflix*, 2012 WL 1496171, at *5). Here, the risk is real: unique defenses concerning Dr. Saraf's trading are likely to, at best, pose an expensive distraction, and at worst, prevent certification of the class or otherwise substantially harm the class's claims.

### b. Dr. Saraf's Conduct Raises Serious Questions about His Adequacy

Second, Dr. Saraf's conduct to-date raises additional issues apart from his frenzied trading activity. Dr. Saraf is an endodontist with an active practice who is already serving as a lead plaintiff in *Saraf v. Ebix, Inc.*, No. 1:21-cv-01589-JMF (S.D.N.Y.). *See* ECF Nos. 22-5 at 11-12, 22-3 at ¶ 5. Despite the significant demands on his time from his work and the *Ebix* litigation, Dr. Saraf (an individual investor) has failed to provide critical information necessary to establish that he will "fairly and adequately represent the class." *Cendant*, 264 F.3d at 222. First, Dr. Saraf does not explain how he intends to effectively manage multiple securities class actions while juggling the demands of his endodontic practice which purports to

16

have three offices in Georgia.[5]  Dr. Saraf's failures to provide critical information regarding his plan to represent the class leaves the Court with an insufficient basis to "assess [his] adequacy to lead and direct litigation."  *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019), *recons. denied*, No. 19-cv-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020); *see also Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (disqualifying a lead plaintiff movant who failed to provide enough information to allow the court to accurately assess his typicality and adequacy).

Not only does Dr. Saraf fail to provide these assurances, but his conduct also suggests that he has little interest (or ability) to actually effectively lead this litigation.  For example, Dr. Saraf's sworn PSLRA certification (executed the same day as his motion) identifies only *one* law firm—Berger Montague PC ("Berger Montague")—as his "selected counsel."  *See* ECF No. 22-3 at ¶ 1 ("I have authorized the filing of a motion for appointment as Lead Plaintiff on my behalf by my selected counsel, Berger Montague PC.").  Nevertheless, Dr. Saraf's motion inexplicably seeks appointment of both Berger Montague and Robbins Geller Rudman & Dowd

---

[5]     *See* Cobb Root Canals, available at: https://cobbrootcanals.com/contact-us/ (listing offices in Kennesaw, Marietta, and Hiram, Georgia).  In contrast, AP7—as a sophisticated institutional investor—has substantial resources and significant experience leading multiple securities class actions simultaneously.

LLP ("Robbins Geller") as co-lead counsel. *See* ECF No. 22. There is no explanation for Robbins Geller's apparent last-minute addition or why Dr. Saraf's sworn certification is inconsistent with his motion. Dr. Saraf also fails to explain why the class would benefit from multiple co-lead counsel, why Dr. Saraf selected Robbins Geller as a co-lead counsel after already retaining Berger Montague, when he evaluated Robbins Geller's involvement, or how Dr. Saraf plans to ensure that the involvement of two firms would not increase the class's litigation costs. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (declining to approve the selection of two law firms as lead counsel for a single lead plaintiff, and instead appointing one firm as sole lead counsel, in order to "avoid[] the danger of unnecessarily duplicative attorney work and, ultimately, a lower recovery for the class"). In fact, there is no evidence that Dr. Saraf even knew about Robbins Geller's involvement before his motion was filed.[6]

The disconnect between Dr. Saraf's sworn PSLRA certification and his filings is no trivial matter. The PSLRA was intended to "protect[] investors who join class actions against lawyer-driven lawsuits by . . . increas[ing] the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with

---

[6]    Dr. Saraf's two recent motions for appointment as lead plaintiff proposed just Berger Montague as lead counsel. *See* ECF No. 22-3 at ¶ 5. Given these motions, Dr. Saraf's failure to explain the need for multiple firms here is perplexing.

the class of shareholders, will participate in the litigation ***and exercise control over the selection and actions of plaintiff's counsel***." *Cavanaugh*, 306 F.3d at 737 (alterations in original). Dr. Saraf's apparent abdication of control to multiple law firms at the outset raises serious concerns about his ability to oversee counsel throughout the course of the litigation. Accordingly, even if Dr. Saraf did possess the largest financial interest, he must be disqualified.

## III. CONCLUSION

For these reasons, AP7 respectfully requests that the Court consolidate the Related Actions, appoint AP7 as Lead Plaintiff, approve AP7's selection of Kessler Topaz as Lead Counsel for the class and Carella Byrne as Liaison Counsel for the class, and deny the competing motions.

Dated: October 24, 2022

Respectfully submitted,

s/ *James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

19

Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Barbara A. Schwartz
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
bschwartz@ktmc.com
ksauder@ktmc.com

*Counsel for Sjunde AP-Fonden and
Proposed Lead Counsel for the Class*

20

## CERTIFICATE OF SERVICE

I, James E. Cecchi, hereby certify that on October 24, 2022, I caused a true and correct copy of the foregoing memorandum of law to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 24, 2022

s/ *James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Proposed Liaison Counsel for the Class*

21