SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com
cayers@seegerweiss.com

Liaison Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated, ) ) ) | No. 2:22-cv-04915-BRM-LDW |
| Plaintiff, ) ) | CLASS ACTION |
| vs. ) ) ) | DR. SARAF'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF |
| COINBASE GLOBAL, INC., et al., ) ) ) | |
| Defendants. ) ) | |
| [Caption continued on following page.] | MOTION DAY:   November 7, 2022 |

4869-3496-5561.v1

DENNIS DEAN LAFFOON, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

COINBASE GLOBAL, INC., et al.,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:22-cv-05744- BRM-LDW

<u>CLASS ACTION</u>

4869-3496-5561.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................1

II.   ARGUMENT........................................................................................2

     A.   AP7 Is Not Entitled to the "Most Adequate Plaintiff"
         Presumption.........................................................................................3

          1.   AP7 – a Swedish Asset Manager – Has Not Met Its
              Burden to Establish Standing.......................................................3

          2.   AP7 Is Subject to Additional Unique Challenges to Its
              Adequacy .....................................................................................13

     B.   Dr. Saraf's "Financial Interest" Is Greater Than AP7's Based on
         His Relative Percentage of Losses .....................................................15

     C.   The Remaining Movants Do Not Possess the Largest Financial
         Interest ................................................................................................18

III.  CONCLUSION..................................................................................18

4869-3496-5561.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Baydale v. Am. Exp. Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)...............................................12, 13

*Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*,
181 F.3d 435 (3d Cir. 1999) ...............................................................................6

*Burke v. Ruttenberg*,
102 F. Supp. 2d 1280 (N.D. Ala. 2000)..............................................................17

*G & G Prods. LLC v. Rusic*,
902 F.3d 940 (9th Cir. 2018) ..............................................................................7

*Gross v. AT & T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019).......................................4, 7, 10, 11

*In re Am. Serv. Grp., Inc.*,
2006 WL 2503648 (M.D. Tenn. Aug. 29, 2006)..................................................17

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .......................................................................2, 3, 6

*In re Insulin Pricing Litig.*,
2019 WL 643709 (D.N.J. Feb. 15, 2019) .............................................................3

*In re Kraft Heinz Sec. Litig.*,
No. 1:19-cv-01339, ECF 359 (N.D. Ill. May 20, 2022) ....................................15

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999)................................................................17

*In re Ocwen Fin. Corp. Sec. Litig.*,
No. 14-81057 (S.D. Fla. Oct. 11, 2016) ............................................................14

*In re Party City Sec. Litig.*,
189 F.R.D. 91 (D.N.J. 1999)..............................................................................16

*In re Qualcomm Inc. Sec. Litig.*,
No. 3:17-cv-00121 (S.D. Cal. July 22, 2022)....................................................15

4869-3496-5561.v1

**Page**

*Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*,
  2000 WL 486956 (D.N.J. Apr. 24, 2000) ................................................16, 17, 18

*Mangino v. LUCID Grp., Inc.*,
  2022 U.S. Dist. LEXIS 179157 (N.D. Cal. Sep. 30, 2022) ................................4

*Odeh v. Immunomedics, Inc.*,
  No. 2:18-cv-17645-MCA-LDW, (D.N.J. Sept. 10, 2019) ................................16

*Pipefitters Loc. No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) ...............................................................4, 5, 11

*Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*,
  2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) ..............................................*passim*

*Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.*,
  No. 1:18-cv-12084 (S.D.N.Y. Jan. 27, 2022) ...............................................13, 14

*Steamfitters Loc. 449 Pension Fund v. Cent. Euro. Distrib. Corp.*,
  2012 WL 3638629 (D.N.J. Aug. 22, 2012) ...........................................3, 8, 9, 13

*Theodore v. Purecycle Techs., Inc.*,
  2021 WL 5259840 (M.D. Fla. Aug. 5, 2021) .............................................*passim*

*Valley Forge Christian Coll. v. Am. United
  for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982) .............................................................................................3

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) ...............................................................................6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  §78u-4(a)(3)(B)(iii)(I) ........................................................................................2
  §78u-4(a)(3)(B)(iii)(I)(bb) ................................................................................15
  §78u-4(b)(3)(C) .................................................................................................14

- iv -

**Page**

Federal Rules of Civil Procedure
    Rule 44.1 ................................................................................................1, 6

4869-3496-5561.v1

## I.    INTRODUCTION

While movant Swedish investment manager Sjunde AP-Fonden ("AP7") purports to have suffered the greatest loss of any movant on its Class Period investment in Coinbase Global, Inc. securities, AP7 itself suffered no loss from the purchase of Coinbase securities. Rather, it was the AP7 Equity Fund, the units of which are held entirely by the Swedish Pensions Agency, which actually suffered the claimed loss. Yet, even though it was AP7's burden to unequivocally establish standing, its motion is silent in that regard. Likewise, AP7 did not provide the Court with the requisite notice pursuant to Fed. R. Civ. P. Rule 44.1 that the Court would have to make determinations of Swedish law to assess AP7's standing or the information necessary to make such a determination.

In addition, as discussed below, in 2022 alone, AP7 has been subject to at least three serious (and as yet unresolved) challenges to its adequacy to represent investors in a Private Securities Litigation Reform Act of 1995 securities fraud class action. In a representative action like this, putative class members depend entirely on the Court-appointed lead plaintiff to ensure that the courthouse doors are not slammed shut on their ability to obtain a recovery because of extraneous issues unique to the lead plaintiff. Given the challenges to which AP7 is subject (and the issues only AP7 would have to answer if appointed), the Court should decline to appoint AP7 as the sole fiduciary for the putative class in this case. Moreover, even if AP7 had timely

- 1 -

and properly made the required showing as to its standing and provided Rule 44.1 notice, AP7 still could not be appointed here as it does not possess the largest financial interest in the relief sought by the class. *See infra* §II.B. AP7's motion should be denied. And, because each of the other movants claims a smaller loss than Dr. Saraf, their motions should be denied too.

## II.   ARGUMENT

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001).[1] In this regard, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" *and* "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Importantly, courts may not simply "'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264. To the contrary, "[i]n conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have

---

[1]   All emphasis is added and all citations and footnotes are omitted unless otherwise indicated.

been filed, the movant's application, and any other information that the court requires to be submitted." *Id.*

Dr. Saraf is the only movant before the Court that meets all of the PSLRA's criteria.

### A. AP7 Is Not Entitled to the "Most Adequate Plaintiff" Presumption

#### 1. AP7 – a Swedish Asset Manager – Has Not Met Its Burden to Establish Standing

It is axiomatic that to serve as lead plaintiff, one must have standing to assert claims on behalf of the putative class. "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he ***personally*** has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Valley Forge Christian Coll. v. Am. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). As such, "[t]here is no greater impediment to a Plaintiff's ability to prosecute a case than a lack of standing." *Steamfitters Loc. 449 Pension Fund v. Cent. Euro. Distrib. Corp.*, 2012 WL 3638629, at *10 (D.N.J. Aug. 22, 2012).

It is AP7's burden to establish standing, ***not*** Dr. Saraf's burden to ***disprove*** it. *In re Insulin Pricing Litig.*, 2019 WL 643709, at *16 (D.N.J. Feb. 15, 2019) ("'Plaintiffs have the burden to establish standing.'"). A movant's ability to claim "presumptive status will give way if there is a 'non-speculative risk' that a standing

- 3 -

challenge from Defendants may be successful." *Gross v. AT & T Inc.*, 2019 WL 3500496, at \*2 (S.D.N.Y. July 31, 2019) (denying lead plaintiff presumption to European asset manager that failed to support its standing despite that entity's prior appointment as lead plaintiff in multiple cases).

AP7's failure to provide any facts or law to establish its standing is particularly noteworthy because European asset managers like AP7 – *including AP7 itself* – have been increasingly rejected by courts as lead plaintiffs in PSLRA cases based on "a 'non-speculative risk' that a standing challenge from Defendants may be successful." *Gross*, 2019 WL 3500496, at \*2; *Plymouth Cty. Ret. Ass'n v. Array Techs., Inc.*, 2021 WL 5051649, at \*2 (S.D.N.Y. Nov. 1, 2021) (denying lead plaintiff presumption to European asset manager that failed to support its standing despite that entity's prior appointment as lead plaintiff in multiple cases); *Theodore v. Purecycle Techs., Inc.*, 2021 WL 5259840, at \*4 (M.D. Fla. Aug. 5, 2021) (same); *Pipefitters Loc. No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 189-91 (S.D.N.Y. 2011) (*denying presumption to AP7* after concluding there was "an issue as to AP7's standing to file suit" because "AP7 is a Swedish pension fund manager and does not directly own any . . . shares").[2] In each of these cases, the movant – including AP7

---

[2]   This recent trilogy of authorities undermines any attempt by AP7 to seek refuge in a handful of authorities that pre-date these decisions or in any order that appointed AP7 without assessing, let alone scrutinizing, standing. *See, e.g.*, *Mangino v. LUCID Grp., Inc.*, 2022 U.S. Dist. LEXIS 179157, at \*4 (N.D. Cal. Sep. 30, 2022)

- 4 -

itself – claimed losses based on transactions that were not the movant's own and each movant failed to articulate in its motion how the movant could nonetheless claim those losses (and the claims associated therewith) in accordance with foreign law and Article III principles – despite the fact that those movants had been previously appointed as lead plaintiff and/or certified as a class representative. AP7's motion suffers the very same shortcomings here.

AP7's Certification here states, without support, that "AP7 has full power and authority to bring suit to recover for its investment losses." ECF 20-3 at ¶4. There are two problems with that statement. First, AP7's Certification acknowledges that it seeks to be appointed lead plaintiff not for itself, but by "acting on behalf of the AP7 Equity Fund." *Id.* at n.1.[3] And even though the footnote indicates that AP7 itself did not suffer the losses, but rather the Equity Fund did, there is no explanation as to what AP7 is, what the Equity Fund is, or the inter-relationship between the two. Second, the language used – "full power and authority" – indicates AP7 purports to have some form of unsubstantiated power of attorney under Swedish and U.S. law and that the form of authority it supposedly possesses, somehow authorizes it to act on the Equity

(appointing AP7 as lead plaintiff in a case where its standing was not challenged or assessed).

[3]   An internet search reveals that the Equity Fund (Sw. *AP7 Aktiefond*) is a "synthetic mutual fund" with a corporate ID number 515602-3862 registered with the Swedish investment authority. *See* https://fi.se/en/our-registers/company-register/details?id=91772.

Fund's behalf.  However, even if a valid power of attorney exists, that alone does ***not*** confer standing upon ***AP7***, the movant here.  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("'a power of attorney does not enable the grantee to bring suit in his own name'").  Because AP7 failed to timely provide the Court with the enabling document(s) pursuant to which it purports to derive authority and on which its standing depends, it is impossible to assess its validity here.   Thus, notwithstanding AP7's obligation to make the required evidentiary showing to establish its standing, the Court is left to ***assume*** that some enabling document(s) exists and that AP7 itself and the Equity Fund can be properly viewed as a single legal entity by virtue of some unidentified aspect of Swedish law. The Court should decline to make such an unsubstantiated leap.  *See Cendant*, 264 F.3d at 264 (courts are not permitted to simply "'presume' that the movant with 'the largest financial interest in the relief sought by the class" satisfies the typicality and adequacy requirements'").

Further impairing AP7's motion is its failure to comply with Fed. R. Civ. P. 44.1, which required AP7 to "carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case." *Bel-Ray Co., Inc.  v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440 (3d Cir. 1999).  The reason is simple:

> "Even in the internet age, it would put an extraordinary burden on
> the court if parties could nakedly invoke foreign law and then delegate

4869-3496-5561.v1

the job of figuring it out to the judge and her clerks.  By making clear that the information burden remains at all times on the party invoking foreign law, the scheme effectively instructs parties that they waive the right to rely on foreign law if they don't supply the information needed to determine it."

*G & G Prods. LLC v. Rusic*, 902 F.3d 940, 949 (9th Cir. 2018); *Array*, 2021 WL 5051649, at *2 (rejecting lead plaintiff movant that failed to provide an explanation of Austrian law in support of its motion and recognizing that "foreign law is relevant to 'establish[ing] the existence of the requisite property right'" when considering Article III standing questions pertaining to European entities seeking appointment as lead plaintiff); *Gross*, 2019 WL 3500496, at *2 (denying reconsideration motion where entity "made no mention of Belgian law whatsoever" in its motion but waited until its reconsideration brief to provide legal analysis and expert declarations concerning its ability to satisfy Article III standing requirements).  Here, the Court is left to guess what Swedish law is and its applicability as AP7 did not cite *any* statutes or regulations, let alone a single case or treatise.

The record before this Court is devoid of the factual and legal support necessary to appoint AP7 lead plaintiff.  Rather, the factual record is similar to that before the *Purecycle* court where a European investor sought appointment as lead plaintiff based on transactions in the relevant stock by the movant's "fund" without "explain[ing] its relationship to the Fund."  2021 WL 5259840, at *3.  Like here, the *Purecycle* entity that moved included an "unsupported" statement that the entity had standing and was

- 7 -

authorized to sue on its fund's behalf as a matter of law. *Id.* at *4; *see* ECF 20-3 at ¶4. And like here, the *Purecycle* entity that moved did "not state that *it* bought PureCycle shares," but instead "states that *its fund* incurred a loss, but does not establish its relationship to this fund." 2021 WL 5259840, at *4. Based on that record, the *Purecycle* court concluded that the European entity that moved "fails to demonstrate that it has any financial interest in the relief sought in this litigation" and denied its motion. *Id.*

Similarly, in *Steamfitters*, 2012 WL 3638629, investment management entities called the Prosperity Group sought appointment as lead plaintiff, having purchased over 1.1 million shares of stock and suffered almost $13 million in losses, far more than any other investor. *Id.* at *2. The Prosperity Group consisted of numerous related investment entities including an investment manager ("PCM") and several managed funds (the "PCM Managed Funds"), each of which also had a wholly-owned subsidiary (the "Subsidiaries"). *Id.* The court assessed the Prosperity Group's motion and concluded that "the only entities that actually purchased or owned CEDC stock, and thus incurred any losses, are the Subsidiaries." *Id.* at *10-*11. Because the court determined that PCM and the PCM Managed Funds were all "subject to unique defenses regarding their standing," and recognized that "[t]here is no greater impediment to a Plaintiff's ability to prosecute a case than a lack of standing," the court denied the Prosperity Group's motion even though the Subsidiaries also sought

- 8 -

appointment as lead plaintiff. *Id*. at *11 (explaining that "the Court cannot prejudice the class members by subjecting them to the time and expense of litigating these unique defenses"). Nor did the fact that the Subsidiaries subsequently clarified their intent to seek appointment as lead plaintiff in a reply brief salvage their candidacy. *Id.* at *12 ("The Prosperity Group does not allege that the Subsidiaries and the Prosperity Group are the same entity, and it seems clear that they are not. The Prosperity Group includes five entities other than the Subsidiaries. The Court cannot assume that the Subsidiaries met the filing deadline simply because the Prosperity Group did."). Ultimately, the court denied the Prosperity Group's motion, instead appointing as lead plaintiff a movant that claimed a loss less than one-tenth the size of the Prosperity Group's loss. *Id.* at *13 ("Because the Subsidiaries are subject to unique defenses regarding untimely filing and lack of certification, their appointment would not be in the class' best interest; the Court must look to the other movant.").

More recently, in *Array*, a court likewise denied lead plaintiff status to a European institution (Erste AM) that, like AP7 here, "stated in its lead plaintiff motion that *it* suffered losses on '*its* purchases of Array common shares during the Class Period,'" but "after examining the damages chart accompanying Erste AM's motion, the actual entity that bought and sold Array shares was Erste 566." 2021 WL 5051649, at *2. And, like here, "Erste AM did not explain its relationship to Erste 566" in its motion papers as was its obligation. Instead, the entity waited until its

- 9 -

reply brief, "at which point Erste AM summarily explained that it is the 'Austrian management company for [Erste 566] and therefore has standing and is authorized to sue on its fund's behalf as a matter of law.'"  *Id.*  Also relevant here, the *Array* court rejected the submission of an expert declaration on Austrian law as "untimely since it should have submitted the declaration with its original motion."  *Id.* at *3; *Gross*, 2019 WL 3500496, at *2 (noting that "[a]t a minimum, if an issue were material to [the movant's lead plaintiff] motion, [the movant] had the obligation to raise it"); *see also Purecycle*, 2021 WL 5259840, at *4 ("Erste AM does not state that it bought PureCycle shares.  It states that its fund incurred a loss, but does not establish its relationship to this fund, and, indeed, two different funds are listed with no explanation regarding the discrepancy.  Erste AM's allegations regarding an assignment from the fund are conclusory and provide no meaningful information.  Erste AM thus fails to demonstrate that it has any financial interest in the relief sought in this litigation.").

Finally, in *Gross*, another European asset manager (KBC Asset Management NV) sought appointment as lead plaintiff based on the losses seemingly suffered by three distinct funds.  2019 WL 3500496, at *2.  In that case, KBC was denied appointment based on standing concerns, with the court finding that "if an issue were material to KBC's motion, KBC had the obligation to raise it at least tangentially. Instead, KBC made no mention of Belgian law whatsoever and now seeks

- 10 -

reconsideration premised almost entirely on previously existing Belgian law – all the while failing to point the Court to any overlooked decisions on the relationship between Belgian law and Article III standing." *Id.* (finding that "the risk that KBC may lack standing to pursue this action under controlling precedent is serious"). Even if the court was willing to accept the late declarations and evidence, the court explained that "the principle that federal law governs Article III standing . . . is elementary" and "Belgian law therefore cannot alter the legal standard by which Article III standing is determined, *i.e.*, the requirement that non-beneficial owners of securities must have a property right in the claims being asserted." *Id.* "Instead, Belgian law is relevant only to establish the existence of the requisite property right." *Id.* And, ultimately, the "declarations and other supporting documents provided by KBC continue to show, at a minimum, a non-speculative risk that KBC lacks a property interest in the asserted claims." *Id.* at *3.[4]

---

[4] In fact, U.S. District Judge William Pauley rejected AP7's motion for appointment as lead plaintiff because of this very same infirmity, finding:

> AP7 does not own the securities at issue; instead, it submits the opinion of a Swedish law expert that AP7 is the only entity permitted to sue on behalf of the funds it manages. At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class.

*Pipefitters*, 275 F.R.D. at 191.

- 11 -

A similar issue arose in *Baydale v. Am. Exp. Co.*, 2009 WL 2603140, at \*4 (S.D.N.Y. Aug. 14, 2009), in which a Swedish institution (LFAB) sought appointment as lead plaintiff but, like AP7 here, "failed to disclose transactions by other funds managed by LFAB" which "transactions were only disclosed after the Court questioned LFAB at oral argument." *Id.* at \*4 n.3. In declining to appoint LFAB as lead plaintiff, the court noted that, among other things, "LFAB refuses to disclose whether LAB, LB, or any other entity owned by LAB had investments in AMEX stock during the class period. While LFAB argues that transactions by co-owned entities are irrelevant, at the very least, those transactions may result in unique defenses or conflicts relevant to the adequacy inquiry." *Id.*

Here, AP7 has again failed to establish that it has standing to bring securities fraud claims against defendants. Having previously been disqualified from appointment as lead plaintiff due to unanswered questions as to its standing, particularly considering the recent decisions in *AT&T*, *Array*, and *Purecycle*, AP7's failure to anticipate and address these questions in its moving papers should be disqualifying here. Based on what is known and publicly available, it is virtually certain that, if appointed lead plaintiff, defendants will exploit AP7's standing defects, which will devolve into a "needless litigation sideshow" "rais[ing] complex and novel issues of law which would require extensive factual and foreign legal analysis." *Baydale*, 2009 WL 2603140, at \*3. As such, only by denying AP7's motion can the

- 12 -

Court "ensure that the lead plaintiff will not prejudice the class by subjecting the class to the delay, expense, and uncertainty of litigating unique defenses." *Steamfitters*, 2012 WL 3638629, at *10-*11, *13 (declining to appoint entities subject to standing challenges as lead plaintiff and recognizing that "the Court must decide whether standing is a unique defense that is likely to play a major role in litigation, regardless of the outcome" and finding that court was "not persuaded . . . that the presence of entities that have standing will cure other entities' standing deficiencies").

If this Court were to appoint AP7 as lead plaintiff, "'these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal'" or otherwise be exploited by defendants in the context of confidential settlement discussions. *Baydale*, 2009 WL 2603140, at *3. Accordingly, the Court should decline to appoint AP7 as lead plaintiff in this case.

### 2. AP7 Is Subject to Additional Unique Challenges to Its Adequacy

In 2022 alone, AP7 has been the subject of challenges in at least three other PSLRA securities fraud class action cases in which defendants have contended that AP7 does not satisfy the Rule 23 requirements at class certification due to serious issues concerning discovery.[5] For example, in *Sjunde AP-Fonden v. The Goldman Sachs Group, Inc.*, No. 1:18-cv-12084, ECF 146 at 2 (S.D.N.Y. Jan. 27, 2022),

---

[5] Class certification remains undecided in each of these cases as of the date of the filing of this opposition brief.

defendants opposed class certification pointing out AP7's "brazen destruction of relevant trading records." Specifically, defendants asserted that AP7 CEO Gröttheim admitted in sworn deposition testimony that AP7 "actively" and "intentionally" deleted investment manager reports detailing AP7's securities trades while AP7 was then serving as lead plaintiff in multiple other securities cases and thus under an affirmative obligation pursuant to the PSLRA to preserve relevant evidence. *Id.* at 22.[6] Furthermore, defendants contended that when asked to "obtain copies of the deleted reports from its investment managers, AP7 refused," which meant that defendants would be obligated to serve any third-party subpoenas to the UK and German-based investment managers via the Hague Convention – "a time-consuming and cumbersome process." *Id.* at 22-23 & n.14.[7]

---

[6] *See generally* 15 U.S.C. §78u-4(b)(3)(C) (providing that "any party to the action with actual notice of the allegations contained in the complaint shall treat all documents . . . that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure" and providing that any "party aggrieved by the willful failure" to comply with the preservation obligation "may apply to the court for an order awarding appropriate sanctions").

[7] Defendants in *Goldman* were concerned whether the deleted investment reports would include short selling given Mr. Gröttheim's testimony that "AP7's investment strategy includes regular 'short selling' of stocks." *Id.* at 23 n.15; *see also In re Ocwen Fin. Corp. Sec. Litig.*, No. 14-81057, ECF 123 at 2 (S.D. Fla. Oct. 11, 2016) (opposing class certification on the basis that, among other things, AP7 moved for appointment as lead plaintiff but "did not disclose in that certification, and thus did not inform the Court . . . that it had bet against its fellow class members during the class period, shorting 60,100 shares of Ocwen common stock . . . and making a $440,000 profit").

- 14 -

In *In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-01339, ECF 359 at 4 (N.D. Ill. May 20, 2022), defendants challenged AP7's assertion that it was an adequate class representative contending that "AP7 refused to facilitate discovery of their [three foreign] investment managers." Similarly, in *In re Qualcomm Inc. Sec. Litig.*, No. 3:17-cv-00121, ECF 244 at 39 (S.D. Cal. July 22, 2022), defendants' class certification opposition detailed AP7's "discovery gamesmanship" and "resistance to Defendants' discovery requests." *Id.* (noting that "11 of the 12 IMs are in foreign jurisdictions; all 11 have refused Defendants' requests for voluntary depositions and have collectively produced only 439 documents").

The imposition on the Court and the parties and risks to the proposed class of having a lead plaintiff not subject to the normal rigors of discovery and the additional costs, burdens, and inefficiencies attributable thereto and that is the subject of serious allegations of discovery misconduct and who has been regularly accused of failing to cooperate in discovery militate in favor of rejecting AP7's application.

## B.    Dr. Saraf's "Financial Interest" Is Greater Than AP7's Based on His Relative Percentage of Losses

The PSLRA does not state that the movant with the largest loss or highest total claimed "loss" is the presumptive lead plaintiff. Rather, the PSLRA provides that the movant with the "largest *financial interest*" in the relief sought by the putative class is entitled to the presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

- 15 -

Judge Irenas' decision in *Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956 (D.N.J. Apr. 24, 2000), is exactly on point here. There, the Court considered competing lead plaintiff motions filed by the State of Connecticut (a large institutional investor) and two individuals. Although the institution claimed to have suffered a vastly larger loss than the individuals in absolute dollars, the institution's loss on its Campbell Soup investment was only a small percentage of its total assets under management. *Id.* at *2. By contrast, the individuals had respectively invested 100% and 56% of their retirement monies into their Campbell Soup shares. *Id.* Given that disparity, the Court determined that the institution's interest was a mere "drop in the bucket" and appointed the individuals alongside the institution because "their shares represent a substantial portion of their retirement funds." 2000 WL 486956, at *2.[8]

Here, while AP7 claims to have lost $10 million on its Coinbase investment during the Class Period (ECF 20-4), AP7 asserts it has total assets of approximately

---

[8]    *See also Odeh v. Immunomedics, Inc.*, No. 2:18-cv-17645-MCA-LDW, ECF 34 at 5 (D.N.J. Sept. 10, 2019) (*sua sponte* appointing individual and institutional investors that separately moved for appointment as lead plaintiff because each would "'be able to benefit'" from the other's experience in serving as lead plaintiff); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999) (appointing an individual and institutional investor as lead plaintiff and noting that "the appointment of both institutional investors . . . and individual investors with large financial interests" satisfied "one of the goals of the PSLRA").

4869-3496-5561.v1

970 billion Swedish Krona (or $86.2 billion).[9]  Thus, AP7's Coinbase loss represents only **0.01%** of its total assets under management, not quite a "drop in the bucket." *Laborers Loc. 1298 Pension Fund*, 2000 WL 486956, at *2.  By contrast, Dr. Saraf's $7 million Coinbase loss (ECF 22-4) represents more than half of his investment portfolio,[10] which gives him a far greater interest in the outcome of this litigation. *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1342 (N.D. Ala. 2000) ("because of his greater percentage losses, Eubank may be the class representative best suited to bring a claim to recover via joint and several liability for recklessness"); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1031 (N.D. Cal. 1999) (recognizing that "[a]n argument could be made that an investor who lost a large share of his or her net worth has a larger financial interest, percentage-wise, than an investor with larger absolute dollars lost but for whom the loss is only a small fraction of its overall portfolio"); *In re Am. Serv. Grp., Inc.*, 2006 WL 2503648, at *3 (M.D. Tenn. Aug. 29, 2006) (recognizing "some courts measure the 'largest financial interest' by a plaintiff's losses as a percentage of its assets or holdings").

---

[9]  https://www.ap7.se/app/uploads/2022/04/ap7-annual-and-sustainability-report-2021.pdf.

[10]  *See* Declaration of Dr. Rahul Saraf in Response to Competing Lead Plaintiff Motions and in Further Support of His Motion for Consolidation of Related Action, Appointment of Lead Plaintiff and Approval of Selection of Counsel at ¶2.

- 17 -

Accordingly, pursuant to *Laborers Loc. 1298 Pension Fund*, Dr. Saraf possesses the largest financial interest and his motion should be granted.

### C.    The Remaining Movants Do Not Possess the Largest Financial Interest

None of the remaining movants claim a larger financial interest than Dr. Saraf:

| *Movant* | *Claimed Loss* |
| --- | --- |
| **Dr. Saraf** | **$7 million** |
| Darren Wright | $726,600 |
| Charles Bethune III | $470,789 |
| Maria Scagliotti | $262,667 |
| Henry Gotlob | $165,898 |

Consequently, their motions should also be denied.

## III.   CONCLUSION

None of the competing movants satisfy the PSLRA's lead plaintiff requirements.  Their motions should all be denied.

DATED:  October 24, 2022                Respectfully submitted,

SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS

s/ Christopher A. Seeger
CHRISTOPHER A. SEEGER

55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com
cayers@seegerweiss.com

- 18 -

4869-3496-5561.v1

Liaison Counsel

BERGER MONTAGUE PC
SHERRIE R. SAVETT
MICHAEL DELL'ANGELO
ANDREW D. ABRAMOWITZ
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)
ssavett@bm.net
mdellangelo@bm.net
aabramowitz@bm.net

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

- 19 -

4869-3496-5561.v1