**CARELLA, BYRNE, CECCHI,
BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700

*Proposed Liaison Counsel for the Class*

[Additional counsel on signature page.]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:22-cv-04915-BRM-LDW |
| Plaintiff, | Hon. Brian R. Martinotti<br>District Judge |
| v. | Hon. Leda D. Wettre<br>Magistrate Judge |
| COINBASE GLOBAL, INC., BRIAN ARMSTRONG, and ALESIA J. HAAS, | **MOTION DAY:** November 7, 2022 |
| Defendants. | ORAL ARGUMENT REQUESTED |

[Additional caption on following page.]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF SJUNDE AP-FONDEN FOR CONSOLIDATION OF
RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF SELECTION OF COUNSEL**

| | |
|---|---|
| DENNIS DEAN LAFFOON, Individually and on Behalf of All Others Similarly Situated,<br><br>                                    Plaintiff,<br><br>          v.<br><br>COINBASE GLOBAL, INC., BRIAN ARMSTRONG, ALESIA J. HAAS, and EMILIE CHOI,<br><br>                                    Defendants. | Case No. 2:22-cv-05744-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>District Judge<br><br>Hon. Leda D. Wettre<br>Magistrate Judge |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ..................................................................................................1

II.    ARGUMENT.........................................................................................................5

     A.    AP7's Standing Is a Settled Matter ........................................................5

     B.    Speculation about Potential Discovery Disputes Does Not
          Rebut the Presumption that AP7 Is the Most Adequate Plaintiff .......11

     C.    AP7 Has the Largest Financial Interest.................................................13

     D.    AP7's Adequacy Is Self-Evident...........................................................14

III.    CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baydale v. Am. Express Co.*,
2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009)........................................................8

*Bell v. United Princeton Props., Inc.*,
884 F.2d 713 (3d Cir. 1989) .................................................................................15

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
2017 WL 5759361 (N.D. Ohio. Nov. 28, 2017)....................................................7

*Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund*
*v. New Oriental Educ. & Tech. Grp. Inc.*,
2022 WL 1515451 (S.D.N.Y. May 13, 2022) .......................................................6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ...........................................................................*passim*

*City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*,
2014 WL 4799659 (D. Colo. Sept. 26, 2014).......................................................6

*In re Cloudera, Inc. Sec. Litig.*,
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019).....................................................14

*Cohen v. Luckin Coffee Inc.*,
2020 WL 3127808 (S.D.N.Y. June 12, 2020) .............................................2, 6, 15

*Dang v. Amarin Corp.*,
2022 WL 15524944 (D.N.J. Oct. 27, 2022) ........................................................14

*Gross v. AT & T Inc.*,
2019 WL 3500496 (S.D.N.Y. July 31, 2019)...........................................9, 10, 11

*In re Insulin Pricing Litig.*,
2019 WL 643709 (D.N.J. Feb. 15, 2019) ............................................................10

*Jersey Cent. Power & Light Co. v. Twp. of Lacey*,
772 F.2d 1103 (3d Cir. 1985) ..............................................................................15

ii

*Lewis v. Lipocine Inc.*,
   2016 WL 7042075 (D.N.J. Dec. 2, 2016)...........................................................13

*In re Netflix, Inc., Sec. Litig.*,
   2012 WL 1496171 (N.D. Cal. Apr. 27, 2012).................................................4, 14

*Nicolow v. Hewlett Packard Co.*,
   2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .......................................................14

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014).............................................................*passim*

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) .........................................................................8

*Plaut v. Goldman Sachs Grp., Inc.*,
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) .............................................*passim*

*Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc.*,
   2021 WL 4298191 (S.D.N.Y. Sept. 21, 2021) .............................................10, 11

*Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*,
   2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021).......................................8, 9, 10, 11

*Roby v. Ocean Power Techs, Inc.*,
   2015 WL 1334320 (D.N.J. Mar. 17, 2015) .................................................11, 13

*Soto v. Hensler*,
   235 F. Supp. 3d 607 (D. Del. 2017)...................................................................10

*Steamfitters Local 449 Pension Fund v. Cent. Eur. Distrib. Corp.*,
   2012 WL 3638629 (D.N.J. Aug. 22, 2012) ....................................................9, 10

*Theodore v. Purecycle Techs., Inc.*,
   2021 WL 5259840 (M.D. Fla. Aug. 5, 2021)........................................................9

*United Union of Roofers, Waterproofers & Allied Workers Local
   Union No. 8 v. Ocwen Fin. Corp., Inc.*,
   2014 WL 7236985 (S.D. Fla. Nov. 7, 2014) ...............................................*passim*

*In re Vivendi Universal, S.A. Sec. Litig.*,
   605 F. Supp. 2d 570 (S.D.N.Y. 2009) ............................................................6, 7

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F.3d 100 (2d Cir. 2008) .................................................................................5

*Weston v. DocuSign, Inc.*,
  2022 WL 1301770 (N.D. Cal. Apr. 18, 2022).....................................................6

**Other Authorities**

Fed. R. Civ. P. 11(b) ..............................................................................................7

Fed R. Civ. P. 44.1 ...............................................................................................11

## I.    INTRODUCTION

AP7—a sophisticated institutional investor that has recovered nearly *$1 billion* in *seven* securities class actions in the last decade—asserts a larger financial interest than all other movants *combined*, and satisfies the adequacy and typicality requirements of the PSLRA.[1]   Confronted with the outcome mandated by the PSLRA—appointment of AP7 as Lead Plaintiff—Dr. Saraf and Mr. Bethune conjure up speculative, readily-distinguishable, and statutorily-inconsistent arguments in a desperate attempt to pull the wool over the Court's eyes and unseat AP7.  But "[t]he Third Circuit has stressed that the PSLRA requires more than mere assertions in order to rebut the presumptive lead plaintiffs' status."  *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 402 (D. Del. 2014) (*citing In re Cendant Corp. Litig.*, 264 F.3d 201, 270 (3d Cir. 2001)).  Each of Dr. Saraf's and Mr. Bethune's factually devoid musings fails to meet the standard demanded by *Cendant* and the PSLRA.  Their arguments should be swiftly rejected.

*First*, while Dr. Saraf and Mr. Bethune claim in conclusory fashion that "unanswered questions" about AP7's standing will "undoubtedly raise 'complex and novel' issues of foreign law," ECF Nos. 28 at 12; 26 at 5, both movants misleadingly omit that: (1) *no* court has ever found AP7 to lack standing on behalf of its Equity

---

[1] Unless otherwise noted, references to "ECF No. ___" are to docket entries in *Patel v. Coinbase Global, Inc.*, No. 2:22-cv-04915-BRM-LDW (D.N.J.), all capitalized terms are defined in AP7's prior briefs, *see* ECF Nos. 20-1 & 27, all emphasis is added, all internal citations and quotation marks are omitted, and references to "Ex. ___" are to exhibits attached to the Reply Declaration of James E. Cecchi.

1

Fund and AP7 has been certified as a class representative (under the rigorous class certification standard) in *every case* where it sought class certification; (2) *every* lead plaintiff challenge to AP7's standing in the last decade has been *rejected*; and (3) *no* defendant has *ever questioned* AP7's standing on behalf of its Equity Fund, let alone disqualified AP7.  *See infra* Section II.A.

Dr. Saraf's and Mr. Bethune's counsel are well aware of these facts.  For example, in *Hachem v. General Electric Inc.*, the court rejected virtually identical challenges to AP7's standing raised by a movant represented by Robbins Geller (proposed co-lead counsel for Dr. Saraf) and concluded that AP7's standing "*is not an issue*" because AP7 has standing under the "prudential exception" to Article III. No. 17 Civ. 8457 (JMF) (S.D.N.Y. May 23, 2018), ECF No. 140 at 5:4-10 (attached as Ex. A).  Not content, Robbins Geller reasserted this challenge to AP7's standing in *Cohen v. Luckin Coffee Inc.*, and was met with the same result as the court rejected its arguments as lacking the required "proof" under the PSLRA.  2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020). AP7's leadership resulted in *Luckin Coffee* settling for $175 million despite the corporate defendant's bankruptcy.  Consistent with *General Electric* and *Luckin Coffee*, two other courts have rejected challenges to AP7's standing as baseless and inconsistent with the PSLRA's required analysis: *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Financial Corp., Inc.*, 2014 WL 7236985, at *3 (S.D. Fla. Nov. 7, 2014)

2

(rejecting challenge to AP7's standing as "not grounded in evidence"); and *Plaut v. Goldman Sachs Group, Inc.*, 2019 WL 4512774, at \*6 (S.D.N.Y. Sept. 19, 2019) (same). Neither Dr. Saraf nor Mr. Bethune alerted the Court to the four cases directly undercutting their hackneyed standing attacks, opting to instead cite stale and distinguishable case law involving movants dissimilar to AP7. AP7's standing is settled, and Dr. Saraf's and Mr. Bethune's musings are insufficient to rebut AP7's presumptive status under Third Circuit law. *See OFI*, 63 F. Supp. 3d at 403 (requiring movants challenging standing to "produce more than speculation").

*Second*, Dr. Saraf suggests—without providing necessary context or any case law—that ***unsubstantiated*** and ***unadjudicated*** discovery disputes involving AP7 in ***unrelated*** litigation "militate in favor of rejecting AP7's application." ECF No. 28 at 13-15. Contrary to Dr. Saraf's fanciful narrative, defendants' quibbles in these actions concern nothing more than issues regarding AP7's routine pre-litigation document retention policies and control over external investment managers. *See infra* Section II.B. These matters are irrelevant to AP7's adequacy here.

*Third*, Dr. Saraf's belated claim that he, despite claiming approximately $3 million less in losses than AP7, possesses the largest financial interest because his loss "represents more than half of his investment portfolio," ECF No. 28 at 15-18, is based on pre-*Cendant* case law that is wholly inconsistent with the PSLRA's preference for institutional investors as lead plaintiffs. *See, e.g.*, *Cendant*, 264 F.3d

3

at 262 (instructing courts to assess financial interest based on "the number of shares that the movant purchased," "the total net funds expended," and "the approximate losses suffered"); *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *7 (N.D. Cal. Apr. 27, 2012) (rejecting relative loss analysis because it "would result in individual investors nearly always having the largest financial stake relative to institutional investors"). Dr. Saraf's newfound approach is also undermined by the fact he did not provide information with his motion to assess the relative size of his loss (e.g, the size of his investment portfolio) and initially claimed to have the largest financial interest based only on the absolute size of his loss. *See* ECF No. 22-5 at 9-10.

*Fourth*, Mr. Bethune's claim that AP7 "ha[s] not submitted any competent evidence establishing [its] adequacy" because AP7 did not submit a supplemental sworn declaration, ECF No. 26 at 2-4, is absurd. AP7's adequacy is a matter of public record and cannot be legitimately questioned. AP7 has been appointed in *twelve* class actions in the last dozen years (and served as a class representative in a thirteenth), has successfully defeated motions to dismiss in *all ten* actions in which the court has issued a ruling, has settled *seven* of the thirteen actions (including two in this District) for nearly *$1 billion*, and is actively litigating the remaining six actions (including one in which AP7 was recently certified as a class representative, and three in which class certification motions are pending). *See* Ex. B. Basic legal research exposes Mr. Bethune's arguments as lacking any credibility.

4

In short AP7 is entitled to appointment as Lead Plaintiff under the PSLRA.

## II.   ARGUMENT

### A.   AP7's Standing Is a Settled Matter

Courts have repeatedly rejected challenges to AP7's standing to assert claims on behalf of its Equity Fund (which has no ability to act on its own).  While Article III standing ordinarily requires a party to have suffered an "injury-in-fact," there are "well-recognized, prudential exceptions . . . where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."  *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008).  AP7's standing is a settled matter, and Dr. Saraf and Mr. Bethune have not presented evidence, let alone "proof," sufficient to rebut AP7's presumptive status.  *See OFI*, 63 F. Supp. 3d at 403.

Indeed, AP7's standing has been confirmed ***three times in the last four years alone***.  First, in *General Electric*, the Honorable Jesse M. Furman rejected identical challenges to AP7's standing raised by Dr. Saraf's proposed co-lead counsel and unequivocally declared "that the 'prudential exception' applies [to AP7] and that [AP7's] standing is ***not*** an issue." Ex. A at 5:4-10 (citing *Ocwen*, 2014 WL 7236985, at *3).  A year later, a second court appointed AP7 as the sole lead plaintiff in *Goldman Sachs* after expressly "join[ing] Judge Furman in" dismissing challenges to AP7's standing as "not grounded in evidence."  2019 WL 4512774, at *6; *see also*

*id.* at *6 n.12 (noting that the competing movant "ha[d] not identified a single case in which a defendant has successfully challenged AP7's standing"). Most recently, a third court concluded in *Luckin Coffee* that movants attacking AP7's standing—***including a movant represented by Robbins Geller***—"ha[d] not presented [the required] proof" to rebut AP7's presumptive status and noted that AP7 is the "only party able to pursue claims on behalf of its fund." 2020 WL 3127808, at * 7. Each of these courts adopted the analysis in *Ocwen*, which appointed AP7 as the sole lead plaintiff after extensively analyzing its standing and concluding that the challenges (virtually identical to those here) were "not grounded in evidence and [were] not sufficient to overcome [AP7's] presumptive status." 2014 WL 7236985, at *3.[2]

These decisions accord with a litany of other cases applying the prudential exception to European fund managers (including other Swedish fund managers) bringing claims on behalf of their funds.[3] Notably, in contrast to the arguments it

---

[2] Dr. Saraf's claim that "there is no explanation as to what AP7 is, what the Equity Fund is, or the inter-relationship between the two," ECF No. 28 at 5, is baseless. Setting aside his counsel's selective amnesia from their unsuccessful gambits in *General Electric* and *Luckin Coffee*, where AP7's standing was addressed, the *Ocwen* court summarized AP7's position that "it is obligated by law to protect and act on behalf of the underlying Equity fund—a pool of assets not capable of taking any legal action." 2014 WL 7236985, at *3. Citations to secondary sources are unnecessary where case law conclusively outlines AP7's structure and standing.

[3] *See, e.g.*, *Bricklayers' & Allied Craftworkers Loc. #2 Albany, NY Pension Fund v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at *4 (S.D.N.Y. May 13, 2022) (rejecting standing challenge to European fund manager where its fund "lacks authority to sue on its own"); *Weston v. DocuSign, Inc.*, 2022 WL 1301770, at *5 (N.D. Cal. Apr. 18, 2022) (finding European fund manager had standing where its "funds have no legal authority"); *City of Taylor Police & Fire Ret. Sys. v. W. Union Co.*, 2014 WL 4799659, at *5 (D. Colo. Sept. 26, 2014) ("concerns about [a Swedish fund manager]'s standing are unfounded"); *OFI*, 63 F. Supp. 3d at 403 (affirming European fund manager's standing under prudential exception); *In re Vivendi*

6

makes on behalf of Dr. Saraf here, Robbins Geller successfully argued in *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, that a German fund manager qualified for the prudential exception given that its funds "cannot bring suit on their own behalf." 2017 WL 5759361, at *4 (N.D. Ohio. Nov. 28, 2017). Robbins Geller provides no explanation for its about-face here.

Rather than engage with the case law directly addressing AP7's standing, both remaining movants speculate that "it is ***virtually certain*** that, if appointed lead plaintiff, defendants will exploit AP7's standing defects." ECF No. 28 at 12; *see also* ECF No. 26 at 7 (arguing that AP7's standing will "***undoubtedly*** raise 'complex and novel' issues of foreign law"). This is insufficient under Third Circuit law. *See OFI,* 63 F. Supp. 3d at 402. Despite their ominous predictions, Dr. Saraf and Mr. Bethune fail to apprise the Court that—in the thirteen actions in which AP7 has served as a lead plaintiff or class representative—***no defendant*** has challenged AP7's prudential standing (let alone disqualified AP7). *See Goldman Sachs,* 2019 WL 4512774 at *6 n.12 (noting the competing movant "ha[d] not identified a single case in which a defendant has successfully challenged AP7's standing").[4]

Dr. Saraf's and Mr. Bethune's reliance on the Honorable William H. Pauley

---

*Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 577-82 (S.D.N.Y. 2009) (concluding that several European fund managers had prudential standing).

[4] This fact exposes the frivolous nature of Dr. Saraf's and Mr. Bethune's warnings of dire consequences from AP7's appointment. *See* Fed. R. Civ. P. 11(b) (requiring arguments to be based on "inquiry reasonable under the circumstances").

III's opinions in *Baydale v. American Express Co.*, 2009 WL 2603140 (S.D.N.Y. Aug. 14, 2009), and *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of America Corp.*, 275 F.R.D. 187 (S.D.N.Y. 2011)—the only case declining to appoint AP7 based on standing arguments (and issued more than a decade ago)—is misplaced. *Pipefitters* and *Baydale* disqualified movants without requiring proof of their inadequacy and have been expressly rejected by numerous courts, including courts in the Second and Third Circuits, as inconsistent with the analysis required by the PSLRA. As explained in *OFI*, the approach in *Baydale* and *Pipefitters*— which "avoided the [standing] issue by appointing another movant" rather than resolving the challenge—"rel[ied] on mere speculation" and failed to "appropriately appl[y] the burden of proof" required by the PSLRA. 63 F. Supp. 3d at 403; *see also Ocwen*, 2014 WL 7236985, at *3 (noting that the "approach in *Baydale*, and by extension, *Pipefitters*, **has been rejected** by other courts"). AP7's subsequent appointments in *Luckin Coffee*, *Goldman Sachs*, and *General Electric* confirm that *Pipefitters* is not even followed by other courts in the Southern District of New York. Moreover, *Pipefitters*'s concern about potential standing arguments that **may be** raised against AP7—as evidenced by AP7's subsequent track record—is unfounded. *See* Ex. B; *Goldman Sachs,* 2019 WL 4512774, at *6 n.12.

Dr. Saraf's reliance on *Plymouth County Retirement Association v. Array Technologies, Inc.*, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) ("*Array II*"),

8

*Theodore v. Purecycle Technologies, Inc.*, 2021 WL 5259840 (M.D. Fla. Aug. 5, 2021), and *Gross v. AT & T Inc.*, 2019 WL 3500496 (S.D.N.Y. July 31, 2019), is similarly misplaced. In *AT & T*, the court refused to apply the prudential exception to a Belgian fund manager because: (1) **unlike AP7's Equity Fund**, "there [was] no apparent barrier to the [Belgian] Funds' ability to assert their own interests"; and (2) the fund manager did not argue that it qualified for the prudential exception until its motion for reconsideration reply. 2019 WL 3500496, at *3. Indeed, the Belgian fund manager previously argued **only** that it had authority to bring claims under its management agreements with the funds—a circumstance not present here. *Id.*

*Purecycle* and *Array II* separately determined that Erste Asset Management GmbH ("Erste") lacked standing to pursue claims on behalf of its funds. In *Purecycle*, Erste claimed that it had standing on behalf of its fund both because it had received a valid assignment **and** "as a matter of law." 2021 WL 5259840, at *4. However, Erste failed to provide the court with either the assignment or any support for its purported authorization to sue "as a matter of law." *Id.* Similarly, in *Array II*, the court rejected Erste's motion for reconsideration because there were "serious" questions "regarding the invalidity" of the assignment from Erste's fund. 2021 WL 5051649, at *2.[5] The *Array II* court also refused to consider an expert submission

---

[5] Movants' reliance on *Steamfitters Local 449 Pension Fund v. Central European Distribution Corp.*, is similarly inapposite given that the court there rejected a convoluted group of related entities plagued by questions about whether certain entities "who suffered an injury-in-fact" had assigned claims to other entities that

9

arguing that Erste qualified for the prudential exception "because Erste AM ha[d] not moved for reconsideration of the Court's finding that Erste AM did not have [prudential] standing." *Id.* at *3; *see also Plymouth Cnty. Ret. Ass'n v. Innovative Tech., Inc.*, 2021 WL 4298191, at *5 (S.D.N.Y. Sept. 21, 2021) ("*Array I*") (finding Erste to lack prudential standing because it "failed even to establish any barriers that prevented [its fund] from bring[ing] the securities claims"). Unlike Erste, AP7 does not rely upon assignments *and* AP7 has established that it qualifies for the prudential exception in multiple class actions. *See, e.g.*, *Ocwen*, 2014 WL 7236985, at *3.

Finally, Dr. Saraf's insinuation that AP7 should have "anticipate[d]" that competing movants would bring baseless standing challenges and proactively provided expert analysis in its opening brief, ECF No. 28 at 12, is disingenuous.[6] Given that no defendant has ever argued, and no court has ever determined, that AP7 lacks standing under the prudential exception, it is unclear how AP7 could be expected to anticipate such arguments ever being raised again given the string of recent opinions confirming AP7's standing.[7] Indeed, in AP7's two most recent lead

---

"have neither authority to bring lawsuits nor title to the claims." 2012 WL 3638629, at *11 (D.N.J. Aug. 22, 2012). AP7's standing does not implicate such concerns.

[6] *In re Insulin Pricing Litigation*, 2019 WL 643709 (D.N.J. Feb. 15, 2019), cited by Dr. Saraf, *see* ECF No. 28 at 3, is a non-PSLRA case concerning claims under RICO and state consumer protection laws. It has no bearing on the PSLRA's sequential process and "proof" requirements. Under the PSLRA, competing movants "must come forward with some proof of why [AP7] is inadequate and is subject to a unique defense on standing grounds," not *vice versa*. *Soto v. Hensler*, 235 F. Supp. 3d 607, 622 (D. Del. 2017). In any case, AP7 has repeatedly established its standing.

[7] Dr. Saraf's citations to *Array II* and *AT & T*, do not support the assertion that AP7 must proactively address its standing. Rather, those opinions took exception to

10

plaintiff appointments—*Crews v. Rivian Automotive, Inc.*, No. 2:22-cv-01524-RGK-E (C.D. Cal.), and *In re Lucid Group, Inc. Securities Litigation*, No. 3:22-cv-02094-JD (N.D. Cal.)—Robbins Geller represented movants that ***did not challenge*** AP7's standing (despite raising other arguments rejected in *Rivian*). As such, it is unreasonable to require AP7 to anticipate meritless standing arguments.[8]

### B.   Speculation about Potential Discovery Disputes Does Not Rebut the Presumption that AP7 Is the Most Adequate Plaintiff

Dr. Saraf's claim that AP7 ***may*** face discovery-related challenges to its adequacy because defendants in ***other*** cases made unsubstantiated and unadjudicated discovery-related challenges is textbook speculation—which is insufficient to rebut AP7's presumptive status. *See, e.g.*, *Roby v. Ocean Power Techs, Inc.*, 2015 WL 1334320, at *7 (D.N.J. Mar. 17, 2015) (explaining that "actual proof," not "[m]ere speculation about a unique defense," is required); *Cendant*, 264 F.3d at 270 ("Allegations of impropriety are not proof of wrongdoing.").

In each of the three cases cited by Dr. Saraf, AP7 has fully complied with its

---

attempts to establish standing through evidence first submitted in connection with motions for reconsideration. *See Array II*, 2021 WL 5051649, at *3; *AT & T*, 2019 WL 3500496, at *2. Neither movant's standing was conclusively addressed in prior cases. *See, e.g.*, *Array I*, 2021 WL 4298191, at *5 (finding orders appointing Erste "unpersuasive" as "[n]either analyzed the [prudential] standing requirements").

[8] Contrary to Dr. Saraf's claim, *see* ECF No. 28 at 6, Federal Rule of Civil Procedure 44.1—which instructs that "[a] party who intends to raise an issue about a foreign country's law must give notice"—is not relevant here. AP7's standing under the prudential exception is a settled matter of ***U.S. federal law***, and the Court need not make a determination under Swedish law to appoint AP7. *See, e.g.*, *AT & T Inc.*, 2019 WL 3500496, at *2 (explaining that foreign law "cannot alter the legal standard by which Article III standing is determined" and is "relevant only to establish the existence of the requisite property right").

discovery obligations.  In *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, No. 1:18-cv-12084-VSB (S.D.N.Y. Mar. 24, 2022), ECF No. 159 at 12-14 (attached as Ex. C), AP7 has explained that it did not provide certain monthly reports from its external investment managers—that were ***cumulative*** of information AP7 has ***already produced***—because those documents were destroyed subject to its document retention policy ***prior*** to the litigation hold in the *Goldman Sachs* action. In *In re Kraft Heinz Securities Litigation*, No. 19-cv-01339 (N.D. Ill. July 19, 2022), ECF No. 371 at 27-31 (attached as Ex. D), AP7 did not produce irrelevant documents ***in the possession of a third party*** because AP7 did not possess or control the documents, AP7 had no contractual right to access the documents, and defendants themselves had access to the documents, but opted not to pursue it.  Similarly, in *In re Qualcomm Inc. Securities Litigation*, No. 3:17-cv-00121-JO-MSB (S.D. Cal. Aug. 22, 2022), ECF No. 255 at 25 (attached as Ex. E), AP7 fully complied with its obligations, and the fact that certain of its ***third-party*** investment managers declined to sit for ***voluntary*** depositions is not evidence that AP7 interfered with the discovery process or otherwise engaged in gamesmanship.  Tellingly, defendants in these three cases did not seek sanctions for AP7's alleged discovery "misconduct."

Given that defendants' arguments in these actions are plainly baseless, any risk that Defendants in ***this action*** might challenge AP7's adequacy based on ordinary discovery disputes that have not arisen here (and may never arise) is purely

speculative.  Indeed, no court has ever held that AP7 is inadequate due to its conduct in discovery and, in the majority of cases in which AP7 has served as lead plaintiff, defendants ***have not even argued*** that AP7 is inadequate due to discovery-related conduct.[9]  Moreover, speculative discovery arguments are not unique to AP7: any lead plaintiff might face arguments regarding its fulfillment of discovery obligations. To the extent these cases are relevant, the class certification briefing establishes that AP7's standing to pursue claims continues to be unquestioned by defendants.

### C.    AP7 Has the Largest Financial Interest

"The Third Circuit has concluded that 'largest financial interest' means the ***largest loss***."  *Ocean Power*, 2015 WL 1334320, at *5; *see also Lewis v. Lipocine Inc.*, 2016 WL 7042075, at *4 (D.N.J. Dec. 2, 2016) (Martinotti, J.) (noting the "largest financial loss" carries "the most weight").  Unable to argue that he has a larger loss than AP7, *see* ECF No. 27 at 7, Dr. Saraf argues for the first time in his opposition that the Court must consider a movant's loss relative to its assets when assessing financial interest.  *See* ECF No. 28 at 15-18.  Dr. Saraf's approach is fundamentally at odds with this Circuit's criteria for assessing financial interest and

---

[9] *See, e.g.*, *Sjunde AP-Fonden v. Gen. Elec. Co.*, No. 17 Civ. 08457 (JMF) (GWG) (S.D.N.Y. Aug. 30, 2021), ECF No. 245; *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 2:16-cv-09449 (SDW) (LDW) (D.N.J. Oct. 14, 2020), ECF No. 175; *In re Ocwen Fin. Corp. Sec. Litig.*, No. 14-81057 CIV-WPD (S.D. Fla. Oct. 11, 2016), ECF No. 123; *In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y. May 18, 2015), ECF No. 162; *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-00289-WKS (D. Vt. May 1, 2017), ECF No. 259 (attached as Exs. F-J).

13

the PSLRA's goal of "encourag[ing] institutional investors to serve as lead plaintiff[s]." *Cendant*, 264 F.3d at 273.  As *Netflix* explained, this approach "would defeat the PSLRA's aim of putting institutional investors at the helm of more private securities class actions" because it "would result in individual investors nearly always having the largest financial stake relative to institutional investors."  2012 WL 1496171, at *7; *see also In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *4 (N.D. Cal. Dec. 16, 2019) (adopting *Netflix*'s analysis and rejecting Dr. Saraf's principal pre-*Cendant* authority, *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956 (D.N.J. Apr. 24, 2000)).  Moreover, Dr. Saraf's "relative loss" theory surfaced only after seeing AP7's loss. *See* ECF No. 22-5 at 9-10.  Courts routinely reject such gamesmanship.   *See Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (rejecting movant who "shift[ed] its [financial interest] argument only after" reviewing competing motions).[10]

### D.    AP7's Adequacy Is Self-Evident

In a last-ditch effort, Mr. Bethune claims that AP7 "ha[s] not submitted any competent evidence establishing [its] adequacy" because AP7 did not submit a

---

[10] Dr. Saraf's counsel did not equate financial interest to relative losses in *Dang v. Amarin Corp. plc*, No. 3:21-cv-19212-MAS-TJB (D.N.J. Dec. 23, 2021), ECF No. 15-1 at 7-8 (attached as Ex. K) (equating financial interest to total losses).  The *Amarin* court reiterated that "New Jersey district courts are in accord that the 'financial loss' factor weighs the heaviest, and some suggest that it is the only factor" when assessing financial interest. *Dang v. Amarin Corp. plc*, 2022 WL 15524944, at *7 n.7 (D.N.J. Oct. 27, 2022).  Dr. Saraf provides no explanation for his counsel's inconsistent arguments in this District.

supplemental declaration. ECF No. 26 at 2-4. This argument misses the mark. Mr. Bethune does not cite a single case in which a court rejected an institutional investor—let alone one with AP7's experience—simply because evidence of its adequacy (such as publicly-available court filings and information readily accessible from its website) was set forth in its motion rather than in a separate, sworn certification. Instead, Mr. Bethune cites six cases, *see* ECF No. 26 at 3, rejecting **non-institutional** investors that failed to provide information—in either their motions *or* a sworn declaration—sufficient to perform the most basic evaluation of their qualifications.[11] Given AP7's public stature—combined with the detail provided in its motion and accessible on Lexis and Westlaw, *see* ECF 20-1 at 10-12—the concerns raised in Mr. Bethune's cited authority are simply not present here. *See* Ex. B; *Luckin*, 2020 WL 3127808, at *7 ("AP7 is a frequent movant for appointment as lead plaintiff").

## III. CONCLUSION

AP7 respectfully requests the Court grant its motion in full.

Dated: October 31, 2022 Respectfully submitted,

_s/ James E. Cecchi_
James E. Cecchi

---

[11] Mr. Bethune's citations to cases refusing to consider "unsworn statements in legal memoranda and related argument by counsel" are inapposite given that these cases concerned contested facts being considered for the merits of claims. ECF No. 26 at 4; *see, e.g.*, *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985) (refusing to consider unsupported arguments in resolving motion for summary judgment); *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) (refusing to consider unsupported arguments in fee dispute).

Donald A. Ecklund
**CARELLA, BYRNE, CECCHI,**
**BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Proposed Liaison Counsel for the Class*

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
Barbara A. Schwartz
Karissa J. Sauder
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com
bschwartz@ktmc.com
ksauder@ktmc.com

*Counsel for Sjunde AP-Fonden and*
*Proposed Lead Counsel for the Class*

16

# CERTIFICATE OF SERVICE

I, James E. Cecchi, hereby certify that on October 31, 2022, I caused a true and correct copy of the foregoing reply memorandum of law to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: October 31, 2022

s/ *James E. Cecchi*
James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ  07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Proposed Liaison Counsel for the Class*

17