# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SJUNDE AP-FONDEN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>THE GOLDMAN SACHS GROUP, INC., et al.,<br><br>      Defendants. | Civil Case No.: 1:18-cv-12084-VSB |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

account for variations in inflation throughout the class period at the class certification stage").[7]

## III.  AP7 IS A TYPICAL AND ADEQUATE CLASS REPRESENTATIVE

AP7's claims are typical because its injury arises from the same conduct that affected all other Class members. AP7 is also adequate because it is an institutional investor with a major stake in this litigation, and has vigorously prosecuted this case on behalf of the Class for close to three years. *See* Mot. at 12-14. Ignoring the ample evidence of AP7's typicality and adequacy, Defendants suggest—without support—that AP7 is subject to "unique defenses." Opp. at 21-25. Courts, however, "should not disqualify a named plaintiff based upon any groundless, far-fetched defense that the defendant manages to articulate," *Lapin*, 254 F.R.D. at 179, because "[t]he unique defense rule . . . is intended to protect the plaintiff class—not to shield defendants from a potentially meritorious suit." *Pearlstein*, 2021 WL 253453, at *8. AP7 faces no unique defenses, and those Defendants concoct "will certainly not become the focus of the trial." *Id*. at *9.

### A.  AP7's Non-Production of Cumulative Reports That It Was Not Obligated to Preserve Does Not Raise a Unique Defense

Defendants incorrectly claim that AP7 is inadequate because it failed to produce certain monthly reports from its external investment managers. Opp. at 22-23. *First*, it is undisputed both that AP7 instituted a litigation hold at the outset of this case in early 2019, and that it has consistently adhered to it. PX 8 at 28:20-21, 69:25-70:7. Prior to that, AP7 was not obligated to preserve documents related to its Goldman stock transactions, except under AP7's document retention policy, which did not require AP7 to these preserve these reports. *Id*. at 67:25-68:8. AP7's disposal of these documents in the ordinary course of business, ***before*** the litigation hold, does not

---

[7] Defendants' cases are inapposite. In *Loritz v. Exide Techs.*, "Plaintiffs [first] failed to set forth *any* model of damages" and on reply only referenced general techniques untethered to the facts. 2015 WL 6790247, at *22 (C.D. Cal. July 21, 2015). *In re BP plc Sec. Litig.*, 2013 WL 6388408 (S.D. Tex. Dec. 6, 2013) *supports* certification because the court ultimately certified an investor subclass which used the same out-of-pocket method that AP7 proposes. 2014 WL 2112823, at *10 (S.D. Tex. May 20, 2014), *aff'd sub nom. Ludlow v. BP plc*, 800 F.3d 674 (5th Cir. 2015).

12

impact its adequacy.[8] Moreover, even if AP7 were obligated to preserve the reports, a "technical lapse [in discovery] . . . is an insufficient basis for rejecting [plaintiff] on the grounds of adequacy." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 49 (S.D.N.Y. 2012).

*Second*, as Defendants concede, the monthly reports at most reflect transaction data ***cumulative*** of the information in other documents AP7 produced. The reports list "securities trades and other transactions [] executed on AP7's behalf," including in Goldman common stock, Opp. at 22, whereas AP7 has produced records detailing ***all*** of its Class Period trades in Goldman stock. *See* PX 9, 10. Given the "limited probative value" of these cumulative reports, Defendants cannot establish any deficiency in AP7's document production. *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 359 (S.D.N.Y. 2012) (no spoliation where destroyed documents were produced in another format). Defendants thus present no evidence, as required, showing that relevant information was actually withheld.[9] *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 265 F.R.D. 157, 172 (S.D.N.Y. 2010). Defendants also suffered no prejudice, as the monthly reports contained cumulative information—and Defendants never sought them directly from AP7's external managers who generated and possessed the reports. *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 51-52 (S.D.N.Y. 2010) (no prejudice where party failed to pursue discovery through subpoena).[10]

---

[8] AP7's involvement in ***unrelated*** cases filed ***before*** this action did not trigger a duty to preserve any documents related to ***this action***. *See Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (duty to preserve extends only to documents "relevant to [a] party's claim or defense"). Moreover, Defendants fail to show why the monthly reports should have been preserved in those unrelated prior cases.

[9] Defendants' conjecture that the monthly reports may show that AP7 engaged in short sales of Goldman stock fails. Opp. at 23 n.15. AP7's corporate designee testified, ***and*** its transaction records show, that AP7 did not short Goldman stock during the Class Period. DX 4 at 50:19-22; PX 8 at 54:3-4; Gröttheim Errata; PX 9, 10.

[10] Defendants also ignore (Opp. at 22-23) that AP7 asked Goldman to "articulate specifically why it requires . . . these duplicative reports" and stated that it was "available to confer as needed." PX 11 at 3-4. ***Goldman never responded to this letter*** or otherwise pursued the issue. Given Defendants' inaction, AP7's refusal to request cumulative reports generated and possessed by its external managers was justified, particularly in light of AP7's longstanding policy of avoiding interactions with its managers that could influence their trading. PX 8 at 15:24-25; 16:8-10; 19:15-20; 20:9-12; 27:20-23.

13

*Third*, there is no evidence that AP7 lacked good faith. *See McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 425 (S.D.N.Y. 2014). In addition to diligently instituting and complying with a litigation hold, AP7 exhibited its good faith by timely responding to Defendants' document requests, reviewing thousands of documents, and completing its production prior to the Court-ordered deadline.

### B.   AP7's Trading Pattern Does Not Give Rise to Any Unique Defense

AP7's Class Period purchases and sales of Goldman shares and purchases after the corrective disclosures do not "raise questions regarding its reliance on the alleged misstatements." Opp. at 23. *First*, where "plaintiff's theory of liability is premised on the 'fraud on the market' presumption," a class representative's specific reliance "is largely irrelevant." *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 134 (S.D.N.Y. 2008). "[F]actual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, [and] the presence of both purchasers and sellers . . . will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class." *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y.1998). That is precisely what AP7 alleges. SAC ¶ 433.

*Second*, Defendants misstate the record. AP7, a long-term investor in Goldman which held 319,966 shares at the start of the Class Period, was a ***net purchaser*** of 100,269 Goldman shares during the Class Period, and never liquidated its entire position. *See* ECF No. 63-1 (PSLRA certification); PX 9, 10; PX 8 at 110:5-18. Therefore, AP7 is not an in-and-out trader "who both purchase[s] and sell[s] ***all of [its] shares*** prior to a corrective disclosure." *Pearlstein*, 2021 WL 253453, at *11. In Defendants' inapposite cases, the plaintiffs "purchased and sold all of [their] shares prior to any revelation of fraud." *Bensley v. FalconStor Software, Inc.* 277 F.R.D. 231, 237, 240 (E.D.N.Y. 2011); *see also In re Puda Coal Inc. Sec. Litig*, 2013 WL 5493007, at *18 (S.D.N.Y. Oct. 1, 2013). AP7 also held Goldman stock through the end of the Class Period, and it can claim

14

**KESSLER TOPAZ
MELTZER & CHECK, LLP**

*S/ Andrew L. Zivitz*

Andrew L. Zivitz
Matthew L. Mustokoff
Johnston de F. Whitman, Jr.
Jamie M. McCall
Margaret E. Mazzeo
Nathan A. Hasiuk
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
azivitz@ktmc.com
mmustokoff@ktmc.com
jwhitman@ktmc.com
jmccall@ktmc.com
mmazzeo@ktmc.com
nhasiuk@ktmc.com

*Lead Counsel for Sjunde AP-Fonden and the Class*

**BERNSTEIN LITOWITZ
BERGER & GROSSMANN LLP**

Salvatore J. Graziano
Rebecca E. Boon
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
sgraziano@blbglaw.com
rebecca.boon@blbglaw.com

*Liaison Counsel for the Class*

16