# EXHIBIT D

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE KRAFT HEINZ SECURITIES LITIGATION | Case No. 19-cv-01339 <br><br> The Honorable Robert M. Dow, Jr. |

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

At bottom, Defendants' arguments regarding Union's typicality and adequacy are nothing more than speculation and innuendo. The notion that a jury would be permitted to draw unspecified "adverse inferences and negative credibility findings" due to Union's portfolio managers' inability to answer questions concerning the reasons they executed individual trades years ago (Opp. at 29) finds no support in logic or law. And Defendants' baseless claim that they have presented "strong circumstantial evidence of reliance on factors other than market price" (Opp. at 25 n.10) is itself a tacit admission that Defendants have uncovered *no* direct evidence of non-reliance. Even when "Defendants argue that they need show only that [the proposed class representative] is 'subject to the colorable defense of non-reliance on the market,' '[c]olorable' still requires more than mere speculation." *Schleicher v. Wendt*, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009), *aff'd*, 618 F.3d 679 (7th Cir. 2010). Defendants' pure speculation is insufficient to bar class certification.

**D.    AP7 Is An Adequate And Typical Class Representative**

Defendants' contention that AP7 is not typical or adequate is premised entirely on their false assertion that AP7 somehow prevented Defendants from obtaining "critically important" information from its investment managers related to the element of reliance. As set forth below, this contention is devoid of both legal and factual support.

***First***, contrary to their claim, Defendants had multiple opportunities to obtain discovery from AP7's third-party investment managers. After waiting until February 2022, Defendants served subpoenas on AP7's managers and negotiated the scope of the resulting discovery.[29] While Defendants complain that AP7's investment managers produced "only a handful of high-level

---

[29] Defendants' arguments concerning their international discovery efforts are similarly unfounded and no fault of AP7. Defendants were aware since October 2021 that certain of AP7's investment managers were based in Europe (and maintained U.S. offices), but inexplicably elected not to pursue any discovery through available channels (i.e., the Hague) until many months later.

documents, most of which were duplicative of AP7's production" (Opp. at 31) this is unsurprising given that ████████████████████████████████████████████ ████████████████████████████████. *See, e.g.*, Ehrlich Decl. Exs. O, P.[30]

Defendants also fail to disclose that they solicited and obtained from AP7's investment managers ████████████████████████████████████████



████████████████████████████████████████████ ████████████████████████████████████—one of AP7's managers—████ ██████████████. *See* Ex. 12. ████████████████████████

*Id*. at ¶2. Thus, even assuming any additional relevant and responsive information existed, Defendants clearly had access to this discovery, but chose not to pursue it.

Defendants' claim that AP7 has been "unwilling to . . . make its outside investment advisors . . . available for discovery in this case" is similarly unfounded. Opp. at 29. As a threshold matter, Defendants fail to establish that AP7 has possession, custody, or control of documents maintained by its third-party managers. Defendants' assertion that AP7 has "a clear contractual right to access and audit the books and records of all three investment managers" under Section 6.2.3 of the IMA (Opp. at 31-32) is wrong. ████████████████████████████████████

---

[30] Contrary to Defendants' claim, AP7 did not refuse to provide information regarding its managers. *See* Opp. at 31 n.15. As counsel for AP7 repeatedly explained, AP7 delegated full investment authority to the third-party managers and is not privy to the managers' internal allocation of responsibilities for AP7's investments. *See, e.g.*, Ehrlich Decl. Ex. T at 1. Thus, AP7's interrogatory responses continue to be accurate.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ *See* Ehrlich Decl. Ex. O at BLK-000014-15. In addition, Defendants make no showing that AP7 required the information they seek in order to satisfy any █████████████████ ████████████████████████████████████████ *Id.*[31] Moreover, AP7's 30(b)(6) designee, Richard Gröttheim, testified that █████████████████████████ ████████████████████ Ex. 13 ("Gröttheim Tr.") 118:9-119:19. Consistent with the text of the IMA, Mr. Gröttheim explained that ████████████████████████████

██████████████████████████████████████████████████

████████████████████████ *Id.* In short, Defendants have failed to substantiate their claims that AP7 was somehow required to "make its outside investment advisors . . . available for discovery" or "facilitate" discovery from these third parties. AP7 has more than satisfied its discovery obligations.

**Second**, because all of AP7's Class Period KHC trades were entered into pursuant to an index strategy, these transactions were necessarily made in reliance on Defendants' misrepresentations and omissions, rendering discovery from AP7's managers on the issue of reliance unnecessary and irrelevant. Indeed, it is well-established that "index purchases rely *exclusively* upon the market to impound any representations (including misrepresentations) into securities' prices." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009)

---

[31] Defendants misquote the relevant IMA provision to claim that it references "legal requirements." Opp. at 32. As noted, the actual text of the provision ████████████████████████████ ███████████████. Ehrlich Decl. Ex. O at BLK-000015. Defendants also disregard that ████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ *Id.* at BLK-000009. Whether or not ████████████ ████████████████████████████ is clearly not at issue here.

(emphasis in original) (index purchases are "close to perfect reliance on market price-setting, which is a well-established kind of reliance in securities cases"); *see also In re Lehman Bros. Sec. & ERISA Litig.*, 2013 WL 440622, at \*2 (S.D.N.Y. Jan. 23, 2013) ("Tracking an index for an efficient market is sufficient reliance for the purpose of class certification."); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) (use of "computer models that replicate the portfolio of the S & P 500 Index . . . reflects an evaluation of the publicly available information about WorldCom"). Consistent with this case law, ███████████████████████████ ████████████████████████████████████████████████████ ████████████████ Ex. 12 at ¶12.[32]

Rather than confront this precedent, Defendants resort to claiming that AP7's trades were not actually index trades, asserting that counsel for AP7 falsely represented that its KHC trades were "done . . . pursuant to an index strategy" because a handful of trades were executed as part of a "risk premium" investment mandate. Opp. at 30. This too is wrong for two independent reasons. First, as Mr. Gröttheim explained, ████████████████████████████████ ████████████████████████████████████████████████████ *See* Gröttheim Tr. 66:15-67:7. Thus, Defendants' claim that any trades pursuant to the risk premium mandate somehow differ from the rest of AP7's overall equity investment trading strategies misses the mark.

Second, Defendants' purported concerns regarding the "risk premium" strategy are a red herring because there is no evidence that BlackRock or NTGIL deployed this strategy for any of

---

[32] Notably, Defendants do not suggest that AP7's investment managers had access to non-public information regarding KHC, as would be required to refute AP7's showing of reliance and render it atypical. *WorldCom*, 219 F.R.D. at 282 (rejecting reliance-based typicality challenge where "[t]here is no suggestion that any of the named plaintiffs had access to non-public information and learned that there was a fraud afoot and decided nonetheless to invest in WorldCom").

AP7's KHC purchases *during the Class Period*. *See* Opp. at 30. Indeed, the NTGIL declaration expressly states that ███████████████████████████████████████████ Ex. 12 at ¶11.[33] Based on BlackRock's documents, ████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████ *See* Ex. 14 (██████████████████████████

███████████████████████████████████████████████). But the "sales" were not open-market purchases—indeed, ████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████ *See id.* (██████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████). While Defendants could have easily sought clarification from BlackRock regarding the nature of these transactions, they apparently opted not to request this information and their proffered interpretation of these trading records is both unsupported and counterfactual.[34]

In sum, Defendants have failed to establish any "deficiency in AP7's participation in discovery"—the sole basis for their claim that AP7 is an inappropriate class representative—and thus, AP7 is both typical and adequate, as set forth in Plaintiffs' Opening Brief.

### E. Booker Is An Adequate And Typical Class Representative

Defendants claim that Booker can be neither typical nor adequate because it is small

---

[33] Because ████████████████████████████████████████████████████████ ██████ Mr. Gröttheim's mistaken recollection ███████████████████████████ ██████████████████████████████████████. *See* Opp. at 30.

[34] As Mr. Gröttheim explained, ██████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████ *Id*. at 74:12-75:3.

Dated: July 19, 2022


**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**

*/s/ Katherine M. Sinderson*
Salvatore J. Graziano
Katherine M. Sinderson
Abe Alexander
Jesse L. Jensen
Benjamin W. Horowitz
Nicole Santoro
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
katiem@blbglaw.com
abe.alexander@blbglaw.com
jesse.jensen@blbglaw.com
will.horowitz@blbglaw.com
nicole.santoro@blbglaw.com


-and-


**BERNSTEIN LITOWITZ BERGER**
   **& GROSSMANN LLP**
Avi Josefson (#6272453)
875 North Michigan Avenue, Suite 3100
Chicago, Illinois 60611
Telephone: (312) 373-3880
Facsimile: (312) 794-7801
avi@blbglaw.com

*Counsel for Co-Lead Plaintiff Union Asset*
*Management Holding AG and*
*Co-Lead Counsel for the Class*

**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul (#90751)
Richard A. Russo, Jr.
Joshua A. Materese (#314844)
Margaret E. Mazzeo
Alex B. Heller (#321134)
Austin W. Manning
Helen J. Bass
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com
rrusso@ktmc.com
jmaterese@ktmc.com
mmazzeo@ktmc.com
aheller@ktmc.com
amanning@ktmc.com
hbass@ktmc.com


-and-


**KESSLER TOPAZ MELTZER**
   **& CHECK, LLP**
Jennifer L. Joost
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
jjoost@ktmc.com
*Counsel for Co-Lead Plaintiff Sjunde AP-*
*Fonden and additional named Plaintiff*
*Booker Enterprises Pty Ltd. and Co-Lead*
*Counsel for the Class*