SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
CHRISTOPHER L. AYERS
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com
cayers@seegerweiss.com

Liaison Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIJAY PATEL, Individually and on Behalf of All Others Similarly Situated, ) ) ) | No. 2:22-cv-04915-BRM-LDW |
| Plaintiff, ) | CLASS ACTION |
| ) ) | DR. SARAF'S REPLY IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF |
| vs. ) ) | |
| COINBASE GLOBAL, INC., et al., ) ) | |
| Defendants. ) ) | MOTION DAY: NOVEMBER 7, 2022 |

[Caption continued on following page.]

4869-3496-5561.v1

DENNIS DEAN LAFFOON,
Individually and on Behalf of All Others
Similarly Situated,

               Plaintiff,

     vs.

COINBASE GLOBAL, INC., et al.,

               Defendants.

Case No. 2:22-cv-05744- BRM-LDW

CLASS ACTION

4869-3496-5561.v1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...............................................................................1

II.   ARGUMENT .....................................................................................3

    A.   Dr. Saraf's Coinbase Trading Is Entirely Typical...............................4

    B.   Having A Successful Endodontic Practice Supports Dr. Saraf's
       Adequacy.............................................................................................6

    C.   Dr. Saraf's Adequacy Is Bolstered, Not Hampered, By His
       Selection of Well Qualified Counsel ....................................................8

    D.   Dr. Saraf Is The Only Movant Who Satisfies All PSLRA
       Criteria.............................................................................................10

       1.   Dr. Saraf Has Made A Sufficient Showing That He
          Satisfies Rule 23's Adequacy and Typicality
          Requirements ...........................................................................10

       2.   Dr. Saraf's "Financial Interest" Is Greater Than AP7's
          Based on His Relative Percentage of Losses ...........................11

III.  CONCLUSION ...............................................................................12

4869-3496-5561.v1

# TABLE OF AUTHORITIES

Case                                                                                                    Page(s)

*Aguilar v. Vitamin Shoppe, Inc.*,
 No. 17-cv-6454-KM-MAH, 2018 WL 1960444 (D.N.J. Apr. 25, 2018) ............. 9

*Aronson v McKesson HBOC, Inc.*,
 79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................................................. 7

*Burke v. Ruttenberg*,
 102 F. Supp. 2d 1280 (N.D. Ala. 2000) ..........................................................11

*Clair v. DeLuca*,
 232 F.R.D. 523 (W.D. Pa. 2006) ..................................................................... 9

*In re Am. Serv. Grp., Inc.*,
 2006 WL 2503648 (M.D. Tenn. Aug. 29, 2006) .............................................11

*In re Cendant*,
 264 F.3d 201 (3d Cir. 2001) .........................................................................6, 8

*In re Elan Corp. Sec. Litig.*,
 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ..................................................12

*In re Enron Corp. Sec. Litig.*,
 206 F.R.D. 427 (S.D. Tex. 2002) .................................................................... 7

*In re Landry's Seafood Rest., Inc.*,
 No. CIV.A. H-99-1948, 2000 WL 33999467 (S.D. Tex. Mar. 30, 2000) ............ 9

*In re Network Assocs., Inc., Sec. Litig.*,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................11

*In re Party City Sec. Litig.*,
 189 F.R.D. 91 (D.N.J. 1999) ........................................................................8, 10

*Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*,
 2000 WL 486956 (D.N.J. Apr. 24, 2000) ......................................................1, 11

*Lako v. Loandepot, Inc.*,
 No. 21-cv-01449, 2022 WL 1314463 (C.D. Cal. May 2, 2022) ......................... 5

4869-3496-5561.v1

*Marjanian v. Allied Nevada Gold Corp.*,
 No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810 (D. Nev. Nov. 7, 2014) ..... 5

*Prefontaine v. Research in Motion Ltd.,*
 *2012* WL 104770 (S.D.N.Y. Jan 5, 2012) ...................................................4, 5

*Schueneman v. Arena Pharm., Inc.,*
 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ...................................................... 4

*Sklar v. Amarin Corp. PLC*,
 No. 13-cv-06663, 2014 WL 3748248 (D.N.J. July 29, 2014) ............................ 4

*Thompson v. Shaw Grp., Inc.*,
 No. 04-cv-1685, 2004 WL 2988503 (E.D. La. Dec. 14, 2004) .......................... 7

*Vataj v. Johnson*,
 No. 19-CV-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ................. 9

Statutes

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)-(cc)............................................................. 3
15 U.S.C. §78u-4(a)(3)(B)(vi)................................................................................ 6

- 3 -

Movant Dr. Rahul Saraf ("Movant" or "Dr. Saraf") respectfully submits this Reply in Further Support of his Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel,[1] and states as follows:

## I.   INTRODUCTION

In addition to Dr. Saraf, two other movants remain in contention for lead plaintiff appointment: Sjunde AP-fonden ("AP7") and Charles Bethune III ("Bethune").   Neither has articulated a superior basis under the PSLRA to be appointed over Dr. Saraf.   Their respective motions should be denied.

First, Dr. Saraf's financial interest as a percentage of total assets eclipses that of AP7.  His Coinbase losses account for more than 50% of his equities portfolio, while AP7's claimed loss represents 0.01% – not even a "drop in the bucket."[2] When the disparity in interest is as great as it is here, it should be the prevailing factor, as courts in this District recognize.[3] With a multi-million dollar loss just slightly below

---

[1]   ECF No. 22.  All ECF references, unless otherwise noted, are to the lead case in this Action: *Patel v. Coinbase Global, Inc.*, No. 22:22-cv-04915-BRM-LDW.

[2]   Bethune's claimed loss of $470,789 is less than 7% of Dr. Saraf's $7 million loss, and nowhere does Bethune indicate that his claimed losses approach 50% of his equity portfolio.

[3]   *See* Saraf Resp. (ECF No. 22) at 15-17; *see also*, *Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956 (D.N.J. Apr. 24, 2000).

- 1 -

AP7's in terms of absolute dollars, Dr. Saraf has the most to gain from this lawsuit and the greatest economic incentive to represent the putative class.

Second, Dr. Saraf easily satisfies the adequacy and typicality prongs of Rule 23, and AP7's and Bethune's attacks on Dr. Saraf in this regard are spurious:

- AP7's mischaracterization of Dr. Saraf as a "day trader" gains it no ground, for, even if Dr. Saraf, a practicing endodontist, were a day trader – a showing AP7 has done nothing more than assert without support – courts have routinely found day trading does not defeat typicality.

- AP7's suggestion that Dr. Saraf should be passed over because he is a successful dentist and serves as lead plaintiff in a single other matter finds no support in the PSLRA – and is more than somewhat ironic, given AP7's efforts here to add what would be its *ninth* currently-active PSLRA action. To the contrary, Dr. Saraf has shown himself to be an experienced and engaged investor who is more than capable of discharging his duties as the Court-appointed lead plaintiff here.

- Nor is Dr. Saraf's adequacy impacted by his selection of two firms as Lead Counsel given that *Cendant* plainly endorsed two firms serving as lead counsel. Moreover, in securities fraud class actions, AP7 itself has repeatedly sought approval of its selection of more than one law firm as Lead Counsel.

- 2 -

- Bethune's contention that a lead plaintiff motion must be accompanied by a declaration likewise finds no support in either the PSLRA or the Third Circuit's opinion in *Cendant*, and should thus be disregarded, particularly given that Dr. Saraf's qualifications were amply set forth in his moving papers and he currently serves as a Court-appointed lead plaintiff in another securities case.

Ultimately, as shown herein and in Dr. Saraf's Motion and Response, the raft of unsupported, unsupportable kitchen-sink challenges heaved at Dr. Saraf are merely meant to deflect from the serious standing and adequacy defects that plague AP7, as well as Bethune's inordinately lower financial interest. Dr. Saraf should be appointed, and his counsel, Berger Montague PC and Robbins Geller Rudman & Dowd LLP, should be approved to represent the putative class.

## II.    ARGUMENT

Under the PSLRA, it is presumed that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" ***and*** "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)-(cc). Dr. Saraf is the only movant who satisfies all of these requirements.

- 3 -

## A.     Dr. Saraf's Coinbase Trading Is Entirely Typical

AP7 incorrectly asserts, without support, that Dr. Saraf's trading activity in Coinbase disqualifies him because his multiple purchases and sales during the Class Period somehow negate the presumption that he relied on the market price when effecting his trades.  AP7 Resp. at 12.  AP7's argument is meritless.

As AP7 itself noted, Dr. Saraf is a practicing endodontist, not a day trader. ECF 27 at 16-17.  Even if Dr. Saraf was a day trader, that fact would not render him atypical.  *See Sklar v. Amarin Corp. PLC*, No. 13-cv-06663, 2014 WL 3748248, at *8 (D.N.J. July 29, 2014) (rejecting the proposition that a movant should not be appointed lead plaintiff because he is a day trader and deeming "unpersuasive" the cases relied upon in support of that contention).

In *Sklar*, Judge Wolfson concluded that, "although a few courts have held that the presumption of 'most adequate plaintiff' is rebutted as to a plaintiff who could be characterized as a day trader, most other courts have found this not to be true." *Id.* at *9.  Most courts recognize that, "[a]bsent *evidence* that [the plaintiff] did not rely on the market price of the shares," an investor's status as a purported day trader is not enough to rebut the presumption of adequacy and typicality. *Schueneman v. Arena Pharm., Inc.,* 2011 WL 3475380, at *7 (S.D. Cal. Aug. 8, 2011) (emphasis added).  *See Prefontaine v. Research in Motion Ltd.*, 2012 WL 104770 (S.D.N.Y. Jan 5, 2012) (noting that the prevailing view in the Second Circuit is that "day and

- 4 -

momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.").

The obligation to present actual evidence undermining a movant's adequacy and typicality exists because even where a lead plaintiff movant can be characterized as a "day trader," the trader's interests are nevertheless aligned with other types of investors: "the prevailing view ... is that day and momentum traders *have the same incentives* to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts." *Id.* at *4 (internal quotation marks omitted). Here, AP7 offers no evidence, just raw speculation.[4] Consequently, this challenge is as specious as it is irrelevant.

---

[4]  *See Lako v. Loandepot, Inc.,* No. 21-cv-01449, 2022 WL 1314463, at *5 (C.D. Cal. May 2, 2022) (recognizing that "many courts have held that 'a plaintiff's status as a purported "day trader" is not enough in and of itself to rebut the presumption of adequacy....'") (emphasis added); *Marjanian v. Allied Nevada Gold Corp.*, No. 2:14-CV-0650-JCM-VCF, 2014 WL 12769810, at *7-*8 (D. Nev. Nov. 7, 2014) ("even if Slomnitsky is a day trader, Slomnitsky's investments were made at least in part in reliance on Allied Nevada's misstatements. Additionally, although courts differ, the weight of authority on this question indicates that an investor can be appointed lead plaintiff even if the investor engages in high-volume trades during the class period.").

**B.      Having A Successful Endodontic Practice Supports Dr. Saraf's Adequacy**

AP7 also surmises that Dr. Saraf will have to "juggl[e] the demands of his endodontic practice which purports to have three offices in Georgia" with overseeing this litigation, suggesting that multi-tasking is not commensurate with the lead plaintiff role.  AP7 Resp. at 16-17.  That too misses the mark.

First, as *Cendant* makes clear, the "goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class."  264 F.3d at 266.  Indeed, Congress recognized that "class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."  264 F.3d at 264.  Stated differently, Congress did not legislate that a lead plaintiff cannot have a successful career or be an accomplished professional.  Quite the opposite.

Congress did, however, impose presumptive limits on the number of times a movant may serve as a lead plaintiff. Rather than bar practicing dentists from serving as lead plaintiffs, as AP7 argues, the PSLRA specifies the conditions that, absent a showing warranting an exception, one may not be appointed to serve as a lead plaintiff more than five times during any three-year period (15 U.S.C. §78u-

- 6 -

4(a)(3)(B)(vi)). Dr. Saraf has been appointed once and, therefore, if appointed here, he is well within the limits that Congress proscribed.[5]

Second, AP7's suggestion that Dr. Saraf would be overmatched by the demands of overseeing counsel is unsubstantiated and, were it correct, would preclude AP7's own service as lead plaintiff given that AP7 is currently serving as a lead plaintiff in **eight active cases**.[6] Were the court to appoint AP7 here, this would be its ninth active case **simultaneously**. And as courts routinely recognize, the purpose of the PSLRA is frustrated where one plaintiff's resources are "overstretch[ed]." *See Thompson v. Shaw Grp., Inc.*, No. 04-cv-1685, 2004 WL 2988503, at *7 (E.D. La. Dec. 14, 2004) (rejecting a pension fund's lead plaintiff motion because "there is a risk of overstretch where Detroit P & G would be

---

[5]   As AP7 acknowledges, Dr. Saraf has only been appointed to serve as lead plaintiff in exactly one other securities class action. AP7 Resp. at 16. *See Saraf v. Ebix, Inc.*, No. 1:21-cv-01589-JMF (S.D.N.Y.).

[6]   *See Mangino v. Lucid Group, Inc.*, No. 3:22-cv-02094-JD (N.D. Cal.); *Crews v. Rivian Automotive, Inc.*, No. 2:22-cv-01524-RGK-E (C.D. Cal.); *Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJL (S.D.N.Y.); *Hedick v. The Kraft Heinz Co.*, No. 1:19-cv-01339 (N.D. Ill.); *Plaut v. The Goldman Sachs Grp., Inc.*, No. 1:18-cv-12084-VSB (S.D.N.Y.); *Hachem v. General Electric Co.*, No. 1:17-cv-08457-JMF (S.D.N.Y.); *Shah v. Qualcomm Inc.*, No. 3:17-cv-00121-JAH-WVG (S.D. Cal.); *Forden v. Allergan PLC*, No. 2:16-cv-09449-SDW-LDW (D.N.J.).

- 7 -

directing a total of eight concurrent lawsuits were Detroit P & G selected as Lead Plaintiff here as well.").[7]

This Court should not entertain any challenge to Dr. Saraf's adequacy premised on the fact that he is a successful practicing physician and businessman.

## C. Dr. Saraf's Adequacy Is Bolstered, Not Hampered, By His Selection of Well Qualified Counsel

AP7 and Bethune both suggest that Dr. Saraf is rendered inadequate by having put forward two law firms to serve as Co-Lead Counsel without detailing why the class would benefit from two firms litigating these claims. AP7 Resp. at 17-18; Bethune Resp. at 8-9.

As counsel for AP7 and Bethune both well know, there is nothing inappropriate or unusual about a movant seeking the appointment of two law firms to serve as co-lead counsel, particularly two firms with such a successful track record in this District. Courts within this District have long recognized the potential benefits of appointing multiple law firms jointly litigating a class action, as it "may

---

[7] *See Aronson v McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) ("allowing simultaneous prosecution of six securities actions is inconsistent with [Congress' legislative] goal"). While numerous appointments simultaneously "may demonstrate valuable experience and quality leadership, it also means ***fractured attention and resources*** with respect to this suit." *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002) (emphasis added). Therefore, the court should act "[t]o eliminate the risk of overstretch," and appoint another movant who "also has a substantial stake in the litigation." *Thompson*, 2004 WL 2988503, at *7.

4869-3496-5561.v1

better protect the interests of the plaintiff class" and "may expedite litigation." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 114-15 (D.N.J. 1999). As Judge McNulty explained in *Aguilar v. Vitamin Shoppe, Inc.*, courts generally do not disturb a movant's selection of counsel:

> The court's role is generally limited to "'approv[ing] or disapprov[ing] lead plaintiff's choice of counsel;' and ... ***it is not the court's responsibility to make that choice itself.***" *In re Cendant*, 264 F.3d at 274. "[T]he question is whether judicial intervention is 'necessary to protect the interests of the plaintiff class.'" *Id.* "[T]he question is not whether the court believes that the lead plaintiff could have made a better choice or gotten a better deal." *Id.* at 276. ***Plaintiffs have chosen firms with significant securities litigation experience….It is unnecessary for the court to intervene to protect the interests of the plaintiff class.*** Whether, if and when the time comes, the Court will approve fees it regards as unnecessary or redundant is of course another matter.

*Aguilar v. Vitamin Shoppe, Inc.*, No. 17-cv-6454-KM-MAH, 2018 WL 1960444, at *11–12 (D.N.J. Apr. 25, 2018) (emphasis added). *See Clair v. DeLuca*, 232 F.R.D. 523, 527 (W.D. Pa. 2006) ("based on the extensive list of duties for lead counsel outlined in Lead Plaintiff's proposed order of court and on the allegation that the number of Class members may be "in the thousands," appointment of two firms may not be excessive in light of the potential complexity of this case.") (internal citations omitted). This Court is in accord. *See Lehigh County Employees' Ret. Sys. v. Novo Nordisk A/S*, No. 3:17-cv-209-BRM-LHG (D.N.J. June 1, 2017) (Martinotti, J.) (appointing two firms to serve as co-lead counsel in securities class action).

- 9 -

To be sure, courts frequently recognize the efficiencies that inure from two law firms serving as co-lead counsel where, as here, the firms have significant experience in class litigation. *See Vataj v. Johnson*, No. 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020) ("the Court is also satisfied that the two firms will work cooperatively to promote the efficient representation of the putative class."); *In re Landry's Seafood Rest., Inc.*, No. CIV.A. H-99-1948, 2000 WL 33999467, at *5 (S.D. Tex. Mar. 30, 2000) ("[t]he Court finds no reason not to appoint the two law firms as Co-Lead Counsel. Both clearly have broad experience in prosecuting such actions.").

Consequently, Dr. Saraf's selection of well-qualified counsel supports, rather than detracts from, his adequacy.

> **D. Dr. Saraf Is The Only Movant Who Satisfies All PSLRA Criteria**
>
> > **1. Dr. Saraf Has Made A Sufficient Showing That He Satisfies Rule 23's Adequacy and Typicality Requirements**

As set forth in his opening Motion and Response, Dr. Saraf is adequate and typical and thus satisfies Rule 23. His claims "arise from the same event or course of conduct that gave rise to the claims of the other class members and are premised upon the same legal theory." *Party City*, 189 F.R.D. at 107 n.13. ECF No. 22-5 at 10-11. Likewise, Dr. Saraf has sufficiently identified himself: he is a dentist based in Georgia with significant experience in the equities markets, he is a sophisticated,

- 10 -

engaged investor who has demonstrated his commitment to the putative class here by, among other things, retaining experienced counsel. *Id.* at 11-12. His appointment to serve as lead plaintiff in another securities class action only underscores his fitness to serve the putative class here. *See Saraf v. Ebix, Inc.*, No. 1:21-cv-01589-JMF (S.D.N.Y.).

### 2. Dr. Saraf's "Financial Interest" Is Greater Than AP7's Based on His Relative Percentage of Losses

As detailed in his Response, Dr. Saraf has the largest financial interest in the outcome of this case. This is so because, while AP7's claimed Coinbase loss of $10 million (ECF 20-4) accounts for roughly 0.01% of its total assets under management (approximately $86.2 billion) – barely a "drop in the bucket," *see Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956, at *2 (D.N.J. Apr. 24, 2000) – Dr. Saraf's $7 million loss (ECF 22-4) represents more than 50% of his portfolio. Unquestionably, Dr. Saraf has the most to gain from this lawsuit and thus, has more "skin in the game."[8]

---

[8] *See Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1342 (N.D. Ala. 2000) ("because of his greater percentage losses, Eubank may be the class representative best suited to bring a claim to recover via joint and several liability for recklessness"); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1031 (N.D. Cal. 1999) (recognizing that "[a]n argument could be made that an investor who lost a large share of his or her net worth has a larger financial interest, percentage-wise, than an investor with larger absolute dollars lost but for whom the loss is only a small fraction of its overall portfolio"); *In re Am. Serv. Grp., Inc.*, 2006 WL 2503648, at

4869-3496-5561.v1

In any event, although AP7 claims larger losses in absolute terms, Dr. Saraf's $7 million loss is large by any standard and constitutes a strong incentive to maximize a recovery on behalf of the class.[9]

## III.   CONCLUSION

For the foregoing reasons, Dr. Saraf is the only movant who satisfies all of the criteria of the PSLRA. Dr. Saraf should be appointed Lead Plaintiff his selection of counsel, Berger Montague and Robbins Geller, to serve as Lead Counsel on behalf of the Class should likewise be approved.

DATED:  October 31, 2022                 Respectfully submitted,

                                         SEEGER WEISS LLP
                                         CHRISTOPHER A. SEEGER
                                         CHRISTOPHER L. AYERS


                                         /s/ *Christopher A. Seeger*
                                         55 Challenger Road, 6th Floor
                                         Ridgefield Park, NJ  07660
                                         Telephone:  212/584-0700
                                         212/584-0799 (fax)
                                         cseeger@seegerweiss.com
                                         cayers@seegerweiss.com

---

*3 (M.D. Tenn. Aug. 29, 2006) (recognizing "some courts measure the 'largest financial interest' by a plaintiff's losses as a percentage of its assets or holdings").

[9] *See  e.g.,  In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at *1 (S.D.N.Y. May 11, 2009) (deeming losses of approximately $4.2 million and approximately $3.5 million "basically equal").

- 12 -

4869-3496-5561.v1

Liaison Counsel

BERGER MONTAGUE PC
SHERRIE R. SAVETT
MICHAEL DELL'ANGELO
ANDREW D. ABRAMOWITZ
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Telephone:  215/875-3000
215/875-4604 (fax)
ssavett@bm.net
mdellangelo@bm.net
aabramowitz@bm.net

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com

Proposed Lead Counsel for Proposed
Lead Plaintiff

- 13 -