**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas,*
*Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer,*
*Gokul Rajaram, and Fred Wilson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW |
| | Hon. Brian R. Martinotti |
| | **Oral Argument Requested** |
| | **Motion Day**: January 16, 2024 |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................1

I.    PLAINTIFFS FAIL TO PLEAD A SECTION 10(B) CLAIM.......................2

    A.    Plaintiffs Fail To Plead Falsity..............................................................2

        1.    The Security Statements Are Not False Or Misleading..............2

            a.    The Statements Did Not Conceal Any Bankruptcy Risk ...............................................................................2

            b.    Coinbase Was Not (And Is Not) At Risk Of Bankruptcy.....................................................................3

            c.    The "Trust" Statements Are Inactionable.........................6

        2.    The Trading Statements Are Not False Or Misleading .............6

            a.    Plaintiffs' Anonymous Allegations Are Insufficient.........................................................................6

            b.    The *WSJ* Article Does Not Contradict Any Statements........................................................................7

            c.    The Trading Statements Are Inactionable.........................8

        3.    The Regulatory Risk Statements Are Not Misleading ..............8

            a.    Defendants Fully Disclosed The Risk Of Enforcement....................................................................8

            b.    Plaintiffs Challenge Nonactionable Opinions ................11

    B.    Plaintiffs Fail To Plead Scienter..........................................................11

        1.    Plaintiffs Fail to Allege Any Motive To Commit Fraud .........12

        2.    No Conscious Misbehavior Or Recklessness ..........................13

    C.    Plaintiffs Fail To Plead Loss Causation ..............................................16

i

II.      PLAINTIFFS FAIL TO PLEAD A SECURITIES ACT CLAIM ................16

     A.     Plaintiffs Lack Standing To Allege Securities Act Claims.................16

     B.     Plaintiffs Fail To Plead A Section 11 Claim......................................17

     C.     Plaintiffs Fail To Plead A Section 12 Claim......................................18

III.    PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY..........18

CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Able Lab. Sec. Litig.*,
  2008 WL 1967509 (D.N.J. Mar. 24, 2008) ......................................................10

*In re Allergan Generic Drug Pricing Sec. Litig.*,
  2019 WL 3562134 (D.N.J. Aug. 6, 2019) ........................................................14

*In re BofI Holding Inc. Sec. Litig.*,
  977 F.3d 781 (9th Cir. 2020) ..........................................................................16

*Chan v. New Oriental Educ. & Tech. Grp. Inc.*,
  2019 WL 2865452 (D.N.J. July 3, 2019) ...........................................................7

*Charles Schwab Corp. Sec. Litig.*,
  257 F.R.D. 534 (N.D. Cal. 2009)......................................................................18

*City of Roseville Emps' Ret. Sys. v. Horizon Lines, Inc.*,
  442 F. App'x 672 (3d Cir. 2011) ......................................................................13

*City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*,
  70 F.4th 668 (3d Cir. 2023) ...............................................................................7

*De Vito v. Liquid Holdings Grp., Inc.*,
  2018 WL 6891832 (D.N.J. Dec. 31, 2018)........................................................17

*Employees' Ret. System of Govt. of the Virgin Islands v. Blanford*,
  794 F.3d 297 (2d Cir. 2015) .............................................................................12

*In re EveryWare Glob. Inc. Sec. Litig.*,
  175 F. Supp. 3d 837 (S.D. Ohio 2016) .............................................................17

*Frater v. Hemispherx Biopharma, Inc.*,
  996 F. Supp. 2d 335 (E.D. Pa. 2014).................................................................10

*In re Great Atl. & P. Tea Co., Inc. Sec. Litig.*,
  103 F. App'x 465 (3d Cir. 2004) .......................................................................11

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995)...........................................................................................17

iii

*Hall v. Johnson & Johnson*,
 2019 WL 7207491 (D.N.J. Dec. 27, 2019)........................................................3

*In re Hertz Glob. Holdings, Inc. Secs. Litig.*,
 2017 WL 1536223 (D.N.J. Apr. 27, 2017).......................................................12

*Howard v. Arconic Inc.*,
 2021 WL 2561895 (W.D. Pa. June 23, 2021) ....................................................5

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
 620 F. Supp. 3d 167 (D.N.J. 2022).............................................................3, 10

*Inst. Inv. Grp., v. Avaya, Inc.*,
 564 F.3d 242 (3d Cir. 2009) ...........................................................................13

*In re Int'l Rectifier Corp. Sec. Litig.*,
 2008 WL 4555794 (C.D. Cal. May 23, 2008)..................................................13

*Krim v. pcOrder.com, Inc.*,
 402 F.3d 489 (5th Cir. 2005) ..........................................................................17

*In re Loewen Group*,
 2004 WL 1853137 (E.D. Pa. Aug. 18, 2004) .....................................................7

*In re Lululemon Secs. Litig.*,
 14 F. Supp. 3d 553 (S.D.N.Y. 2014) ...............................................................12

*In re Mylan N.V. Sec. Litig.*,
 2023 WL 3539371 (W.D. Penn. May 18, 2023) .................................................7

*O'Neal v. Middletown Twp.*,
 2019 WL 77066 (D.N.J. Jan. 2, 2019)................................................................8

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015)..........................................................................................6

*In re Oracle Corp.*,
 867 A.2d 904 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005) .......................13

*Oran v. Stafford*,
 226 F.3d 275 (3d Cir. 2000) ..............................................................................4

iv

*Pure Earth, Inc. v. Call*,
  531 F. App'x 256 (3d Cir. 2013) ..................................................................16

*Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*,
  804 F. Supp. 2d 141 (S.D.N.Y. 2011) .........................................................18

*Roofer's Pension Fund v. Papa*,
  2018 WL 3601229 (D.N.J. July 27, 2018) .....................................................3

*SEB Inv. Mgmt. AB v. Endo Int'l*,
  351 F. Supp. 3d 874 (E.D. Pa. 2018)........................................................3, 11

*Semerenko v. Cendant Corp.*,
  223 F.3d 165 (3d Cir. 2000) ........................................................................13

*Shapiro v. UJB Fin. Corp.*,
  964 F.2d 272 (3d Cir. 1992) ..........................................................................4

*Slack Techs., LLC v. Pirani*,
  598 U.S. 759 (2023)......................................................................................17

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006) ........................................................................17

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  2015 WL 3755218 (E.D. Pa. June 16, 2015).................................................6

*Winer Fam. Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ..............................................................2, 11, 14

## STATUTES

15 U.S.C. § 78u-5(c) ............................................................................................8

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that Plaintiffs are working backwards from stock price drops in search of a theory of fraud. Missing from Plaintiffs' complaint is a single factual allegation inconsistent with anything Defendants said, let alone suggesting any Defendant had any intent to mislead investors—to the contrary, Defendants have always spoken transparently about Coinbase's business and risks it was facing.

The **bankruptcy risk** claim fails because none of the challenged statements misled investors at all—and regardless, Plaintiffs concede there is no freestanding duty to disclose every piece of information that Defendants may know about a topic.

The **trading** claim fails because it is based entirely on anonymous sources who are not alleged to have any knowledge, access, or involvement in the supposedly concealed activities, which do not contradict Defendants' statements in any event.

The **regulatory risk** claim fails because Coinbase repeatedly and thoroughly disclosed the risk of SEC enforcement. There is no requirement to parse, let alone disclose, every hint that might suggest higher or lower odds of particular SEC enforcement choices. Coinbase is allowed to disagree with its regulators—it is not required to nor should it speculate about future actions the SEC may or may not take.

On scienter, the fact that Defendants sold a small fraction of their Coinbase stock in the Company's direct listing shows that they built a successful business, not

1

fraudulent intent. And Plaintiffs fail completely to plead any particularized facts showing that any Defendant engaged in reckless or conscious misconduct.

Finally, Plaintiffs' makeweight claims under the Securities Act fail primarily for the same reason as their Exchange Act claims—their inability to plead any false or misleading statements. Plaintiffs also lack standing to bring Securities Act claims. This is Plaintiffs' fourth attempt to plead securities claims against Coinbase, and it still falls woefully short. The Court should dismiss these claims in their entirety.

## I.    PLAINTIFFS FAIL TO PLEAD A SECTION 10(B) CLAIM

### A.    Plaintiffs Fail To Plead Falsity

#### 1.    The Security Statements Are Not False Or Misleading

##### a.    The Statements Did Not Conceal Any Bankruptcy Risk

Coinbase's statements about the security of customer assets did not mislead investors about how those assets could be treated in a hypothetical bankruptcy. Plaintiffs' argument is at best that Coinbase's statements were *incomplete*, *id.* at 15, but that alone does not state a claim and is simply wrong regardless. *See Winer Fam. Tr. v. Queen*, 503 F.3d 319, 330 (3d Cir. 2007). None of the challenged statements suggested anything at all, positive or negative, about risks to assets in a bankruptcy. Statement 1, for example, warns that Coinbase holds hundreds of billions of dollars in customer assets and any failure to maintain a "high level of internal controls," or any breach of its security technology (*e.g.*, by hackers), creates a risk of financial and reputational harm. *See* Ex. 7 at 33. Plaintiffs' assertion that these disclosures are

2

not "limited to physical risks" (Opp. 16) is irrelevant—the statements have nothing to do with bankruptcy. Only by ignoring their actual text do Plaintiffs suggest any bankruptcy risk "contradict[ed]" Defendants' statements. Opp. 15.[1]

Plaintiffs also incorrectly contend that Coinbase's addition of a purported risk to "the Asset Safety Disclosures" in its May 2022 10-Q somehow suggests that addition "should have been there all along." Opp. 17.[2] Again, Plaintiffs are at best arguing that the challenged statements were incomplete, not that they were false or misleading. It is absurd to suggest that complying with a new SEC disclosure directive turns statements that pre-date that directive into fraud. This is not a fact question, as Plaintiffs eagerly suggest, Opp. 14 n.5, but a fatal pleading failure.

> **b.     Coinbase Was Not (And Is Not) At Risk Of Bankruptcy**

Plaintiffs' claim also fails because the allegedly omitted bankruptcy risk did

---

[1] The cases Plaintiffs cite involve statements directly contradicting the concealed information. *See, e.g.*, *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at *13 (D.N.J. July 27, 2018) (claiming that organic growth was continuing when organic growth was actually negative); *SEB Inv. Mgmt. AB v. Endo Int'l*, 351 F. Supp. 3d 874, 894 (E.D. Pa. 2018) (touting decrease in intranasal drug abuse trends without disclosing FDA findings revealing increase in intravenous abuse); *Hall v. Johnson & Johnson*, 2019 WL 7207491, at *16 (D.N.J. Dec. 27, 2019) (touting quality assurance while concealing that QA methods would not detect asbestos); *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 186-87 (D.N.J. 2022) (announcing withholding of drug shipment without disclosing that FDA findings of defects were the "precipitating cause" of the hold).

[2] Coinbase did not add the new disclosure to every challenged statement, just to one risk factor warning about other safeguarding risks. ¶ 231.

not exist at all—so there was no omitted fact that could have been disclosed at the time of the challenged statements or ever. Mot. 16-18. Plaintiffs even *concede* that Coinbase had no "imminent risk of bankruptcy." But Plaintiffs then argue that *other unrelated* companies—so-called "crypto peers"—had a risk of bankruptcy and somehow that also meant that "Coinbase's customers were at risk of losing their assets," and somehow this risk was also material to Coinbase's financials. Opp. 17. That simply does not follow and is not the law. Coinbase's customers could not have been at risk of losing their assets in a bankruptcy if there was no risk of a bankruptcy, as Plaintiffs admit is the case for Coinbase. Coinbase had no obligation to speculate about *other companies'* bankruptcy risk, let alone whether bankruptcy courts might rule in favor of other companies' customers. Mot. 18-19; *Oran v. Stafford*, 226 F.3d 275, 286 (3d Cir. 2000).[3]

Plaintiffs nevertheless argue that this non-existent risk must have been material to Coinbase because of the risk disclosure language that Coinbase added to its May 2022 10-Q *after* the SEC issued SAB 121. Opp. 17. But SAB 121 was not "a reminder of preexisting disclosure obligations." Opp. 19. It was a *new* disclosure directive that Coinbase followed, whether or not that directive was properly

---

[3] Plaintiffs' own cases teach that defendants cannot be liable for "failing to predict the future." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283-84 (3d Cir. 1992).

mandated.[4] Ex. 23 at 4. The new language in the 10-Q (which Plaintiffs wrongly label as an "admission") therefore noted that legal uncertainty *"may result* in customers finding [Coinbase's] custodial services more risky," and any "discontinuation or reduction in use of [Coinbase's] platform" could adversely impact the business. Ex. 5 at 83. To the extent any customers found Coinbase's services riskier *after* SAB 121 imposed a new warning of legal uncertainty, and therefore also *after* Coinbase included this risk factor in its May 2022 10-Q, that in no way suggests customers had any actual risk of losing their assets in a bankruptcy.

Nor can Plaintiffs fall back on an argument that Defendants omitted information required by Item 303, Opp. 20, because that rule provides no independent basis for liability under Section 10(b), Mot. 15 n.3. Regardless, Plaintiffs do not and cannot point to any particularized facts in the SAC suggesting that, prior to SAB 121, any Defendant had the actual knowledge required under Item 303 or even reasonably expected that any legal uncertainty about customer assets in a bankruptcy could have a material adverse impact on Coinbase's financial results. *Howard v. Arconic Inc.*, 2021 WL 2561895, at *24-25 (W.D. Pa. June 23, 2021).

---

[4] The U.S. Government Accountability Office (GAO) recently found that the SEC failed to follow the Administrative Procedure Act because SAB 121 announced a rule that Coinbase was "expected to follow," but the SEC did not submit it for Congressional Review. *See* https://www.gao.gov/products/b-334540.

5

### c.    The "Trust" Statements Are Inactionable

Puffery is routinely decided on the pleadings, Mot. 19, and Plaintiffs do not allege that any statements were directly contradicted by omitted facts and thus could be considered "fraudulent comments," rather than puffery. *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2015 WL 3755218, at *13 (E.D. Pa. June 16, 2015). Nor can Plaintiffs avoid the *Omnicare* standard. Plaintiffs challenge Defendants' responses to questions asking for their views on what attracts customers to Coinbase. *E.g.*, Appendix A, Statements 12-13. Plaintiffs' Opposition, Opp. 22, misstates the *Omnicare* standard: for an opinion to be actionable, the allegedly omitted fact must go to the basis of the speaker's knowledge. *Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).

### 2.    The Trading Statements Are Not False Or Misleading

### a.    Plaintiffs' Anonymous Allegations Are Insufficient

Plaintiffs concede that allegations based on unnamed sources can only be relied on if the descriptions of the sources and their bases for making the allegations are "sufficiently detailed." Opp. 22-23. Those details are entirely missing from the anonymous source allegations in the *Wall Street Journal* ("*WSJ*") article. Neither Plaintiffs nor the *WSJ* allege any details *about the unnamed sources themselves*. Nothing in the article suggests the unnamed source would have been in a "position" to have personal knowledge, nothing provides the "basis" for the sources' knowledge, and nothing supplies "an appropriate degree of detail about the

6

information" provided. *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 691-92 (3d Cir. 2023). The fact that the *WSJ* is a "reputable" newspaper, Opp. 22, does not excuse the paucity of Plaintiffs' allegations.[5]

### b. The *WSJ* Article Does Not Contradict Any Statements

The *WSJ* article also does not contradict anything Defendants said about crypto trading. Plaintiffs admit that the article reported that the Risk Solutions group was started for the purpose of trading crypto *for clients*, not Coinbase. So now Plaintiffs argue that the group "*also*" made plans to engage in proprietary trading and engaged in a single test trade. Opp. 23. But Plaintiffs do not point to any facts—in the *WSJ* or elsewhere—contradicting anything Defendants said. Months before the *WSJ* article, Defendants accurately said they had no plans to engage in proprietary trading. The article's reference to a purported single test trade, Opp. 24, without specifying when that trade was made or whether it was "on behalf of a client" or "proprietary," is insufficient to plead a contradiction.

---

[5] *E.g.*, *In re Loewen Group*, 2004 WL 1853137, at *9 (E.D. Pa. Aug. 18, 2004) (rejecting anonymous allegations that lacked "sufficient information about the source," *e.g.* "for whom the source worked or in what capacity" or "how the source knew about" the subject at hand); *In re Mylan N.V. Sec. Litig.*, 2023 WL 3539371, at *7-8 (W.D. Penn. May 18, 2023) (considering anonymous allegations because they were described with "enough particularity" to give "confidence that the information they provided was reliable" and the information was "plausibly corroborated" by other sources). Plaintiffs also fail to respond to Defendants' cited authority, *e.g. Chan v. New Oriental Educ. & Tech. Grp. Inc.*, 2019 WL 2865452, at *3, *7 (D.N.J. July 3, 2019), which dismissed securities claims based on an article that provided much more detail regarding its sources. *See* Mot. 23.

### c.    The Trading Statements Are Inactionable

Finally, Plaintiffs' response to Defendants' safe harbor argument is meritless[6] because Plaintiffs are challenging a purported inaccuracy. This is not an omission claim. And in any event, the safe harbor also protects forward-looking statements allegedly rendered misleading by omitted facts. 15 U.S.C. § 78u-5(c).

### 3.    The Regulatory Risk Statements Are Not Misleading

### a.    Defendants Fully Disclosed The Risk Of Enforcement

Plaintiffs do not and cannot dispute that the risk of SEC enforcement was repeatedly disclosed to investors throughout the class period. Instead, they argue that Defendants minimized that risk by concealing the SEC's supposed belief that all crypto assets besides Bitcoin are securities and Coinbase's supposed knowledge that some assets on its platform were securities. Opp. 26. Plaintiffs' position is absurd and at odds even with the SEC's own shifting views of securities law.

Coinbase did not and does not consider any assets listed on its exchange to be securities—as should be clear from its vigorous defense of the SEC's limited enforcement action about just twelve of the more than 200 assets Coinbase lists on its platform. Plaintiffs point to the SEC's allegations that Coinbase listed assets that had "high risk" scores under a framework established by the Crypto Rating Council

---

[6] Plaintiffs do not respond to (and therefore concede) Defendants' argument that a test trade made in 2022 cannot show contemporaneous falsity for Statements 18-38. *See O'Neal v. Middletown Twp.*, 2019 WL 77066, at *3 (D.N.J. Jan. 2, 2019).

("CRC"). Opp. 9, 25.[7] But the challenged statements say nothing about CRC scores. Plaintiffs conflate CRC scores with "Coinbase's own [company-developed] review process," Opp. 26, but do not and cannot allege the two are the same, ¶¶ 181-82; Ex. 22 at 40-43.[8] Much more fundamentally, as Coinbase has repeatedly stated, secondary-market token trades on platforms like Coinbase are not investment contracts and thus, not securities at all given the absence of any contractual undertakings between the token promotor and the purchaser.

Unsurprisingly, Plaintiffs do not plead a single fact suggesting that the SEC clandestinely warned Coinbase that it had taken the position that every token (other than Bitcoin) was a security. Nor could it. Coinbase became a public company following the *SEC's* review of Coinbase's S-1, which described its business model in extraordinary detail. Just weeks later, Chair Gensler testified to Congress that the SEC lacked authority to regulate crypto exchanges absent additional legislative authority to do so.[9] Plaintiffs ignore all of this and instead cite a June 2023 interview where Armstrong noted the SEC's "totally different tone." ¶ 151. The securities laws

[7] Even as to the CRC framework, Plaintiffs don't allege—in allegations copied from the SEC's complaint against Coinbase, ¶ 182—that Coinbase had listed assets it believed to be securities, and certainly not based on Coinbase analysis.

[8] Contrary to Plaintiffs' misrepresentation, the SEC reviewed Coinbase's company-developed internal review process before the direct listing in 2021. *See* Ex. 25 at 2-4 (describing internal "analytical framework" without referencing the CRC); Ex. 26 at 1-4 (describing internal risk-scoring process without mentioning the CRC).

[9] *See* statement of SEC Chair Gary Gensler, https://tinyurl.com/mtrnkbn2.

do not require Coinbase to disclose its executive team's impression of the SEC's "tone" or speculate about whether the SEC might take a position in the future that is incompatible with the securities laws. Opp. 11, 26. Even the SEC disagreed, with a spokesperson issuing a rare clarification in a Financial Times article.[10] Although Chair Gensler reportedly said in February 2023 that all crypto tokens "other than bitcoin" "fall within the SEC's jurisdiction,"[11] the SEC has *not* taken that position in *any* of its enforcement actions, including against Coinbase.

While Plaintiffs purport to recognize the black-letter law that a company need not disclose unalleged and unadjudicated wrongdoing, Opp. 27, that is exactly the basis of their claim.[12] Far from being "generic," Opp. 28, Coinbase's disclosures specifically addressed the risk that Plaintiffs now claim was concealed; namely, that Coinbase's characterization of crypto products and services—which Coinbase warned was "subject to a high degree of uncertainty"—could subject it "to regulatory

---

[10] *See* https://www.ft.com/content/1f873dd5-df8f-4cfc-bb21-ef83ed11fb4d.

[11] *See* http://tinyurl.com/w47cemxp.

[12] Plaintiffs' cases on this point are inapposite because they concern undisclosed risks that were squarely inconsistent with the challenged statements. *See Becton*, 620 F. Supp. 3d at 186 (undisclosed "de facto demand" by the FDA to cease shipping a defective product); *Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 344, 350 (E.D. Pa. 2014) (undisclosed FDA statement following rejection of a drug application that data submitted in connection with resubmitted application would be "unusual … to provide adequate evidence of efficacy."); *In re Able Lab. Sec. Litig.*, 2008 WL 1967509, at *16 (D.N.J. Mar. 24, 2008) (undisclosed post-inspection FDA notice identifying "serious problems" with "manufacturing process").

10

scrutiny, inquiries, [and] investigations." *See* Appendix A, Statement 52.

### b.    Plaintiffs Challenge Nonactionable Opinions

Defendants have always believed that Coinbase does not list securities on its platform and that its staking services are also not a security. Mot. 30-31. These are nonactionable opinions based on Defendants' well-formed understanding of the securities laws. Plaintiffs' argument that Defendants lacked a reasonable basis for their opinions is impossible to square with the numerous recent cases siding with Defendants. *Id.* The allegation that some assets had higher third-party risk scores than others, Opp. 25-27, does not in any way mean Coinbase "determined that they were likely to be securities." The CRC scores are not internal assessments made by Coinbase, let alone a regulatory or judicial assessment of whether any transaction involving a particular asset is or is not or even might be a security.

### B.    Plaintiffs Fail To Plead Scienter

Plaintiffs agree that scienter requires "evidence of either recklessness or conscious behavior." Opp. 30. While proof of motive can "support" a finding of scienter, it "may not, on its own, establish scienter." *Id.* at 30; Mot. 32; *Endo Intl., PLC*, 351 F. Supp. 3d at 904. Scienter must be shown "with respect to *each* [D]efendant," *Winer*, 503 F.3d at 337 (rejecting group pleading), and Plaintiffs must allege with particularity on a defendant-by-defendant and statement-by-statement basis that the challenged statements were made with deliberate recklessness. *See In*

*re Great Atl. & P. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004). Plaintiffs cannot allege "corporate scienter" unless they show that "someone whose intent could be imputed to [Coinbase] acted with the requisite scienter." *In re Hertz Glob. Holdings, Inc. Secs. Litig.*, 2017 WL 1536223, at *23 (D.N.J. Apr. 27, 2017).

### 1.    Plaintiffs Fail to Allege Any Motive To Commit Fraud

Plaintiffs admit that most of Defendants' (limited) stock sales were made as part of Coinbase's direct listing over just two days in April 2021, Opp. 39-40, yet Plaintiffs do not dispute that such stock sales are a necessary and disclosed part of a direct listing. Mot. 32-33. Plaintiffs' only response to Defendants' 10b5-1 trading plans, Opp. 40-41, is to engage in fact-free (and fundamentally harmful) speculation that Defendants entered into their plans with fraudulent intent. Unlike the cases Plaintiffs cite, no facts suggest that the timing of the 10b5-1 plans was linked to any attempt to increase Coinbase's stock price "immediately before the scheduled sales," *see Employees' Ret. System of Govt. of the Virgin Islands v. Blanford*, 794 F.3d 297, 309 (2d Cir. 2015)—to the contrary, the trading plans caused Defendants to sell at some of the lowest prices of the putative class period. *See* Ex. 21; *see also In re Lululemon Secs. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014) (class period trading plans are valid absent allegations suggesting "that [defendant] entered into the [trading plan] 'strategically' so as to capitalize on insider knowledge").[13]

---

[13] The putative class period starts on the date Coinbase became a public company

Plaintiffs also do not dispute that Mr. Armstrong sold less than 2% of his holdings during the putative class period, Mot. 33-34 & n.11, which contradicts fraudulent intent because Armstrong experienced the same stock price volatility as the putative class members. *See In re Oracle Corp.*, 867 A.2d 904, 954 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005) (retaining a "huge stake in the company" before the stock drop is inconsistent with "seeking to make an unfair buck").

### 2.    No Conscious Misbehavior Or Recklessness

Even if Plaintiffs could allege motive, their failure to allege conscious misbehavior or recklessness dooms their claim. *See Inst. Inv. Grp., v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009). Plaintiffs' fleeting assertion that Defendants' intent in making the challenged statements is "irrelevant" to the scienter inquiry, Opp. 32, is wrong. "Scienter is a mental state embracing *intent* to deceive, manipulate, or defraud." *City of Roseville Emps' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 674 (3d Cir. 2011).[14]

---

and covers nearly the entire time since. Plaintiffs' cited cases involved narrower class periods. Opp. 40-41 (citing cases). There is nothing "unusual or suspicious" about Defendants entering into trading plans during a multi-year class period. *See In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *19 (C.D. Cal. May 23, 2008). That is exactly what individuals situated like Defendants are supposed to do.

[14] Plaintiffs' case on this point, *Semerenko v. Cendant Corp.,* is consistent. There, the Third Circuit considered whether a defendant's intent was relevant to the "in connection with" element needed for a Section 10(b) claim. 223 F.3d 165, 176 (3d Cir. 2000). The court's analysis did not touch scienter; in fact, the court instructed the district court "to consider whether" to dismiss on scienter. *Id.* at 187-88.

13

**Security Statements**: Plaintiffs concede that there was no bankruptcy risk to conceal, and it defies logic that Defendants could have had fraudulent intent to conceal a risk they had no reason to believe even existed. *See supra* Section I.A.1.b. Armstrong did not "admit[]" knowledge of any bankruptcy-related risks, Opp. 32; he said that Coinbase had "no risk of bankruptcy," added the risk factor because of SAB 121, and should have "communicate[d] proactively when this risk disclosure was added." Mot. 35. Coinbase's letter to the SEC shows that Coinbase did *not* believe there was any risk of customer asset loss in a bankruptcy. The letter explicitly states the opposite: "[i]n the event of insolvency or bankruptcy of Coinbase Custody, [client] assets do not become property of the estate, and creditors will have no rights to such assets." Cecchi Decl., Ex. B at 2. Lastly, the "core operations" theory provides no support, Opp. 40,[15] and Plaintiffs fail to dispute that temporal proximity allegations alone, ¶¶ 388-90, do not show scienter. Mot. 40.

**Trading Statements**: Plaintiffs fail to allege any facts suggesting any Defendant knew about any purported plans to engage in proprietary trading, let alone intended to mislead investors about them. Generally alleging that Coinbase discouraged sharing information about the Risk Solutions group is impermissible group pleading and does not establish any particular Defendant's scienter. *Winer*,

---

[15] Plaintiffs' authority, *In re Allergan Generic Drug Pricing Sec. Litig.*, concerned pricing of a key Allergan product. 2019 WL 3562134, at *12 (D.N.J. Aug. 6, 2019).

14

503 F.3d at 337. Nor is it otherwise indicative of scienter, as the group was a fledgling initiative "established to facilitate client-driven crypto transactions," Ex. 1 at 2. The more compelling and obvious reason to not share information about the group is to shield it from competitors and assess its viability before publicizing it at all. And while Plaintiffs claim that Haas was "involved in the creation of" the Risk Solutions group, Opp. 34 & ¶ 380, in the same breath, the *WSJ* notes that the group was formed "to trade crypto *for clients*," Mot. 37—a point Plaintiffs ignore.

**Regulatory Risk Statements**: The SEC's decision to take the unfounded position that transactions involving certain assets involve the offer and sale of securities does not establish that Defendants should have known those assets were securities all along. This is especially true in light of the SEC's own inconsistency on the issue, Mot. 38, and the well-documented uncertainty surrounding the issue since well before the beginning of the class period.

Nor is there a single particularized allegation suggesting that any Defendant believed Coinbase listed securities or was privy to clandestine information about the SEC's (evolving) views. There are also no allegations that any Executive Defendants were even aware of the CRC scores that date back to 2019 and 2020 or believed that those scores reflected a unique securities law risk. Defendants' statements simply reflect their sincerely held, defensible, position—that Coinbase has since formally taken in court—that the Company does not list securities on its platform.

15

### C.    Plaintiffs Fail To Plead Loss Causation

Plaintiffs cannot point to a "corrective" disclosure of a previously-concealed "truth" that was "a substantial factor" in causing a stock price drop. Mot. 40-42.

**Bankruptcy Risk**: Any corrective information in the May 2022 10-Q was already revealed by SAB 121 because the allegedly concealed risk applied to *all* entities that safeguard assets for users, not just Coinbase customers. Plaintiffs call this a "truth on the market" defense, Opp. 42, but Plaintiffs are required to show that "losses are related specifically to the market's discovery of the misrepresentation." *Pure Earth, Inc. v. Call*, 531 F. App'x 256, 260 (3d Cir. 2013).

**Trading**: Even if "unproven" allegations "reasonably perceived … as true" can be corrective facts, Opp. 43, unsubstantiated anonymous allegations cannot. The *WSJ* article did not disclose any insider source with "personal knowledge of the facts [] alleged." *In re BofI Holding Inc. Sec. Litig.*, 977 F.3d 781, 792-93 (9th Cir. 2020).

**Regulatory Risk**: Plaintiffs do not and cannot plead a *concealed* risk that was disclosed in the normal course announcements of the SEC investigation (¶ 398), Wells notice (¶ 402), or SEC complaint (¶ 405), because Coinbase repeatedly warned that the SEC could disagree with its views and subject Coinbase to "legal or regulatory action," *see*, *e.g.*, Ex. 7 at 29; Mot. 8-10.

## II.    PLAINTIFFS FAIL TO PLEAD A SECURITIES ACT CLAIM

### A.    Plaintiffs Lack Standing To Allege Securities Act Claims

Plaintiffs cannot trace their offering day purchase of 350 shares to the

16

challenged prospectus, as they concede is required, Opp. 45, merely because "approximately 88%" of shares were registered when they purchased. ¶¶ 40-42. In the out-of-circuit district court case on which they rely, Opp. 45, the plaintiffs purchased 15% of all shares traded on the first day of the offering. *In re EveryWare Glob. Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 866 (S.D. Ohio 2016). Plaintiffs' much smaller purchases make it just as "plausibl[e]" they purchased *unregistered* shares, *Slack Techs., LLC v. Pirani,* 598 U.S. 759, 765 (2023)[16]; *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *17 (D.N.J. Dec. 31, 2018).

Plaintiffs do not dispute that Section 12 requires tracing and that aftermarket purchasers lack standing. Plaintiffs are wrong that Section 12(a)(2) reaches "***any*** share offered or sold by means of a misleading prospectus, regardless of whether the share is registered." Opp. 46. Plaintiffs' case predates *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), which held that liability must be connected to the prospectus.

## B.    Plaintiffs Fail To Plead A Section 11 Claim

Plaintiffs "did not allege ordinary negligence," *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 273 (3d Cir. 2006), as evidenced by their use of the same allegations in its Securities and Exchange Act Claims. *See, e.g.*, ¶¶ 480, 482, 490-

---

[16] In one of the only Circuit-level cases on the issue, the Fifth Circuit rejected standing based on "nothing more than statistics indicating a high mathematical probability … that at least some of their shares were issued pursuant to the challenged registration statement." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 492 n.6, 494 (5th Cir. 2005) (no tracing where 90% of shares were registered).

17

91. But under either Rule 8 or 9(b), Plaintiffs fail to plead falsity. *Supra* Section I.A. In addition, Plaintiffs fail to plead the elements of an Item 105 or 303 violation, including actual knowledge of a bankruptcy risk[17]or a known trend or uncertainty reasonably expected to cause a material financial impact. ¶ 494; Mot. 47.

### C.    Plaintiffs Fail To Plead A Section 12 Claim

Plaintiffs' Section 12 claim is based on the same statements as their Section 11 claim, and should be dismissed for the same reasons. Mot. 47. Plaintiffs also concede that neither Coinbase nor Defendants Kramer or Rajaram are "statutory sellers" because they did not sell any shares in the direct listing. Mot. 48.[18]

## III.    PLAINTIFFS FAIL TO PLEAD CONTROL PERSON LIABILITY

Plaintiffs do not dispute that their control person claims should be dismissed if they fail to plead predicate claims under Sections 10(b) and 11. Mot. 48.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC with prejudice.

---

[17] Plaintiffs do not defend their allegations that any omission relating to trading violated Items 105 and 303. ¶¶ 492-99.

[18] Plaintiffs' allegations are also deficient for the remaining Defendants, especially directors not alleged to have undertaken any solicitation activities. Opp. 48. Plaintiffs' cases note that "signing a registration, alone, may not always suffice," *Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 549 (N.D. Cal. 2009), and conclusory assertions are insufficient, *Emps.' Ret. Sys. of the Gov't of the Virgin Islands v. J.P. Morgan Chase & Co.*, 804 F. Supp. 2d 141, 151 (S.D.N.Y. 2011).

Dated: December 21, 2023

Respectfully submitted,

**LATHAM & WATKINS LLP**

By: /s/ *Kevin M. McDonough*
Kevin M. McDonough
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Morgan E. Whitworth (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
morgan.whitworth@lw.com

*Attorneys for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson*

19