**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

*Additional counsel on signature page*

*Attorneys for Defendants Coinbase Global, Inc.,
Brian Armstrong, Alesia J. Haas, Emilie Choi,
Paul Grewal, Jennifer Jones, Marc Andreessen,
Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer,
Gokul Rajaram, and Fred Wilson*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civ. No. 2:22-cv-04915-BRM-LDW |
|  | Hon. Brian R. Martinotti |
|  | Motion Day: October 21, 2024 |
|  | **Oral Argument Requested** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S SEPTEMBER 5, 2024 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 85]**

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................1

II.    FACTUAL BACKGROUND........................................................................3

III.    LEGAL STANDARD ............................................................................7

IV.    ARGUMENT.....................................................................................7

    A.    The Court Overlooked Defendants' Argument That Plaintiffs' Securities Act Claims Fail To Satisfy Rule 8's Pleading Standard.................................................................................7

    B.    Defendants Showed That Plaintiffs' Failure to Allege Contemporaneous Falsity Warrants Dismissal Under Both Rule 8 and Rule 9(b) ...................................................................9

    C.    The Court Has Already Determined That Plaintiffs Failed to Plead Contemporaneous Falsity for the Proprietary Trading Statements ...............................................................11

V.    CONCLUSION..................................................................................13

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*,
114 F. Supp. 2d 316 (D.N.J. 2000) ...................................................................10, 11

*Chen v. Missfresh Ltd.*,
701 F. Supp. 3d 236 (S.D.N.Y. 2023) ..............................................................10, 13

*In re Coty Inc. Sec. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016).................................................10, 13

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014) ......................................................................12

*Perez v. Express Scripts, Inc.*,
2023 WL 2570145 (D.N.J. Mar. 20, 2023) ..............................................................7

*Se. Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
2015 WL 3833849 (M.D. Pa. June 22, 2015)...........................................................9

*Wandel v. Gao*,
590 F. Supp. 3d 630 (S.D.N.Y. 2022) ..............................................................10, 13

*Zucker v. Quasha*,
891 F.Supp. 1010 (D.N.J. 1995)............................................................................10

### RULES

Civ. L.R. 7.1(i) ...............................................................................................................7

Fed. R. Civ. P. 8 .....................................................................................................*passim*

Fed. R. Civ. P. 9(b) ................................................................................................*passim*

## I.    INTRODUCTION

Defendants seek reconsideration of one narrow part of the Court's September 5, 2024 Order ("Order").  The Court's Order allows Plaintiffs' Securities Act claims to proceed on a proprietary trading theory, even though the Court dismissed equivalent Exchange Act claims on a ground that is equally applicable under the Securities Act:  Plaintiffs' failure to plead contemporaneous falsity.  The Securities Act claims should have been dismissed on that ground too, because as the Court held in its Order, Plaintiffs failed to plead "*when the plans for Coinbase's proprietary trading venture were supposedly made.*"  ECF No. 84 at 27 n.18 (emphasis added).

But the Court did not dismiss the Securities Act claims because it concluded that Defendants made this contemporaneous falsity argument only as to Plaintiffs' Exchange Act claims.  The Court  appears to have overlooked Defendants' argument that Plaintiffs failed to plead falsity under *any* pleading standard, ECF No. 78-1 ("Motion to Dismiss") at 46 and Reply at 17 ("*under either Rule 8* or Rule 9(b), Plaintiffs  fail  to  plead  falsity.*"  (emphasis  added));  Defendants'  express incorporation of their falsity arguments from the Exchange Act sections of their opening and reply briefs into the Securities Act sections, *id.*; as well as Defendants' argument within the Securities Act section of the briefing that Plaintiffs failed to allege an omission that existed when the challenged statements were made in the April 2021 offering documents, *id*. at 46-47.  Indeed, Plaintiffs never argued that

Defendants failed to make falsity arguments under Rule 8, nor did Plaintiffs defend the Securities Act claims by arguing waiver of any Rule 8 arguments. Defendants therefore seek reconsideration of the Court's ruling as to the Securities Act proprietary trading claims and request that Plaintiffs' proprietary trading claims be dismissed in their entirety.

The logic of the Court's contemporaneous falsity analysis requires that the Securities Act proprietary trading claims be dismissed. The Court dismissed the Exchange Act proprietary trading claims on two grounds. The first turned on Plaintiffs' reliance on the September 2022 Wall Street Journal ("WSJ") article that formed the basis of Plaintiffs' claim. Order at 27. The Court held that the WSJ allegations were too vague to satisfy Rule 9(b). But the Court also held apart from its Rule 9(b) ruling, that "Defendants identified" a second ground for dismissal of the proprietary trading claim: "Plaintiffs did not raise allegations as to *when* the plans for Coinbase's proprietary trading venture were supposedly made," and therefore failed to allege the "'contemporaneous falsity'" of the challenged proprietary trading statements. *Id.* at 27 n.18 (emphasis added).

That contemporaneous falsity ruling applies equally under Rule 8, and it applies with even more force to the Securities Act proprietary trading claims because the only statements challenged through the Securities Act were made in April 2021 (the very beginning of the class period). As the Court recognized in its Exchange

2

Act ruling, Plaintiffs did not allege that Defendants engaged in proprietary trading (or had plans to do so) *as early as April 2021*. Instead, Plaintiffs relied only on the September 2022 WSJ article, which discusses a proprietary trading group formed months later and a "test trade" completed more than a year later. *Id.*

Because the contemporaneous falsity ground the Court identified as warranting dismissal of the Exchange Act proprietary trading claims applies with equal force under Rule 8, the proprietary trading claims should be dismissed no matter the pleading standard and no matter whether challenged under the Exchange Act or Securities Act. Defendants respectfully seek reconsideration of this narrow portion of the Court's September 5, 2024 Order because the Court overlooked Defendants' arguments warranting dismissal.

## II.    FACTUAL BACKGROUND

Coinbase issued offering materials in connection with its April 14, 2021 direct listing that contained fulsome disclosures about Coinbase's business model, its long-term investments in crypto assets, and its participation in crypto asset transactions solely as an accommodation to fulfill customer orders. Motion to Dismiss at 7-8, 20-21. Plaintiffs claim that four of the statements contained in the offering materials concerning so-called proprietary trading are actionable under the Securities Act.

3

SAC ¶¶ 484-89; ECF No. 78-2 at 32-33, 35-37 ("Appendix A, Statements" 69-71, 76-81) (the "Securities Act Proprietary Trading Statements"); Order at 7.[1]

On September 22, 2022, the Wall Street Journal published an article relying exclusively on anonymous sources who claimed that Coinbase started a Risk Solutions group in *July 2021* "to trade crypto for clients," the group only later "made plans to begin making trades with Coinbase's cash," and it did not make an alleged "test trade" until some point "earlier [in 2022]" before "sour[ing]" on the idea. Motion to Dismiss at 2-3, 6; ECF No. 78-4 ("WSJ Article") at 1-4.

Plaintiffs allege under both the Exchange Act and the Securities Act that the WSJ article demonstrates that even at the time of its direct listing in April 2021, Coinbase "already intended to engage in proprietary trading." SAC ¶ 299 (Exchange Act claims); *see also* SAC ¶¶ 490 (Securities Act claims). The specific proprietary trading statements challenged under both Acts are identical. *Compare* Appendix A at 10-13 (Statements 18-23) *with id.* at 32-33, 35-37 (Statements 69-71, 76-81).

---

[1] These four statements are pled as misleading multiple times in the SAC, and include the following: "[w]e do not proprietarily trade against our clients," SAC ¶¶ 472, 484; "[w]e view our crypto asset investments as long term holdings and we do not plan to engage in regular trading of crypto assets," SAC ¶¶ 473, 485; "we built a culture that doesn't take shortcuts to try and make a quick buck," SAC ¶¶ 473, 489; and "[p]eriodically, as an accommodation to customers, the Company may fulfill customer transactions using the Company's own crypto assets," SAC ¶¶ 488; *see also* ¶¶ 473, 486, 487.

Defendants moved to dismiss the proprietary trading claims as alleged under both the Exchange Act and Securities Act for failure to plead any false or misleading statements or omissions. Motion to Dismiss at 20-25; 46-47. Defendants argued in both their opening and reply briefs that Plaintiffs' Securities Act claims should be dismissed because Plaintiffs "fail[ed] to plead the requisite element of material falsity *under any standard.*" *Id.* at 46 (emphasis added); ECF No. 80 ("Reply") at 17-18 ("[*U]nder either Rule 8* or Rule 9(b), Plaintiffs fail to plead falsity." (emphasis added)). Defendants then referred back to the arguments they had previously made (including on contemporaneous falsity), *id.*, and Defendants expressly argued that Plaintiffs could not recast their argument as a pure omission claim under the Securities Act for the same timing reason, *i.e.*, "Plaintiffs fail to plead that . . . any purported proprietary trading was a known risk or a known trend reasonably expected to impact Coinbase's financial results when the challenged statements were made in the April 2021 registration statement." Motion to Dismiss at 46-47. Plaintiffs failed to respond to this argument, Reply at 18 n.17, but the Court did not address Plaintiffs' pure omission theory of Securities Act liability.

Defendants also argued that Plaintiffs' Section 12 claims should be dismissed for the same reason as their Section 11 claims (*i.e.*, failure to plead falsity) because they are based on the same misstatements, Motion to Dismiss at 47; Reply at 18, and that Plaintiffs' Section 15 claims for control person liability should be dismissed

5

because they fail to state a predicate claim under Section 11, Motion to Dismiss at 48; Reply at 18.

In their Opposition, Plaintiffs devoted only one sentence to defending their falsity allegations for their Securities Act claims: "Regardless, for the reasons set forth in Sections I.A.1-3, *supra*, the Complaint pleads that Defendants made material misstatements under either standard." ECF No. 79 ("Opposition") at 47. Plaintiffs did not argue that Defendants waived any falsity arguments by not restating them under a Rule 8 standard. Nor did Plaintiffs argue that the incorporated Exchange Act falsity arguments failed for any independent reason under Rule 8.

The Court dismissed the Exchange Act proprietary trading claims because the WSJ article that formed the basis of Plaintiffs' falsity claims "does not provide the sufficient level of detail required by the heightened pleading standard [applicable to Section 10(b) claims] and does not indicate an independent investigative effort." Order at 27. The Court also held that "Defendants identified another basis" for dismissal of the proprietary trading claims: "Plaintiffs did not raise allegations as to when the plans for Coinbase's proprietary trading venture were supposedly made," and therefore failed to allege "'contemporaneous falsity'" of the challenged Proprietary Trading Statements. *Id.* at 27 n.18. But the Court declined to dismiss the very same statements and omissions as alleged under the Securities Act, holding that "the parties did not address whether Plaintiffs' allegations that the Offering

6

Materials omitted material facts as to Coinbase's involvement in proprietary trading of cryptocurrency on its own exchange adequately support the Securities Act Claims under the liberal pleading standard of Rule 8." *Id.* at 45 n.30.

## III.   LEGAL STANDARD

New Jersey Local Civil Rule 7.1(i) permits a party to file a motion for reconsideration "setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." L. Civ. R. 7.1(i).  Relief on a motion for reconsideration is warranted when there is a "need to correct a clear error of law or fact or to prevent manifest injustice." *Perez v. Express Scripts, Inc.*, 2023 WL 2570145, at *1 (D.N.J. Mar. 20, 2023), *aff'd*, 2024 WL 957978 (3d Cir. Mar. 6, 2024) (granting summary judgment on reconsideration because of overlooked evidence).  The Court should grant a motion to reconsider "if its prior decision overlooked a factual or legal issue that may alter the disposition of the matter." *Id.* at *2.

## IV.   ARGUMENT

### A.   The Court Overlooked Defendants' Argument That Plaintiffs' Securities Act Claims Fail To Satisfy Rule 8's Pleading Standard

The Court's decision denying dismissal of the Securities Act proprietary trading claims appears to have overlooked dispositive arguments that Defendants made.  The Court found that "the parties did not address whether Plaintiffs' allegations" concerning the Securities Act proprietary trading statements

7

"adequately support the Securities Act Claims under the liberal pleading standard of Rule 8."  Order at 45 n.30. Defendants respectfully submit that the briefing record does not support that finding.

In Defendants' Motion to Dismiss, under the heading "The SAC Fails To Plead A Section 11 Claim," Defendants argued that "Plaintiffs fail to plead the requisite element of material falsity *under any standard.*"  Motion to Dismiss at 46 (emphasis added); *see also* Reply at 17 ("*under either Rule 8* or Rule 9(b), Plaintiffs fail to plead falsity." (emphasis added)).[2]  Defendants also argued that "Plaintiffs' allegations fail to show that Defendants made any material false statements" and "should be dismissed for the same reasons as the Exchange Act claims."  Motion to Dismiss at 46; *see also* Reply at 18. Only the first falsity argument in the Exchange Act section referenced Rule 9(b).  Motion to Dismiss at 21-23.[3]

In addition, in response to Plaintiffs' pure omission theory of liability, Defendants expressly argued that Plaintiffs "fail[ed] in their attempt to recast their . . . trading claims as undisclosed material risks or trends under Item 105 or Item 303

---

[2] To be sure, Defendants *also* argued that Rule 9(b) and the PSLRA's heightened pleading standard applied instead of Rule 8. *Id.*  But as the briefing makes clear, Defendants then argued Rule 8 in the alternative.

[3] Defendants also argued that the Section 12 claims should be dismissed for the same reason, Motion to Dismiss at 47; Reply at 18, and the Section 15 claims should be dismissed because they fail to state a predicate claim under Section 11, Motion to Dismiss at 48; Reply at 18.

of SEC Regulation S-K" because "Plaintiffs fail to plead that . . . any purported proprietary trading was a known risk or a known trend reasonably expected to impact Coinbase's financial results when the challenged statements were made in the April 2021 registration statement." *Id.* at 46-47. Defendants did not suggest this was a Rule 9(b) theory; Plaintiffs never argued that it was—and indeed, entirely failed to respond at all, Reply at 18 n.17. Yet the Court did not address this pure omission theory of Securities Act liability in the Order.

This briefing record demonstrates that the Court appears to have overlooked Defendants' argument that Plaintiffs' proprietary trading Securities Act claims fail under both Rule 9(b) and Rule 8. This warrants reconsideration of the Court's Order.

**B.    Defendants Showed That Plaintiffs' Failure to Allege Contemporaneous Falsity Warrants Dismissal Under Both Rule 8 and Rule 9(b)**

The Court correctly recognized that Plaintiffs may only bring Securities Act claims "if [the] registration statement, *as of its effective date*: (1) 'contained an untrue statement of material fact'; (2) 'omitted to state a material fact required to be stated therein'; or (3) omitted to state a material fact 'necessary to make the statements therein not misleading.'" Order at 42 (emphasis added, citations omitted). It is also black-letter law that a plaintiff cannot state a claim based on hindsight. *See Se. Pennsylvania Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2015 WL 3833849, at *34 (M.D. Pa. June 22, 2015) ("[O]missions or statements that

9

create a misleading impression in hindsight 'are not sufficient to constitute the basis of a securities action under section 11 or section 12(2).'" (quoting *Zucker v. Quasha*, 891 F.Supp. 1010, 1017 (D.N.J. 1995))).

Rule 8 does not allow otherwise. Courts applying Rule 8's notice pleading standard routinely reject Securities Act claims like Plaintiffs' that depend upon omissions that are not alleged to have existed at the time of the offering. *See, e.g.*, *Chen v. Missfresh Ltd.*, 701 F. Supp. 3d 236, 255 (S.D.N.Y. 2023) (dismissing Securities Act claim where "plaintiffs have not plausibly alleged[] that the [omitted] facts … were in existence at the time of the offering"); *Wandel v. Gao*, 590 F. Supp. 3d 630, 641 (S.D.N.Y. 2022) (dismissing Securities Act claim based on omissions relating to the COVID-19 pandemic where "the risk of COVID-19 was neither known nor knowable to [defendant] by the start of the IPO"); *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *11 (S.D.N.Y. Mar. 29, 2016) (dismissing Securities Act claim where plaintiffs "failed to allege facts to establish that any of the[] alleged events were occurring *at the time of the IPO*, and the fact that some of these events occurred *after* the Registration Statement became effective is simply not enough to state a Section 11 claim" (emphasis added)).

Indeed, this district court has squarely rejected the argument that plaintiffs "need not plead contemporaneous facts" when they bring Securities Act claims under a negligence theory. *Castlerock Mgmt. Ltd. v. Ultralife Batteries, Inc.*, 114 F.

10

Supp. 2d 316, 323 n.5 (D.N.J. 2000).  Any Securities Act plaintiff must "at a minimum, plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering."  *Id.* at 323.

Thus, as Defendants argued, Plaintiffs' proprietary trading theory is not actionable under either the Securities Act or Exchange Act, because Plaintiffs failed to plead "contemporaneous falsity," Motion to Dismiss at 24-25 & n.8; *see also id.* at 46 (incorporating Exchange Act falsity arguments), and because the Securities Act claim fares no better when recast as an omission based on subsequent events, *id.* at 46-47.

### C.    The Court Has Already Determined That Plaintiffs Failed to Plead Contemporaneous Falsity for the Proprietary Trading Statements

The Securities Act proprietary trading statements are limited to four that were made in the run-up to the direct listing and incorporated into the final Prospectus that Coinbase filed with the SEC on *April 14, 2021*.  Motion to Dismiss at 32-33, 35-37; Appendix A, Statements 69-71, 76-81; SAC ¶¶ 471-73, 484-89.  Plaintiffs' *only* basis for alleging the falsity of those statements is a WSJ article that was published on *September 22, 2022*.  WSJ Article at 1.  The WSJ article claimed—based solely on anonymous sources—that Coinbase "established" a Risk Solutions group in **July 2021** "to trade crypto for clients," but only subsequently "made plans to begin making trades with Coinbase's cash" and did not make its only supposed "test trade" until some point "earlier [**in 2022**]."  *Id.* at 1-4.  As Defendants argued

11

in their Motion to Dismiss, the April 2021 proprietary trading statements "were made *before* Coinbase allegedly made the so-called 'test trade' and cannot be rendered misleading by something new that happened months later."  Motion to Dismiss at 24 n.8 (emphasis added) (citing *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014)).

The Court has already determined that this plain and insurmountable pleading deficiency "warrants dismissal of Plaintiffs' claims premised upon [this] subset of the Proprietary Trading Statements."  Order at 27 n.18; *id.* ("Plaintiffs did not raise allegations as to when the plans for Coinbase's proprietary trading venture were supposedly made" or "adequately allege the point at which the Proprietary Trading Statements actually were false.").  Agreeing with Defendants, the Court explained that "a test trade made at some point in 2022 cannot show contemporaneous falsity for any statements that came before it including all of the 2021 statements."  *Id.* (quoting Motion to Dismiss at 24).  Plaintiffs' timing problem is magnified for the subset of statements challenged under the Securities Act, as those statements were all made a year before the alleged "test trade" and three months before Coinbase even allegedly formed the so-called proprietary trading group.  *Compare* SAC ¶¶ 484-89 (only challenging statements made on or before April 14, 2021) *with* SAC ¶¶ 19, 144, 241, 299, 380, 400, 474, 490, 503 (alleging that Coinbase formed proprietary trading group in "July 2021").

12

As noted above, courts routinely find that failure to establish the contemporaneous falsity of a challenged statement or omission is fatal to Securities Act claims—even under the more liberal pleading standard of Rule 8. *See e.g., Chen*, 701 F. Supp. 3d at 255; *Wandel,* 590 F. Supp. 3d at 643; *In re Coty*, 2016 WL 1271065, at *5-11. Because Plaintiffs indisputably failed to allege that any of the April 2021 proprietary trading statements were false or misleading or omitted material information at the time they were made—a critical deficiency that Defendants raised in their briefing and that the Court has already recognized— Plaintiffs' Securities Act claims should dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court reconsider its September 5, 2024 Order and dismiss Plaintiffs' Securities Act claims premised on proprietary trading statements and omissions.

Dated: September 19, 2024          Respectfully submitted,
New York, New York

**LATHAM & WATKINS LLP**

By: /s/ *Kevin M. McDonough*
    Kevin M. McDonough
    1271 Avenue of the Americas
    New York, NY 10020
    Telephone: (212) 906-1200
    kevin.mcdonough@lw.com

13

Andrew B. Clubok (*pro hac vice*)
Susan E. Engel (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Morgan E. Whitworth (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
morgan.whitworth@lw.com

*Attorneys for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson*