**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

*Additional counsel on signature page*

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas, Emilie Choi,*
*Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer,*
*Gokul Rajaram, and Fred Wilson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>Hon. Leda Dunn Wettre<br><br>**DEFENDANTS' ANSWER TO PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Defendants Coinbase Global, Inc. ("Coinbase"), Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson ("Individual Defendants," and collectively with Coinbase, "Defendants"),[1] by and through their undersigned counsel, hereby submit their Answers and Affirmative Defenses to the operative claims and allegations made by Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiffs Ryan R. Firth and Zvia Steinmetz ("Plaintiffs") in their Second Amended Consolidated Class Action Complaint (ECF No. 68) (the "SAC").

Except as otherwise affirmatively stated below, Defendants deny all allegations of the SAC. Any factual averment admitted herein is admitted only to the specific facts and not as to any conclusions, characterizations, implications, innuendos, or speculation contained in any averment or in the SAC as a whole. Moreover, except to the extent expressly admitted herein, Defendants specifically deny any allegations contained in the SAC's headings, footnotes, table of contents, or exhibits. With respect to any purported document cited to or quoted in the SAC,

---

[1] Defendants Coinbase, Armstrong, Haas, Choi, and Grewal are herein referred to, collectively, as "Exchange Act Defendants." Defendants Coinbase, Armstrong, Haas, Jones, Andreessen, Ehrsam, Haun, Kramer, Rajaram, and Wilson are herein referred to, collectively, as "Securities Act Defendants."

Defendants do not admit that the documents are accurate, relevant, or admissible in this action, and Defendants reserve all objections regarding admissibility. The SAC contains purported excerpts from, and references to, a number of documents and third-party publications; such documents and third-party publications speak for themselves, and Defendants refer to the respective documents and third-party publications for their contents. Defendants did not search for or review those documents to determine whether Plaintiffs correctly quoted or interpreted them. The SAC, by its own terms, pleads its Exchange Act claims separately from its Securities Act claims, and Exchange Act Defendants and Securities Act Defendants respond herein accordingly. To the extent the Court finds any Defendant must answer any paragraph to which that Defendant did not respond, each Defendant denies every allegation therein and reserves the right to submit supplemental responses. Defendants expressly reserve the right to amend and/or supplement this Answer, seek leave to amend this Answer, or to modify or assert all claims, defenses, counterclaims, and third-party claims permitted by law.

The Court dismissed portions of Plaintiffs' SAC in an Order dated September 5, 2024 (the "MTD Order"). ECF Nos. 84. Plaintiffs elected not to amend after the MTD Order. Based on the MTD Order, Defendants aver that the following paragraphs of the Complaint are dismissed, and no responses from any Defendant are required: ¶¶ 17-19, 32, 133-148, 241-246, 266-269, 279-283, 289-339, 389, 400-

401.  To the extent responses are required, Defendants respond to these paragraphs below.

Defendants have moved for partial reconsideration of the MTD Order as it pertains to Plaintiffs' allegations regarding so-called proprietary trading (the "Reconsideration Motion").  ECF No. 89.  That Motion is pending.  Should the Court grant the relief requested in the Reconsideration Motion, Defendants aver that the following paragraphs of the Complaint will also be dismissed, and no responses are required:  ¶¶ 467-476, 483-491, 503-504.  Defendants conditionally respond to these paragraphs below pending resolution of the Reconsideration Motion.

The unnumbered paragraphs on page 1 of the SAC do not contain allegations of fact to which a response is required.   To the extent a response is required, Defendants deny the allegations to the extent they purport to assert that there is a basis in fact or law for Plaintiffs' claims against Defendants.  Defendants admit that Plaintiffs purport to bring a federal securities class action on behalf of themselves and (i) a class consisting of all persons and entities that purchased or otherwise acquired the common stock of Coinbase, from April 14, 2021 through June 5, 2023, inclusive (the "Class Period"), and were allegedly damaged thereby (the "Class"); and (ii) a subclass consisting of all persons and entities that purchased or otherwise acquired Coinbase common stock in or traceable to the Offering Materials (the "Securities Act Subclass"), but Defendants deny that this action meets the

prerequisites for a class action under Federal Rule of Civil Procedure 23. Defendants lack knowledge or information sufficient to form a belief as to the second paragraph on page 1 of the SAC as it pertains to the investigation undertaken by Plaintiffs or their representatives and therefore deny those allegations. To the extent that the unnumbered paragraphs contain legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations in the unnumbered paragraphs on page 1.

With respect to specific paragraphs of the SAC, Defendants respond on information and belief as follows:

## ANSWER RESPONSES

1.      Exchange Act Defendants deny that Coinbase "launch[ed]" in 2012. Exchange Act Defendants aver that Coinbase, Inc., a subsidiary of Coinbase Global, Inc. ("Coinbase"), was incorporated in 2012, while Coinbase was incorporated in 2014. Exchange Act Defendants further aver that in April 2014, Coinbase, Inc. became a wholly owned subsidiary of Coinbase. Exchange Act Defendants admit that Coinbase is a consumer-facing trading platform on which crypto assets may be traded, and that it is the "most popular" platform in the United States insofar as it is the largest digital asset trading platform in the United States. To the extent Paragraph 1 purports to characterize the SAC, Exchange Act Defendants

respectfully refer the Court to the SAC for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 1.

2.      Exchange Act Defendants admit that Defendant Armstrong is a co-founder of Coinbase. Exchange Act Defendants further admit that Coinbase provides an end-to-end financial infrastructure platform and has referred to the "flywheel" in which retail users and institutions store assets and drive liquidity, enabling Coinbase to expand the depth and breadth of crypto assets that it offers, and launch new, innovative products and services that attract new customers. Exchange Act Defendants further admit that a large portion of Coinbase's total revenue is generated by transaction fees paid by customers to buy and sell cryptocurrency assets on its platform, and that Coinbase also generates revenues by serving as a cryptocurrency custodian. Exchange Act Defendants further admit that Coinbase offers customers various options to store their assets with Coinbase. Exchange Act Defendants otherwise deny the allegations in Paragraph 2.

3.      Exchange Act Defendants admit that Coinbase generated over $3.4 billion in total revenue between its inception and December 31, 2020, largely from transaction fees that it earned from volume-based trades on its platform by retail users and institutions. Exchange Act Defendants further admit that Coinbase's customers had stored over $90 billion in digital assets across Coinbase's platform as of December 31, 2020. To the extent Paragraph 3 purports to characterize

Coinbase's Offering Materials, Exchange Act Defendants respectfully refer the Court to those Offering Materials for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 3.

4.      Exchange Act Defendants admit that there is no governmental agency that backstops or guarantees crypto assets from losses of customer assets due to any event.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, including because Exchange Act Defendants lack knowledge regarding the mental states of "would-be retail customers."

5.      To the extent Paragraph 5 purports to characterize an announcement by Defendant Armstrong in January 2021, Exchange Act Defendants respectfully refer the Court to that announcement for its complete and accurate contents. Exchange Act Defendants admit that direct listings are an alternative to a traditional IPO, and that in a direct listing, the company's existing shareholders sell stock directly to the public.  Exchange Act Defendants otherwise deny the allegations in Paragraph 5.

6.      Exchange Act Defendants admit that in August 2020, Coinbase's Board granted the "2020 CEO Performance Award" to Defendant Armstrong and respectfully refer the Court to the Offering Materials for a complete and accurate description of the terms of that award.  Exchange Act Defendants further admit that

Armstrong received proceeds greater than $310 million from the sale of a small fraction of his Coinbase stock holdings during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans. Defendants Coinbase, Haas, Choi, and Grewal lack knowledge or information sufficient to form a belief as to the knowledge of Defendant Armstrong. Exchange Act Defendants otherwise deny the allegations in Paragraph 6.

7.      To the extent Paragraph 7 purports to characterize and quote from a newsletter published by The Hustle, Exchange Act Defendants respectfully refer the Court to that newsletter for its complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, including because Exchange Act Defendants lack knowledge regarding the mental states of "[m]arket commentators."

8.      Exchange Act Defendants deny that the prerequisites for a class action have been met or that the Second Amended Complaint ("SAC") is maintainable as a class action, but admit that Plaintiffs purport to bring a securities class action with a class period starting on April 14, 2021. Exchange Act Defendants admit that on April 14, 2021, Coinbase became the first major cryptocurrency exchange to go public on a U.S. stock exchange. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether Coinbase was the "first cryptocurrency company in the world to go public." Exchange Act Defendants

further admit that the stock was listed on Nasdaq and opened at $381 per share and that the reference price set prior to the Direct Listing was $250. Exchange Act Defendants further admit that Coinbase's market capitalization reached $112 billion during the first day of trading. Exchange Act Defendants further admit Defendants Armstrong, Haas, and Choi sold shares of Coinbase common stock in the Direct Listing. Exchange Act Defendants deny that Defendant Grewal sold in the Direct Listing. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, including because the phrase "Coinbase insiders" is vague and ambiguous.

9.      To the extent Paragraph 9 purports to characterize and quote from a statement by CNBC, Exchange Act Defendants respectfully refer the Court to that statement for its complete and accurate contents. To the extent Paragraph 9 purports to characterize the Offering Materials, Exchange Act Defendants respectfully refer the Court to the Offering Materials for their complete and accurate contents. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 9.

10.     To the extent Paragraph 10 purports to characterize and quote from Coinbase's SEC filings and statements made by certain Defendants, Exchange Act Defendants respectfully refer the Court to those filings and statements for their

complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 10.

11.     To the extent Paragraph 11 contains legal conclusions, no response is required.  Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors."  Exchange Act Defendants otherwise deny the allegations in Paragraph 11.

12.     To the extent Paragraph 12 purports to characterize and quote from statements made by certain Defendants on May 10, 2022, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 12.

13.     Exchange Act Defendants admit that Defendants Haas, Choi, and Grewal have served as managers for Coinbase Custody at various points in time.  To the extent Paragraph 13 purports to characterize a comment letter submitted to the SEC, Exchange Act Defendants respectfully refer the Court to that letter for its

complete and accurate contents.  Each Exchange Act Defendants lacks knowledge or information sufficient to form a belief as to what the other Exchange Act Defendants personally "understood."  Exchange Act Defendants otherwise deny the allegations in Paragraph 13.

14.    To the extent Paragraph 14 contains legal conclusions, no response is required.  To the extent Paragraph 14 purports to characterize Coinbase's user agreements with institutional customers, Exchange Act Defendants respectfully refer the Court to those agreements for their complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 14.

15.    To the extent Paragraph 15 purports to characterize and quote from Coinbase's user agreements with retail customers, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Exchange Act Defendants deny that Coinbase commingled retail customers' assets to the extent that the SAC alleges that Coinbase did not utilize a ledgering system that protects and identifies retail customers' assets.  Exchange Act Defendants admit that retail customers' assets were (and continue to be) held in an omnibus manner on the blockchain and separately recorded using a ledger system.  Exchange Act Defendants admit that retail transaction revenue comprised 94.9% of

its transaction fee revenues from 2020 through 2022.  Exchange Act Defendants otherwise deny the allegations in Paragraph 15.

16.    To the extent Paragraph 16 purports to characterize and quote from Twitter posts made by Defendant Armstrong on May 10, 2022, Exchange Act Defendants respectfully refer the Court to those Twitter posts for their complete and accurate contents.  Exchange Act Defendants admit that as of May 10, 2022, certain Defendants were aware that no U.S. court had overseen a bankruptcy of a cryptocurrency exchange as of that date.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 16.

17.    To the extent Paragraph 17 purports to characterize commentary from "market commentators," Exchange Act Defendants respectfully refer the Court to the commentary for its complete and accurate contents.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.    To the extent Paragraph 18 purports to characterize statements by certain Defendants, including Defendant Haas's Congressional testimony and statements made in Coinbase's SEC filings, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents.  Exchange

Act Defendants lack knowledge or information sufficient to form a belief as to analysts' concerns about Coinbase. Exchange Act Defendants otherwise deny the allegations in Paragraph 18.

19.    To the extent Paragraph 19 contains legal conclusions, no response is required. To the extent Paragraph 19 purports to characterize the September 22, 2022 article published in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 19.

20.    To the extent Paragraph 20 contains legal conclusions, no response is required. Exchange Act Defendants admit that the first tranche of 3,159,930 stock options vested on July 8, 2021. Exchange Act Defendants further admit that this first tranche vested after the volume weighted average price of Coinbase's shares was at or above $200 for 60 consecutive days. Exchange Act Defendants further admit that Coinbase's stock price closed at $244.29 on July 8, 2021, and that the value of 3,159,930 stock options with an exercise price of $23.46 per share, based on that closing price, was over $697 million. Exchange Act Defendants otherwise deny the allegations in Paragraph 20.

21.    Exchange Act Defendants deny the allegations in Paragraph 21.

22.    To the extent Paragraph 22 purports to characterize laws and regulations, Exchange Act Defendants respectfully refer the Court to such laws and

regulations for the complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 22.

23.      Exchange Act Defendants admit that certain Defendants made statements providing accurate descriptions of Coinbase's asset listing process, including with regard to the process's consideration of *Howey*.   Exchange Act Defendants further admit that certain Defendants expressed Coinbase's position that none of the digital assets listed on its platform were securities, while fully and repeatedly disclosing the risk that the SEC could disagree with Coinbase's listing determinations.  Exchange Act Defendants lack knowledge or information sufficient to form a belief about whether "the Company's susceptibility to adverse regulatory action grew exponentially," including because the term "grew exponentially" is vague with respect to an unquantifiable concept like "susceptibility to adverse regulatory action."   Exchange Act Defendants otherwise deny the allegations in Paragraph 23.   With respect to the allegations in Footnote 1, Exchange Act Defendants admit that Coinbase makes available to its users "staking" services[2] by which it facilitates their participation in transaction validation activities for certain proof-of-stake networks.  Exchange Act Defendants further admit that Coinbase runs software and provides certain administrative services to allow customers to stake

[2] Coinbase offers staking services to individual users through its Coinbase Earn program, and Defendants' responses regarding staking services herein relate to those services.

14

Ether and other select digital assets that operate on a proof-of-stake network. Exchange Act Defendants further admit that as a fee for this service, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls between 15% and 35%, inclusive. Exchange Act Defendants otherwise deny the allegations in Footnote 1. Exchange Act Defendants aver that rewards for staking are determined by the blockchain protocol to which a digital asset is staked, not Coinbase. Coinbase further avers that the fees it earns for its staking services are for administration and IT services, not managerial expertise or effort.

24.     Exchange Act Defendants lack knowledge or information sufficient to form a belief as to "when the SEC began to investigate Coinbase." To the extent Paragraph 24 purports to characterize and quote from certain statements made by certain Defendants, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 24.

25.     Exchange Act Defendants admit that in September 2019, Coinbase and other digital asset businesses founded the Crypto Rating Council ("CRC"), and that the CRC subsequently released a framework based on factors the SEC had identified as relevant to the SEC's securities law analysis with respect to digital assets. To the extent Paragraph 25 purports to characterize and quote from the

CRC's website, Exchange Act Defendants respectfully refer the Court to that website for its complete and accurate contents. To the extent Paragraph 25 contains legal conclusions, no response is required. To the extent Paragraph 25 purports to characterize the SEC Complaint, Exchange Act Defendants respectfully refer the Court to that action for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 25.

26. Exchange Act Defendants admit that in January 2023, the day before a scheduled meeting for the SEC to provide its first substantive responses to Coinbase, the SEC canceled the meeting and told Coinbase it would proceed to enforcement instead. To the extent Paragraph 26 purports to characterize and quote from certain Defendants' public statements, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 26.

27. To the extent Paragraph 27 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 27.

28. To the extent Paragraph 28 purports to characterize and quote from the Consent Order, Exchange Act Defendants respectfully refer the Court to that order for its complete and accurate contents. To the extent Paragraph 28 purports to characterize the contents of the Bank Secrecy Act of 1970, Exchange Act Defendants respectfully refer the Court to that statute for its complete and accurate

contents.  Exchange Act Defendants admit that Coinbase, Inc. entered a settlement with the NYDFS in which it agreed to pay a civil monetary penalty in the amount of $50 million and committed to spending $50 million on improvements and enhancements to its compliance program over two years.  Exchange Act Defendants otherwise deny the allegations in Paragraph 28.

29.    To the extent Paragraph 29 contains legal conclusions, no response is required. To the extent Paragraph 29 purports to characterize and quote from statements made by Coinbase and Defendant Armstrong on May 10, 2022, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 29.

30.    To the extent Paragraph 30 purports to characterize and quote from reports by analysts and market commentators, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 30.

31.    To the extent Paragraph 31 purports to characterize and quote from a July 25, 2022, Bloomberg article, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.  Exchange Act Defendants admit that the price of Coinbase common stock closed at $67.07 on July

25, 2022, and that it closed at $52.93 on July 26, 2022.  Exchange Act Defendants otherwise deny the allegations in Paragraph 31.

32.      To the extent Paragraph 32 purports to characterize the September 22, 2022, article published in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.  To the extent Paragraph 32 purports to characterize and quote from an article published in the Times Square Investment Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 32.

33.      To the extent Paragraph 33 purports to characterize and quote from statements Coinbase made on March 22, 2023 related to the Wells Notice, or "later" statements, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 33.

34.      To the extent Paragraph 34 purports to characterize the SEC Complaint, Exchange Act Defendants respectfully refer the Court to that complaint for its complete and accurate contents.  Exchange Act Defendants admit that Coinbase's stock price closed at $58.71 on June 5, 2023, opened at $47.10 on June

6, 2023, and closed at $51.51 on June 6, 2023.  Exchange Act Defendants otherwise deny the allegations in Paragraph 34.

35.      Paragraph 35 purports to characterize the SAC, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents. Exchange Act Defendants deny that the SAC states any actionable claim.

36.      To the extent that Paragraph 36 contains legal conclusions, no response is required.  To the extent Paragraph 36 purports to characterize the SAC, Exchange Act Defendants respectfully refer the Court to the SAC for its complete and accurate contents.  Exchange Act Defendants admit that Plaintiffs purport to bring claims arising under Sections 10(b) and 20(a) of the Exchange Act and the rules and regulations promulgated thereunder.  Exchange Act Defendants deny that the SAC states any actionable claim.  Exchange Act Defendants otherwise deny the allegations in Paragraph 36.

37.      To the extent that Paragraph 37 contains legal conclusions, no response is required.  To the extent Paragraph 37 purports to characterize the SAC, Exchange Act Defendants respectfully refer the Court to the SAC for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 37.

38.      To the extent that Paragraph 38 contains legal conclusions, no response is required.  To the extent Paragraph 38 purports to characterize the SAC,

Exchange Act Defendants respectfully refer the Court to the SAC for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 38.

39.     To the extent Paragraph 39 contains legal conclusions, no response is required.  To the extent that a response is required, Exchange Act Defendants admit that Coinbase has used the United States mails, interstate telephone communications, and the facilities of Nasdaq.   Exchange Act Defendants otherwise deny the allegations in Paragraph 39.

40.     Defendants deny that any person or entity purchased or otherwise acquired Coinbase common stock at artificially inflated prices during the Class Period.  Defendants further deny that any person or entity suffered damages as a result of any purchase or other acquisition of Coinbase common stock.  Defendants further deny that Defendants have committed any violations of any federal securities laws.  To the extent Paragraph 40 purports to characterize Coinbase's SEC filings, Defendants respectfully refer the Court to those filings for their complete and accurate contents.  Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40.

41.     Defendants deny that any person or entity purchased or otherwise acquired Coinbase common stock at artificially inflated prices during the Class Period.  Defendants further deny that any person or entity suffered damages as a

result of any purchase or other acquisition of Coinbase common stock.  Defendants further deny that Defendants have committed any violations of any federal securities laws.  To the extent Paragraph 41 purports to characterize Coinbase's SEC filings, Defendants respectfully refer the Court to those filings for their complete and accurate contents.  Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41.

42.    Defendants deny that any person or entity purchased or otherwise acquired Coinbase common stock at artificially inflated prices during the Class Period.  Defendants further deny that any person or entity suffered damages as a result of any purchase or other acquisition of Coinbase common stock.  Defendants further deny that Defendants have committed any violations of any federal securities laws.  To the extent Paragraph 42 purports to characterize Coinbase's SEC filings, Defendants respectfully refer the Court to those filings for their complete and accurate contents.  Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42.

43.    Defendants admit that Coinbase is a Delaware corporation that does not maintain a principal executive office.  Defendants further admit that Coinbase is one of the world's leading providers of end-to-end financial infrastructure and technology for the cryptoeconomy.  Defendants further admit that Coinbase's platform provides products and services that enable its retail and institutional

customers to buy, sell, and store certain crypto assets. Defendants deny that Coinbase operates its business through approximately eleven subsidiaries. Defendants aver that Coinbase lists the names of its subsidiaries in its annual Form 10-K filings, excluding the names of subsidiaries that, considered in the aggregate, would not constitute a significant subsidiary as of the end of the year covered by each Form 10-K, in accordance with Item 601(b)(21)(ii) of Regulation S-K. Defendants further aver that Coinbase's 2022 Form 10-K listed 15 subsidiary names, and Coinbase's 2023 Form 10-K listed 18 subsidiary names. Defendants admit that Coinbase Custody Trust Company, LLC is a wholly owned subsidiary of Coinbase that holds certain crypto assets in trust for the benefit of its institutional customers. Defendants further admit that Coinbase Custody Trust Company, LLC provides custodial services to Coinbase's institutional customers in the United States. Defendants further admit that as of December 31, 2021, Coinbase stored over 11.5% of global cryptocurrency assets, worth over $278 billion. Defendants further admit that Coinbase's registration statement in connection with its Direct Listing was declared effective by the SEC on April 1, 2021. Defendants further admit that on April 14, 2021, Coinbase commenced the Direct Listing. Defendants further admit that since that date, Coinbase common stock has traded on the Nasdaq under the ticker symbol "COIN." Defendants otherwise deny the allegations Paragraph 43.

44.    Defendants admit that Defendant Armstrong co-founded Coinbase in 2012 and served as its CEO and Chairman of the Board throughout the Class Period. Defendants further admit that Armstrong was CEO when the Company went public in April 2021 and that he signed the Company's SEC filings in his capacity as CEO. Defendants otherwise deny the allegations in Paragraph 44.

45.    Defendants admit Defendant Haas served as Coinbase's CFO since April 2018 and in that capacity, she signed the Company's SEC filings. To the extent Paragraph 45 purports to characterize Coinbase Custody's July 7, 2020 and July 21, 2022, Foreign Registration Statements, Defendants respectfully refer the Court to those Foreign Registration Statements for their complete and accurate contents. Defendants otherwise deny the allegations in Paragraph 45.

46.    Defendants admit that Defendant Choi has served as Coinbase's COO since June 2019 and President since November 2020, and thus served in those positions throughout the Class Period. Defendants deny that Choi previously served as Coinbase's Vice President of Corporate and Business Development. Defendants aver that Choi previously served as Coinbase's Vice President of Business, Data and International from March 2018 to June 2019. To the extent Paragraph 46 purports to characterize Coinbase Custody's July 7, 2020, Foreign Registration Statement, Defendants respectfully refer the Court to that Foreign Registration Statement for its

complete and accurate contents.    Defendants otherwise deny the allegations in Paragraph 45.

47.    Defendants deny that Defendant Grewal served as Coinbase's Chief Legal Officer starting in July 2020.    Defendants aver that Grewal served as Coinbase's Chief Legal Officer from August 2020, and admit that he remained in that role through the end of the Class Period.  Defendants further admit that Grewal served as a manager of Coinbase Custody during the Class Period.  Defendants further admit that Grewal spoke on behalf of Coinbase through posts on Coinbase's blog during the Class Period.    Defendants otherwise deny the allegations in Paragraph 47.

48.    Defendants admit the allegations in Paragraph 48.

49.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 because it provides a vague and overly broad reference to "Executive Defendants" and provides a vague and overly broad reference to Coinbase's "public statements and disclosures."

50.    Exchange Act Defendants admit the allegations in Paragraph 50.

51.    Exchange Act Defendants admit that "crypto assets" is a term used for any digital asset built using blockchain technology.    Exchange Act Defendants further admit that a blockchain is a secure digital ledger that maintains a record of all transactions that occur on the network.  Exchange Act Defendants further admit

that "token" may be used synonymously with "crypto asset."    Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

52.    Exchange Act Defendants aver that "tokens" or crypto assets refer to digital assets built using blockchain technology.  Exchange Act Defendants admit that the terms "native coin" or "native token" are used to refer to coins or tokens that are created on a given blockchain and therefore include the original coin or token of a particular blockchain, but deny the allegations Paragraph 52 to the extent they suggest that the terms "native coin" or "native token" refer only to the original coin or token created for a given blockchain.  Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether the private key is "often" controlled by the asset's owner.  Exchange Act Defendants otherwise admit the allegations in Paragraph 52.

53.    Exchange Act Defendants admit that crypto platforms like Coinbase create marketplaces for crypto transactions that do not require the buyer and seller to know one another.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.    Exchange Act Defendants admit that the price of Bitcoin has ranged from $77 to $67,617 per coin during a nine-year span prior to the filing of the SAC.

To the extent Paragraph 54 purports to characterize and quote from statements made by Defendant Haas on May 20, 2021 at the Barclays Emerging Payments and Fintech Forum, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55.     Exchange Act Defendants admit that Coinbase operates as a crypto trading platform for retail and institutional customers. Exchange Act Defendants admit that Coinbase defined retail users in its Prospectus to include any individual user with a Coinbase account and defined institutional customers in its Prospectus to include hedge funds, small to large financial institutions, and corporations. Exchange Act Defendants further admit that Coinbase offers institutional prime services through the Prime platform and that Prime offers institutional customers access to deep pools of liquidity across the crypto marketplace and best price execution due to its ability to route trades through a network of connected trading venues. To the extent Paragraph 55 purports to characterize and quote from statements made in Coinbase's SEC filings, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 55.

56.     To the extent Paragraph 56 purports to characterize and quote from statements made in Coinbase's SEC filings, Exchange Act Defendants respectfully refer the Court to those filings for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 56.

57.     Exchange Act Defendants admit that Coinbase stated in its Offering Materials that it was focused on becoming the "primary financial account" for retail users to access the cryptoeconomy. Exchange Act Defendants further admit that Coinbase offers retail and institutional customers the ability to store and transact in crypto assets. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57.

58.     Paragraph 58 purports to characterize and quote from statements made by Defendant Haas on May 20, 2021 at the Barclays Emerging Payments and Fintech Forum, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

59.     Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60.     Exchange Act Defendants admit that recording public and private keys on paper or in a computer file runs the risk that such keys could be copied, lost, or destroyed. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60.

61.     To the extent Paragraph 61 purports to characterize Coinbase's Retail User Agreement, Exchange Act Defendants respectfully refer the Court to that agreement, as it has been amended from time to time, for its complete and accurate contents.  Exchange Act Defendants admit that during the Class Period, when creating a Coinbase.com account, retail users were prompted to accept the terms of Coinbase's Retail User Agreement, but deny that retail users were prompted to "sign" that agreement, and aver that retail users were prompted to click to accept the terms of that agreement.  Exchange Act Defendants otherwise admit the allegations in Paragraph 61.  With respect to Footnote 2, to the extent Footnote 2 purports to characterize or quote from the earliest version of Coinbase's Retail User Agreement during the Class Period, Exchange Act Defendants respectfully refer the Court to that version of that agreement for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Footnote 2.

62.     To the extent Paragraph 62 purports to characterize and quote from Coinbase's Retail User Agreement, as it has been amended from time to time, Coinbase's Prospectus, or its website, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 62.

63.     Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether the "wide array of crypto assets available for exchange"

is a "distinguishing feature" of DEXs. Exchange Act Defendants otherwise admit the allegations in paragraph 63.

64.     To the extent Paragraph 64 purports to characterize and quote from the Coinbase Wallet Terms of Service or Coinbase's website, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 64.

65.     To the extent Paragraph 65 purports to characterize and quote from Coinbase's website, Exchange Act Defendants respectfully refer the Court to the website for its complete and accurate contents. Exchange Act Defendants admit that Coinbase Custody is a wholly owned subsidiary of Coinbase. Exchange Act Defendants otherwise deny the allegations in Paragraph 65.

66.     To the extent Paragraph 66 purports to characterize and quote from Coinbase's website, Exchange Act Defendants respectfully refer the Court to the website for its complete and accurate contents. Exchange Act Defendants admit that Coinbase offered users the opportunity to "stake" certain crypto assets on Coinbase during the Class Period. Exchange Act Defendants further admit that Coinbase participated in networks with "proof-of-stake" consensus algorithms, including through the use of affiliate and third-party validators, and that Coinbase users (but not Coinbase) earned "rewards" from Coinbase users' staking activities. Exchange Act Defendants deny that Coinbase incentivized crypto-asset owners to lock up their

assets through Coinbase's staking program by offering no, or low, staking minimums.  Exchange Act Defendants admit that there are no transaction fees associated with staking or unstaking and that Coinbase takes a commission based on staking rewards that a user receives from the network.  Exchange Act Defendants admit that as a fee for staking services, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls between 15% and 35%, inclusive.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66.

67.    Exchange Act Defendants admit that Coinbase began offering staking services to certain U.S. residents in 2019 to facilitate the staking of XTZ on the Tezos blockchain network.  Exchange Act Defendants further admit that the staking program expanded to include ATOM (as of September 29, 2020), ETH (as of April 16, 2021), ADA (as of March 23, 2022), SOL (as of June 29, 2022), and DOT (as of May 2023).  Exchange Act Defendants further admit that, prior to March 2023, for certain digital assets (ADA, ATOM, SOL, and XTZ), Coinbase users were enrolled automatically to participate in Coinbase's staking services if they held the required minimum balances of those assets but could opt out of those services at any time, and that, as of March 2023, users must opt in to Coinbase's staking services.

68.     Paragraph 68 purports to characterize and quote from Coinbase's SEC filings, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

69.     To the extent Paragraph 69 purports to characterize Coinbase's SEC filings, Exchange Act Defendants respectfully refer the Court to those filings for their complete and accurate contents.  Exchange Act Defendants deny that Coinbase's total net revenue in 2021 included $6.50 billion in net retail transaction fee revenue.  Exchange Act Defendants aver that Coinbase's total net revenue included $6.49 billion in net retail transaction fee revenue.  Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether a "custody fee" for retail users was "built into Coinbase's transaction fees" because the vague reference to "custody fee" is undefined.  To the extent Paragraph 69 purports to characterize statements made by Defendant Armstrong in a CNBC Squawk Box interview on April 14, 2021, Exchange Act Defendants respectfully refer the Court to that interview for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 69.

70.     To the extent Paragraph 70 purports to characterize and quote from Coinbase's Prospectus, Exchange Act Defendants respectfully refer the Court to the Prospectus for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 70.

71.    Paragraph 71 purports to characterize Coinbase's 2021 Form 10-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

72.    To the extent Paragraph 72 purports to characterize a January 28, 2021, blog post, Exchange Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 72.

73.    Exchange Act Defendants deny that all company insiders "inherently" have more knowledge about that company than the public.  Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of whether new shares are never issued in a direct listing.  Exchange Act Defendants otherwise admit the allegations in Paragraph 73.

74.    Exchange Act Defendants admit that it is customary in an underwritten initial public offering for an issuer's officers, directors, and most or all of its other stockholders to enter into a contractual lock-up arrangement to help promote orderly trading immediately after such initial public offering.  Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether, in a direct listing, a company's board of directors always decides for itself whether to enforce a lock-up period on corporate insiders.  Defendants Armstrong, Choi, and Haas admit that they attended a Board meeting on February 23, 2021, and the materials

for that Board meeting indicated that the "[e]xecutive team aligned on no lock-ups for all stockholders (investors and employees)." Exchange Act Defendants further admit that none of Coinbase's registered stockholders or existing stockholders entered into contractual lock-up agreements or other contractual restrictions on transfer in the Direct Listing and that directors and officers were able to sell immediately into the Direct Listing. Exchange Act Defendants otherwise deny the allegations in Paragraph 74.

75.    Exchange Act Defendants admit the allegations in Paragraph 75.

76.    To the extent Paragraph 76 purports to characterize and quote from reports or articles from market analysts, including The Hustle, and Yahoo, Exchange Act Defendants respectfully refer the Court to those reports and articles for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 76.

77.    Exchange Act Defendants admit the allegations in Paragraph 77.

78.    To the extent Paragraph 78 purports to characterize and quote from the Offering Materials, Exchange Act Defendants respectfully refer the Court to the Offering Materials for their complete and accurate contents. Exchange Act Defendants admit the SAC purports to refer to the Registration Statement, Prospectus, and Free Writing Prospectus as the Offering Materials in this Paragraph.

79.     To the extent Paragraph 79 purports to characterize the Prospectus, Exchange Act Defendants respectfully refer the Court to the Prospectus for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 79.

80.     To the extent Paragraph 80 purports to characterize the Prospectus, Exchange Act Defendants respectfully refer the Court to the Prospectus for its complete and accurate contents.  Exchange Act Defendants admit that Defendants Armstrong, Choi, and Haas sold Coinbase common stock as described in Paragraph 80.  Exchange Act Defendants further admit that Armstrong converted 1,050,000 shares of Class B common stock to Class A common stock and received a pro rata distribution of 357 shares of Class A common stock by Andreessen Horowitz LSV Fund I, L.P. on April 1 and April 14, 2021, respectively.  Exchange Act Defendants further admit that Haas converted 255,500 employee stock options into shares of Class A common stock on April 14, 2021.  Exchange Act Defendants deny that Choi increased her beneficial holdings by 776,282 between April 1 and April 14, 2021.  Exchange Act Defendants aver that Choi converted 551,629 employee stock options into shares of Class A Common Stock on April 14, 2021. Exchange Act Defendants otherwise deny the allegations in Paragraph 80.

81.     Exchange Act Defendants admit that Defendant Armstrong received over $290 million in proceeds from the sale of stock in the Direct Listing, which

constituted less than 2% of his Coinbase stock holdings.  Exchange Act Defendants further admit that in August 2020, the Company's Board of Directors granted Defendant Armstrong an option award (the "CEO Performance Award") to purchase 9,293,911 shares of the Class A common stock of the Company at an exercise price of $23.46 per share, vesting of which would depend on both performance-based and market-based conditions being met.  Exchange Act Defendants otherwise deny the allegations in Paragraph 81.

82.     To the extent that Paragraph 82 purports to characterize Coinbase's Prospectus and other SEC filings, Exchange Act Defendants respectfully refer the Court to those documents for their complete and accurate contents. Exchange Act Defendants admit that in August 2020, Coinbase's Board granted the "2020 CEO Performance Award" to Defendant Armstrong and respectfully refer the Court to the Offering Materials for a complete and accurate description of the terms of that award.  Exchange Act Defendants otherwise deny the allegations in Paragraph 82.

83.     Exchange Act Defendants admit that for the year ended December 31, 2020, Defendant Armstrong earned an annual base salary of $1,000,000 and the grant date fair value of his stock options and stock awards granted at the time was $56.67.  Exchange Act Defendants further admit that Armstrong could unlock the first tranche of stock options to vest under the CEO Performance Award if the volume weighted average price of Coinbase's shares was at or above $200 for 60

consecutive trading days after the Direct Listing. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of Paragraph 83's allegations about, "[p]rior to the Direct Listing," the amounts Armstrong was "poised" to earn, or the extent to which the value of his compensation "could [be] boost[ed]" at that time. Exchange Act Defendants otherwise deny the allegations in Paragraph 83.

84.     Exchange Act Defendants admit that Defendant Armstrong unlocked the first tranche of 3,159,930 stock options to vest of the CEO Performance Award on July 8, 2021. Exchange Act Defendants further admit that this first tranche was unlocked after the volume weighted average price of Coinbase's shares was at or above $200 for 60 consecutive days. Exchange Act Defendants further admit that Coinbase's stock price closed at $244.29 on July 8, 2021, and that the value of 3,159,930 stock options, with an exercise price of $23.46 per share, based on that closing price, was over $697 million. Exchange Act Defendants otherwise deny the allegations in Paragraph 84.

85.     To the extent Paragraph 85 purports to characterize and quote from a post on Reddit, and comments made thereupon, Exchange Act Defendants respectfully refer the Court to that post and those comments for their complete and accurate contents. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act

Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 85.

86. Paragraph 86 purports to characterize and quote from Coinbase's posted YouTube video responding to questions from the public submitted through Reddit, entitled "Investor Day," to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

87. Exchange Act Defendants admit the allegations in Paragraph 87.

88. To the extent Paragraph 88 purports to characterize and quote from Coinbase's press release on April 6, 2021, announcing preliminary results for the first quarter of FY 2021 and a full year outlook, Exchange Act Defendants respectfully refer the Court to that press release for its complete and accurate contents. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of what Coinbase's revenue was "largely dependent on," including because that phrase is vague. Exchange Act Defendants otherwise admit the allegations in Paragraph 88.

89. Paragraph 89 purports to characterize and quote from Coinbase's First Quarter 2021 Estimated Results call on April 6, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

90.     Paragraph 90 purports to characterize and quote from Coinbase's First Quarter 2021 Estimated Results call on April 6, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

91.     To the extent Paragraph 91 purports to characterize and quote from reports by market analysts, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91.

92.     Paragraph 92 purports to characterize and quote from an interview with Defendant Armstrong on CNBC's Squawk Box on April 14, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.  Exchange Act Defendants deny the accuracy of the quotation attributed to Armstrong in Paragraph 92, and aver that, during that interview, Armstrong stated, "There's really a custody fee that's sort of baked into the transaction fees, which is a little different than traditional brokerage world and things like that."

93.     Exchange Act Defendants admit that Coinbase held over $90 billion in Assets on Platform—defined as the total U.S. dollar equivalent value of both fiat currency and crypto assets held or managed in digital wallets on Coinbase's platform, including its custody services, calculated based on the market price on the date of measurement—as of December 31, 2020, and that that figure rose to as much

as $278 billion during the Class Period. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93.

94.    To the extent Paragraph 94 purports to characterize and quote from an article by Reuters, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents. Exchange Act Defendants admit that Mt. Gox declared bankruptcy in February 2014 after an estimated 700,000 Bitcoins were stolen from its wallets. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94, including because they relate to cryptocurrency exchanges other than Coinbase.

95.    To the extent Paragraph 95 purports to characterize and quote from various public announcements and reports, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95, including because they relate to cryptocurrency exchanges other than Coinbase.

96.    To the extent Paragraph 96 purports to characterize and quote from Coinbase's Offering Materials and subsequent SEC filings, Exchange Act Defendants respectfully refer the Court to those sources for their complete and

accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 96.

97.    To the extent Paragraph 97 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 97.

98.    To the extent Paragraph 98 contains legal conclusions, no response is required.  Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in Coinbase's custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors."  Exchange Act Defendants otherwise deny the allegations in Paragraph 98.

99.    To the extent Paragraph 99 contains legal conclusions, no response is required.   Exchange Act Defendants admit that, as described, *inter alia*, in Coinbase's user agreement, crypto assets are not "backed by the United States government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections." Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99.

100.    To the extent Paragraph 100 contains legal conclusions, no response is required.  To the extent Paragraph 100 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.    Exchange Act Defendants otherwise deny the allegations in Paragraph 100.

101.    To the extent Paragraph 101 purports to characterize and quote from Defendant Armstrong's statements in May 2022 and Coinbase's Prospectus, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 101.

102.    Paragraph 102 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

103.    To the extent Paragraph 103 contains legal conclusions, no response is required.  To the extent Paragraph 103 purports to characterize and quote from Coinbase's Prospectus and Q1 2022 Form 10-Q, Exchange Act Defendants

respectfully refer the Court to those filings for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 103.

104.   To the extent Paragraph 104 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 104.

105.   To the extent Paragraph 105 contains legal conclusions, no response is required.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 105.

106.   Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 106.

107.   Exchange Act Defendants admit that Coinbase Custody is a wholly owned subsidiary of Coinbase.  Defendant Coinbase further admits that on June 11,

2019, Sam McIngvale, Chief Executive Officer of Coinbase Custody at the time, submitted a comment letter to the SEC regarding a proposal by NYSE Arca, Inc. to list and trade shares of a certain crypto asset. Defendants Armstrong, Haas, Choi, and Grewal lack knowledge or information sufficient to form a belief as to this allegation. Defendant Coinbase further admits that McIngvale was an employee of Coinbase Custody during the Class Period. Defendants Armstrong, Haas, Choi, and Grewal lack knowledge or information sufficient to form a belief as to this allegation. Defendants Coinbase, Haas, and Choi further admit that Defendants Haas and Choi were identified as Governors of Coinbase Custody in a Foreign Registration Statement filed with the State of Washington on July 7, 2020. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to this allegation. Exchange Act Defendants otherwise deny the allegations in Paragraph 107.

108.    Paragraph 108 purports to characterize and quote from the June 2019 Comment Letter, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

109.    To the extent Paragraph 109 contains legal conclusions, no response is required. Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the

event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 109.

110. To the extent Paragraph 110 contains legal conclusions, no response is required. Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." To the extent Paragraph 110 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110.

111. Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held

crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors."  To the extent Paragraph 111 purports to characterize posts that Defendant Armstrong made on Twitter on May 10, 2022, Exchange Act Defendants respectfully refer the Court to those Twitter posts for their complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 111.

112.   Exchange Act Defendants deny the allegations in Paragraph 112.

113.   To the extent Paragraph 113 purports to characterize and quote from the June 2019 Comment Letter and Coinbase's Institutional User Agreement, as amended from time to time, Exchange Act Defendants respectfully refer the Court to those documents for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 113.

114.   To the extent Paragraph 114 purports to characterize and quote from Coinbase's Retail User Agreement, Exchange Act Defendants respectfully refer the Court to that agreement, as amended from time to time, for its complete and accurate contents.  Exchange Act Defendants deny that Coinbase commingled retail

customers' assets to the extent that the SAC alleges that Coinbase did not utilize a ledgering system that protects and identifies retail customers' assets. Exchange Act Defendants admit that retail customers' assets were (and continue to be) held in an omnibus manner on the blockchain and separately recorded using a ledger system. Exchange Act Defendants otherwise deny the allegations in Paragraph 114.

115.   To the extent Paragraph 115 purports to characterize and quote from Coinbase's Retail User Agreement, Exchange Act Defendants respectfully refer the Court to that agreement, as amended from time to time, for its complete and accurate contents.    Exchange Act Defendants otherwise deny the allegations in Paragraph 115.

116.   To the extent Paragraph 116 purports to characterize and quote from Coinbase's Retail User Agreement, Exchange Act Defendants respectfully refer the Court to that agreement for its complete and accurate contents.  Exchange Act Defendants deny that Coinbase commingled retail customers' assets with Coinbase's own assets to the extent that the SAC alleges that Coinbase did not utilize a ledgering system that protects and identifies retail customers' assets.    Exchange Act Defendants further deny that Coinbase commingled retail customers' assets to the extent that the SAC alleges that Coinbase did not utilize a ledgering system that protects and identifies retail customers' assets. Exchange Act Defendants admit that retail customers' assets were (and continue to be) held in an omnibus manner on the

blockchain and separately recorded using a ledger system. Exchange Act Defendants otherwise deny the allegations in Paragraph 116.

117. To the extent Paragraph 117 purports to characterize and quote from Coinbase's Prospectus or Retail User Agreement, Exchange Act Defendants respectfully refer the Court to that filing and agreement, as amended from time to time, for their complete and accurate contents. Exchange Act Defendants admit that, prior to March 2023, for certain digital assets, Coinbase users were enrolled automatically to participate in Coinbase's staking services if they held the required minimum balances of those assets but could opt out of those services at any time, and that, as of March 2023, users must opt in to Coinbase's staking services. To the extent Paragraph contains legal conclusions, no response is required. To the extent Paragraph 117 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 117.

118. To the extent Paragraph 118 contains legal conclusions, no response is required. To the extent Paragraph 118 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Exchange Act Defendants respectfully refer the Court to those statements for their complete and

accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 118.

119.  To the extent Paragraph 119 contains legal conclusions, no response is required.  To the extent Paragraph 119 purports to characterize and quote from the Institutional User Agreement and Coinbase's Retail User Agreements, Exchange Act Defendants respectfully refer the Court to those agreements, as amended from time to time, for their complete and accurate contents.  To the extent Paragraph 119 purports to characterize Article 8 of the Uniform Commercial Code and Division 8 of the California Commercial Code, Exchange Act Defendants respectfully refer the Court to those provisions for its complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 119.

120.  To the extent Paragraph 120 contains legal conclusions, no response is required.  To the extent Paragraph 120 purports to characterize and quote Institutional User Agreement, Exchange Act Defendants respectfully refer the Court to that agreement, as amended from time to time, for its complete and accurate contents.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120.

121.    To the extent Paragraph 121 purports to characterize Coinbase's Retail User Agreement, Exchange Act Defendants respectfully refer the Court to that agreement for its complete and accurate contents.  To the extent Paragraph 121 purports to characterize and quote from Defendant Armstrong's statements on May 10, 2022, and Coinbase's Q1 2022 Form 10-Q, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 121.

122.    To the extent Paragraph 122 purports to characterize and quote from various news articles and media reports, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 122.

123.    Exchange Act Defendants admit that on April 14, 2021, Coinbase commenced its Direct Listing, and its common stock began trading on the Nasdaq under the ticker symbol "COIN."  Exchange Act Defendants admit that on April 14, 2021, Coinbase became the first major cryptocurrency exchange to go public on a U.S. stock exchange.  Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether Coinbase was the "first cryptocurrency company in the world to go public."  Exchange Act Defendants otherwise deny the allegations in Paragraph 123.

124.   To the extent Paragraph 124 purports to characterize and quote from an article published by AP News, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.  Exchange Act Defendants admit that the initial reference price of Coinbase common stock was $250, and that Coinbase common stock opened at $381.00, reached a high of $429.54, and closed at $328.28 on April 14, 2021.  Exchange Act Defendants otherwise deny the allegations in Paragraph 124.

125.   Exchange Act Defendants admit that certain Exchange Act Defendants sold Coinbase shares during the Class Period.  Exchange Act Defendants further admit that the chart in Paragraph 125 accurately reflects the number of shares Defendants Armstrong, Haas, Grewal, Jones, Ehrsam, and Haun sold between April 14 and 15, 2021, and during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, and the proceeds received from those sales.  Exchange Act Defendants deny that the chart in Paragraph 125 is accurate as to Defendant Andreessen.  Exchange Act Defendants aver that the chart in Paragraph 125 reflects shares sold by AH Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC between April 14 and April 15, 2021.  Exchange Act Defendants further aver that the chart in Paragraph 125 reflects shares sold by LAMA Community Trust, AH

Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC during the Class Period.  Exchange Act Defendants deny that the chart in Paragraph 125 is accurate as to Defendant Wilson.  Exchange Act Defendants aver that the chart in Paragraph 125 reflects shares sold by Union Square Ventures 2012 Fund, L.P.; USV Investors 2012 Fund, L.P.; USV Opportunity 2014, LP; and USV Opportunity Investors 2014, LP between April 14 and April 15, 2021.  Exchange Act Defendants admit that the chart accurately reflects the number of shares sold by Defendant Choi between April 14 and 15, 2021, and during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, as well as the proceeds she received from her sales between April 14 and 15, 2021.  Exchange Act Defendants deny that Choi's gross proceeds exceeded $429 million during the Class Period.  Exchange Act Defendants aver that Choi's gross proceeds during the Class Period were $235.5 million.  Exchange Act Defendants otherwise deny the allegations in Paragraph 125.

126.    Exchange Act Defendants admit the allegations in Paragraph 126.

127.    Paragraph 127 purports to characterize and quote from articles published by market commentators on April 14, 2021, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

128.   To the extent Paragraph 128 contains legal conclusions, no response is required.    Exchange Act Defendants otherwise deny the allegations in Paragraph 128.

129.   To the extent Paragraph 129 purports to characterize and quote from various statements made by certain Exchange Act Defendants on May 13, 2021, December 7, 2021, and March 9, 2022, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 129.

130.   To the extent Paragraph 130 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 130.

131.   To the extent Paragraph 131 purports to characterize and quote from Staff Accounting Bulletin No. 121, Exchange Act Defendants respectfully refer the Court to that bulletin for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 131.

132.   To extent Paragraph 132 purports to characterize and quote from Staff Accounting Bulletin No. 121, Exchange Act Defendants respectfully refer the Court to that bulletin for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 132.

133.   Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the alleged "laser-focus[]" of "regulators, analysts, and market

commentators." Exchange Act Defendants otherwise deny the allegations in Paragraph 133.

134. To the extent that Paragraph 134 contains legal conclusions, no response is required. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 134.

135. Exchange Act Defendants admit that Coinbase is a provider of end-to-end financial infrastructure and technology for the cryptoeconomy and that it safeguards customer assets and money. Exchange Act Defendants admit that as described, *inter alia*, in Coinbase's user agreement, crypto assets are "not backed by the United States government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections." To the extent that Paragraph 135 contains legal conclusions, no response is required. To the extent Paragraph 135 purports to characterize and quote from former SEC Chair Gary Gensler's statements, Exchange Act Defendants respectfully refer the Court to Gensler's statements for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 135.

136. To the extent that Paragraph 136 contains legal conclusions, no response is required. Exchange Act Defendants admit that Coinbase is a secure

online platform for buying, selling, transferring, and storing cryptocurrency. To the extent Paragraph 136 purports to characterize and quote from the Volcker Rule, Exchange Act Defendants respectfully refer the Court to that rule for its complete and accurate contents.

137. To the extent that Paragraph 137 contains legal conclusions, no response is required no response. Exchange Act Defendants otherwise deny the allegations in Paragraph 137.

138. Paragraph 138 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," including Defendant Haas's response, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

139. Paragraph 139 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," including Defendant Haas's response, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

140. Paragraph 140 purports to characterize and quote from several of Coinbase's SEC filings, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

141.   Paragraph 141 purports to characterize and quote from Defendant Choi's response during the Goldman Sachs Financial Services Conference on December 7, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

142.   Paragraph 142 purports to characterize and quote from Defendant Haas's testimony before the United States House of Representatives Committee on Financial Services on December 8, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

143.   Paragraph 143 purports to characterize and quote from Defendant Haas's testimony before the United States House of Representatives Committee on Financial Services on December 8, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

144.   To the extent Paragraph 144 purports to characterize the September 22, 2022, article published in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 144.

145.   Exchange Act Defendants admit that Coinbase formed CRS in or around July 2021.  To the extent Paragraph 145 purports to characterize information from Coinbase's 2021 Form 10-K, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents.  Exchange Act Defendants

deny that Bitcoin and Ethereum accounted for 45% to 56% of Coinbase's annual revenues during the Class Period.  Exchange Act Defendants aver that, for each of the years 2020 through 2023, Bitcoin and Ethereum jointly accounted for 45% to 56% of the total Trading Volume on Coinbase's platform on an annual basis. Exchange Act Defendants admit that, over the course of 2021, the value of Bitcoin and Ethereum fluctuated.  Exchange Act Defendants admit that Bitcoin's price exceeded $61,000 on days surrounding March 12, 2021.  Exchange Act Defendants further admit that Bitcoin's price reached lows of around $34,000 around the end of May 2021 before reaching full-year highs of around $67,000 in November 2021. Exchange Act Defendants otherwise deny the allegations in Paragraph 145.

146.   To the extent Paragraph 146 purports to Coinbase's 2021 Form 10-K, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents.  Exchange Act Defendants deny that Bitcoin and Ethereum accounted for 45% to 56% of Coinbase's annual total revenues during the Class Period.  Exchange Act Defendants aver that, for each of the years 2020 through 2023, Bitcoin and Ethereum jointly accounted for 45% to 56% of the total Trading Volume on Coinbase's platform on an annual basis.  Exchange Act Defendants admit that Bitcoin's price surpassed $68,000 in November 2021.  Exchange Act Defendants otherwise deny the allegations in Paragraph 146.

147.    Exchange Act Defendants admit that CRS entered into a structured transaction with an affiliate of Invesco Ltd. under which that affiliate loaned CRS $100 million to invest in digital assets between March 2022 and June 2022 pursuant to agreements between such affiliate and Coinbase, but deny that Coinbase engaged in any proprietary trading, including through this transaction.    To the extent Paragraph 147 purports to characterize the September 22, 2022, article published in The Wall Street Journal, and any characterizations of statements purportedly made by Brett Tejpaul therein, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.    To the extent Paragraph 147 purports to characterize a post made on the website beincrypto.com, Exchange Act Defendants respectfully refer the Court to that website for its complete and accurate contents.    Exchange Act Defendants otherwise deny the allegations in Paragraph 147.

148.    To the extent Paragraph 148 contains legal conclusions, no response is required.    Exchange Act Defendants otherwise deny the allegations in Paragraph 148.

149.    Exchange Act Defendants admit that not long after Coinbase went public, the SEC's regulatory appetite began to change.    Exchange Act Defendants further admit that following Coinbase's Direct Listing and during the Class Period, the SEC doubled the size of its crypto enforcement unit and ramped up investigations

of digital asset players, including by issuing several subpoenas to Coinbase. Exchange Act Defendants lack knowledge or information sufficient to form a belief about whether "the Company's exposure to adverse regulatory action, primarily from the SEC, grew exponentially," including because the term "grew exponentially" is vague with respect to an unquantifiable concept like "exposure to adverse regulatory action." To the extent Paragraph 149 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 149.

150. Exchange Act Defendants admit that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its listings and listing process. Exchange Act Defendants further admit that the May 2022 subpoena was promptly disclosed in Coinbase's next quarterly SEC filings. Exchange Act Defendants further admit that Coinbase's position was and continues to be that Coinbase does not list securities on its platform, and that Coinbase's staking services are not securities. Exchange Act Defendants otherwise deny the allegations in Paragraph 150.

151. Exchange Act Defendants admit that Coinbase's position was and continues to be that in the spring of 2022, there was significant regulatory uncertainty in the crypto industry, to Coinbase's detriment. Exchange Act Defendants further admit that Coinbase's position was and continues to be that since

its inception, Coinbase has sought to comply with all applicable laws and regulations and to work cooperatively with U.S. regulators of all kinds.  To the extent Paragraph 151 purports to characterize and quote from an interview published in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 151.

    **1. The SEC Has Made Clear that the Majority of Crypto Assets Are Securities Under Existing Federal Securities Laws, and that Exchanges Listing Such Assets Must Register with the SEC**

  152. To the extent Paragraph 152 contains legal conclusions, no response is required.  Exchange Act Defendants admit that Coinbase has made digital assets available for trading or staking through its platform.  Exchange Act Defendants further admit that Coinbase had and continues to have an obligation to comply with all applicable U.S. laws, including any applicable securities laws.  Exchange Act Defendants otherwise deny the allegations in Paragraph 152.  Exchange Act Defendants aver that the likelihood of becoming the subject of an SEC investigation or enforcement action is influenced by numerous factors outside of a potential subject's control, and that the SEC's Enforcement Action lacks any merit.

  153. To the extent Paragraph 153 sets forth legal conclusions, no response is required.  To the extent Paragraph 153 purports to characterize and quote from various sources of federal securities law, including the Supreme Court's decision in

Howey, Exchange Act Defendants respectfully refer the court to those sources for their complete and accurate contents.

154.   Exchange Act Defendants admit that, beginning as early as 2017, the SEC has partially and inconsistently asserted various interpretations of the federal securities laws to distributed ledger technology and digital assets in certain publications and statements.   Exchange Act Defendants otherwise deny the allegations in Paragraph 154.

155.   To the extent Paragraph 155 purports to characterize and quote from the DAO Report, Exchange Act Defendants respectfully refer the Court to the DAO Report for its complete and accurate contents.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155.

156.   Paragraph 156 purports to characterize and quote from the DAO Report, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

157.   To the extent Paragraph 157 purports to characterize and quote from the DAO Report and the Exchange Act of 1934, Exchange Act Defendants respectfully refer the Court to that report and statute for their complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 157.

158.   To the extent Paragraph 158 purports to characterize and quote from the DAO Report, Exchange Act Defendants respectfully refer the Court to that report for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 158.

159.   To the extent Paragraph 159 purports to characterize and quote from the SEC's Digital Asset Framework, Exchange Act Defendants respectfully refer the Court to that source for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 159.

160.   To the extent Paragraph 160 purports to characterize and quote from the SEC's Digital Asset Framework, Exchange Act Defendants respectfully refer the Court to that source for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 160.

161.   To the extent Paragraph 161 purports to characterize and quote from statements made by former SEC Chair Gary Gensler, including in Congressional testimony on May 26, 2021, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 161.

162.   To the extent Paragraph 162 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in an August 3, 2021, speech, Exchange Act Defendants respectfully refer the Court to that speech for its complete

and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 162.

163.   To the extent Paragraph 163 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in an August 3, 2021, speech, Exchange Act Defendants respectfully refer the Court to that speech for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 163.

164.   Paragraph 164 purports to characterize and quote from remarks made by former SEC Chair Gary Gensler on April 4, 2022, at the Penn Law Capital Markets Association Annual Conference, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

165.   Paragraph 165 purports to characterize and quote from remarks made by former SEC Chair Gary Gensler on April 4, 2022, at the Penn Law Capital Markets Association Annual Conference, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

166.   Paragraph 166 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in a September 8, 2022, speech, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

167.    Paragraph 167 purports to characterize and quote from guidance materials promulgated by the NYDFS, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

168.    Paragraph 168 purports to characterize and quote from comments submitted by the SEC on the NYDFS's proposed framework, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

169.    Paragraph 169 purports to characterize and quote from comments submitted by the SEC on the NYDFS's proposed framework, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

170.    Paragraph 170 purports to characterize and quote from comments submitted by the SEC on the NYDFS's proposed framework, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

171.    To the extent Paragraph 171 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in a September 8, 2022, speech, Exchange Act Defendants respectfully refer the Court to that speech for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 171.

172.    Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172.

173.   To the extent Paragraph 173 purports to characterize several court actions and administrative proceedings brought by the SEC, Exchange Act Defendants respectfully refer the Court to those court actions and administrative proceedings for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 173.

174.   To the extent Paragraph 174 purports to characterize and quote from the SEC's action against Ripple, Exchange Act Defendants respectfully refer the Court to that action for its complete and accurate contents.  Exchange Act Defendants admit that XRP was listed for trading on Coinbase's platform prior to SEC's filing of its action against Ripple.  Exchange Act Defendants further admit that Coinbase decided to suspend trading of XRP on its platform in light of the SEC's action against Ripple.  Exchange Act Defendants otherwise deny the allegations in Paragraph 174.

175.   Paragraph 175 purports to characterize and quote from the SEC's action against LBRY, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

176.   Paragraph 176 purports to characterize and quote from briefing and a court opinion in the SEC's action against LBRY, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

177.   To the extent Paragraph 177 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177.

178.   To the extent Paragraph 178 purports to characterize and quote from a guide made accessible on Coinbase's website on December 7, 2016, Exchange Act Defendants respectfully refer the Court to that guide for its complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants Exchange Act Defendants otherwise deny the allegations in Paragraph 178.

179.   To the extent Paragraph 179 purports to characterize and quote from Coinbase's announcement of a "New Asset Listing Process" on September 25, 2018, Exchange Act Defendants respectfully refer the Court to that announcement for its complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 179.

180.   To the extent Paragraph 180 purports to characterize and quote from the SEC Complaint, which itself quotes from Coinbase's listing application, Exchange Act Defendants respectfully refer the Court to the SEC Complaint and Coinbase's listing application for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 180.

181.    Exchange Act Defendants admit that in September 2019, Coinbase and other digital asset businesses founded the CRC, and that the CRC subsequently released a framework based on factors the SEC had identified as relevant to the Commission's securities law analysis with respect to digital assets.  To the extent Paragraph 181 purports to characterize and quote from the CRC's website, Exchange Act Defendants respectfully refer the Court to that website for its complete and accurate contents.

182.    Exchange Act Defendants admit that before any token may be listed on Coinbase's platform it must be approved by the Company's Digital Asset Support Group ("DASG"), previously known as the Digital Asset Listing Group.  Exchange Act Defendants further admit that the DASG's review protocol, developed with the advice of outside legal counsel, focuses on factors the SEC itself has identified as pertinent—including the factors deemed relevant in the SEC's Digital Asset Framework, as well as in SEC no-action letters, speeches, and other statements. Exchange Act Defendants further admit that the DASG review process is designed to identify and screen assets posing a high risk that the SEC might deem them "securities."  To the extent Paragraph 182 purports to characterize and quote from the SEC Complaint, Exchange Act Defendants respectfully refer the Court to the SEC Complaint for its complete and accurate contents.

183.   To the extent Paragraph 183 purports to characterize and quote from the SEC Complaint, Exchange Act Defendants respectfully refer the Court to the SEC Complaint for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 183.

184.   Exchange Act Defendants admit that certain outcomes of an SEC investigation or enforcement action, including "substantial penalties" or certain restrictions on the assets Coinbase is able to offer in the U.S., could adversely impact Coinbase's business operations or its competitive position.   Exchange Act Defendants further admit that the risks associated with these potential outcomes were disclosed before, during, and after the Class Period.  Exchange Act Defendants admit that a majority of Coinbase's total revenues are generated from customers in the United States.  To the extent Paragraph 184 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," Exchange Act Defendants respectfully refer the Court to that video for its complete and accurate contents.  Exchange Act Defendants otherwise lack information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 184.

185.   To the extent Paragraph 185 purports to characterize and quote from Coinbase's Offering Materials, Exchange Act Defendants respectfully refer the

Court to the Offering Materials for their complete and accurate contents.  To the extent Paragraph 185 suggests that Exchange Act Defendants sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Exchange Act Defendants deny the allegations in Paragraph 185.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185.

186.   Exchange Act Defendants admit that Coinbase's "flywheel"—in which retail users and institutions store assets and drive liquidity, enabling Coinbase to expand the depth and breadth of crypto assets that it offers, and launch new, innovative products and services that attract new customers—has been a driver of Coinbase's growth.  Exchange Act Defendants further admit that for the year ended December 31, 2020, transaction revenue represented over 96% of Coinbase's net revenue, excluding crypto asset sales revenue and corporate interest income.  To the extent Paragraph 186 purports to characterize and quote from the Offering Materials, Exchange Act Defendants respectfully refer the Court to the Offering Materials for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 186.

187.   To the extent Paragraph 187 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public

submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," Exchange Act Defendants respectfully refer the Court to that video for its complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187.

188. Paragraph 188 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

189. To the extent Paragraph 189 suggests that Exchange Act Defendants sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Exchange Act Defendants deny the allegations in Paragraph 189. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189.

190. To the extent Paragraph 190 purports to characterize and quote from analyst reports, including an April 15, 2021, report by BTIG analysts, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190.

191.    To the extent Paragraph 191 purports to characterize and quote from Coinbase's Offering Materials and 2021 Form 10-Q filings, Exchange Act Defendants respectfully refer the Court to those filings for their complete and accurate contents.  Exchange Act Defendants deny that on April 14, 2021, Coinbase had 51 crypto assets listed for trading on its platform.  Exchange Act Defendants admit that Coinbase added AMP, RLY, DDX, XYO, and RGT to its platform for trading in the second and third quarters of 2021.  Exchange Act Defendants deny that LCX and POWR were available for trading on Coinbase's platform on October 27, 2021, and November 15, 2021, respectively.  Exchange Act Defendants aver that transfers of those tokens were permitted on those days, while trading for LCX and POWR first became available on October 28, 2021, and November 16, 2021, respectively.  Exchange Act Defendants admit that AMP, RLY, DDX, XYO, RGT, LCX and POWR were identified by the SEC as purported "crypto asset securities" in *Securities and Exchange Commission v. Wahi*, No. 2:22-cv-01009-TL (W.D. Wash. July 21, 2022), a case brought by the SEC against a former Coinbase employee and two others for insider trading.  Exchange Act Defendants further admit that Coinbase supported 139 crypto assets for trading as of December 31, 2021.  Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191.

192.   Paragraph 192 purports to characterize and quote from various analyst reports, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

193.   Exchange Act Defendants admit that on May 31, 2022, Coinbase had 172 crypto assets listed for trading on its platform.  Exchange Act Defendants deny the accuracy of the graph in Paragraph 193.

194.   To the extent Paragraph 194 suggests that Exchange Act Defendants sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Exchange Act Defendants deny the allegations in Paragraph 194.  Exchange Act Defendants admit that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its listings and listing process. Exchange Act Defendants further admit that in July 2022, the SEC filed a complaint accusing three individuals with securities fraud related to crypto asset trading, including with respect to certain crypto assets listed on Coinbase's platform. Exchange Act Defendants further admit that the defendants in that action included a former Coinbase employee, and that Coinbase provided information to the SEC as part of their investigation into the alleged frontrunning.   Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the

personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 194.

195. To the extent Paragraph 195 purports to quote from and characterize Coinbase's Q1 2022 Form 10-Q and other subsequent disclosures, Exchange Act Defendants respectfully refer the Court to that Form 10-Q and other subsequent disclosures for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 195.

196. To the extent Paragraph 196 purports to characterize and quote from actions brought by the SEC and DOJ and their announcements of the same, Exchange Act Defendants respectfully refer the Court to those actions and announcements for their complete and accurate contents. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the criminal sentencing or civil settlements of Ishan Wahi or Nikhil Wahi, or as to whether Sameer Ramani remains at large.

197. Exchange Act Defendants lack information and knowledge sufficient to form a belief as to whether "[i]mmediately, investors clamored for information," including because the terms of that allegation are vague. To the extent Paragraph 197 purports to characterize and quote from statements various Exchange Act Defendants made via Coinbase's blog, the Twitter accounts of Defendants Armstrong and Grewal, and via "major publications and news outlets," Exchange

Act Defendants respectfully refer the Court to those sources for their complete and accurate contents.   To the extent Paragraph 197 suggests that Exchange Act Defendants sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Exchange Act Defendants deny the allegations in Paragraph 197.   Exchange Act Defendants otherwise deny the allegations in Paragraph 197.

198.   To the extent Paragraph 198 contains legal conclusions, no response is required.   To the extent Paragraph 198 suggests that Exchange Act Defendants sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Exchange Act Defendants deny the allegations in Paragraph 198.   Exchange Act Defendants admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023.   Exchange Act Defendants admit that by the time of July 2022, the SEC had sent Coinbase a voluntary request for information, including about its listings and listing process.   Exchange Act Defendants further admit that Coinbase met with the SEC many times over a nine month period prior to March 2023.   Exchange Act Defendants further admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff

neither agreed nor disagreed with Coinbase's staking analysis. Exchange Act Defendants otherwise deny the allegations in Paragraph 198.

199.  To the extent Paragraph 199 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 199.

200.  Paragraph 200 purports to characterize and quote from a report from Bloomberg, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

201.  To the extent Paragraph 201 purports to characterize and quote from reports by market analysts, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 201.

202.  To the extent Paragraph 202 purports to characterize and quote from a post Defendant Grewal made on Twitter on July 25, 2022, Exchange Act Defendants respectfully refer the Court to that post for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 202.

203.  Paragraph 203 purports to characterize and quote from Coinbase's Q2 2022 analyst call, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

204.    Paragraph 204 purports to characterize and quote from Coinbase's Q2 2022 earnings call, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

205.    Paragraph 205 purports to characterize and quote from statements certain Exchange Act Defendants purportedly made "[a]cross numerous forums," to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.    To the extent Paragraph 205 suggests that Exchange Act Defendants sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Exchange Act Defendants deny the allegations in Paragraph 205.    Exchange Act Defendants otherwise deny the allegations in Paragraph 205.

206.    Paragraph 206 purports to characterize and quote from a statement made by former SEC Chair Gary Gensler, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

207.    To the extent Paragraph 207 purports to characterize and quote from a statement made by John Reed Stark, Exchange Act Defendants respectfully refer the Court to that statement for its complete and accurate contents.    Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the

personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 207.

208. To the extent Paragraph 208 purports to quote from and characterize reports by market analysts, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 208.

209. To the extent Paragraph 209 suggests that Exchange Act Defendants sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Exchange Act Defendants deny the allegations in Paragraph 209. Exchange Act Defendants admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Exchange Act Defendants further admit that Coinbase met with the SEC many times over a nine month period prior to March 2023. To the extent Paragraph 209 purports to characterize and quote from statements made on Coinbase's website on March 22, 2023, from statements in Coinbase's answer to the SEC Complaint, and from a June 2023 interview response by Defendant Armstrong reflected in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 209.

210.   Exchange Act Defendants lack information and knowledge sufficient to form a belief as to the allegation that Kraken is a "rival," including because that term is vague.  To the extent Paragraph 210 purports to characterize filings in an action brought by the SEC against Kraken, Exchange Act Defendants respectfully refer the Court to those filings for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 210.

211.   Paragraph 211 purports to characterize and quote from a comment by former SEC Chair Gary Gensler, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

212.   To the extent Paragraph 212 purports to characterize and quote from a post Defendant Armstrong made on Twitter, Exchange Act Defendants respectfully refer the Court to that post for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 212.

213.   To the extent Paragraph 213 purports to characterize reports from market analysts, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents.   Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 213.

214.   To the extent Paragraph 214 contains legal conclusions, no response is required.  To the extent Paragraph 214 purports to characterize and quote from posts

on Coinbase's blog or other statements made by certain Defendants, Exchange Act Defendants respectfully refer the Court to those blog posts and statements for their complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 214.

215.   To the extent Paragraph 215 contains legal conclusions, no response is required.  To the extent Paragraph 215 purports to characterize and quote from reports from market analysts, including Needham and J.P. Morgan, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 215.

216.   To the extent Paragraph 216 contains legal conclusions, no response is required.  To the extent Paragraph 216 purports to characterize and quote from a March 10, 2023, email from Coinbase and from Coinbase's User Agreement as of March 10, 2023, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 216.

217.   To the extent Paragraph 217 contains legal conclusions, no response is required.  To the extent Paragraph 217 purports to characterize the SEC's action

against Kraken, Exchange Act Defendants respectfully refer the Court to that action for its complete and accurate contents. To the extent Paragraph 217 purports to characterize and quote from a March 10, 2023, email from Coinbase and from Coinbase's User Agreement as of March 10, 2023, Exchange Act Defendants respectfully refer the Court to those documents for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 217.

218.    To the extent Paragraph 218 contains legal conclusions, no response is required. To the extent Paragraph 218 purports to characterize and quote from Coinbase's 2022 Form 10-K, Exchange Act Defendants respectfully refer the Court to that Form 10-K for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 218.

219.    To the extent Paragraph 219 contains legal conclusions, no response is required. To the extent Paragraph 219 purports to characterize and quote from a Form 8-K that Coinbase filed on March 22, 2023, Exchange Act Defendants respectfully refer the Court to that Form 8-K for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 219.

220.    To the extent Paragraph 220 contains legal conclusions, no response is required. To the extent Paragraph 220 purports to characterize and quote from a blog post made by Coinbase on March 22, 2023, Exchange Act Defendants

respectfully refer the Court to that blog post for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 220.

221.   To the extent Paragraph 221 contains legal conclusions, no response is required.  To the extent Paragraph 221 purports to characterize the SEC Complaint, Exchange Act Defendants respectfully refer the Court to that complaint for its complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 221.

222.   To the extent Paragraph 222 contains legal conclusions, no response is required.  To the extent Paragraph 222 purports to characterize and quote from the SEC Complaint, Exchange Act Defendants respectfully refer the Court to that complaint for its complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 222.

223.   To the extent Paragraph 223 contains legal conclusions, no response is required.  To the extent Paragraph 223 purports to characterize the SEC Complaint, Exchange Act Defendants respectfully refer the Court to that complaint for its complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 223.

224.   To the extent Paragraph 224 contains legal conclusions, no response is required.  To the extent Paragraph 224 purports to characterize and quote from a statement made by Grewal, Exchange Act Defendants respectfully refer the Court to

that statement for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 224.

225. To the extent Paragraph 225 contains legal conclusions, no response is required. To the extent Paragraph 225 purports to characterize and quote from a statement made by Grewal, Exchange Act Defendants respectfully refer the Court to that statement for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 225.

226. To the extent Paragraph 226 contains legal conclusions, no response is required. To the extent Paragraph 226 purports to characterize and quote from news reports published on June 6, 2023, along with various filings made by state securities regulators on that day, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 226.

227. Defendant Coinbase admits that in September 2020, NYDFS transmitted to Coinbase a Report of Examination detailing the results of its supervisory examination of Coinbase for the time period July 1, 2018, through December 31, 2019. Defendants Armstrong, Haas, Choi, and Grewal lack the knowledge or information sufficient to form a belief as to this allegation. To the extent Paragraph 227 purports to characterize and quote from the Consent Order, Exchange Act Defendants respectfully refer the Court to that Consent Order for its

complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 227.

228.   To the extent Paragraph 228 purports to characterize and quote from the Consent Order, Exchange Act Defendants respectfully refer the Court to that Consent Order for its complete and accurate contents.   Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 228.

229.   To the extent Paragraph 229 purports to characterize and quote from the Consent Order, Exchange Act Defendants respectfully refer the Court to that order for its complete and accurate contents.   Exchange Act Defendants admit that Coinbase, Inc. entered a settlement with the NYDFS in which it agreed to pay a civil monetary penalty in the amount of $50 million and committed to spending $50 million on improvements and enhancements to its compliance program over two years.   Exchange Act Defendants otherwise deny the allegations in Paragraph 229.

230.   To the extent Paragraph 230 contains legal conclusions, no response is required.    Exchange Act Defendants otherwise deny the allegations in Paragraph 230.

231.   To the extent Paragraph 231 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, Exchange Act Defendants respectfully refer the

Court to that Form 10-Q for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 231.

232. Paragraph 232 purports to characterize and quote from Twitter posts by Armstrong, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

233. Exchange Act Defendants admit that Coinbase's stock price closed at $72.99 on May 10, 2022, and closed at $53.72 on May 11, 2022, following the publication of a quarterly earnings report. Exchange Act Defendants otherwise deny the allegations in Paragraph 233.

234. To the extent Paragraph 234 purports to characterize and quote from a Piper Sandler report published on May 11, 2022, Exchange Act Defendants respectfully refer the Court to that report for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 234.

235. Paragraph 235 purports to characterize and quote from a New Constructs article published on May 13, 2022, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

236. Paragraph 236 purports to characterize and quote from a The Financial Times article published on May 11, 2022, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

237.   Paragraph 237 purports to characterize and quote from a Protocol article published on May 11, 2022, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

238.   Paragraph 238 purports to characterize and quote from a Bloomberg article published on July 25, 2022, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

239.   Exchange Act Defendants admit that the price of Coinbase common stock closed at $67.07 per share on July 25, 2022, and that it closed at $52.93 per share on July 26, 2022.  Exchange Act Defendants otherwise deny the allegations in Paragraph 239.

240.   To the extent Paragraph 240 purports to characterize and quote from reports published by market commentators, including a July 26, 2022, Morningstar report, Exchange Act Defendants respectfully refer the Court those reports for their complete and accurate contents.   Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 240.

241.   To the extent Paragraph 241 purports to characterize the September 22, 2022, article published in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 241.

242.   To the extent Paragraph 242 purports to characterize the September 22, 2022, article published in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 242.

243.   Exchange Act Defendants admit that the price of Coinbase common stock closed at $67.64 on September 21, 2022, and that it closed at $62.94 on September 22, 2022.  Exchange Act Defendants otherwise deny the allegations in Paragraph 243.

244.   To the extent Paragraph 244 purports to characterize Coinbase's blog post published on September 22, 2022, Exchange Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 244.

245.   To the extent Paragraph 245 purports to characterize the article published on September 27, 2022, in Digital Wealth News entitled, *The Wall Street Journal & Coinbase "Have Words" . . . Whose [sic]Right?*, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 245.

246.   To the extent Paragraph 246 purports to characterize the article published on October 10, 2022, in Times Square Investment Journal entitled,

*Coinbase's Stock Drops As Proprietary Trading Experiment Exposes Potential Conflicts Of Interest*, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 246.

247.    Paragraph 247 purports to characterize and quote from a Form 8-K Coinbase filed on March 22, 2023, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

248.    Paragraph 248 purports to characterize and quote from a blog post published by Coinbase on March 22, 2023, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

249.    Exchange Act Defendants admit that the price of Coinbase common stock closed at $77.14 on March 22, 2023, and closed at $66.30 on March 23, 2023. Exchange Act Defendants otherwise deny the allegations in Paragraph 249.

250.    To the extent Paragraph 250 purports to characterize and quote from a March 23, 2023, analyst report, Exchange Act Defendants respectfully refer the Court to that report for its complete and accurate contents.    Exchange Act Defendants otherwise deny the allegations in Paragraph 250.

251.    Paragraph 251 purports to characterize and quote from a March 23, 2023, analyst report, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

252.    Paragraph 252 purports to characterize and quote from a March 24, 2023, analyst report, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

253.    Paragraph 253 purports to characterize and quote from the SEC Complaint, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

254.    Paragraph 254 purports to characterize and quote from a June 6, 2023, Bloomberg article, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

255.    Exchange Act Defendants admit that the price of Coinbase common stock closed at $77.14 on June 5, 2023, opened at $47.10 on June 6, 2023, and closed at $51.61 on June 6, 2023.  Exchange Act Defendants otherwise deny the allegations in Paragraph 255.

256.    Paragraph 256 purports to characterize and quote from a June 6, 2023, report from Barclays, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

257.    Paragraph 257 purports to characterize and quote from a June 6, 2023, report from Barclays, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

258.  To the extent Paragraph 258 purports to characterize and quote from Coinbase's Registration Statement, Exchange Act Defendants respectfully refer the Court to that document for its complete and accurate contents.  Exchange Act Defendants admit that Coinbase filed its Form S-1 Registration Statement with the SEC on March 23, 2021.  Exchange Act Defendants further admit that the SEC deemed Coinbase's Form S-1 Registration Statement effective on April 1, 2021. Exchange Act Defendants further admit that Coinbase filed its Prospectus on April 14, 2021.  Exchange Act Defendants further admit that Coinbase's Prospectus incorporated and formed part of Coinbase's Form S-1 Registration Statement.

259.  Paragraph 259 purports to characterize and quote from Coinbase's Registration Statement, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

260.  Paragraph 260 purports to characterize and quote from Coinbase's Registration Statement, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

261.  To the extent Paragraph 261 contains legal conclusions, no response is required.  To the extent Paragraph 261 purports to characterize and quote from statements made by Defendant Armstrong on May 11, 2022, Exchange Act Defendants respectfully refer the Court to those statements for their complete and

accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 261.

262.   To the extent Paragraph 262 contains legal conclusions, no response is required.   To the extent Paragraph 262 purports to characterize and quote from Coinbase's Prospectus, Exchange Act Defendants respectfully refer the Court to that document for their complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 262.

263.   To the extent Paragraph 263 contains legal conclusions, no response is required.    Exchange Act Defendants otherwise deny the allegations in Paragraph 263.

264.   Paragraph 264 purports to characterize and quote from Coinbase's Registration Statement, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

265.   To the extent Paragraph 265 contains legal conclusions, no response is required.   To the extent Paragraph 265 purports to characterize and quote from Coinbase's Registration Statement, Exchange Act Defendants respectfully refer the Court to that document for its complete and accurate contents.   Exchange Act Defendants admit that as a fee for staking services, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls

between 15% and 35%, inclusive.  Exchange Act Defendants otherwise deny the allegations in Paragraph 265.

266.   Exchange Act Defendants admit the allegations in Paragraph 266.

267.   Paragraph 267 purports to characterize and quote from Coinbase's Q1 2021 earnings call held on May 13, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

268.   Paragraph 268 purports to characterize and quote from Coinbase's Q1 2021 earnings call held on May 13, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

269.   To the extent Paragraph 269 contains legal conclusions, no response is required.  To the extent Paragraph 269 purports to characterize and quote from statements by Defendant Haas on Coinbase's Q1 2021 earnings call held on May 13, 2021, Exchange Act Defendants respectfully refer the Court to that document for its complete and accurate contents.  Exchange Act Defendants admit that for the year ended December 31, 2020, transaction revenue represented over 96% of Coinbase's net revenue, excluding crypto asset sales revenue and corporate interest income.  Exchange Act Defendants further admit that in Q1 2021, retail transactions constituted 95% of Coinbase's transaction revenues.  Exchange Act Defendants further admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be

considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors."  Exchange Act Defendants otherwise deny the allegations in Paragraph 269.

270.   To the extent Paragraph 270 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that document for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 270.

271.   Paragraph 271 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

272.   To the extent Paragraph 272 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 272.

273.   To the extent Paragraph 273 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that document for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 273.

274.   Paragraph 274 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

275.   To the extent Paragraph 275 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 275.

276.   To the extent Paragraph 276 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that document for its complete and accurate contents.   Exchange Act Defendants otherwise admit the allegations in Paragraph 276.

277.   Paragraph 277 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

278.   To the extent Paragraph 278 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 278.

279.   To the extent Paragraph 279 purports to characterize and quote from statements made at the J.P. Morgan Crypto Economy Forum on November 30, 2021, Exchange Act Defendants respectfully refer the Court to that transcript for its

complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 279.

280. To the extent Paragraph 280 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 280.

281. To the extent Paragraph 281 purports to characterize and quote from statements made at the Goldman Sachs US Financial Services Conference on December 7, 2021, Exchange Act Defendants respectfully refer the Court to that transcript for its complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 281.

282. Paragraph 282 purports to characterize and quote from Defendant Choi's statements made at the Goldman Sachs US Financial Services Conference on December 7, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

283. To the extent Paragraph 283 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 283.

284. To the extent Paragraph 284 purports to characterize and quote from Coinbase's 2021 Form 10-K, Exchange Act Defendants respectfully refer the Court

to that document for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 284.

285.   Paragraph 285 purports to characterize and quote from Coinbase's 2021 Form 10-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

286.   To the extent Paragraph 286 contains legal conclusions, no response is required.   Exchange  Act  Defendants  otherwise  deny  the  allegations  in Paragraph 286.

287.   Paragraph 287 purports to characterize and quote from Coinbase's 2021 Form 10-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

288.   To the extent Paragraph 288 contains legal conclusions, no response is required.   Exchange  Act  Defendants  otherwise  deny  the  allegations  in Paragraph 288.

289.   To the extent Paragraph 289 purports to characterize and quote from statements made at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022, Exchange Act Defendants respectfully refer the Court to that transcript for its complete and accurate contents.  Exchange Act Defendants admit that Armstrong and Haas represented Coinbase at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022.

290.    Paragraph 290 purports to characterize and quote from Defendant Haas's statements made at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

291.    To the extent Paragraph 291 contains legal conclusions, no response is required.  To the extent Paragraph 291 purports to characterize and quote from Defendant Haas's statements made at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022, Exchange Act Defendants respectfully refer the Court to that transcript for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 291.

292.    Paragraph 292 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

293.    Paragraph 293 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

294.    Paragraph 294 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

295.   Paragraph 295 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

296.   Paragraph 296 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

297.   Paragraph 297 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

298.   Paragraph 298 purports to characterize and quote from Coinbase's Offering Materials, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

299.   To the extent Paragraph 299 contains legal conclusions, no response is required.  To the extent Paragraph 299 purports to characterize and quote from Coinbase's Offering Materials, Exchange Act Defendants respectfully refer the Court to those materials for their complete and accurate contents.  Exchange Act Defendants admit that in or around July 2021, Coinbase formed a team called CRS that offered solutions to sophisticated institutional investors who sought exposure to the crypto asset class.  Exchange Act Defendants otherwise deny the allegations in Paragraph 299.

300.    To the extent Paragraph 300 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 300.

301.    Paragraph 301 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

302.    Paragraph 302 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

303.    Paragraph 303 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

304.    To the extent Paragraph 304 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 304.

305.    To the extent Paragraph 305 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents. Exchange Act Defendants deny that Coinbase filed its Q2 2021 Form 10-Q on August 11, 2021, and aver that

Coinbase filed that Form 10-Q on August 10, 2021.  Exchange Act Defendants otherwise admit the allegations in Paragraph 305.

306.   Paragraph 306 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

307.   Paragraph 307 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

308.   Paragraph 308 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

309.   To the extent Paragraph 309 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 309.

310.   To the extent Paragraph 310 purports to characterize and quote from Coinbase's blog post published on August 19, 2021, entitled Coinbase updates investment policy to increase investments in crypto assets, Exchange Act Defendants respectfully refer the Court to that document for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 310.

311.   To the extent Paragraph 311 contains legal conclusions, no response is required.   To the extent Paragraph 311 purports to characterize and quote from Defendant Haas's testimony before the United States House of Representatives Committee on Financial Services on December 8, 2021, Exchange Act Defendants respectfully refer the Court to that testimony for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 311.

312.   To the extent Paragraph 312 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 312.

313.   Paragraph 313 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

314.   Paragraph 314 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

315.   Paragraph 315 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

316.   To the extent Paragraph 316 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 316.

317.   To the extent Paragraph 317 purports to characterize and quote from Nance's questions at the Goldman Sachs US Financial Services Conference on December 7, 2021, Exchange Act Defendants respectfully refer the Court to those questions for their complete and accurate contents.   Exchange Act Defendants otherwise admit the allegations in Paragraph 317.

318.   Paragraph 318 purports to characterize and quote from Defendant Choi's statements at the Goldman Sachs US Financial Services Conference on December 7, 2021, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

319.   To the extent Paragraph 319 contains legal conclusions, no response is required.   To the extent Paragraph 319 purports to characterize and quote from Defendant Choi's statements at the Goldman Sachs US Financial Services Conference on December 7, 2021, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 319.

320.   To the extent Paragraph 320 purports to characterize and quote from Congresswoman Nydia M. Velazquez's question during the hearing before the

United States House of Representatives Committee on Financial Services on December 8, 2021, Exchange Act Defendants respectfully refer the Court to that question for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 320.

321.   Paragraph 321 purports to characterize and quote from Defendant Haas's testimony before the United States House of Representatives Committee on Financial Services on December 8, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

322.   Paragraph 322 purports to characterize and quote from Representative Alexandria Ocasio-Cortez's question during the hearing before the United States House of Representatives Committee on Financial Services on December 8, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

323.   Paragraph 323 purports to characterize and quote from Defendant Haas's testimony before the United States House of Representatives Committee on Financial Services on December 8, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

324.   To the extent Paragraph 324 contains legal conclusions, no response is required.  To the extent Paragraph 324 purports to characterize and quote from Defendant Haas's testimony before the United States House of Representatives

Committee on Financial Services on December 8, 2021, Exchange Act Defendants respectfully refer the Court to the testimony for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 324.

325.   To the extent Paragraph 325 purports to characterize and quote from Coinbase's 2021 Form 10-K, Exchange Act Defendants respectfully refer the Court for to that filing its complete and accurate contents.   Exchange Act Defendants otherwise admit the allegations in Paragraph 325.

326.   Paragraph 326 purports to characterize and quote from Coinbase's 2021 Form 10-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

327.   Paragraph 327 purports to characterize and quote from Coinbase's 2021 Form 10-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

328.   Paragraph 328 purports to characterize and quote from Coinbase's 2021 Form 10-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

329.   To the extent Paragraph 329 contains legal conclusions, no response is required.   Exchange Act Defendants admit that CRS entered into a structured transaction with an affiliate of Invesco Ltd. under which that affiliate loaned CRS $100 million to invest in digital assets between March 2022 and June 2022 pursuant

to agreements between such affiliate and Coinbase, but deny that Coinbase engaged in any proprietary trading, including through this transaction. Exchange Act Defendants otherwise deny the allegations in Paragraph 329.

330.    To the extent Paragraph 330 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 330.

331.    Paragraph 331 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

332.    Paragraph 332 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

333.    Paragraph 333 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

334.    To the extent Paragraph 334 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 334.

335.   To the extent Paragraph 335 purports to characterize and quote from Coinbase's Q2 2022 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 335.

336.   Paragraph 336 purports to characterize and quote from Coinbase's Q2 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

337.   Paragraph 337 purports to characterize and quote from Coinbase's Q2 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

338.   Paragraph 338 purports to characterize and quote from Coinbase's Q2 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

339.   To the extent Paragraph 339 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 339.

340.   Paragraph 340 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

341.    Paragraph 341 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

342.    To the extent Paragraph 342 contains legal conclusions, no response is required.  Exchange Act Defendants admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023.  Exchange Act Defendants further admit that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its listings and listing process.  Exchange Act Defendants further admit that in July 2022, the SEC filed a complaint accusing three individuals with securities fraud related to crypto asset trading, including with respect to certain crypto assets listed on Coinbase's platform.  Exchange Act Defendants further admit that the defendants in that action included a former Coinbase employee, and that Coinbase provided information to the SEC as part of their investigation into the alleged frontrunning.  Exchange Act Defendants further admit that Coinbase interacts with individuals providing information about a digital asset that Coinbase is evaluating for listing on its platform, including when needed to collect information Coinbase requires for its listing review process.  To the extent Paragraph 342 purports to characterize alleged communications between Coinbase and an unidentified "issuer," Exchange Act Defendants respectfully refer the Court to such communications for their complete and accurate contents.  Each Exchange Act

Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 342.

343. To the extent Paragraph 343 purports to characterize and quote from a blog post Coinbase published on July 21, 2022, Exchange Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 343.

344. To the extent Paragraph 344 contains legal conclusions, no response is required. Exchange Act Defendants admit that by the time of July 2022, the SEC had sent Coinbase a voluntary request for information, including about its listings and listing process. Exchange Act Defendants further admit that Coinbase met with the SEC many times over a nine month period prior to March 2023. To the extent Paragraph 344 purports to characterize and quote from statements made by Defendant Grewal in July 2021, Exchange Act Defendants respectfully refer the court to those statements for their complete and accurate contents. To the extent Paragraph 344 purports to characterize and quote from a statement made by Defendant Armstrong in August 2022, Exchange Act Defendants respectfully refer the court to that statement for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 344.

345.    To the extent Paragraph 345 contains legal conclusion, no response is required.  Exchange Act Defendants admit that Coinbase interacts with individuals providing information about a digital asset that Coinbase is evaluating for listing on its platform, including when needed to collect information Coinbase requires for its listing review process.  Exchange Act Defendants further admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff neither agreed nor disagreed with Coinbase's staking analysis.  Exchange Act Defendants otherwise deny the allegations in Paragraph 345.

346.    Paragraph 346 purports to characterize and quote from a July 25, 2022, post by Defendant Grewal on his Twitter account, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

347.    Exchange Act Defendants admit that Reuters published an article entitled, *Crypto Exchange Coinbase Faces SEC Probe Over Securities*, on July 25, 2022.  To the extent Paragraph 347 purports to characterize and quote from a July 25, 2022, article published by Reuters, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.

348.    Paragraph 348 purports to characterize and quote from a July 25, 2022 article published by Reuters, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

349.    To the extent Paragraph 349 contains legal conclusions, no response is required.    Exchange Act Defendants otherwise deny the allegations in Paragraph 349.

350.    Exchange Act Defendants admit that Coinbase held an analyst call on August 9, 2022, in which Anil Gupta and Defendant Haas participated, and from which Plaintiffs quote in Paragraphs 351 and 352.  Exchange Act Defendants deny that Defendants Armstrong and Choi participated in that call.

351.    Paragraph 351 purports to characterize and quote from Coinbase's Q2 2022 analyst call, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

352.    Paragraph 352 purports to characterize and quote from Coinbase's Q2 2022 analyst call, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

353.    To the extent Paragraph 353 contains legal conclusions, no response is required.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 353.

354.    To the extent Paragraph 354 purports to characterize and quote from a February 8, 2023 post by Defendant Grewal on his Twitter account, Exchange Act Defendants respectfully refer the Court to that post for its complete and accurate

contents.    Exchange Act Defendants otherwise deny the allegations in Paragraph 354.

355.    Paragraph 355 purports to characterize and quote from a February 8, 2023 post by Defendant Armstrong on his Twitter account, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

356.    To the extent Paragraph 356 contains legal conclusions, no response is required.  Exchange Act Defendants admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023.  Exchange Act Defendants further admit that by the time of July 2022, the SEC had sent Coinbase a voluntary request for information, including about its listings and listing process.    Exchange Act Defendants further admit that Coinbase met with the SEC many times over a nine month period prior to March 2023.  Exchange Act Defendants further admit that in January 2023, the day before a scheduled meeting for the SEC to provide its first substantive responses to Coinbase, the SEC canceled the meeting and told Coinbase it would proceed to enforcement instead.  To the extent Paragraph 356 purports to characterize and quote from Coinbase's statements following the public disclosure of the Wells Notice it received on March 22, 2023, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Exchange Act Defendants admit that Coinbase interacts with individuals providing information about a digital asset that Coinbase is evaluating for listing on

its platform, including when needed to collect information Coinbase requires for its listing review process. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 356.

357.    To the extent Paragraph 357 purports to characterize and quote from a February 8, 2023, Twitter post by Defendant Armstrong, Exchange Act Defendants respectfully refer the Court to that post for its complete and accurate contents. To the extent Paragraph 357 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 357.

358.    Exchange Act Defendants lack information and knowledge sufficient to form a belief as to the allegation that Kraken is a "rival," including because that term is vague. Exchange Act Defendants otherwise admit the allegations in Paragraph 358.

359.    To the extent Paragraph 359 purports to characterize and quote from a blog post made by Defendant Grewal on February 10, 2023, Exchange Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 359.

360.   Paragraph 360 purports to, via Paragraph 359, characterize and quote from posts made on the Twitter accounts of Exchange Act Defendants Armstrong and Grewal, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

361.   To the extent Paragraph 361 contains legal conclusions, no response is required.   Exchange Act Defendants admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff neither agreed nor disagreed with Coinbase's staking analysis.   Exchange Act Defendants otherwise deny the allegations in Paragraph 361.

362.   To the extent Paragraph 362 purports to characterize and quote from a February 12, 2023, post by Defendant Armstrong on his Twitter account, Exchange Act Defendants respectfully refer the Court to that post for its complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 362.

363.   To the extent Paragraph 363 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 363.

364.   Exchange Act Defendants admit the allegations in Paragraph 364.

365.   Paragraph 365 purports to characterize and quote from Coinbase's Q4 and FY 2022 earnings call, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

366.   Paragraph 366 purports to characterize and quote from Coinbase's Q4 and FY 2022 earnings call, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

367.   To the extent Paragraph 367 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 367.

368.   To the extent Paragraph 368 purports to characterize and quote from Coinbase's 2022 Form 10-K, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents.   Exchange Act Defendants otherwise admit the allegations in Paragraph 368.

369.   To the extent Paragraph 369 contains legal conclusions, no response is required.  To the extent Paragraph 369 purports to characterize and quote from Coinbase's statements following public disclosure of the Wells Notice, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 369.

370.   To the extent Paragraph 370 purports to characterize and quote from a statement by Defendant Armstrong during an interview with Bloomberg Television, Exchange Act Defendants respectfully refer the Court to that statement for its complete and accurate contents.  Exchange Act Defendants otherwise admit the allegations in Paragraph 370.

371.   To the extent Paragraph 371 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 371.

372.   Exchange Act Defendants admit the allegations in Paragraph 372.

373.   To the extent Paragraph 373 purports to characterize and quote from a blog post by Defendant Grewal dated March 22, 2023, Exchange Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 373.

374.   Paragraph 374 purports to characterize and quote from a blog post by Defendant Grewal dated March 22, 2023, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

375.   To the extent Paragraph 375 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 375.

376.    To the extent Paragraph 376 contains legal conclusions, no response is required.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 376.

377.    To the extent Paragraph 377 contains legal conclusions, no response is required.  To the extent Paragraph 377 purports to characterize Twitter posts made by Defendant Armstrong on May 10, 2022, Exchange Act Defendants respectfully refer the Court to those Twitter posts for their complete and accurate contents. Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors."  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in Paragraph 377.

378.    To the extent Paragraph 378 contains legal conclusions, no response is required.  Exchange Act Defendants admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023.  Exchange Act Defendants further admit

that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its listings and listing process.  Exchange Act Defendants further admit that Coinbase met with the SEC many times over a nine month period prior to March 2023.  Exchange Act Defendants further admit that in over a dozen presentations and many phone calls, Coinbase shared with the SEC its views on a potential structure for registered digital asset securities trading platforms, as well as the feasibility of trading securities and non-securities on a single platform. Exchange Act Defendants further admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff neither agreed nor disagreed with Coinbase's staking analysis.  To the extent Paragraph 378 purports to characterize and quote from a Coinbase blog post dated March 22, 2023, Exchange Act Defendants respectfully refer the Court to that post for its complete and accurate contents.  To the extent Paragraph 378 purports to characterize and quote from interviews of Defendant Armstrong, Exchange Act Defendants respectfully refer the Court to those interviews for their complete and accurate contents.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny the allegations in paragraph 378.

379.   Exchange Act Defendants admit that in September 2019, Coinbase and other digital asset businesses founded the CRC, and that the CRC subsequently

released a framework based on factors the SEC had identified as relevant to the SEC's securities law analysis with respect to digital assets and that CRC said was designed to address the Howey test factors.  To the extent Paragraph 379 purports to characterize and quote from the SEC Complaint, Exchange Act Defendants respectfully refer the Court to that complaint for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 379.

380.    To the extent Paragraph 380 purports to characterize Coinbase's SEC filings or other statements, Exchange Act Defendants respectfully refer the Court to those filings and other statements for their complete and accurate contents.  To the extent Paragraph 380 purports to characterize The Wall Street Journal article published on September 22, 2022, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents.   Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.   Exchange Act Defendants otherwise deny the allegations in Paragraph 380.

381.    To the extent Paragraph 381 contains legal conclusions, no response is required.  Exchange Act Defendants admit that certain Defendants made certain statements relating to the topics of (i) Coinbase's revenues derived from retail customers, safeguarding customers assets, and the risk of loss or destruction of private keys required to access any crypto assets for its customers; (ii) Coinbase's

trading activities (or lack thereof); and (iii) the SEC's investigation of and the regulatory risks facing Coinbase, including whether the Company had offered securities or made securities available for trading. Exchange Act Defendants further admit that such statements were made during earnings calls, investor conferences, congressional testimony, media appearances, or social media. Exchange Act Defendants otherwise deny the allegations in Paragraph 381.

382. Exchange Act Defendants admit that certain Defendants made statements acknowledging that Coinbase's retail transactions accounted for nearly 95% of transaction fee revenues. To the extent that Paragraph 382 purports to characterize or quote Twitter posts from February 14, 2022, Exchange Act Defendants respectfully refer the Court to those posts for their complete and accurate contents. To the extent that Paragraph 382 purports to characterize a Wired article, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 382.

383. Exchange Act Defendants admit that, during the Class Period, Defendant Armstrong generally possessed knowledge regarding the crypto-regulatory environment as it pertains to Coinbase. To the extent Paragraph 383 purports to characterize and quote from statements made by Defendant Armstrong on Coinbase's Q1 2021 and Q2 2021 earnings calls, Exchange Act Defendants

respectfully refer the Court to those earnings calls for their complete and accurate contents.  Exchange Act Defendants otherwise deny the allegations in Paragraph 383.

384.  To the extent Paragraph 384 purports to characterize and quote from statements made by Defendant Armstrong on September 9, 2021, at the Deutsche Bank Tech Conference, and on Coinbase's Q3 2021 earnings call, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents.  Exchange Act Defendants deny that Armstrong made the September 9, 2021, statement that Plaintiffs attribute to him in Paragraph 384.

385.  To the extent Paragraph 385 contains legal conclusions, no response is required.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 385.

386.  Exchange Act Defendants admit that in August 2020, Coinbase's Board granted the "2020 CEO Performance Award" to Defendant Armstrong and respectfully refer the Court to the Offering Materials for a complete and accurate description of the terms of that award.  Exchange Act Defendants further admit that as of December 31, 2020, the grant date fair value of Armstrong's stock options and stock awards granted at the time was $56.67 million.  Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the profit Armstrong

would obtain from the sale of shares obtained via the CEO Performance Award. To the extent Paragraph 386 purports to characterize and quote from a Protos report, Exchange Act Defendants respectfully refer the Court to that report for its complete and accurate contents. Exchange Act Defendants admit that the first tranche of 3,159,930 stock options vested on July 8, 2021. Exchange Act Defendants further admit that this first tranche vested after the volume weighted average price of Coinbase's shares was at or above $200 for 60 consecutive days. Exchange Act Defendants further admit that Coinbase's stock price closed at $244.29 on July 8, 2021, and that the value of 3,159,930 stock options with an exercise price of $23.46 per share, based on that closing price, was over $697 million. Exchange Act Defendants otherwise deny the allegations in Paragraph 386.

387. Exchange Act Defendants admit that the Executive and Director Defendants' gross proceeds from the Direct Listing totaled approximately $2.7 billion dollars. Exchange Act Defendants further admit that Defendant Armstrong sold 749,999 shares (representing less than 2% of his Coinbase stock holdings) for proceeds of over $290 million in the Direct Listing. Exchange Act Defendants further admit that Defendant Choi sold 614,170 shares for proceeds of $223,967,619.79 on April 14, 2021. Exchange Act Defendants deny that Choi received proceeds of over $429 million from sales during the Class Period. Exchange Act Defendants aver that she received proceeds of $235,542,099.79

during the Class Period from sales of a fraction of her Coinbase stock holdings and

with all sales following the Direct Listing being made pursuant to 10b5-1 trading

plans.  Exchange Act Defendants otherwise deny the allegations in Paragraph 387.

388.   To the extent Paragraph 388 contains legal conclusions, no response is

required.  To the extent Paragraph 388 purports to characterize and quote from

Defendant Haas's statements made at the virtual Morgan Stanley Technology,

Media, and Telecom Conference on March 9, 2022, Exchange Act Defendants

respectfully refer the Court to those statements for their complete and accurate

contents.  To the extent Paragraph 388 purports to characterize Coinbase's Q1 2022

Form 10-Q filed on May 10, 2022, Exchange Act Defendants respectfully refer the

Court to that filing for its complete and accurate contents.  To the extent Paragraph

388 purports to characterize Twitter posts by Defendant Armstrong on May 10,

2022, Exchange Act Defendants respectfully refer the Court to those posts on for

their complete and accurate contents.   Each Exchange Act Defendant lacks

knowledge or information sufficient to form a belief as to the personal knowledge

of the other Exchange Act Defendants.  Exchange Act Defendants otherwise deny

the allegations in Paragraph 388.

389.  To the extent Paragraph 389 purports to characterize unidentified

statements purportedly made by Defendants and the September 22, 2022, article

published in The Wall Street Journal, Exchange Act Defendants respectfully refer

the Court to those statements and that article for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 389.

390. To the extent Paragraph 390 purports to characterize statements made by certain Defendants on July 21, 2022, and in February and March 2023, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents. To the extent Paragraph 390 purports to characterize media coverage of SEC activities published on July 25, 2022, Exchange Act Defendants respectfully refer the Court to that coverage for its complete and accurate contents. Exchange Act Defendants admit that on March 22, 2023, Defendant Grewal published a blog post on Coinbase's website, which discussed the Wells notice Coinbase received that same day. Exchange Act Defendants further admit that the Wells notice referenced an undefined portion of Coinbase's listed digital assets, its staking service Coinbase Earn, Coinbase Prime, and Coinbase Wallet. Exchange Act Defendants further admit that Grewal's post stated that in January 2023, on the day before a scheduled meeting, the SEC canceled on Coinbase and told Coinbase that they would be shifting back to an enforcement investigation. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 390.

391.   To the extent Paragraph 391 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 391.

392.   To the extent Paragraph 392 contains legal conclusions, no response is required.  Exchange Act Defendants admit that the price of Coinbase common stock closed at $342.98 per share on November 12, 2021.   Exchange Act Defendants otherwise deny the allegations in Paragraph 392.

393.   To the extent Paragraph 393 contains legal conclusions, no response is required. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to what Plaintiffs and members of the putative Class would or would not have done under different circumstances.  Exchange Act Defendants otherwise deny the allegations in Paragraph 393.

394.   To the extent Paragraph 394 contains legal conclusions, no response is required.   Exchange Act Defendants otherwise deny the allegations in Paragraph 394.

395.   To the extent that Paragraph 395 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, Exchange Act Defendants respectfully refer the Court to that filing for its complete and accurate contents.   Exchange Act Defendants otherwise deny the allegations in Paragraph 395.

396.    Paragraph 396 purports to characterize and quote from Defendant Armstrong's Twitter posts on May 10, 2022, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

397.    Exchange Act Defendants admit that the price of Coinbase common stock closed at $72.99 per share on May 10, 2022, and at $53.72 on May 11, 2022. Exchange Act Defendants otherwise deny the allegations in Paragraph 397.

398.    Paragraph 398 purports to characterize and quote from a July 25, 2022, article published by Bloomberg, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

399.    Exchange Act Defendants admit that the price of Coinbase common stock closed at $67.07 per share on July 25, 2022, and closed at $52.93 per share on July 26, 2022.    Exchange Act Defendants otherwise deny the allegations in Paragraph 399.

400.    To the extent Paragraph 400 purports to characterize the September 22, 2022, article published in The Wall Street Journal, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 400.

401.    Exchange Act Defendants admit that the price of Coinbase common stock closed at $67.64 on September 21, 2022, and that it closed at $62.94 on

September 22, 2022.  Exchange Act Defendants otherwise deny the allegations in Paragraph 401.

402.  Paragraph 402 purports to characterize and quote from Coinbase's March 22, 2023, Form 8-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

403.  Paragraph 403 purports to characterize and quote from a March 22, 2023, blog post on Coinbase's website, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

404.  Exchange Act Defendants admit that the price of Coinbase common stock closed at $77.14 on March 22, 2023, and closed at $66.30 on March 23, 2023. Exchange Act Defendants otherwise deny the allegations in Paragraph 404.

405.  Paragraph 405 purports to characterize and quote from the SEC Complaint, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

406.  Exchange Act Defendants admit that the price of Coinbase common stock closed at $58.71 on June 5, 2023, and closed at $51.61 on June 6, 2023. Exchange Act Defendants otherwise deny the allegations in Paragraph 406.

407.  To the extent that Paragraph 407 contains legal conclusions, no response is required.  Exchange Act Defendants admit that Coinbase common stock was traded on the Nasdaq exchange.  Exchange Act Defendants further admit that

Coinbase has filed periodic reports with the SEC.  Exchange Act Defendants further admit that Coinbase has communicated with investors via various public disclosures. Exchange Act Defendants further admit that multiple analysts have followed Coinbase and issued publicly available reports regarding the Company.  Exchange Act Defendants otherwise deny the allegations in Paragraph 407.

408.  To the extent that Paragraph 408 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 408.

409.  To the extent that Paragraph 409 contains legal conclusions, no response is required.  Exchange Act Defendants lack knowledge or information sufficient to form a belief as to what Plaintiffs and members of the putative Class would or would not have done under different circumstances.  Exchange Act Defendants otherwise deny the allegations in Paragraph 409.

410.  To the extent that Paragraph 410 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 410.

411.  To the extent that Paragraph 411 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 411.

412.    To the extent that Paragraph 412 contains legal conclusions, no response is required.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants.    Exchange Act Defendants otherwise deny the allegations in Paragraph 412.

413.    Exchange Act Defendants incorporate their answers to Paragraphs 1 through 412.    To the extent that Paragraph 413 contains legal conclusions, no response is required.  Exchange Act Defendants admit that Plaintiffs purport to bring Count I as described in Paragraph 413.  Exchange Act Defendants otherwise deny the allegations in Paragraph 413.

414.    To the extent that Paragraph 414 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 414.

415.    To the extent that Paragraph 415 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 415.

416.    To the extent that Paragraph 416 contains legal conclusions, no response is required.  Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 416.

417.   To the extent that Paragraph 417 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 417.

418.   To the extent that Paragraph 418 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 418.

419.   To the extent that Paragraph 419 contains legal conclusions, no response is required.  Exchange Act Defendants otherwise deny the allegations in Paragraph 419.

420.   Defendants Armstrong, Haas, Choi, and Grewal incorporate their answers to Paragraphs 1 through 419.  To the extent that Paragraph 420 contains legal conclusions, no response is required.  Defendants Armstrong, Haas, Choi, and Grewal admit that Plaintiffs purport to bring Count II as described in Paragraph 420.  Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 420.

421.   To the extent that Paragraph 421 contains legal conclusions, no response is required.  Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 421.

422.   To the extent that Paragraph 422 contains legal conclusions, no response is required.  Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 422.

423.   To the extent that Paragraph 423 contains legal conclusions, no response is required.  Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 423.

424.   To the extent that Paragraph 424 contains legal conclusions, no response is required.  To the extent Paragraph 424 purports to characterize the SAC, Securities Act Defendants respectfully refer the Court to the SAC for its complete and accurate contents.  Securities Act Defendants otherwise deny the allegations in Paragraph 424.

425.   To the extent that Paragraph 425 contains legal conclusions, no response is required.  To the extent Paragraph 425 purports to characterize the SAC, Securities Act Defendants respectfully refer the Court to the SAC for its complete and accurate contents.  Securities Act Defendants otherwise deny the allegations in Paragraph 425.

426.   To the extent that Paragraph 426 contains legal conclusions, no response is required.  To the extent Paragraph 426 purports to characterize the SAC, Securities Act Defendants respectfully refer the Court to the SAC for its complete

and accurate contents.  Securities Act Defendants otherwise deny the allegations in Paragraph 426.

427.   To the extent that Paragraph 427 contains legal conclusions, no response is required. To the extent that a response is required, Securities Act Defendants admit that Coinbase has used the United States mails, interstate telephone communications, and the facilities of Nasdaq.  Securities Act Defendants otherwise deny the allegations in Paragraph 427.

428.   Securities Act Defendants admit the allegations in Paragraph 428.

429.   Securities Act Defendants deny that Paragraph 429 accurately describes the number of shares sold and the proceeds received by Defendant Andreessen. Securities Act Defendant aver that Paragraph 429 describes shares sold by AH Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC between April 14 and April 15, 2021.  Securities Act Defendants further aver that Paragraph 429 describes shares sold by LAMA Community Trust, AH Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC during the Class Period. Securities Act Defendants otherwise admit the allegations in Paragraph 429.

430.   Securities Act Defendants admit the allegations in Paragraph 430.

431.   Securities Act Defendants deny that Defendant Haun is currently a Coinbase Director.  Securities Act Defendants aver that Haun stepped down from her position in April 2024.   Securities Act Defendants otherwise admit the allegations in Paragraph 431.

432.   Securities Act Defendants deny that the Board of Directors determined that Defendant Kramer was qualified under Item 470(d) of Regulation S-K. Securities Act Defendants aver that Kramer was identified as an "audit committee financial expert" as defined in Item 407(d) of Regulation S-K.   Securities Act Defendants otherwise admit the allegations in Paragraph 432.

433.   Securities Act Defendants admit the allegations in Paragraph 433.

434.   Securities Act Defendants deny that Paragraph 434 accurately describes the proceeds received by Defendant Wilson during the first two trading days following the commencement of the Direct Listing.  Securities Act Defendants aver that Paragraph 434 describes shares sold by Union Square Ventures 2012 Fund, L.P.; USV Investors 2012 Fund, L.P.; USV Opportunity 2014, LP; and USV Opportunity Investors 2014, LP between April 14 and April 15, 2021.  Securities Act Defendants otherwise admit the allegation in Paragraph 434.

435.   Securities Act Defendants admit the allegations in Paragraph 435.

436.   To the extent Paragraph 436 contains legal conclusions, no response is required.   Securities Act Defendants otherwise deny the allegations in Paragraph 436.

437.   To the extent that Paragraph 437 contains legal conclusions, no response is required.  To the extent Paragraph 437 purports to characterize the SAC, Securities Act Defendants respectfully refer the Court to the SAC for its complete and accurate contents.  Securities Act Defendants admit that Plaintiffs purport to bring claims under Sections 11, 12, and 15 of the Securities Act.  Securities Act Defendants otherwise deny the allegations in Paragraph 437.

438.   To the extent that Paragraph 438 contains legal conclusions, no response is required.  Securities Act Defendants admit that Plaintiffs assert control person liability under Section 15 of the Securities Act against Defendants Armstrong, Haas, Jones, and the Director Defendants.  Securities Act Defendants otherwise deny the allegations in Paragraph 438.

439.   To the extent that Paragraph 439 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 439.

440.   To the extent that Paragraph 440 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 440.

441.    To the extent that Paragraph 441 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 441.

442.    To the extent Paragraph 442 purports to characterize a January 28, 2021, blog post, Securities Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents.  Securities Act Defendants otherwise admit the allegations in Paragraph 442.

443.    Securities Act Defendants lack knowledge or information sufficient to form a belief as to the truth of whether new shares are never issued in a direct listing. Securities Act Defendants otherwise deny the allegations in Paragraph 443.

444.    To the extent that Paragraph 444 purports to characterize Coinbase's posted YouTube video responding to questions from the public submitted through Reddit, entitled "Investor Day," Securities Act Defendants respectfully refer the Court to that video and/or its transcript for its complete and accurate contents. Securities Act Defendants otherwise admit the allegations in Paragraph 444.

445.    Securities Act Defendants admit the allegations in Paragraph 445.

446.    Securities Act Defendants admit the allegations in Paragraph 446.

447.    Paragraph 447 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

448.    Paragraph 448 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

449.    Securities Act Defendants admit the allegations in Paragraph 449.

450.    Securities Act Defendants admit the allegations in Paragraph 450.

451.    Securities Act Defendants admit that certain Defendants sold Coinbase shares during the Class Period.  Securities Act Defendants further admit that the chart in Paragraph 451 accurately reflects the number of shares Defendants Armstrong, Haas, Grewal, Jones, Ehrsam, and Haun sold between April 14 and 15, 2021, and during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, and the proceeds received from those sales. Securities Act Defendants deny that the chart in Paragraph 451 is accurate as to Defendant Andreessen.  Securities Act Defendants aver that the chart reflects shares sold by AH Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC between April 14 and April 15, 2021. Securities Act Defendants further aver that the chart reflects shares sold by LAMA Community Trust, AH Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC during the Class Period.

Securities Act Defendants deny that the chart in Paragraph 451 is accurate as to Defendant Wilson.  Securities Act Defendants aver that the chart describes shares sold by Union Square Ventures 2012 Fund, L.P.; USV Investors 2012 Fund, L.P.; USV Opportunity 2014, LP; and USV Opportunity Investors 2014, LP between April 14 and April 15, 2021.  Securities Act Defendants further admit that the chart accurately reflects the number of shares sold by Defendant Choi between April 14 and 15, 2021, and during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, as well as the proceeds she received from her sales between April 14 and 15, 2021.  Securities Act Defendants deny that Choi's gross proceeds exceeded $429 million during the Class Period.  Securities Act Defendants aver that Choi's gross proceeds during the Class Period were $235.5 million.  Securities Act Defendants otherwise deny the allegations in Paragraph 451.

452.   Paragraph 452 purports to characterize and quote from Coinbase's SEC filings, to which Securities Act Defendants respectfully refer the Court to those filings or other statements for their complete and accurate contents.

453.   To the extent Paragraph 453 purports to characterize Coinbase's SEC filings, Securities Act Defendants respectfully refer the Court to those filings for their complete and accurate contents.   Securities Act Defendants deny that Coinbase's total net revenue in 2021 included $6.50 billion in net retail transaction fee revenue.   Securities Act Defendants aver that Coinbase's total net revenue

included $6.49 billion in net retail transaction fee revenue.  Securities Act

Defendants lack knowledge or information sufficient to form a belief as to whether

a "custody fee" for retail users was "built into Coinbase's transaction fees" because

the vague reference to "custody fee" is undefined.  To the extent Paragraph 453

purports to characterize statements made by Defendant Armstrong in a CNBC

Squawk Box interview on April 14, 2021, Securities Act Defendants respectfully

refer the Court to that interview for its complete and accurate contents.  Securities

Act Defendants otherwise admit the allegations in Paragraph 453.

454.  To the extent Paragraph 454 purports to characterize and quote

statements made in Coinbase's Prospectus, Securities Act Defendants respectfully

refer the Court to the Prospectus for its complete and accurate contents.  Securities

Act Defendants otherwise deny the allegations in Paragraph 454.

455.  Paragraph 455 purports to characterize Coinbase's 2021 Form 10-K, to

which Securities Act Defendants respectfully refer the Court for its complete and

accurate contents.

456.  Securities Act Defendants admit that Coinbase held over $90 billion in

Assets on Platform—defined as the total U.S. dollar equivalent value of both fiat

currency and crypto assets held or managed in digital wallets on Coinbase's

platform, including its custody services, calculated based on the market price on the

date of measurement—as of December 31, 2020 and that figure rose to as much as

$278 billion during the Class Period. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 456.

457.   To the extent Paragraph 457 purports to characterize and quote from an article by Reuters, Securities Act Defendants respectfully refer the Court to those reports for their complete and accurate contents. Securities Act Defendants admit that Mt. Gox declared bankruptcy in February 2014 after an estimated 700,000 Bitcoins were stolen from its wallets. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 457, including because they relate to cryptocurrency exchanges other than Coinbase.

458.   To the extent Paragraph 458 purports to characterize and quote from Coinbase's Offering Materials and subsequent SEC filings, Securities Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 458.

459.   To the extent Paragraph 459 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 459.

460.    To the extent Paragraph 460 contains legal conclusions, no response is required.  Securities Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors."  Securities Act Defendants otherwise deny the allegations in Paragraph 460.

461.    To the extent Paragraph 461 contains legal conclusions, no response is required.    Securities Act Defendants admit that, as described, *inter alia*, in Coinbase's user agreement, crypto assets are "not backed by the United States government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections."  Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 461.

462.    To the extent Paragraph 462 contains legal conclusions, no response is required.  To the extent Paragraph 462 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Securities Act Defendants respectfully refer the Court to that article for its complete and accurate

contents.    Securities Act Defendants otherwise deny the allegations in Paragraph 462.

463.    To the extent Paragraph 463 purports to characterize and quote from Defendant Armstrong's statements May 2022 and Coinbase's Prospectus, Securities Act Defendants respectfully refer the Court to those sources for their complete and accurate contents.    Securities Act Defendants otherwise deny the allegations in Paragraph 463.

464.    Paragraph 464 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

465.    To the extent Paragraph 465 contains legal conclusions, no response is required.    To the extent Paragraph 465 purports to characterize and quote from Coinbase's Prospectus and Q1 2022 Form 10-Q, Securities Act Defendants respectfully refer the Court to those filings for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 465.

466.    To the extent Paragraph 466 contains legal conclusions, no response is required.    Securities Act Defendants otherwise deny the allegations in Paragraph 466.

467.    Securities Act Defendants lack knowledge or information sufficient to form a belief as to the alleged "laser-focus[]" of "regulators, analysts, and market

commentators." Securities Act Defendants otherwise deny the allegations in Paragraph 467.

468. To the extent that Paragraph 468 contains legal conclusions, no response is required. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 468.

469. Securities Act Defendants admit that Coinbase is a provider of end-to-end financial infrastructure and technology for the cryptoeconomy and that it safeguards customer assets and money. Securities Act Defendants admit that, as described, *inter alia*, in Coinbase's user agreement, crypto assets are "not backed by the United States government and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections." To the extent that Paragraph 469 contains legal conclusions, no response is required. To the extent Paragraph 469 purports to characterize and quote from former SEC Chair Gary Gensler's statements, Securities Act Defendants respectfully refer the Court to Gensler's statements for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 469.

470. To the extent that Paragraph 470 contains legal conclusions, no response is required. Securities Act Defendants admit that Coinbase is a secure

online platform for buying, selling, transferring, and storing cryptocurrency. To the extent Paragraph 470 purports to characterize and quote from the Volcker Rule, Securities Act Defendants respectfully refer the Court to that rule for its complete and accurate contents.

471. To the extent Paragraph 471 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," including Defendant Haas's response, Securities Act Defendants respectfully refer the Court to that video for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 471.

472. Paragraph 472 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," including Defendant Haas's response, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

473. Paragraph 473 purports to characterize and quote from several of Coinbase's SEC filings, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

474. Securities Act Defendants admit that CRS entered into a structured transaction with an affiliate of Invesco Ltd. under which that affiliate loaned CRS

$100 million to invest in digital assets between March 2022 and June 2022 pursuant to agreements between such affiliate and Coinbase, but deny that Coinbase engaged in any proprietary trading, including through this transaction. To the extent Paragraph 474 purports to characterize the September 22, 2022, article published in The Wall Street Journal, and any characterizations of statements purportedly made by Brett Tejpaul therein, Securities Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 474.

475. Securities Act Defendants admit that Coinbase formed CRS in or around July 2021. To the extent Paragraph 475 purports to characterize information from Coinbase's 2021 Form 10-K, Securities Act Defendants respectfully refer the Court to that filing for its complete and accurate contents. Securities Act Defendants deny that Bitcoin and Ethereum accounted for 45% to 56% of Coinbase's annual revenues during the Class Period. Securities Act Defendants aver that, for each of the years 2020 through 2023, Bitcoin and Ethereum jointly accounted for 45% to 56% of the total Trading Volume on Coinbase's platform on an annual basis. Securities Act Defendants admit that, over the course of 2021, the value of Bitcoin and Ethereum fluctuated. Securities Act Defendants admit that Bitcoin's price exceeded $61,000 on days surrounding March 12, 2021. Securities Act Defendants further admit that Bitcoin's price reached lows of around $34,000 around the end of

May 2021 before reaching full-year highs of around $67,000 in November 2021.
Securities Act Defendants otherwise deny the allegations in Paragraph 475.

476.    To the extent Paragraph 476 contains legal conclusions, no response is
required.    Securities Act Defendants otherwise deny the allegations in
Paragraph 476.

477.    Paragraph 477 purports to characterize and quote from Coinbase's
Offering Materials, to which Securities Act Defendants respectfully refer the Court
for their complete and accurate contents.

478.    Paragraph 478 purports to characterize and quote from Coinbase's
Offering Materials, to which Securities Act Defendants respectfully refer the Court
for their complete and accurate contents.

479.    Paragraph 479 purports to characterize and quote from Coinbase's
Registration Statement, to which Securities Act Defendants respectfully refer the
Court for its complete and accurate contents.

480.    To the extent Paragraph 480 contains legal conclusions, no response is
required.  To the extent Paragraph 480 purports to characterize and quote from
Coinbase's Offering Materials, Securities Act Defendants respectfully refer the
Court to those documents for their complete and accurate contents.  Securities Act
Defendants further admit that, as described in Coinbase's filings with the SEC,
including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may

be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Securities Act Defendants otherwise deny the allegations in Paragraph 480.

481.   Paragraph 481 purports to characterize and quote from Coinbase's Registration Statement, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

482.   To the extent Paragraph 482 contains legal conclusions, no response is required.  To the extent Paragraph 482 purports to characterize and quote from Coinbase's Registration Statement, Securities Act Defendants respectfully refer the Court to that document for its complete and accurate contents.  Securities Act Defendants admit that as a fee for staking services, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls between 15% and 35%, inclusive.  Securities Act Defendants otherwise deny the allegations in Paragraph 482.

483.   Paragraph 483 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

484.   Paragraph 484 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

485.   Paragraph 485 purports to characterize and quote from Coinbase's Registration Statement, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

486.   Paragraph 486 purports to characterize and quote from Coinbase's Registration Statement, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

487.   Paragraph 487 purports to characterize and quote from Coinbase's Registration Statement, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

488.   Paragraph 488 purports to characterize and quote from Coinbase's Registration Statement, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

489.   Paragraph 489 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

490.   To the extent Paragraph 490 contains legal conclusions, no response is required.   To the extent Paragraph 490 purports to characterize or quote from

Coinbase's Offering Materials or blog posts, Securities Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Securities Act Defendants admit that in or around July 2021, Coinbase formed a team called CRS that offered solutions to sophisticated institutional investors who sought exposure to the crypto asset class. Securities Act Defendants otherwise deny the allegations in Paragraph 490.

491. To the extent Paragraph 491 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 491.

492. To the extent Paragraph 492 contains legal conclusions, no response is required. To the extent Paragraph 492 purports to characterize and quote from Item 105 of Regulation S-K, Securities Act Defendants respectfully refer the Court to that rule for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 492.

493. To the extent Paragraph 493 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 493.

494. To the extent Paragraph 494 contains legal conclusions, no response is required. To the extent Paragraph 494 purports to characterize and quote from Item 303 of Regulation S-K and the SEC's related interpretive releases, Securities Act

Defendants respectfully refer the Court to those sources for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 494.

495. Paragraph 495 purports to characterize and quote from an SEC interpretative release on Item 303 from May 1989, to which Securities Act Defendants respectfully refer the Court to for its complete and accurate contents.

496. Paragraph 496 purports to characterize and quote from an SEC interpretative release on Item 303 from May 1989, to which Securities Act Defendants respectfully refer the Court to for its complete and accurate contents.

497. Paragraph 497 purports to characterize and quote from the SEC's final rule addressing registrant's disclosure obligations under Item 303 modified on May 7, 2003, to which Securities Act Defendants respectfully refer the Court to for its complete and accurate contents.

498. Paragraph 498 purports to characterize and quote from Item 303 of Regulation S-K, to which Securities Act Defendants respectfully refer the Court to for its complete and accurate contents.

499. To the extent Paragraph 499 contains legal conclusions, no response is required. To the extent Paragraph 499 purports to characterize Item 303 of Regulation S-K and the SEC's related interpretive releases, Securities Act Defendants respectfully refer the Court to those sources for their complete and

accurate contents.   Securities Act Defendants otherwise deny the allegations in Paragraph 499.

500.   To the extent Paragraph 500 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, Securities Act Defendants respectfully refer the Court to that filing for its complete and accurate contents.  Securities Act Defendants otherwise deny the allegations in Paragraph 500.

501.   Paragraph 501 purports to characterize and quote from Defendant Armstrong's Twitter posts on May 10, 2022, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

502.   Securities Act Defendants admit that the price of Coinbase common stock closed at $72.99 per share on May 10, 2022, and at $53.72 on May 11, 2022. Securities Act Defendants otherwise deny the allegations in Paragraph 502.

503.   To the extent Paragraph 503 purports to characterize the September 22, 2022, article published in The Wall Street Journal, Securities Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 503.

504.   Securities Act Defendants admit that the price of Coinbase common stock closed at $67.64 on September 21, 2022, and that it closed at $62.94 on September 22, 2022.  Securities Act Defendants otherwise deny the allegations in Paragraph 504.

505.   To the extent that Paragraph 505 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 505.

506.   To the extent that Paragraph 506 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 506.

507.   To the extent that Paragraph 507 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 507.

508.   To the extent that Paragraph 508 contains legal conclusions, no response is required.  Each Securities Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Securities Act Defendants.   Securities Act Defendants otherwise deny the allegations in Paragraph 508.

509.   To the extent that Paragraph 509 contains legal conclusions, no response is required.  Each Securities Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Securities Act Defendants.   Securities Act Defendants otherwise deny the allegations in Paragraph 509.

510.    Securities Act Defendants incorporate their answers to Paragraphs 437 through 504.   To the extent that Paragraph 510 contains legal conclusions, no response is required.  Securities Act Defendants admit that Plaintiffs purport to bring Count III as described in Paragraph 510.  Securities Act Defendants otherwise deny the allegations in Paragraph 510.

511.   To the extent that Paragraph 511 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 511.

512.   To the extent that Paragraph 512 contains legal conclusions, no response is required.  Securities Act Defendants otherwise admit the allegations in Paragraph 512.

513.   To the extent that Paragraph 513 contains legal conclusions, no response is required.  Securities Act Defendants otherwise admit the allegations in Paragraph 513.

514.   To the extent that Paragraph 514 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 514.

515.   To the extent that Paragraph 515 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 515.

516. To the extent that Paragraph 516 contains legal conclusions, no response is required. Securities Act Defendants otherwise admit the allegations in Paragraph 516.

517. To the extent that Paragraph 517 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 517.

518. To the extent that Paragraph 518 contains legal conclusions, no response is required. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 518.

519. To the extent that Paragraph 519 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 519.

520. To the extent that Paragraph 520 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 520.

521. To the extent that Paragraph 521 contains legal conclusions, no response is required. Securities Act Defendants lack knowledge or information sufficient to form a belief as to when Plaintiffs discovered, or reasonably could have

discovered, the facts upon which the initial complaint filed in this action is based. Securities Act Defendants otherwise deny the allegations in Paragraph 521.

522.   Securities Act Defendants incorporate their answers to Paragraphs 437 through 504.   To the extent that Paragraph 522 contains legal conclusions, no response is required.   Securities Act Defendants otherwise deny the allegations in Paragraph 522.

523.   To the extent that Paragraph 523 contains legal conclusions, no response is required.   Securities Act Defendants admit that Plaintiffs Firth and Steinmetz purport to bring Count IV as described in Paragraph 523.   Securities Act Defendants otherwise deny the allegations in Paragraph 523.

524.   To the extent that Paragraph 524 contains legal conclusions, no response is required.   Securities Act Defendants otherwise deny the allegations in Paragraph 524.

525.   To the extent that Paragraph 525 contains legal conclusions, no response is required.   Securities Act Defendants otherwise deny the allegations in Paragraph 525.

526.   To the extent that Paragraph 526 contains legal conclusions, no response is required.   Securities Act Defendants otherwise deny the allegations in Paragraph 526.

527.   To the extent that Paragraph 527 contains legal conclusions, no response is required.   Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 527.

528.   To the extent that Paragraph 528 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 528.

529.   To the extent that Paragraph 529 contains legal conclusions, no response is required.  Securities Act Defendants otherwise deny the allegations in Paragraph 529.

530.   To the extent that Paragraph 530 contains legal conclusions, no response is required.   Securities Act Defendants lack knowledge or information sufficient to form a belief as to when Plaintiffs Firth and Steinmetz discovered, or reasonably could have discovered, the facts upon which this Count is based. Securities Act Defendants otherwise deny the allegations in Paragraph 530.

531.   Defendants Armstrong, Haas, Jones, and the Director Defendants incorporate their answers to Paragraphs 437 through 504.   To the extent that Paragraph 531 contains legal conclusions, no response is required.   Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 531.

532.   To the extent that Paragraph 532 contains legal conclusions, no response is required.   Defendants Armstrong, Haas, Jones, and the Director Defendants admit that Plaintiffs purport to bring Count III as described in Paragraph 532.  Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 532.

533.   To the extent that Paragraph 533 contains legal conclusions, no response is required.   Defendants Armstrong, Haas, Jones, and the Director Defendants admit that Defendants Armstrong, Haas, Jones, and the Director Defendants signed the Registration Statement.  Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 533.

534.   To the extent that Paragraph 534 contains legal conclusions, no response is required.   Defendants Armstrong, Haas, Jones, and the Director Defendants lack knowledge or information sufficient to form a belief as to when Plaintiffs discovered or reasonably could have discovered the facts upon which the initial complaint filed in this action is based.  Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 534.

535.   Defendants admit that Plaintiffs purport to bring a class action against Defendants on behalf of a putative class of purchasers of Coinbase securities.  However, Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action.  To the extent that Paragraph 535

contains other legal conclusions, no response is required. Defendants otherwise deny the allegations in Paragraph 535.

536. To the extent that Paragraph 536 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants admit that Coinbase stock was traded on the Nasdaq exchange under the symbol "COIN" from April 14, 2021, through and beyond June 5, 2023. Defendants admit that as of March 15, 2021, there were approximately 196 million shares of Coinbase's common stock outstanding and that from at least April 30, 2021, on, there were more than 200 million shares of Coinbase common stock outstanding. Defendants otherwise deny the allegations in Paragraph 536.

537. To the extent that Paragraph 537 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 537.

538. To the extent that Paragraph 538 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 538.

539. To the extent that Paragraph 539 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 539.

540. To the extent that Paragraph 540 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 540.

541. To the extent that Paragraph 541 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 541.

542. To the extent that Paragraph 542 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 542.

543. To the extent that Paragraph 543 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the SAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 543.

## DEFENSES

### First Defense

The SAC fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because Plaintiffs have not suffered any concrete injury in fact and have not lost money or property that is traceable to any wrongful act by any Defendant and/or traceable to stock purchased in Coinbase's Direct Listing.

### Third Defense

Plaintiffs' claims, and those of the putative class, are not actionable because some or all of the purported misrepresentations or misleading statements or omissions alleged in the SAC were (a) immaterial, (b) general statements of corporate optimism or puffery on which no reasonable investor would rely, and/or (c) statements of opinions that Defendants subjectively believed.

### Fourth Defense

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, by the "bespeaks caution" and/or the Private Securities Litigation Reform Act's "safe harbor" doctrines to the extent that they are based on predictions, expressions of opinion, or forward-looking statements.

**Fifth Defense**

Defendants are not liable to Plaintiffs or other members of the putative class because Coinbase's publicly filed documents contained sufficient cautionary language advising investors about the risks associated with the subject matter of each misrepresentation or omission alleged in the SAC.

**Sixth Defense**

Defendants are not liable to Plaintiffs or other members of the putative class because the substance of the allegedly omitted or misrepresented material information was disclosed in Defendants' own filings and announcements and/or in other sources that were publicly available or widely known to the market, the investing community, Plaintiffs, and other members of the putative class.

**Seventh Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because at all relevant times Defendants acted in good faith, including by acting in conformity with the law and rules and regulations of the SEC.

**Eighth Defense**

Defendants are not liable to Plaintiffs or other members of the putative class for statements made by Defendants because Defendants had, after reasonable investigation, reasonable grounds to believe and did believe, at the time of the

statements at issue, that their statements were true and that there was no omission of any required material fact necessary to make the statements not misleading.

## Ninth Defense

With respect to portions of the Offering Materials purporting to be made on the authority of experts, Defendants had no reasonable ground to believe and did not believe, at the time such part of the Registration Statement became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

## Tenth Defense

Each and every one of Defendants alleged to be a controlling person under Section 20 of the Securities Exchange Act of 1934 or under Section 15 of the Securities Act of 1933 had no knowledge of, or had reasonable grounds to believe in the existence of, the facts by reason of which liability of the control person is alleged to exist.

## Eleventh Defense

Plaintiffs' Exchange Act claims, and those of the putative class, are barred, in whole or in part, because Defendants' conduct was not the proximate cause of any damage or injury allegedly suffered by Plaintiffs or other members of the putative class.

**Twelfth Defense**

Plaintiffs' Securities Act claims, and those of the putative class, are barred, in whole or in part, because none of the alleged misrepresentations or misleading statements or omissions caused, or was a substantial factor in, any increase or decrease in the market value of Coinbase's securities owned by Plaintiffs or other members of the putative class.

**Thirteenth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because superseding or intervening events caused some or all of the change in the value of Coinbase's securities, or any other harm alleged in the SAC.

**Fourteenth Defense**

Plaintiffs' claims against Defendants are barred, in whole or in part, by the applicable statute of limitations or statute of repose.

**Fifteenth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because Plaintiffs and/or other members of the putative class had actual or constructive knowledge of any allegedly misstated facts or omissions or other wrongful conduct upon which Defendants' purported liability rests.

### Sixteenth Defense

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because Plaintiffs and/or other members of the putative class had actual or constructive knowledge of the risks involved in Coinbase's business, and in failing to consider these risks, each such purported plaintiff class member assumed the risk that the value of Coinbase stock would decline if such risks materialized.

### Seventeenth Defense

Plaintiffs and other members of the putative class are barred from recovery for injury or damages because they failed to make reasonable efforts to mitigate any such injury or damages.

### Eighteenth Defense

Plaintiffs' claims are barred, in whole or in part, by the actions, omissions, and/or comparative fault and contributory negligence of Plaintiffs, other members of the putative class, or other third parties, including the failure to undertake their own due diligence.

### Nineteenth Defense

Any recovery for damages allegedly incurred by Plaintiffs and other members of the putative class is subject to offset in an amount including, but not limited to, any tax benefits actually received by Plaintiffs or other members of the putative class throughout their investments.

## **Twentieth Defense**

Under any theory of liability, Plaintiffs and other members of the putative class may not recover damages based on depreciation in the value of Coinbase securities that resulted from factors other than the material devices, schemes, or artifices to defraud, misstatements or omissions, acts, practices, or courses of business alleged in the SAC.

## **Twenty-First Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, by the doctrines of laches, equitable estoppel, waiver, unclean hands, and other related equitable defenses.

## **Twenty-Second Defense**

Any damage, loss, or liability sustained by Plaintiffs and other members of the putative class must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants under the principles of equitable allocation, recoupment, set-off, and contributory or comparative fault.

## **Twenty-Third Defense**

Plaintiffs' claims are barred, in whole or in part, because at all relevant times Defendants had no duty to disclose any information that the SAC alleges was

omitted from the Offering Materials, to the extent that such information existed at the time the Offering Materials were filed or became effective.

## **Twenty-Fourth Defense**

Any recovery for damages allegedly incurred by Plaintiffs or members of the putative class is barred, in whole or in part, by the damages limitations of the Securities Act.

## **Twenty-Fifth Defense**

This action is not properly maintainable as a class action, including because it does not meet the requirements for certification under Federal Rule of Civil Procedure 23.

## **Twenty-Sixth Defense**

Defendants hereby adopt and incorporate by reference any and all other defenses asserted, or that may hereafter be asserted, by any other defendant not expressly set forth herein to the extent such defense may be applicable to Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, the Defendants request that the Court enter judgment for them by adjudging and decreeing that:

A.    The Plaintiffs take nothing by reason of their SAC and that judgment be rendered in favor of Defendants;

B.      That the SAC, and each purported cause of action against Defendants, be dismissed with prejudice;

C.      That the Court determine that this action may not proceed as a class action and dismiss all purported class allegations with prejudice;

D.      That the Court award Defendants the cost, disbursements, and attorneys' fees incurred by them in defending this action; and

E.      That the Court award Defendants any such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Defendants demand a trial by jury on all issues triable by a jury.

Dated: February 10, 2025          **LATHAM & WATKINS LLP**

By: /s/ Kevin M. McDonough
      Kevin M. McDonough (N.J. Bar
      No. 41892005)
      1271 Avenue of the Americas
      New York, NY 10020
      Telephone: (212) 906-1200
      kevin.mcdonough@lw.com

      Andrew B. Clubok (admitted *pro hac vice*)
      Susan E. Engel (admitted *pro hac vice*)
      555 Eleventh Street, NW, Suite 1000
      Washington, D.C. 20004
      Telephone: (202) 637-2200
      andrew.clubok@lw.com
      susan.engel@lw.com

      Morgan E. Whitworth (admitted *pro hac vice*)
      505 Montgomery Street, Suite 2000
      San Francisco, CA 94111
      Telephone: (415) 391-0600
      morgan.whitworth@lw.com

      *Attorneys for Defendants Coinbase*
      *Global, Inc., Brian Armstrong, Alesia J.*
      *Haas, Emilie Choi, Paul Grewal, Jennifer*
      *Jones, Marc Andreessen, Frederick Ernest*
      *Ehrsam III, Kathryn Haun, Kelly Kramer,*
      *Gokul Rajaram, and Fred Wilson*

**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas, Emilie Choi,*
*Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer,*
*Gokul Rajaram, and Fred Wilson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>Hon. Leda Dunn Wettre<br><br>**CERTIFICATE OF SERVICE** |

I, Kevin M. McDonough, hereby certify pursuant to 28 U.S.C. § 1746 that:

1.      I am a partner of the law firm Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020, and counsel for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer N. Jones, Marc L. Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson (collectively, the "Defendants") in the above-captioned matter. I am admitted to the Bar of the State of New Jersey and of this Court.

2.      On February 10, 2025, I caused a true and correct copy of Defendants' Answer to Plaintiffs' Second Amended Consolidated Class Action Complaint, dated February 10, 2025, to be filed electronically using the Court's Case Management/Electronic Case Filings System (CM/ECF), and accordingly served on all parties who receive notice of the filing via CM/ECF.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Dated:      February 10, 2025               Respectfully submitted,

                                            /s/ Kevin M. McDonough
                                            Kevin M. McDonough