**LATHAM & WATKINS LLP**
Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

*Additional counsel on signature page*

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas,*
*Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer,*
*Gokul Rajaram, and Fred Wilson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>Hon. Leda Dunn Wettre<br><br>**Oral Argument Requested**<br><br>**Motion Day**: May 5, 2025 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND .....................................................................................................5

    A.    Coinbase Goes Public Via A Direct Listing ..........................................5

    B.    Defendants Argue That Plaintiffs' Statistical Inference Theory Of Traceability Is Not Viable..................................................................6

    C.    The Order Holds That Plaintiffs Plausibly Allege Securities Act Claims Based On A Statistical Inference Theory Of Traceability, But Acknowledges A Conflict On That Theory's Viability .......................................................................................................7

    D.    The Ninth Circuit Rejects The Statistical Inference Theory Of Traceability In The Direct Listing Context........................................10

ARGUMENT...........................................................................................................12

I.     THE ORDER WARRANTS CERTIFICATION .........................................12

    A.    The Order Implicates Controlling Questions Of Law Regarding The Requirements For Pleading And Proving Traceability Under Section 11 And Section 12(a)(2)...............................................13

    B.    There Are Substantial Grounds For Difference Of Opinion On The Questions Presented.......................................................................18

    C.    An Immediate Appeal May Materially Advance The Ultimate Termination Of This Litigation.........................................................25

II.    ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO RECONSIDER THE ORDER AND DISMISS PLAINTIFFS' SECURITIES ACT CLAIMS............................31

CONCLUSION .....................................................................................................32

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alta Partners, LLC v. Forge Glob. Holdings, Inc.*,
2024 WL 1116682 (S.D.N.Y. Mar. 13, 2024)....................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................24

*Barnes v. Osofsky*,
373 F.2d 269 (2d Cir. 1967) ..............................................................................11

*Bedoya v. Am. Eagle Express Inc.*,
2017 WL 4330351 (D.N.J. Sept. 29, 2017)........................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................17, 25

*Clark v. Coupe*,
55 F.4th 167 (3d Cir. 2022) ...............................................................................32

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
589 U.S. 327 (2020) ...........................................................................................20

*Cosimano v. Township of Union*,
2017 WL 4790381 (D.N.J. Oct. 23, 2017) .........................................................19

*Cupat v. Palantir Techs., Inc.*,
1:22-cv-02384-GPG-SBP (D. Colo. Apr. 4, 2025), Dkt. 123 .........................4, 23

*Davidco Invs., LLC v. Anchor Glass Container Corp.*,
2006 WL 547989 (M.D. Fla. Mar. 6, 2006) .......................................................23

*De Vito v. Liquid Holdings. Grp., Inc.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018)......................................................17, 25

*FTC v. Wyndham Worldwide Corp.*,
10 F. Supp. 3d 602 (D.N.J. 2014).........................................................2, 18, 24, 25

ii

*Graber v. Doe II*,
  59 F.4th 603 (3d Cir. 2023), *cert. denied sub nom. Boresky v. Graber*, 144 S. Ct. 681 (2024)........................................................................................................................5

*Guenther v. Armstrong Rubber Co.*,
  406 F.2d 1315 (3d Cir. 1969) .................................................................................21

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ..................................................................................................7

*Holland v. 9F Inc.*,
  2024 WL 5086106 (D.N.J. Dec. 12, 2024).............................................................25

*In re Ariad Pharms., Inc. Sec. Litig.*,
  842 F.3d 744 (1st Cir. 2016)....................................................................................25

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ................................................................................11

*In re Coinbase Glob., Inc. Sec. Litig.*,
  No. 3:21-cv-05634-TLT (N.D. Cal. Mar. 5, 2025), Dkt. 139 .................................2

*In re Cortuk*,
  2019 WL 1418133 (D.N.J. Mar. 29, 2019) .............................................................19

*In re EveryWare Global, Inc. Sec. Litig.*,
  175 F. Supp. 3d 837 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017) .................8

*In re Gap Stores Sec. Litig.*,
  79 F.R.D. 283 (N.D. Cal. 1978) ..........................................................................9, 24

*In re Hollis*,
  2010 WL 336132 (D.N.J. Jan. 22, 2010)............................................................25, 26

*Johnson v. Alldredge*,
  488 F.2d 820 (3d Cir. 1973) ...............................................................................4, 13

*Johnson v. NCAA*,
  2021 WL 6125095 (E.D. Pa. Dec. 28, 2021)......................................................18, 28

*Juice Ent., LLC v. Live Nation Ent., Inc.*,
  353 F. Supp. 3d 309 (D.N.J. 2018).........................................................................14

iii

*Kaplan v. St. Peter's Healthcare Sys.*,
  2014 WL 4678059 (D.N.J. Sept. 19, 2014)...........................................................22

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974) (en banc) ..................................................2, 13, 15, 30

*Kauffman v. Dreyfus Fund, Inc.*,
  51 F.R.D. 18 (D.N.J. 1969) ...................................................................................29

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005)...........................................................................passim

*Levine v. United Healthcare Corp.*,
  285 F. Supp. 2d 552 (D.N.J. 2003)........................................................................18

*Mylan Pharms. Inc. v. Celgene Corp.*,
  2015 WL 409655 (D.N.J. Jan. 30, 2015).................................................................14

*N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*,
  2008 WL 4692345 (D.N.J. Oct. 8, 2008) ................................................................31

*N.J., Dep't of Treas. v. Fuld*,
  2009 WL 2905432 (D.N.J. Sept. 8, 2009)...............................................................18

*Nat'l Credit Union Admin. Bd. v. Goldman Sachs & Co.*,
  2013 WL 12306438 (C.D. Cal. July 11, 2013)........................................................13

*Pirani v. Slack Techs., Inc.*,
  127 F.4th 1183 (9th Cir. 2025).......................................................................passim

*Pirani v. Slack Techs., Inc.*,
  13 F.4th 940 (9th Cir. 2021) ..................................................................................10

*Pirani v. Slack Techs., Inc.*,
  2020 WL 7061035 (N.D. Cal. June 5, 2020).......................................................3, 15

*Pirani v. Slack Techs., Inc.*,
  445 F. Supp. 3d 367 (N.D. Cal. 2020)....................................................................16

*PNY Techs., Inc. v. Netac Tech. Co.*,
  2016 WL 544488 (D.N.J. Feb. 10, 2016)................................................................19

iv

*Popular Leasing U.S.A., Inc. v. Forman*,
 2009 WL 2969519 (D.N.J. Sept. 14, 2009)..........................................................26

*Reese v. BP Expl. (Alaska) Inc.*,
 643 F.3d 681 (9th Cir. 2011) ...................................................................26, 30

*Rose v. Butterfly Network, Inc.*,
 2025 WL 501427 (D.N.J. Feb. 13, 2025)........................................................22, 25

*Royal Ins. Co. of Am. v. K.S.I. Trading Corp.*,
 2006 WL 1722358 (D.N.J. June 19, 2006)..........................................................13

*Se. Pa. Transp. Auth. v. Orrstown Fin. Serv., Inc.*,
 2020 WL 4041049 (M.D. Pa. 2020)..........................................................4, 27, 28

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
 335 F.R.D. 54 (M.D. Pa. 2020) ...................................................................27

*SEC v. Coinbase, Inc.*,
 2025 WL 40782 (S.D.N.Y. Jan. 7, 2025) ...........................................................26

*Slack Techs., LLC v. Pirani*
 598 U.S. 759 (2023) .........................................................................7, 10, 30

*Tomaine v. Selip & Stylianou, LLP*,
 2024 WL 3440170 (D.N.J. July 17, 2024) ...........................................................19

*Vrakas v. U.S. Steel Corp.*,
 2018 WL 6065051 (W.D. Pa. Nov. 20, 2018).......................................................15

## STATUTES

15 U.S.C. § 77k ..............................................................................................6

15 U.S.C. § 77l(a)(2) .....................................................................................6, 7

28 U.S.C. § 1292(b)................................................................................passim

## OTHER AUTHORITIES

Charles Nesson, *The Evidence or the Event? On Judicial Proof and the
 Acceptability of Verdicts*, 98 Harv. L. Rev. 1357 (1985) ....................................20

Wright & Miller, *Federal Practice and Procedure: Jurisdiction* § 3930 (3d ed., June 2024 update)..................................................................................14

Pursuant to 28 U.S.C. § 1292(b), Defendants respectfully submit this memorandum of law in support of their motion to certify for interlocutory review this Court's Order dated September 5, 2024, granting in part and denying in part Defendants' motion to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint, Dkt. 85 (the "Order").[1]

## **PRELIMINARY STATEMENT**

This is the paradigmatic case in which interlocutory review is warranted. This Court's Order involved two important questions that are unsettled in the Third Circuit and have divided other courts: (1) whether the "traceability requirement" of Section 11 of the Securities Act of 1933 ("Securities Act") means, as it says, that a plaintiff must plead that he actually purchased and "'held'" registered shares by "'trac[ing] the chain of title for [his] shares back to the . . . offering,'" or, as Plaintiffs urge, that the traceability requirement can be established via "statistical inference," *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1188, 1190, 1192 (9th Cir. 2025) (citation omitted); and (2) whether the same traceability requirement applies to Section 12(a)(2) of the Securities Act.

In the Fifth and Ninth Circuits, Plaintiffs' Securities Act claims would fail at the threshold for failure to plead the essential element of traceability. Indeed, a

---

[1] Citations to "Op. __" refer to this Court's Opinion, Dkt. 84. Citations to "¶ __" refer to Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC").

plaintiff raising materially identical Securities Act claims against Coinbase based on the *same* direct listing as here just *voluntarily* dismissed her suit, recognizing that the Ninth Circuit's rule now denies her a cause of action. Notice of Voluntary Dismissal Pursuant to F.R.C.P. 41(a)(1)(A)(i), *In re Coinbase Glob., Inc. Sec. Litig.*, No. 3:21-cv-05634-TLT (N.D. Cal. Mar. 5, 2025), Dkt. 139. There is, at the very least, a significant possibility that the Third Circuit will join this emerging consensus. And if the Third Circuit instead breaks with the other circuits that have decided this issue, there would be a clear circuit conflict warranting Supreme Court review. The reality, therefore, is that Plaintiffs will likely need to prevail in *two* appellate courts for their Securities Act claims to ultimately survive. Regardless of whether they succeed on that arduous path, there is no sense in waiting to determine this threshold legal issue until after enormous resources have been expended by the parties—and this Court—on "a wasted[,] protracted trial." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc).

All three criteria for interlocutory review are easily satisfied. *First*, the requirements for establishing traceability under Section 11 and Section 12(a)(2) are "controlling question[s] of law." 28 U.S.C. § 1292(b). If Plaintiffs' statistical inference theory fails as a matter of law, the Order would give rise to "reversible error on appeal, requiring a grant of [Defendants'] motion to dismiss as to the" Securities Act claims. *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634

2

(D.N.J. 2014), *petition granted*, 799 F.3d 236 (3d Cir. 2015).  Indeed, the issues presented implicate the same "standing analysis" that warranted interlocutory review in *Slack* itself.    *Pirani v. Slack Techs., Inc.*, 2020 WL 7061035, at *1 (N.D. Cal. June 5, 2020).

*Second*, there is a "substantial ground for difference of opinion" with the Order's holdings.  28 U.S.C. § 1292(b).  The Order held, as another district court has, that traceability does not require allegations that a plaintiff *actually purchased* a registered share, but instead can be satisfied simply by alleging that a large percentage of the available "shares . . . were registered" when the plaintiff purchased his shares.  Op. 41.  The Order acknowledged, however, that the Fifth Circuit has expressly rejected this exact statistical inference theory of traceability.  Op. 41-42 (citing *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 492 n.6, 494 (5th Cir. 2005)) (using "but see" signal to contrast *Krim* with the Order's conclusion).  In February 2025, after this Court issued the Order, the Ninth Circuit joined the Fifth Circuit in rejecting the statistical inference theory of traceability.  It did so in the context of a direct listing, just like Coinbase's offering here.  *Slack Techs., Inc.*, 127 F.4th at 1190.  And it applied "the same traceability requirement" to both Section 11 and Section 12 of the Securities Act—in conflict with the Order's suggestion that the requirement only governs Section 11.  *Id.* at 1192.  The Ninth Circuit's recent decision rejecting the Order's key legal premises underscores that immediate review

3

is warranted.  Moreover, several district courts have likewise rejected the statistical inference theory of traceability—including in the direct listing context.  *See, e.g.*, Order at 27-36, *Cupat v. Palantir Techs., Inc.*, 1:22-cv-02384-GPG-SBP (D. Colo. Apr. 4, 2025), Dkt. 123.  As this growing majority of courts has recognized, the Securities Act's text demands plausible allegations (and ultimately proof) that a plaintiff "*actually* owns" shares traceable to the challenged offering materials—not merely that a plaintiff (along with all other purchasers) "likely" purchased traceable shares.  *Krim*, 402 F.3d at 501-02.  These disputed questions of traceability are precisely the type of "legal issues as to which there is considerable question" that Congress sought to make reviewable "without requiring the parties first to participate in a trial that may be unnecessary." *Johnson v. Alldredge*, 488 F.2d 820, 823 (3d Cir. 1973).

*Third*, "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  An appeal would eliminate three of the five claims and remove several defendants from this case.  As courts within the Third Circuit have repeatedly recognized, appeals with similar potential to narrow a case's scope readily satisfy this criterion for interlocutory review.  *See, e.g.*, *Se. Pa. Transp. Auth. v. Orrstown Fin. Serv., Inc.*, 2020 WL 4041049 (M.D. Pa. 2020), *petition granted*, 12 F.4th 337 (3d Cir. 2021).

4

Accordingly, this is the "exceptional case[]" where interlocutory review is appropriate. *Graber v. Doe II*, 59 F.4th 603, 610 n.14 (3d Cir. 2023), *cert. denied sub nom. Boresky v. Graber*, 144 S. Ct. 681 (2024). Alternatively, this Court can obviate the need for interlocutory review by exercising its inherent authority to reconsider its traceability holdings and align its decision with the circuit consensus. Now that multiple, carefully reasoned decisions from federal courts of appeals have squarely rejected Plaintiffs' statistical inference theory of traceability, this Court should do the same. As those courts correctly held, that theory is baseless because it merely establishes a *possibility* that the plaintiff purchased registered shares, not that a plaintiff *actually* purchased registered shares, as required by the Securities Act's text.

## BACKGROUND

**A.    Coinbase Goes Public Via A Direct Listing**

In early 2021, Coinbase went public through a direct listing. In a direct listing, the shareholders of a private company sell their shares directly on a public exchange. ¶ 5. And, unlike in an Initial Public Offering (IPO), both registered and *unregistered* shares (subject to certain exceptions) are immediately available for purchase on public markets. *See* ¶¶ 40-41.

In connection with its direct listing, Coinbase filed a registration statement, a free writing prospectus, and a 424B4 prospectus pursuant to which Coinbase shares

5

were registered (the "Offering Materials"). ¶¶ 75, 78. Approximately 88% of shares were registered pursuant to the Offering Materials on April 14, 2021, the first day Coinbase's shares traded publicly. ¶¶ 41-42. On that day, Additional Plaintiffs Ryan R. Firth and Zvia Steinmetz collectively purchased 350 shares of Coinbase common stock "at prices near the opening price." *Id.* On November 30, 2021, when roughly 74% of Coinbase's shares were registered pursuant to the Offering Materials, Lead Plaintiff Sjunde AP-Fonden purchased 33,696 shares. ¶ 40. Neither Additional Plaintiffs (who purchased on the direct listing's first day) nor Lead Plaintiff (who purchased over seven months later) pleaded any other facts to suggest that the particular shares they purchased were registered pursuant to the Offering Materials.

**B.    Defendants Argue That Plaintiffs' Statistical Inference Theory Of Traceability Is Not Viable**

In December 2023, Defendants moved to dismiss Plaintiffs' claims under the Exchange Act of 1934 ("Exchange Act") and the Securities Act.[2] Dkt. 78-1. As relevant here, Defendants argued that Plaintiffs' claims under Section 11 and

---

[2] This action challenges various alleged misstatements and omissions relating to (1) risks to customer assets in the event of bankruptcy ("Bankruptcy Risk" statements), ¶¶ 258-91, (2) Coinbase's intent to engage in purported proprietary trading ("Proprietary Trading" statements), ¶¶ 292-339, and (3) the risk of an SEC enforcement action ("Regulatory" statements), ¶¶ 340-75. All three sets of statements form the basis for Plaintiffs' fraud claims under Section 10(b) of the Exchange Act. ¶¶ 413-19. Plaintiffs also assert claims based on the Bankruptcy Risk and Proprietary Trading statements under Section 11 and Section 12(a)(2) of the Securities Act. ¶¶ 510-530; *see* 15 U.S.C. §§ 77k, 77*l*(a)(2).

Section 12(a)(2) of the Securities Act failed because Plaintiffs did not plausibly allege that they purchased *registered* shares as required to establish liability under those statutes. Dkt. 78-1 at 43-45. In *Slack Technologies, LLC v. Pirani*, the Supreme Court held a plaintiff can only recover under Section 11 when he has purchased securities registered pursuant to the challenged "registration statement." 598 U.S. 759, 766-68 (2023). Similarly, Section 12(a)(2) allows suit only by a purchaser of a "security" that was offered or sold "by means of a prospectus or oral communication," 15 U.S.C. § 77*l*(a)(2), and the obligation to distribute a prospectus only applies to transactions in registered shares, *Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995). Section 11's and Section 12(a)(2)'s limitations of their causes of action to plaintiffs who have purchased shares registered pursuant to the allegedly defective registration statement or prospectus creates a "traceability" requirement. Defendants argued that Plaintiffs cannot satisfy the requirement to trace their shares to the challenged Offering Materials simply by making a statistical inference from the ratio of registered to unregistered shares available in the market at the time of their purchases. Dkt. 78-1 at 43-46.

**C.    The Order Holds That Plaintiffs Plausibly Allege Securities Act Claims Based On A Statistical Inference Theory Of Traceability, But Acknowledges A Conflict On That Theory's Viability**

This Court granted Defendants' motion in part and denied it in part. With respect to Section 11 traceability, the Court recited Plaintiffs' allegations regarding

the timing of their purchases, purchase price, and the percentage of registered shares on the market, and held that "Plaintiffs have plausibly alleged that they purchased shares pursuant and/or traceable to the Offering Materials." Op. 40-41. In so holding, the Order relied on the Southern District of Ohio's decision in *In re EveryWare Global, Inc. Securities Litigation*, which found Section 11's traceability requirement satisfied "where plaintiffs alleged they purchased shares on the first day of the defendant company's secondary offering at prices near the opening price, 'and that 1,7500,000 [sic] shares were sold in the [secondary offering] in comparison to the pre-existing public float of 2,023,000 shares.'" Op. 41 (quoting 175 F. Supp. 3d 837, 866 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017)); *see also* Dkt. 79 at 45 (Plaintiffs relying on *EveryWare* to oppose dismissal).

The Order acknowledged that its ruling conflicted with the Fifth Circuit's decision in *Krim v. pcOrder.com*, 402 F.3d 489 (5th Cir. 2005). *See* Op. 41. There, one plaintiff purchased securities when shares registered pursuant to a challenged registration statement "still comprised 99.85% of the pool," and another purchased when registered shares "constituted 91% of the market." *Id.* at 492. But the Fifth Circuit nonetheless rejected Plaintiffs' reliance on "nothing more than statistics indicating a high mathematical probability, based on the number of shares purchased by each individual and the number of public offering shares in the market, that at

8

least some of the shares were issued pursuant to the challenged registration statement." *Id.* at 494. The Fifth Circuit explained that such a "statistical tracing" theory "would impermissibly expand the statute's standing requirement" because *every* purchaser could rely on the same statistics to bring their claims, regardless of whether they actually purchased shares registered pursuant to the relevant offering materials. *Id.* at 496-97. Although "in light of current market conditions," it was "virtually impossible to differentiate" registered shares from unregistered shares, the Fifth Circuit recognized that it could not "rewrite" the limitations on Section 11's cause of action "to take account of [those] conditions." *Id.* at 498.

With respect to Section 12(a)(2), the Order appeared to conclude that there is no traceability requirement for Section 12(a)(2) at all. Op. 47 (stating that Section 12(a)(2) does not apply "only to registered shares" (citing *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 306 (N.D. Cal. 1978))). And, in any event, the Order held that any such requirement would be met based on the same "reasoning" applicable to the Court's Section 11 traceability holding.[3] Op. 47.

---

[3] The Order also partially dismissed the Bankruptcy Risk claims to the extent that they relied on non-actionable puffery, Op. 23-24, and dismissed the Proprietary Trading Exchange Act claims, Op. 25-27. The remaining claims consist of Exchange Act claims challenging certain Bankruptcy Risk and Regulatory statements, Securities Act claims challenging certain Bankruptcy Risk and Proprietary Trading statements, and control-person claims.

**D.**    **The Ninth Circuit Rejects The Statistical Inference Theory Of Traceability In The Direct Listing Context**

When this Court issued the Order, the interlocutory appeal in *Slack*—a Securities Act case challenging another direct listing—was before the Ninth Circuit for a second time.  Initially, in *Pirani v. Slack Technologies, Inc.*, the Ninth Circuit held that sales of "unregistered shares . . . in a direct listing" could give rise to Section 11 liability because "their public sale cannot occur without the only operative registration in existence."  13 F.4th 940, 947 (9th Cir. 2021) ("*Slack I*").  The Supreme Court vacated that decision, holding that regardless of whether a security is sold in a direct listing, a Section 11 plaintiff must "plead and prove that he purchased shares traceable to the allegedly defective registration statement."  *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 768, 770 (2023) ("*Slack II*").  The Supreme Court left the question of "[w]hether Mr. Pirani's pleadings can satisfy [Section] 11(a) as properly construed" to the Ninth Circuit on remand and instructed the court to "reconsider[]" Pirani's Section 12(a)(2) claim.  *Id.* at 770 & n.3.

On February 10, 2025, the Ninth Circuit dismissed Pirani's claims under Section 11 and Section 12(a)(2) of the Securities Act.  *Slack Techs., Inc.*, 127 F.4th at 1193 ("*Slack III*").  As to Section 11, Pirani had argued that "he can show traceability . . . by relying on the statistical inference that given the number of shares he purchased and the fraction of shares on the exchange that were registered (about 42 percent), 'the likelihood that none of the 30,000 shares was registered is

10

infinitesimally small.'" *Id.* at 1190.  The Ninth Circuit determined that Pirani's prior "concessions" that he could not "allege traceability" "barred" his claims, but it also proceeded to conclude that, "[i]n any event," Pirani's "statistical theory" was "legally flawed." *Id.*  The Ninth Circuit held that even "a very high probability of purchasing at least some registered shares" failed to establish traceability. *Id.*

Instead, the Ninth Circuit explained that Section 11 plaintiffs "could establish traceability only 'in one of two ways': They 'could prove that they purchased their shares directly in the [challenged] offering itself,' or they 'could prove that their shares, although purchased in the aftermarket, can be traced back to the [challenged] offering itself.'" *Id.* (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013)).  For plaintiffs who fall into the latter category—such as plaintiffs who bought shares on an exchange—"[c]ourts have long noted that tracing shares in this fashion is 'often impossible,'" because such purchases regularly occur through brokers "who do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the [broker's] position." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1106 (quoting *Barnes v. Osofsky*, 373 F.2d 269, 271-72 (2d Cir. 1967)).  In dismissing Pirani's claims in *Slack III*, the Ninth Circuit "agree[d] with the Fifth Circuit, which has likewise rejected the concept of 'statistical tracing' in the context of a Section 11 claim." 127 F.4th at 1190 (quoting *Krim*, 402 F.3d at 496-97).

11

The Ninth Circuit further held that Section 12(a)(2) "also requires tracing a plaintiff's shares to an allegedly false or misleading prospectus." *Id.* at 1191. As the court explained, "a security can be sold 'by means of a prospectus' only if it is a registered security sold in a public offering, and liability under section 12(a)(2) can be based only on the sale of such a security." *Id.* at 1192 (citation omitted). *Slack III* accordingly held that "section 12(a)(2) imposes the same traceability requirement as section 11" and that Pirani failed to state a claim. *Id.* at 1192-93.

## ARGUMENT

### I.   THE ORDER WARRANTS CERTIFICATION

An order may be certified for interlocutory appeal where it (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Order satisfies all three criteria for certification. The questions presented concern whether Section 11's traceability requirement may, as a matter of law, be satisfied by allegations that do not actually trace shares' chain of title back to the challenged offering materials and whether Section 12(a)(2) imposes the same traceability requirement. These questions are essentially identical to the questions reviewed on interlocutory appeal in *Slack* itself and have divided courts across the country. If the Third Circuit disagrees with the Order, that ruling would significantly alter the scope

12

of this litigation.  And the Ninth Circuit's recent, conflicting decision makes clear

that the Third Circuit should address these threshold legal questions now.  *See Nat'l*

*Credit Union Admin. Bd. v. Goldman Sachs & Co.*, 2013 WL 12306438, at \*5-6

(C.D. Cal. July 11, 2013) (granting motion to certify order for interlocutory appeal

filed 33 days after subsequent decision created conflict).  This Court should certify

the Order for interlocutory appeal.

A.     **The Order Implicates Controlling Questions Of Law Regarding The Requirements For Pleading And Proving Traceability Under Section 11 And Section 12(a)(2)**

Under Section 1292(b)'s first criterion, the issue presented must be both

"legal" and "controlling."  *Johnson*, 488 F.2d at 822.  An issue is "controlling" if it

is "serious to the conduct of the litigation either practically or legally."  *Katz*, 496

F.2d at 755.  The most straightforward example of a "controlling question of law" is

one that, if wrongly decided, "would be reversible error on final appeal."  *Id.*  But

that reversal does not have to "terminate the litigation," or even finally "determine[e]

. . . any . . . claim on the merits," to warrant certification.  *Id.*  Rather, the legal issue

on appeal need only be substantial enough that its early resolution would "avoid[]

. . . wasted trial time and litigation expense."  *Id.* at 756; *Royal Ins. Co. of Am. v.*

*K.S.I. Trading Corp.*, 2006 WL 1722358, at \*3 (D.N.J. June 19, 2006) ("On a

practical level, saving time for the District Court, or expense to the litigants, are both

13

considered highly relevant factors."); Wright & Miller, *Federal Practice and Procedure: Jurisdiction* § 3930 (3d ed., June 2024 update) (similar).

The questions presented here easily satisfy these criteria. The question of whether the traceability requirement applies to Section 12(a)(2) is undeniably a "controlling question of law"—indeed, it is essentially the same controlling question on which the Ninth Circuit granted interlocutory review in *Slack* itself. It is "legal" because it involves interpretation of a statutory requirement. And it is "controlling" because that requirement goes to an essential element that a plaintiff may (or may not) have to prove to establish liability under Section 12(a)(2).

The statistical inference question is likewise a controlling question of law. The Fifth and Ninth Circuits have held that, as a matter of law, a plaintiff cannot rely on statistical inference to satisfy the traceability requirement. *Slack III*, 127 F.4th at 1190 (citation omitted). This issue is clearly "legal" because it concerns whether the Order applied the "correct standard" for traceability. *Juice Ent., LLC v. Live Nation Ent., Inc.*, 353 F. Supp. 3d 309, 313 (D.N.J. 2018); *Mylan Pharms. Inc. v. Celgene Corp.*, 2015 WL 409655, at *1 (D.N.J. Jan. 30, 2015) ("whether [plaintiff] is required to plead" certain facts to satisfy a statute's requirements "is a controlling question of law"). Specifically, the issue is whether the traceability element of Section 11 (and Section 12(a)(2)) requires that a plaintiff actually "trace the chain of title for their shares back to the [challenged] offering," or whether a plaintiff may

14

simply allege a high probability that he purchased registered shares. *Slack III*, 127 F.4th at 1190 (citation omitted). This issue is also "controlling" because it is "serious to the conduct of th[is] litigation." *Katz*, 496 F.2d at 755. If the Third Circuit agrees with Defendants (and two other circuits) that a plaintiff must *actually* trace the chain of title for their shares—and therefore cannot use a statistical inference theory of traceability—then the Order's traceability holding would be "reversible error on final appeal," and Plaintiffs' Securities Act claims would have to be dismissed. *Id.*

This question is again akin to the one on which the Ninth Circuit granted interlocutory review in *Slack*. Here, just as in *Slack*, the question is whether "undisputed" "operative facts regarding plaintiff's purchases in [a] direct listing"—such as the price and timing of a plaintiff's purchase and the ratio of registered shares—can, as a matter of law, satisfy the statutory requirement of traceability. *Pirani*, 2020 WL 7061035, at *1; *Vrakas v. U.S. Steel Corp.*, 2018 WL 6065051, at *2 (W.D. Pa. Nov. 20, 2018) (finding controlling question in Section 11 claim because "if Plaintiffs have failed to satisfy their burden to plead statutory standing and cannot meet this burden through amendment, then the Underwriter Defendants would be terminated from the litigation").

In their pre-motion letter, Plaintiffs asserted that the Order does not implicate any controlling question regarding the viability of "statistical tracing allegations" because, "in addition to pleading the percentage of registered shares outstanding at

15

the time of their purchases," Plaintiffs "alleged that they purchased on the first day

of Coinbase's Direct Listing, 'at prices near the opening price.'"  Dkt. 114 at 1-2.

But allegations about "purchase price" and "purchase timing" are not "in addition"

to the statistical inference theory; they *are* the statistical inference theory.  When a

plaintiff alleges that they bought on the first day of an offering, at a price near the

opening price, and when a particular percentage of shares trading on the market was

registered, those allegations are just another way of saying there is a high *probability*

that the purchased shares were registered.  If proven, those allegations would not

establish that the purchased shares were, in fact, bought "directly in the [direct

listing] itself" or "can be traced back" through the "chain of title" to the direct listing.

*Slack III*, 127 F.4th at 1190 (citation omitted).  Such allegations are in no sense

"addition[al]," and simply underscore that Plaintiffs' theory here *is* one of statistical

inference.

Plaintiffs also argued that *Slack III* and the Order are "distinguishable on

[their] facts" because Pirani "alleged no facts regarding purchase price, purchase

timing, *or* percentage of registered shares."  Dkt. 114 at 2.  But that is simply wrong.

The district court in *Slack* specifically noted that "Plaintiff purchased 30,000 shares

of Slack's Class A common stock at $40/share on June 20, 2019, the first day of

Slack's public listing . . . ."  *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 372

(N.D. Cal. 2020); *see also Slack III*, 127 F.4th at 1190 (alleging that "42 percent" of

16

shares were registered when plaintiff purchased).  The Ninth Circuit nevertheless dismissed Pirani's claim *with prejudice*.  *Slack III*, 127 F.4th at 1193.  The problem in *Slack* was not the relative strength or weakness of Pirani's allegations of a statistical inference of traceability; rather, it was Pirani's reliance on the "legally flawed" statistical inference theory in the first place.  *Id.* at 1190.

Finally, Plaintiffs also argued that this case does not present any controlling question because the Order can be upheld based solely on "allegations that [plaintiffs] purchased stock pursuant to or traceable to the registration statement." Dkt. 114 at 1 n.1.  This Court did not endorse such an approach.  Rather, it analyzed Plaintiffs' statistical inference allegations and authority endorsing that theory—just as Plaintiffs' briefing asked it to do, Dkt. 79 at 45-46—and then found that the complaint survived dismissal, Op. 40-42.  And if the Order held that a bare allegation is sufficient to plead traceability for Section 11 and Section 12(a)(2), that holding would *itself* present a controlling question of law: whether a bare allegation satisfies a statute's pleading standard is a legal question.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *De Vito v. Liquid Holdings. Grp., Inc.*, 2018 WL 6891832, at *13 (D.N.J. Dec. 31, 2018) (rejecting conclusory allegation that shares were traceable as insufficient).  And a ruling rejecting such an allegation as insufficient would result in reversal and dismissal of Plaintiffs' Securities Act claims.

17

**B.    There Are Substantial Grounds For Difference Of Opinion On The Questions Presented**

There are substantial grounds for difference of opinion when a case involves "genuine doubt or conflicting precedent as to the correct legal standard." *N.J., Dep't of Treas. v. Fuld*, 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009); *Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 634 (granting certification on novel question where "reasonable jurists may differ over the Court's resolution of the two legal issues in question").

This criterion too is unquestionably satisfied.   As courts within the Third Circuit have recognized, a conflict between the challenged decision and decisions of courts of appeals in other circuits necessarily demonstrates a "substantial ground for difference of opinion." *Johnson v. NCAA*, 2021 WL 6125095, at *3 (E.D. Pa. Dec. 28, 2021) (citing conflict between court's decision and decisions of the Seventh Circuit and Northern District of California), *petition granted*, 108 F.4th 163 (3d Cir. 2024); *Bedoya v. Am. Eagle Express Inc.*, 2017 WL 4330351, at *3 (D.N.J. Sept. 29, 2017) (holding that circuit split provided substantial ground for disagreement on issue despite unanimous agreement of courts in District of New Jersey), *petition granted*, 914 F.3d 812 (3d Cir. 2019); *Levine v. United Healthcare Corp.*, 285 F. Supp. 2d 552, 566 & n.23 (D.N.J. 2003) (decisions from the Fifth Circuit and the

18

District of Maryland demonstrated that issue was "complex" and "subject to debate"), *petition granted*, 402 F.3d 156 (3d Cir. 2005).[4]

Here, multiple three-judge panels across two courts of appeals have rejected the traceability theory that this Court accepted. In *Krim*, the Fifth Circuit rejected a "statistical tracing" theory where shares registered pursuant to the challenged registration statement made up 99.85% of shares trading on the market when one plaintiff purchased and 91% when another plaintiff purchased. 402 F.3d at 492. The Fifth Circuit reasoned that accepting a statistical inference theory "would impermissibly expand the statute's standing requirement," because "*every*

---

[4] In their pre-motion letter, Plaintiffs argued that "out-of-circuit decisions are not controlling on this Court and thus cannot give rise to a substantial ground for a difference of opinion." Dkt. 114 at 2. But, as the cases above reflect, that is simply incorrect. Plaintiffs relied solely on a case where the Third Circuit already "expressly" decided the question at issue. *Cosimano v. Township of Union*, 2017 WL 4790381, at *3 (D.N.J. Oct. 23, 2017); *see also PNY Techs., Inc. v. Netac Tech. Co.*, 2016 WL 544488, at *2 (D.N.J. Feb. 10, 2016) ("On a question on which the Third Circuit has spoken clearly, the mere possibility of a Supreme Court reversal is not sufficient to establish *substantial* ground for difference of opinion."). Obviously, in those circumstances, there would be no basis to certify a question simply for the Third Circuit to apply its precedent.

Plaintiffs also cited two decisions where this Court found no substantial ground for disagreement on a question. Dkt. 114 at 2. But neither involved a question on which this Court's Order conflicted with another court's decision, let alone two circuit decisions on a question that the Third Circuit has yet to address. *See Tomaine v. Selip & Stylianou, LLP*, 2024 WL 3440170, at *3 (D.N.J. July 17, 2024) (denying certification where "Defendant fails to cite any conflict in district or circuit opinion"); *In re Cortuk*, 2019 WL 1418133, at *2 (D.N.J. Mar. 29, 2019) (movant "cite[d] no authority" for assertion of substantial ground for disagreement).

19

aftermarket purchaser would have standing for every share, despite the language of Section 11, limiting suit to 'any person acquiring *such* security.'"  *Id.* at 496-97 (citation omitted).

This rule makes good sense.  The elements "the plaintiff must prove in the trial at its end" determine "what the plaintiff must plausibly allege at the outset of a lawsuit."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020).  At trial in this case, Plaintiffs would have to prove "whether and in what amount a plaintiff's shares *are*" traceable to the challenged Offering Materials and therefore "tainted"—"not whether the same number of shares drawn at random would *likely* include at least one tainted share."  *Krim*, 402 F.3d at 501-02 (emphasis added).  A plaintiff cannot prove a factual assertion by a preponderance of the evidence simply by asserting that there is a greater than 50% chance that something is true.  "[E]ven assuming a [preponderance of the evidence] standard of proof . . . , the plaintiff does not discharge that burden by showing simply [a] four-fifths, or indeed ninety-nine percent," chance that the defendant was liable.  *Id.* at 497 at n.40 (citation omitted).  This is because allegations establishing probabilities merely allow a factfinder to "make . . . a bet on the evidence," not to draw a conclusion about the actual facts.  *Id.* (quoting Charles Nesson, *The Evidence or the Event? On Judicial Proof and the Acceptability of Verdicts*, 98 Harv. L. Rev. 1357, 1378-79 (1985)).  In the traceability context, "general statistics" about the ratio of registered

20

to unregistered shares on the market when a plaintiff made his purchase "say nothing about the shares that a specific person *actually* owns and have no ability to separate those shares upon which [statutory] standing can be based from those for which [statutory] standing is improper." *Id.* at 501.

The same sound reasoning applies in analogous contexts. For example, diversity jurisdiction cannot be established whenever a case involves a plaintiff from Wyoming merely because there is a 99.83% chance that, if drawn from "United States resident[s] at random," their opponent "will be from somewhere other than Wyoming." *Id.* at 497. Rather, a Wyoming plaintiff must allege that the other party is *actually* from another state. Statistical inference theories also fail in "ordinary products liability negligence claims." *Guenther v. Armstrong Rubber Co.*, 406 F.2d 1315, 1315, 1318 (3d Cir. 1969). In *Guenther*, the plaintiff argued that the defendant manufactured a burst tire based on the fact that the defendant "made . . . 75 to 80 per[]cent of the tires the particular . . . store had for sale." *Id.* The Third Circuit rejected this "probability hypothesis," because a jury verdict that the defendant manufactured the tire that burst "would at best be a guess." *Id.* Here, too, Plaintiffs must allege the shares they purchased are *actually* traceable to the Offering Materials, not simply identify a statistical probability that they purchased registered shares.

21

The Ninth Circuit's decision on remand in *Slack III* makes the conflict even more pronounced. In a direct listing case just like this one, the Ninth Circuit rejected a materially identical statistical inference theory of traceability. *See Slack III*, 127 F.4th at 1190. As the panel explained, the text of Section 11 requires a plaintiff to either "*prove* that they purchased their shares directly in the [challenged] offering itself" or "that their shares, although purchased in the aftermarket, *can be traced back* to the [challenged] offering." *Id.* (emphasis added) (citation omitted). *Slack III* expressly "agree[d] with" *Krim*'s rejection of "the concept of 'statistical tracing' in the context of a Section 11 claim." *Id.* (quoting 402 F.3d at 496-97). Thus, the Ninth Circuit's decision in *Slack III* makes clear that there is no direct listing exception to the standards for pleading and proving traceability. Coupled with the Fifth Circuit's decision in *Krim*, the Ninth Circuit's conflicting decision in *Slack III* offers "[t]he clearest evidence of 'substantial grounds for difference of opinion'" possible. *Kaplan v. St. Peter's Healthcare Sys.*, 2014 WL 4678059, at *3 (D.N.J. Sept. 19, 2014) (citation omitted).

Recognizing this, another court in this District openly acknowledged that "there are different views as to whether Section 11 standing can be established based on 'statistical tracing.'" *Rose v. Butterfly Network, Inc.*, 2025 WL 501427, at *4 (D.N.J. Feb. 13, 2025) (noting that statistical inference theory of traceability was "not before the Court" because plaintiff's argument relied on facts not alleged in

22

complaint and dismissing Section 11 claims on other grounds). *Rose* noted that like the Fifth Circuit in *Krim*, a Middle District of Florida court has rejected a "showing that there is a *very high probability* that the shares can be traced to the allegedly defective registration statement" as insufficient. *Davidco Invs., LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *23 (M.D. Fla. Mar. 6, 2006).

This split among district courts continues to grow. Just last week, a court in the District of Colorado rejected a statistical inference theory of traceability in another direct listing case. Order, *Cupat v. Palantir Techs., Inc.*, 1:22-cv-02384-GPG-SBP (D. Colo. Apr. 4, 2025), Dkt. 123. In *Cupat*, the plaintiffs argued that "[b]ased on the mix of registered and unregistered shares available for sale, and the volume of shares [a plaintiff] purchased, . . . it is overwhelmingly likely that [the plaintiff] purchased at least one registered share." *Id.* at 31. Although the court acknowledged that its reading of Section 11 "produce[d] a harsh result" for plaintiffs bringing claims "in the direct listing context," it recognized that the Supreme Court squarely held that Section 11 plaintiffs must satisfy "a strict tracing requirement." *Id.* at 35-36.

There is likewise substantial ground for disagreement on the question of whether the traceability requirement applies to Section 12(a)(2) in the first place. In denying Defendants' motion to dismiss the Section 12(a)(2) claims, the Court appeared to suggest that no traceability requirement applied to Section 12(a)(2). *See*

23

Op. 47 (noting that the Court was "not persuaded by Defendants' argument that Section 12 applies only to registered shares" (citing *In re Gap Stores Sec. Litig.*, 79 F.R.D. at 306)). That suggestion is in direct conflict with *Slack III*. As the Ninth Circuit explained, "a security can be sold 'by means of a prospectus' *only if it is a registered security* sold in a public offering, and liability under section 12(a)(2) can be based only on the sale of such a security." *Slack III*, 127 F.4th at 1192 (citation omitted) (emphasis added). Accordingly, "[r]easonable jurists may differ" over whether the Section 12(a)(2) traceability holding is correct. *Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 634.

Plaintiffs also suggested the Order held "allegations that [Plaintiffs] purchased stock pursuant or traceable to the registration statement" were, by themselves, sufficient to plead traceability. Dkt. 114 at 1. But, as noted above, this alternative theory would be well-suited for certification too. There is substantial ground for disagreeing with any suggestion that "[t]he pleading requirement for Section 11 standing is satisfied by general allegations that plaintiff purchased pursuant to or traceable to [a] false registration statement." Op. 40 (quoting *Alta Partners, LLC v. Forge Glob. Holdings, Inc.*, 2024 WL 1116682, at *7 (S.D.N.Y. Mar. 13, 2024)). Such a holding would conflict with the well-settled pleading standards established by the Supreme Court's decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Supra* at 17. It would also conflict with several decisions applying those

24

standards to the precise question here. As the First Circuit has explained, "a general allegation that a plaintiff's shares are traceable to the offering in question is nothing more than a 'formulaic recitation' of that element." *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 756 (1st Cir. 2016) (quoting *Twombly*, 550 U.S. at 555) (affirming dismissal of Section 11 claims). Other courts in this District have also repeatedly held that an assertion that a plaintiff "bought company stock that is 'traceable' to the registration statement" is "not enough" to satisfy Rule 8(a)'s basic notice-pleading standard. *Holland v. 9F Inc.*, 2024 WL 5086106, at *3 (D.N.J. Dec. 12, 2024); *Rose*, 2025 WL 501427, at *2; *De Vito*, 2018 WL 6891832, at *16-17. Thus, even if the Order relied on Plaintiffs' bare allegations of traceability, the conflict between the Order and the decisions of the First Circuit and other courts in this District would provide ample grounds for finding substantial disagreement.

## C.    An Immediate Appeal May Materially Advance The Ultimate Termination Of This Litigation

A Section 1292(b) certification "materially advances the ultimate termination of the litigation where the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would complicate trial; or (3) issues that would make discovery more costly or burdensome." *Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 635. Courts in this District have thus recognized that Section 1292(b) "does not require the resolution of an interlocutory appeal to resolve the case." *In re Hollis*, 2010 WL 336132, at *2 (D.N.J. Jan. 22, 2010). That is for good reason, because, as

25

the Ninth Circuit has noted, "neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (quoting 28 U.S.C. § 1292(b)). Here, certifying the Order for interlocutory appeal may materially advance this litigation because it could dispose of (1) most of Plaintiffs' claims and (2) most of the Defendants.

*First*, a ruling that a statistical inference theory of traceability is not cognizable would resolve all of Plaintiffs' Securities Act claims. The prospect of "caus[ing] one or more of Plaintiff's claims to be dismissed" by itself shows that an immediate appeal may materially advance this litigation. *In re Hollis*, 2010 WL 336132, at *2; *see also SEC v. Coinbase, Inc.*, 2025 WL 40782, at *12 (S.D.N.Y. Jan. 7, 2025) (certification would materially advance litigation where reversal on interlocutory appeal would lead to some, but not all, claims in the action being dismissed). Dismissing claims removes distinct legal questions from a case, which in turn removes the need for discovery into factual support for those theories and thereby "simplif[ies] the discovery process." *Popular Leasing U.S.A., Inc. v. Forman*, 2009 WL 2969519, at *5 (D.N.J. Sept. 14, 2009). Here, for example, resolving the Securities Act claims would obviate the need for any discovery into the issue of traceability.

26

*Southeastern Pennsylvania Transportation Authority v. Orrstown Financial Services, Inc.* illustrates the point. In *Orrstown*, the plaintiffs brought claims under the Securities Act and the Exchange Act against a financial institution, Orrstown, several individuals associated with Orrstown, and the auditor and underwriters of a 2010 public offering for alleged misstatements related to Orrstown's financial condition leading up to and following the offering. *See Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 56-57 (M.D. Pa. 2020). At the Rule 12(b)(6) stage, the court dismissed all of the Securities Act claims, Exchange Act claims against the underwriter, and several other Exchange Act claims, leaving only Exchange Act claims against Orrstown itself and three of the twelve individual defendants. *Orrstown*, 2020 WL 4041049, at *2. But following discovery, the court permitted the plaintiffs to replead the dismissed claims, rejecting Defendants' argument that the statute of repose barred reassertion of those claims. *Id.* The district court certified its grant of leave to amend for interlocutory review. In particular, the court "easily conclud[ed]" that "prompt resolution of this legal issue" would materially advance the litigation because a contrary ruling on appeal "would eliminate the Securities Act claims from this case, thereby eliminating the need for a trial on those claims, simplifying the case by foreclosing complex issues unique to those claims, and enabling the parties to complete discovery more quickly and at less expense." *Id.* at *8 (citation omitted). The same reasoning applies here. If the

27

Third Circuit reaches a different conclusion on the issue of traceability, it will "eliminate the need for trial" on Plaintiffs' Securities Act claims entirely, remove the "complex issue[]" of proving traceability in the direct listing context from further proceedings in this case, and allow the parties to simplify discovery. *Id.*

Plaintiffs argued that their assertion of "claims under both the Securities Act *and* the Exchange Act" that implicate the "*same* underlying facts" cuts against certification here. Dkt. 114 at 2. But the fact that an appeal would address only some of the claims did not dissuade the district court or the Third Circuit from permitting interlocutory review in *Orrstown*.

Other courts have certified orders for appeal in similar circumstances. In *Wyndham Worldwide*, for example, Judge Salas certified her decision for interlocutory appeal even though there was "significant overlap in facts and issues that form the core of both counts of the FTC's Complaint," because it was "indisputable that" the claims were "separate counts, involving different legal standards." 10 F. Supp. 3d at 607, 635. Similarly, in *Johnson v. NCAA*, the court certified its denial of a motion to dismiss several federal and state statutory claims despite the fact that the defendant had not moved to dismiss a "state law unjust enrichment claim[]." 2021 WL 6125095, at *4. That remaining claim, which the "interlocutory appeal [could not] eliminate" did not prevent certification because

28

dismissal of the other claims would "simplify both discovery and any eventual trial." *Id.*

Certification here would be sensible because, as the Order confirms, Plaintiffs' Securities Act and Exchange Act claims "involv[e] different legal standards." *Wyndham Worldwide*, 10 F. Supp. 3d at 635. The Order applied Rule 9(b) to Plaintiffs' Exchange Act claims but applied Rule 8(a) to their Securities Act claims because Plaintiffs "explicit[ly] disclaime[d]" any assertion of fraud for purposes of their Securities Act claims. Op. 42-45. Plaintiffs' Securities Act and Exchange Act claims are essentially two different cases, and ending one of them would materially advance the ultimate termination of this litigation.

*Second*, if the Third Circuit were to side with the Fifth and Ninth Circuits and reject a statistical inference theory of traceability, seven of the twelve Defendants would be dismissed from this case. Each of the six Director Defendants, as well as Defendant Jones, are defendants *only* with respect to the Securities Act claims. *See* Op. 1 n.2. Certification could thus resolve Plaintiffs' "legal capacity to sue certain defendants in the very first instance" and avoid subjecting most of the defendants to "the prohibitive expense of defense." *Kauffman v. Dreyfus Fund, Inc.* 51 F.R.D. 18, 22 (D.N.J. 1969) (certifying order for interlocutory appeal). As the Ninth Circuit has recognized, the possibility of a reversal that would "take" a defendant "out of the case" (as well as remove a category of claims against other defendants) "is

29

sufficient to advance materially the litigation." *Reese*, 643 F.3d at 688. Here, the prospect of removing seven Defendants from this litigation satisfies Section 1292(b)'s material-advancement requirement.

More generally, eliminating the Securities Act claims from this case will have a significant effect on how the case is litigated through trial. The Third Circuit's ruling on the traceability issue—whenever it is handed down—will determine what a plaintiff must "plead and prove" to establish liability. *Slack II*, 598 U.S. at 770. If interlocutory appeal confirms that Plaintiffs' Securities Act claims are fatally flawed, then there will be no need to pursue fact or expert discovery regarding traceability. But if appeal is delayed until after final judgment and the Order's statistical inference of traceability holding is reversed, the Court and the parties will have "wasted trial time and litigation expense." *Katz*, 496 F.2d at 756. After all, discovery, summary judgment, and trial on traceability would be pointless if Plaintiffs' statistical inference theory of traceability is invalid. An immediate appeal would therefore ensure that further proceedings in this case are governed by the correct test for traceability and prevent the parties from expending time and effort answering the wrong question.[5]

---

[5] A Third Circuit reversal on traceability grounds would eliminate Plaintiffs' Proprietary Trading theory, which this Court has already rejected for purposes of Plaintiffs' Exchange Act claims. As a result, there would be no need for discovery, motion practice, or trial on that theory. Immediately, it would obviate the need to address whether the Proprietary Trading statements are subject to the PSLRA's safe

30

Finally, the potential savings of cost and time are significant.  Certification is particularly beneficial "when"—as would be the case here—"the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set."  *N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, 2008 WL 4692345, at \*3 (D.N.J. Oct. 8, 2008).  Because "[e]xtensive discovery has not yet been conducted," *id.* at \*5, and Defendants have moved to stay discovery pending resolution of their motion for judgment on the pleadings, this case remains at its early stages.  It is the ideal time for the Third Circuit to weigh in on the legal rules that will govern this case.

## II.     ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO RECONSIDER THE ORDER AND DISMISS PLAINTIFFS' SECURITIES ACT CLAIMS

As explained above, the Order's acceptance of a statistical inference theory of traceability makes the Order an ideal candidate for Section 1292(b) certification.  But this Court can also address Plaintiffs' failure to plead traceability as required to support their Securities Act claims without certifying the Order for interlocutory appeal.  This Court possesses inherent authority to "revisit[]" the Order in light of the Ninth Circuit's previously unavailable and persuasive reasoning and dismiss

---

harbor for forward-looking statements or whether those statements are nonactionable puffery.  *See* Dkt. 103-1 at 32 (raising these arguments in Defendants' Rule 12(c) motion); Dkt. 117 at 36 (opposing).  Cutting Plaintiffs' theories of liability down from three to two would simplify this case and therefore materially advance the termination of this litigation.

31

Plaintiffs' Section 11 and Section 12(a)(2) claims. *Clark v. Coupe*, 55 F.4th 167, 176 (3d Cir. 2022); Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). If the Section 11 and Section 12(a)(2) traceability questions are resolved in Defendants' favor via an interlocutory appeal or reconsideration, that would obviate the need to address the other Securities Act-related arguments in Defendants' pending motion for judgment on the pleadings. Dkt. 103-1 at 13-20, 31-34.

## CONCLUSION

For the foregoing reasons, the motion to certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) should be granted or, alternatively, this Court should exercise its inherent authority to dismiss Plaintiffs' Securities Act claims.

32

Dated: April 11, 2025

Respectfully submitted,


**LATHAM & WATKINS LLP**


By: */s/ Kevin M. McDonough*
Kevin M. McDonough (N.J. Bar No. 41892005)
Samir Deger-Sen (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com
samir.deger-sen@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Morgan E. Whitworth (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
morgan.whitworth@lw.com

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas, Emilie Choi,*
*Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun,*
*Kelly Kramer, Gokul Rajaram, and Fred Wilson*

33