**LATHAM & WATKINS LLP**
Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

*Additional counsel on signature page*

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas,*
*Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer,*
*Gokul Rajaram, and Fred Wilson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>Hon. Leda Dunn Wettre<br><br>**Oral Argument Requested**<br><br>**Motion Day**: May 19, 2025 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ...........................................................................................................3

I.    THE BANKRUPTCY RISK THEORY FAILS BECAUSE PLAINTIFFS DO NOT PLEAD ACTUAL KNOWLEDGE ...............................................................................3

    A.    The Challenged Statements Are Eligible For The Safe Harbor. ...............................................................3

    B.    Plaintiffs Fail To Plead That Any Defendant Actually Knew That Any Bankruptcy Risk Statement Was False Or Misleading. ...............................7

II.    THE REGULATORY THEORY FAILS BECAUSE PLAINTIFFS DO NOT PLEAD DEFENDANT-BY-DEFENDANT SCIENTER ...............................................12

    A.    Plaintiffs Do Not Plead Particularized Allegations Of Motive. .................................................................12

    B.    Recycling The SEC's Risk Score Allegations Is Insufficient. ...................................................................12

    C.    Plaintiffs Fail To Plead That Any Defendant Acted Recklessly By Not Providing More Detail About The SEC's Investigation. ........................................13

    D.    The Safe Harbor Shields Three Regulatory Statements. .................................................................14

III.    THE PROPRIETARY TRADING THEORY FAILS SEVERAL TIMES OVER ...............................................15

IV.    WITHOUT INDIVIDUALIZED SCIENTER OR WRONGDOING, THE CORPORATE AND CONTROL-PERSON CLAIMS FAIL ...............................................15

i

CONCLUSION ..................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ..............................................................................13

*Cent. Laborers' Pension Fund v. Karp*,
2025 WL 1213104 (Del. Ch. Apr. 25, 2025)......................................................11

*Chicago & Vicinity Laborers' Dist. Council Pension Fund v.*
*Amplitude, Inc.*,
2024 WL 4375775 (N.D. Cal. Oct. 2, 2024) ......................................................11

*City of Southfield Gen. Emps.' Ret. Sys. v. Nat. Vision Holdings Inc.*,
2024 WL 1376016 (N.D. Ga. Mar. 30, 2024) ......................................................6

*Coinbase, Inc. v. SEC*,
126 F.4th 175 (3d Cir. 2025) ..............................................................................14

*Dang v. Amarin Corp. Plc*,
750 F. Supp. 3d 431 (D.N.J. Sept. 25, 2024)......................................................10

*Dickerson v. MacMillan*,
2024 WL 4219988 (N.D. Cal. Sept. 16, 2024)......................................................6

*Golub v. Gigamon, Inc.*,
847 F. App'x 368 (9th Cir. 2021) ..........................................................................6

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d
Cir. 2021) ...............................................................................................................6

*Howard v. Arconic, Inc.*,
2021 WL 2561895 (W.D. Pa. June 23, 2021) .......................................................4

*In re Aetna Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010) ..............................................................................4, 5

*In re Amarin Corp. PLC*,
2015 WL 3954190 (D.N.J. 2015) ..................................................................... 8, 11

*In re BioLineRX Ltd. Sec. Litig.*,
   2024 WL 3409800 (D.N.J. July 15, 2024) ....................................................................6

*In re Hertz Glob. Holdings*,
   905 F.3d 106 (3d Cir. 2018) .......................................................................................12

*In re PayPal Holdings Inc. Sec. Litig.*,
   2025 WL 325603 (D.N.J. Jan. 29, 2025).....................................................................6

*In re PTC Therapeutics, Inc. Sec. Litig.*,
   2017 WL 3705801 (D.N.J. Aug. 28, 2017) ...............................................................10

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016) ........................................................................12

*In re Triangle Cap. Corp. Sec. Litig.*,
   988 F.3d 743 (4th Cir. 2021) .....................................................................................10

*In re Walmart Sec. Litig.*,
   2024 WL 1513532 (D. Del. Apr. 8, 2024) .................................................................14

*Inst. Invs. Grp. v. Avaya*,
   564 F.3d 242 (3d Cir. 2009) .............................................................................. 6, 9, 10

*Kader v. Sarepta Therapeutics, Inc.*,
   887 F.3d 48 (1st Cir. 2018)........................................................................................13

*Patel v. Zoompass Holdings, Inc.*,
   2018 WL 10154207 (D.N.J. Aug. 8, 2018) .................................................................8

*Sanfo v. Avondale Care Grp., LLC*,
   2022 WL 3448100 (S.D.N.Y. Aug. 17, 2022)...........................................................13

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
   351 F. Supp. 3d 874 (E.D. Pa. 2018)........................................................................10

*SEC v. Coinbase*,
   2025 WL 40782 (S.D.N.Y. Jan. 7, 2025) .................................................................14

*SEC v. Coinbase, Inc.*,
   23 Civ. 4738 (S.D.N.Y. Feb. 28, 2025)....................................................................13

*Slack Techs. LLC v. Pirani*,
598 U.S. 759 (2023) ........................................................................................7

*Tellabs Inc. v. Makor Issuers & Rights, Ltd.*,
551 U.S. 308 (2007) ......................................................................................10

*Toronto-Dominion Bank Sec. Litig.*,
2018 WL 6381882 (D.N.J. Dec. 6, 2018) ......................................................11

*Winer Family Tr. v. Queen*,
503 F.3d 319 (3d Cir. 2007) .............................................................................7

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ..........................................................................5

*Wolfe v. Aspenbio Pharma, Inc.*,
587 F. App'x 493 (10th Cir. 2014) ...................................................................9

*Wu v. GSX Techedu Inc.*,
738 F. Supp. 3d 527 (D.N.J. 2024) ...............................................................7, 8

*Yates v. Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) .........................................................................11

## STATUTES

15 U.S.C. § 77z-2(c) ............................................................................... 2, 3, 5

15 U.S.C. § 78u-5(b)(2)(D) ...................................................................................6

15 U.S.C. § 78u-5(c)(1) ........................................................................................3

15 U.S.C. § 78u-5(c)(1)(B)(i) ...............................................................................5

## REGULATIONS

17 C.F.R. § 240.10b-5(b) ......................................................................................5

v

Defendants respectfully submit this Reply Memorandum of Law in Further Support of their Motion for Judgment on the Pleadings.  Dkt. 103-1 ("Mot.").

## PRELIMINARY STATEMENT

Plaintiffs' Opposition (Dkt. 117) confirms that the Second Amended Complaint ("SAC") does not come close to satisfying the PSLRA's heightened pleading requirements.  To do so, Plaintiffs had to plead scienter on a defendant-by-defendant and statement-by-statement basis.   And for any forward-looking statements, Plaintiffs had to plead facts showing the speaker had actual knowledge the statement was false or misleading.  The SAC does nothing of the sort.  To distract from their deficient scienter allegations, Plaintiffs claim Defendants are seeking a "do-over." Opp. 1.  But the Court "authorized the filing of [Defendants'] Rule 12(c) motion" because it addresses open questions.  Dkt. 128 at 3.  The first time around, the Court expressly declined to address the argument that generalized allegations about the scienter of "Defendants" as a group are insufficient, Dkt. 84 ("Opinion") at 31 n.20, and did not analyze whether forward-looking statements qualified for the safe harbor and thus require individualized allegations of actual knowledge.  These fundamental requirements for pleading a claim under the PSLRA foreclose all three of Plaintiffs' theories.

***First***, as to Bankruptcy Risk, Plaintiffs' attempts to avoid the safe harbor's scienter standard fail.  The safe harbor raises the bar for claims based on an

"omission of a material fact necessary to make [a forward-looking] statement not misleading." 15 U.S.C. § 77z-2(c). That is exactly what Plaintiffs challenge here: that Defendants spoke misleadingly by describing two hypothetical risks to customer assets without disclosing a third. Nor can Plaintiffs satisfy the safe harbor's scienter requirement—which applies to each speaker—with generalizations about "Defendants'" positions and supposed knowledge. None of Plaintiffs' allegations suggests that any individual speaker believed that customer assets would be at risk in a bankruptcy that was purely hypothetical at the time they spoke.

*Second*, as to the Regulatory statements, Plaintiffs contend that the Individual Defendants misrepresented their own beliefs and the SEC's views on Coinbase's compliance with the securities laws. But Plaintiffs do not allege that any Individual Defendant believed that Coinbase was listing crypto assets that qualified as securities. Far from it, Plaintiffs' own allegations show that the Individual Defendants vigorously contested the SEC's enforcement action, which the SEC itself has since admitted should never have been brought. Plaintiffs' scienter argument relies on statements made *after* the SEC filed—but before it dismissed—that action. But those statements say nothing about if (or when) any Individual Defendant should have known the SEC would sue, nor do they suggest that any Defendant intended to deceive investors by proactively disclosing information about the investigation without providing additional details about, among other things, the SEC's change in

2

tone.  The SEC's dismissal of the enforcement action only underscores that each Individual Defendant had a reasonable basis to believe that Coinbase was not, as it said, listing securities.

*Third*, as to Plaintiffs' Proprietary Trading claim, Plaintiffs' failure to plead contemporaneous falsity is fatal to both Plaintiffs' Exchange Act and Securities Act claims.  Additionally, the Proprietary Trading statements are either forward-looking statements protected by the safe harbor or classic examples of nonactionable puffery.

Defendants' Motion should be granted.

## ARGUMENT

### I.  THE BANKRUPTCY RISK THEORY FAILS BECAUSE PLAINTIFFS DO NOT PLEAD ACTUAL KNOWLEDGE

#### A.  The Challenged Statements Are Eligible For The Safe Harbor.

The PSLRA's safe harbor provides that a defendant "shall not be liable with respect to any forward-looking statement" that is misleading due to "omission of a material fact necessary to make the statement not misleading."  15 U.S.C. § 78u-5(c)(1); *id.* § 77z-2(c).  The Bankruptcy Risk statements fall squarely within the safe harbor.  Plaintiffs focus on Defendants' disclosure of two hypothetical risks (hacking and loss or destruction of private keys, which the disclosure said "could" imperil customer assets) without disclosing a third potential risk (bankruptcy), ¶¶ 10-11.  All three of Plaintiffs' efforts to circumvent the PSLRA's safe harbor fail.

3

### 1.    The Challenged Statements Are Forward-Looking.

Plaintiffs argue that "the challenged statements are not forward-looking." Opp. 7.  But a description of risks that "may" or "could" harm customer assets is forward-looking.  Mot. 13-14 (quoting *Howard v. Arconic, Inc.*, 2021 WL 2561895, at *9 (W.D. Pa. June 23, 2021)).  Whether assets would actually be harmed by either the disclosed risks or a bankruptcy "could not be ascertained until later"—that is, if and when those risks materialized (*i.e.*, assets were hacked, private keys lost, or a bankruptcy occurred).  *In re Aetna Inc. Sec. Litig.*, 617 F.3d 272, 281 (3d Cir. 2010).

Plaintiffs assert that "[t]he fact that a Coinbase bankruptcy was a contingent event does not render" statements about customers' "full ownership of their crypto assets" or ability to "self-custody" forward-looking.  Opp. 8.  But there was no *present* risk to disclose.  Plaintiffs have never alleged or argued that Coinbase was at any immediate risk of bankruptcy, let alone a material one that had to be disclosed. Coinbase only disclosed that bankruptcy posed a potential risk to customer assets in March 2022—well after the challenged statements—based on new SEC guidance. Mot. 18.  Because Plaintiffs argue that earlier statements misled investors about a *future* bankruptcy's potential effect, Plaintiffs are only challenging the forward-looking "aspect of the[se] statements." *Aetna*, 617 F.3d at 281.

Plaintiffs nevertheless assert that Coinbase's risk disclosures were not forward-looking because the disclosures *implied* that bankruptcy was not *presently* a

"known, existing risk to customers' crypto assets."  Opp. 8-9 n.2.  But Plaintiffs'

implied version is forward-looking too.  *Aetna* similarly involved an alleged omission

of another "known, existing risk."  Opp. 8-9 n.2.  There, Plaintiffs asserted that

Aetna's statements that its pricing was "disciplined" misleadingly omitted that the

defendants "knew" Aetna was "underpricing premiums" and thus risked "sacrificing

profitability for growth."  *Aetna*, 617 F.3d at 276.  The Third Circuit still held the

statements were forward-looking because the profitability of Aetna's pricing could

only be determined in the future.  *Id.* at 281-82; *see also Wochos v. Tesla, Inc.*, 985

F.3d 1180, 1192 (9th Cir. 2021).  Here, as in *Aetna*, the effect of a hypothetical

bankruptcy on customer assets could only be determined if and when that bankruptcy

happened in the future.

### 2.    The Safe Harbor Shields Statements That Mislead By Omission.

Plaintiffs argue that forward-looking statements fall outside the safe harbor

whenever a plaintiff alleges "omissions of existing facts or circumstances."  Opp. 6.

That is wrong.  Safe-harbor eligibility depends on whether the challenged "statement"

is "forward-looking," 15 U.S.C. § 77z-2(c)—not whether it omits "present facts,"

Opp. 6.[1]  In other words, the safe harbor applies to forward-looking statements that

---

[1] If Plaintiffs were right, it would be unnecessary for the safe harbor to require "actual knowledge . . . that the statement was false *or misleading*," 15 U.S.C. § 78u-5(c)(1)(B)(i) (emphasis added), because *omissions* render statements "misleading," 17 C.F.R. § 240.10b-5(b).

are "allegedly rendered misleading by . . . omission." *Golub v. Gigamon, Inc.*, 847 F. App'x 368, 373 (9th Cir. 2021). That is precisely what Plaintiffs challenge here.

Plaintiffs' rule would gut the safe harbor. A forward-looking statement could always be challenged due to a present omission, because every projection includes an "implicit" generic "assertion" about the present, namely, that "whatever [the current] situation is, it makes the future projection attainable." *Inst. Invs. Grp. v. Avaya*, 564 F.3d 242, 255 (3d Cir. 2009). Such an "end-run around the PSLRA's safe harbor provision" is impermissible. *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 390 (S.D.N.Y. 2020) (rejecting argument that "expression of present belief in a forward-looking statement is a present fact"), *aff'd*, 847 F. App'x 35 (2d Cir. 2021). Unsurprisingly, courts routinely reject Plaintiffs' argument.[2]

### 3.    The Safe Harbor Applies In Direct Listings.

Plaintiffs also argue that the Bankruptcy Risk statements are not eligible for the safe harbor because it "shall not apply to a forward-looking statement . . . that is . . . made in connection with an initial public offering." 15 U.S.C. § 78u-5(b)(2)(D);

---

[2] *See Dickerson v. MacMillan*, 2024 WL 4219988, at *8 (N.D. Cal. Sept. 16, 2024); *City of Southfield Gen. Emps.' Rev. Sys. v. Nat. Vision Holdings Inc.*, 2024 WL 1376016, at *17 (N.D. Ga. Mar. 30, 2024); *see also In re PayPal Holdings Inc. Sec. Litig.*, 2025 WL 325603, at *18-19 (D.N.J. Jan. 29, 2025) (safe harbor barred claim that defendants "knew, but did not disclose" that projected user "numbers" were "boosted" by "fraudulent accounts"); *In re BioLineRX Ltd. Sec. Litig.*, 2024 WL 3409800, at *8, *11 (D.N.J. July 15, 2024) (Martinotti, J.) (statements omitting "existing facts" "would likely fall under . . . safe harbor").

6

Opp. 9.  But Plaintiffs themselves admit that the direct listing was *not* an IPO.  ¶ 5 (a direct listing is "[a]n alternative to a traditional initial public offering"); *see also* ¶¶ 73-74 (contrasting direct listings and IPOs).  The Offering Materials similarly state that "[t]his listing is not an underwritten [IPO]."  Dkt. 78-10 at 65.  And as the Supreme Court has recognized, direct listings allow shares to be sold "publicly . . . without an IPO."  *Slack Techs. LLC v. Pirani*, 598 U.S. 759, 764 (2023).  Because Coinbase "employed a direct listing rather than an IPO," the safe harbor applies.  *Id.*

### B.    Plaintiffs Fail To Plead That Any Defendant Actually Knew That Any Bankruptcy Risk Statement Was False Or Misleading.

Plaintiffs must allege that each Individual Defendant actually knew that each Bankruptcy Risk statement was false or misleading.  Plaintiffs argue (at 25-26) that the group-pleading doctrine is merely a "narrow 'judicial presumption'" about when corporate documents can be attributed to corporate officers.  *Winer Family Tr. v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007).  But *Winer* could not have been clearer that a plaintiff must plead his claim "with the specificity required by the PSLRA with respect to *each defendant*."[3]  *Id.* at 337 (emphasis added); Mot. 8.

Plaintiffs cannot satisfy this standard, let alone the safe harbor's actual-knowledge requirement.  They tacitly admit that, if the safe harbor applies, their

---

[3] *Wu v. GSX Techedu Inc.* does not water down this standard; *Wu* did not "differentiate between the scienter" of individual defendants because—unlike here—the defendants did not do so.  738 F. Supp. 3d 527, 559-60 (D.N.J. 2024).

7

disavowal of actual knowledge forecloses their Securities Act claims based on forward-looking statements. *See* Opp. 10 n.3. And regardless, Plaintiffs do not allege actual knowledge for any of their claims.

### 1. Plaintiffs Do Not Plead Actual Knowledge Of The SEC Comment Letter.

Plaintiffs rely heavily on Coinbase Custody's June 2019 letter to the SEC. Opp. 11. But Plaintiffs do not allege that Haas, Armstrong, Choi, or Grewal had a role at Coinbase Custody as of June 2019. Opp. 12; ¶¶ 107-08. When Individual Defendants "join[]" a company "years after" an event, a plaintiff must "sufficiently allege that the Individual Defendants" learned of that event to establish scienter. *In re Amarin Corp. PLC*, 2015 WL 3954190, at *12 (D.N.J. 2015). A "[g]eneralized imputation of knowledge" based on a leadership role is insufficient under the PSLRA and Rule 9(b). *Patel v. Zoompass Holdings, Inc.*, 2018 WL 10154207, at *9 (D.N.J. Aug. 8, 2018). Because Plaintiffs fail to plead that any Individual Defendant's role at Coinbase Custody exposed them to the relevant information, this case is nothing like a CFO misrepresenting "publicly-reported revenue numbers," knowledge of which is "plainly within the CFO's job description." *Wu*, 738 F. Supp. 3d at 562.

### 2. Defendants' Executive Roles Do Not Demonstrate Actual Knowledge Of Differences In The User Agreements.

Plaintiffs argue that by virtue of their positions at Coinbase, Defendants must have known about provisions in the Institutional User Agreement mitigating

bankruptcy-related risks and the omission of those provisions from the Retail User Agreement. Opp. 13. Plaintiffs do not allege when these provisions were added to the Institutional User Agreement or whether (or when) any Individual Defendant learned about the differences between the agreements and determined that they were material.[4] Plaintiffs are not just missing a "smoking gun," Opp. 13—rather, they are relying on a "series of [unsupported] inferences," *Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493, 498 (10th Cir. 2014). For Plaintiffs' argument to work, the Individual Defendants had to have known the Institutional User Agreement's terms at the time of the challenged statements *and* known that the Retail User Agreement's terms would affect the outcome of a hypothetical bankruptcy. Pleading the Individual Defendants' job titles does not show "aware[ness]" of these facts. Opp. 13.

### 3. Armstrong's May 2022 Comments Are Not Admissions.

Armstrong's statement that Coinbase should have updated its retail User Agreement "sooner" gets Plaintiffs nowhere. Opp. 13. There is "no indication" that Armstrong himself formed this view "at any particular point" prior to May 2022. *Avaya*, 564 F.3d at 275. Because Armstrong made no "admissions" about his "state-of-mind *at the time of*" his representations, Opp. 14 (emphasis added), Plaintiffs' "use of [Armstrong's] statements amounts to little more than pleading fraud by hindsight,"

---

[4] The provisions must have predated the June 2019 Coinbase Custody Letter describing them. ¶ 113. And Plaintiffs do not allege that the Institutional User Agreement was amended *after* the Coinbase Custody Letter.

*In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 753 (4th Cir. 2021). Plaintiffs also contend that whether Armstrong knew "about the bankruptcy-related risk" before "May 2022" must be resolved in discovery. Opp. 14. But such "omissions and ambiguities count against inferring scienter." *Tellabs Inc. v. Makor Issuers & Rights, Ltd.*, 551 U.S. 308, 326 (2007).

### 4. General Statements About Asset Safety Are Not A Substitute For Specific Knowledge About Bankruptcy Risk.

Plaintiffs assert that because Defendants spoke "'explicitly and repeatedly' about asset safety," they must have known that their statements deceptively omitted a risk to customer assets in the event of bankruptcy. Opp. 15, 17. But a defendant's "broad statements" on a topic do not establish awareness of "specific considerations and granular details" related to it. *Dang v. Amarin Corp. Plc*, 750 F. Supp. 3d 431, 476 (D.N.J. Sept. 25, 2024); *Avaya*, 564 F.3d at 269-70 (similar). Here, Plaintiffs do not allege that any Individual Defendant spoke or answered questions about asset safety in a *bankruptcy*, nor do they allege that Grewal made *any* statements about asset safety. By contrast, Plaintiffs' cases involve courts inferring scienter based on a defendant's statements about the precise issue alleged to be the subject of the misrepresentation. *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *16-17 (D.N.J. Aug. 28, 2017) (statement that "clinical data met FDA standards" contradicted by known facts that study "failed" and "FDA would not accept a post hoc statistical analysis"); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d

10

874, 900, 906 (E.D. Pa. 2018) (similar).[5]

### 5.    No Individual Defendant Made Suspicious Stock Sales.

Plaintiffs argue that Defendants' direct-listing sales were "unusual in [both] scope [and] timing." Opp. 19-20. But direct listings necessarily involve trading by existing shareholders. As with executives who "exercise . . . stock options when they bec[o]me available," *Amarin*, 2015 WL 3954190, at *10-11, no inference of scienter arises from direct-listing sales, *see Chicago & Vicinity Laborers' Dist. Council Pension Fund v. Amplitude, Inc.*, 2024 WL 4375775, at *3 (N.D. Cal. Oct. 2, 2024); *see also Cent. Laborers' Pension Fund v. Karp*, 2025 WL 1213104, at *14 (Del. Ch. Apr. 25, 2025) (sales "within 30 days of the direct listing" did not support scienter).

### 6.    Core Operations Allegations Alone Are Insufficient.

Without other allegations showing "defendants' actual exposure" to a problem, Plaintiffs' "core operations" argument (Opp. 17-20) falls flat. *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 890 (4th Cir. 2014); Mot. 19.[6]

---

[5] Plaintiffs also argue that certain Bankruptcy Risk statements were not dismissed by the Court's Order. Opp. 16 n.8. But these statements (12-13, 17) fall within the scope of the Court's dismissal of statements about "customers' trust in Coinbase" on puffery grounds. Opinion 24; ¶ 279 ("the self-custodial preference that people have" is "not just—I make sure it's never going to be seized or something like that"); ¶¶ 281-82 ("consumers are more than willing to pay" for "the security we offer"); ¶¶ 290 ("We know that we're a great, safe place to buy your first Bitcoin to trade to safely store."). Regardless, as Defendants argued, these statements are also forward looking, and Plaintiffs fail to plead individual scienter. Mot. 13 n.5.

[6] Aside from core operations, *Toronto-Dominion Bank Securities Litigation* relied on an allegedly "widespread" scheme and a confidential witness's account of

11

## II.    THE REGULATORY THEORY FAILS BECAUSE PLAINTIFFS DO NOT PLEAD DEFENDANT-BY-DEFENDANT SCIENTER

### A.    Plaintiffs Do Not Plead Particularized Allegations Of Motive.

As an initial matter, Plaintiffs fail to plead any plausible motive for the Regulatory statements.  Though the Individual Defendants entered trading plans during the Class Period, Opp. 31-32, they did so long before the Regulatory statements.  Plaintiffs also fail to provide details about the timing, amount, and price of sales, which makes it impossible to assess scienter for a particular statement.  *See In re Hertz Glob. Holdings*, 905 F.3d 106, 119 (3d Cir. 2018).  These gaps are fatal.

### B.    Recycling The SEC's Risk Score Allegations Is Insufficient.

Lacking any motive, Plaintiffs argue the Regulatory statements were made with scienter because Coinbase adopted the CRC framework and "Defendants" were aware of assets' high "risk" scores.  Opp. 22-23.  This argument, however, conflates Coinbase's "*internal* review process," Opp. 23 (emphasis added), with the framework developed by the CRC, which included "other crypto companies," ¶ 25.  Plaintiffs' allegations about Coinbase's diligence process rely on assertions in the SEC's now-dismissed complaint.  ¶ 182; Opp. 22-23; *but see* Dkt. 78-33 (¶ 108) (denying allegation).  But parroting allegations "from a different lawsuit" "does not suffice under the PSLRA."  *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 399 (S.D.N.Y. 2016).  Plaintiffs cannot sustain their claim by "rely[ing] on" allegations in a

corporate emails discouraging it.  2018 WL 6381882, at *13 (D.N.J. Dec. 6, 2018).

12

"dismissed" complaint. *Sanfo v. Avondale Care Grp., LLC*, 2022 WL 3448100, at *6-7 (S.D.N.Y. Aug. 17, 2022) (striking such allegations); *see* Joint Stipulation to Dismiss, and Releases, *SEC v. Coinbase, Inc.*, 23 Civ. 4738 (S.D.N.Y. Feb. 28, 2025), Dkt. 176. And regardless, blanket assertions about "Defendants" do not show that any Individual Defendant knew of or concealed any asset's CRC score. Mot. 22-25.

### C.    Plaintiffs Fail To Plead That Any Defendant Acted Recklessly By Not Providing More Detail About The SEC's Investigation.

Plaintiffs also argue that "Defendants knew," but did not disclose, information about the SEC's "'tone,'" belief that crypto assets other than Bitcoin were securities, and "'shift[] back to an enforcement investigation.'" Opp. 21. But failure to "divulge the details of interim 'regulatory back-and-forth' with" an agency by itself "cannot support an inference of scienter under the PSLRA when the defendants *do* provide warnings in broader terms." *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 59 (1st Cir. 2018). That Armstrong discussed the SEC's evolving stance *after* it sued does not mean he "obvious[ly]" should have known that disclosing the investigation would deceive investors without additional commentary. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013).

Plaintiffs assert that Coinbase should have disclosed that the SEC would sue because Defendants knew that "discussions were over" by January 2023 and that Coinbase faced an "imminent enforcement action" after it received a Wells Notice on March 22, 2023. Opp. 21. But those statements in Coinbase's Answer to the

13

SEC's civil complaint do not describe or even purport to reflect any Individual Defendant's contemporaneous understanding of the SEC's actions.  Dkt. 78-33 (¶¶ 74, 76).  Regardless of what was clear *after* the SEC filed its enforcement action, Plaintiffs fail to plead that any Individual Defendant was in a position to "predict the outcome of [the SEC's] investigation[]," or any resulting litigation.  *In re Walmart Sec. Litig.*, 2024 WL 1513532, at *9 (D. Del. Apr. 8, 2024).

Plaintiffs also seek to downplay the SEC's dismissal of its case against Coinbase and new stance on crypto-asset regulation because those changes postdate Defendants' challenged statements.  Opp. 29-30.  But the SEC's new approach (as reflected in court filings and judicially noticeable documents) underscores that Coinbase reasonably disagreed with the SEC's old approach and believed it would be vindicated in court.  *See SEC v. Coinbase*, 2025 WL 40782, at *12 (S.D.N.Y. Jan. 7, 2025); *Coinbase, Inc. v. SEC*, 126 F.4th 175, 210-15 (3d Cir. 2025) (Bibas, J., concurring) (questioning SEC's regulation-by-enforcement approach); Mot. 30-31.

### D.    The Safe Harbor Shields Three Regulatory Statements.

Finally, Plaintiffs are wrong that Statements 51, 52, and 64 are not protected by the safe harbor.  Opp. 33-35.  Plaintiffs argue that the safe harbor "cannot immunize a defendant for warning of risks and contingencies that have already come to pass."  Opp. 35.  But the SEC's enforcement action had not "already come to pass," and no Individual Defendant actually knew contrary facts.

14

## III.   THE PROPRIETARY TRADING THEORY FAILS SEVERAL TIMES OVER

Plaintiffs' failure to plead contemporaneous falsity required dismissal of the Exchange Act Proprietary Trading claims, and it applies equally to the Securities Act claims.   Dkt. 89-1 at 9-13.   This Court declined to address this argument on reconsideration because "Defendants have now provided more robust arguments" and additional authority, "neither of which were part of their Motion to Dismiss or subsequent Reply."   Dkt. 118 at 7.   This Motion properly presents those arguments, as well as arguments based on the safe harbor and puffery.   Mot. 31-34.

## IV.   WITHOUT INDIVIDUALIZED SCIENTER OR WRONGDOING, THE CORPORATE AND CONTROL-PERSON CLAIMS FAIL

Plaintiffs do not dispute that failure to allege any Individual Defendant's scienter would defeat their corporate claim against Coinbase.   Opp. 36.   And because culpable participation is an element of a control-person claim, Opinion 49, Plaintiffs' failure to sufficiently allege culpable participation at the pleading stage requires dismissal of Plaintiffs' claims against non-speakers.   Mot. 34-35.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC with prejudice.

Dated: May 9, 2025                    Respectfully submitted,


                                      **LATHAM & WATKINS LLP**


                                      By: */s/ Kevin M. McDonough*
                                      Kevin M. McDonough
                                      Samir Deger-Sen (admitted *pro hac vice*)
                                      1271 Avenue of the Americas
                                      New York, NY 10020
                                      Telephone: (212) 906-1200
                                      kevin.mcdonough@lw.com
                                      samir.deger-sen@lw.com

                                      Andrew B. Clubok (admitted *pro hac vice*)
                                      Susan E. Engel (admitted *pro hac vice*)
                                      555 Eleventh Street, NW, Suite 1000
                                      Washington, D.C. 20004
                                      Telephone: (202) 637-2200
                                      andrew.clubok@lw.com
                                      susan.engel@lw.com

                                      Morgan E. Whitworth (admitted *pro hac vice*)
                                      505 Montgomery Street, Suite 2000
                                      San Francisco, CA 94111
                                      Telephone: (415) 391-0600
                                      morgan.whitworth@lw.com

                                      *Attorneys for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson*

16

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 9, 2025, a copy of the foregoing was filed electronically using the Court's Case Management/Electronic Case Filings System (CM/ECF). Notice of and access to this filing will be provided to all parties through CM/ECF.

*/s/ Kevin M. McDonough*
Kevin M. McDonough

17