**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Matthew L. Mustokoff (*pro hac vice*)
Joshua A. Materese
Margaret E. Mazzeo
Austin W. Manning (*pro hac vice*)
Dylan J. Isenberg
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Additional counsel on signature page*

*Counsel for Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiffs Ryan R. Firth and Zvia Steinmetz, and Lead Counsel for the Putative Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC. SECURITIES LITIGATION | Case No: 2:22-cv-04915-BRM-LDW |
| | Hon. Brian R. Martinotti District Judge |
| | Hon. Leda D. Wettre Magistrate Judge |
| | Motion Day: June 16, 2025 |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION
## TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND ...............................................................................................4

ARGUMENT ....................................................................................................5

I.    DEFENDANTS CANNOT MAKE THE SHOWING REQUIRED UNDER § 1292(B) ..........................................................................5

    A.    Defendants Fail to Identify a Controlling Question of Law .................6

        1.    The Validity of Statistical Tracing Does Not Present a "Controlling" Question on Plaintiffs' Section 11 Claim ............7

        2.    The Traceability Requirement Does Not Present a "Controlling" Question on Plaintiffs' Section 12(a)(2) Claim ...................................................................................12

        3.    The Sufficiency of Plaintiffs' Tracing Allegations Does Not Present a Pure Question of Law.........................................13

    B.    Defendants Cannot Demonstrate a Substantial Ground for Difference of Opinion .......................................................................15

        1.    The Third Circuit Addressed Securities Act Standing in Suprema ...............................................................................15

        2.    Even Without Suprema, Conflicting Out-of-Circuit Authority Does Not Warrant Review .......................................19

    C.    An Immediate Appeal Would Not Materially Advance the Termination of the Litigation ..............................................................22

    D.    Defendants' Motion is Untimely..........................................................26

II.    RECONSIDERATION IS NOT WARRANTED .........................................28

CONCLUSION..................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADP, LLC v. Ultimate Software Grp., Inc.*,
   2018 WL 1838003 (D.N.J. Apr. 17, 2018)......................................................23

*Advanced Orthopedics & Sports Med. Inst. v. Int'l Union of
   Operating Eng'rs*,
   2020 WL 4345301 (D.N.J. July 29, 2020) (Martinotti, J.).........................6, 7, 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................19

*Bush v. Adams*,
   629 F. Supp. 2d 468 (E.D. Pa. 2009)..............................................................24

*CFTC v. WorldWide Markets, Ltd.*,
   2022 WL 4115708 (D.N.J. Sept. 9, 2022)................................................. 16-17

*Cherry v. Borough of Tuckerton*,
   2016 WL 7030428 (D.N.J. Dec.1, 2016) (Martinotti, J.) ..................................28

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
   2021 WL 1016111 (D.N.J. Mar. 17, 2021) ...................................................7, 13

*In re Cortuk*,
   2019 WL 1418133 (D.N.J. Mar. 29, 2019) (Martinotti, J.)...................... 3, 19-20

*Cosimano v. Twp. of Union*,
   2017 WL 4790381 (D.N.J. Oct. 23, 2017) .......................................................20

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)......................................................................................18

*De Vito v. Liquid Holdings Grp., Inc.*,
   2018 WL 6891832 ............................................................................. 13-14, 16

ii

*In re Direct Purchaser Insulin Pricing Litig.*,
 2023 WL 3431213 (D.N.J. May 12, 2023).................................................. 23-24

*In re EveryWare Glob., Inc. Sec. Litig.*,
 175 F. Supp. 3d 837 (S.D. Ohio 2016) ...............................................17

*Freedom Med., Inc. v. Gillespie*,
 2013 WL 3819366 (E.D. Pa. July 24, 2013) .......................................19

*In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*,
 2025 WL 714171 (C.D. Cal. Mar. 3, 2025)..........................................21

*Harris v. Kellogg, Brown & Root Servs., Inc.*,
 2009 WL 1248060 (W.D. Pa. Apr. 30, 2009) .....................................20

*Holland v. 9F Inc.*,
 2024 WL 5086106 (D.N.J. Dec. 12, 2024)...............................9, 16, 24

*Hu v. BMW of N. Am., LLC*,
 2021 WL 1138123 (D.N.J. Mar. 24, 2021) ..........................................15

*Ivanovs v. Bayada Home Health Care, Inc.*,
 2023 WL 5287815 (D.N.J. Aug. 17, 2023) .........................................20

*Koger, Inc. v. Klco*,
 2010 WL 4553522 (D.N.J. Nov. 3, 2010) ...........................................27

*Krim v. pcOrder.com*,
 402 F.3d 489 (5th Cir. 2005) ....................................................*passim*

*Krishanthi v. Rajaratnam*,
 2011 WL 1885707 (D.N.J. May 18, 2011)...........................................14

*Lincoln Ben. Life Co. v. Wells Fargo Bank, N.A.*,
 2017 WL 6539244 (D.N.J. Dec. 20, 2017)...........................................23

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011)..........................................................................18

*Mylan Pharms. Inc. v. Celgene Corp.*,
 2015 WL 409655 (D.N.J. Jan. 30, 2015).............................................14

iii

*PennEnvironment v. PPG Indus., Inc.*,
   2022 WL 2048082 (W.D. Pa. June 7, 2022) ......................................................16

*Piazza v. Major League Baseball*,
   836 F. Supp. 269 (E.D. Pa. 1993)............................................................... 24-25

*Pirani v. Slack Techs., Inc.*, (*Slack III*)
   127 F.4th 1183 (9th Cir. 2025) ........................................................*passim*

*Pirani v. Slack Techs., Inc.*,
   2020 WL 7061035 (N.D. Cal. June 5, 2020)......................................................12

*PNY Techs., Inc. v. Netac Tech. Co.*,
   2016 WL 544488 (D.N.J. Feb. 10, 2016) ..........................................................15

*Rose v. Butterfly Network, Inc.*,
   2025 WL 501427 (D.N.J. Feb. 13, 2025) ..........................................................16

*In re Schering-Plough Corp./Enhance Sec. Litig.*,
   2010 WL 2546054 (D.N.J. June 21, 2010)..........................................................14

*Shapiro v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992), *as amended* (May 27, 1992) ..................................9

*Shevlin v. Phoenix Life Ins. Co.*,
   2015 WL 348552 (D.N.J. Jan. 23, 2015)..........................................................23

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ........................................................*passim*

*Tomaine v. Selip & Stylianou, LLP*,
   2024 WL 3440170 (D.N.J. July 17, 2024) (Martinotti, J.)........................*passim*

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)..................................................................................18

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
   2017 WL 1658822, at *13-14 (D.N.J. Apr. 28, 2017)........................................10

*Vrakas v. United States Steel Corp.*,
   2018 WL 6065051 (W.D. Pa. Nov. 20, 2018)..................................................25

*W. Coast Life Ins. Co. v. Wells Fargo Bank, N.A.*,
 2021 WL 2712152 (D.N.J. July 1, 2021) (Martinotti, J.).......................................6

*Weir v. Propst*,
 915 F.2d 283 (7th Cir. 1990) .............................................................................27

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
 395 U.S. 100 (1969)............................................................................................18

**Statutes**

28 U.S.C. § 1292(b) ...........................................................................*passim*

**Other Authorities**

Andrew Clubok, et al., *Complex and Novel Section 11 Liability Issues
 of Direct Listings,* Corp. Couns. (Dec. 20, 2019), available at
 https://www.lw.com/en/insights/2019/12/section-eleven-liability-
 direct-listings.................................................................................................8

*Brief for Amici Curiae Law and Business Professors in Support of
 Respondent, Slack Techs., LLC v. Pirani*,
 No. 22-200 (U.S. Mar. 3, 2023), 2023 WL 2439655 .........................................9

Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiffs Ryan R. Firth and Zvia Steinmetz respectfully submit this Memorandum of Law in Opposition to Defendants' Motion to Certify Order for Interlocutory Review (ECF No. 122, "Motion" or "Mot.").

## PRELIMINARY STATEMENT

On September 5, 2024, this Court issued an order and opinion denying Defendants' motion to dismiss Plaintiffs' Securities Act claims in its entirety, and denying, in large part, Defendants' motion to dismiss Plaintiffs' Exchange Act claims. ECF No. 84 ("Order"). Defendants now ask the Court to certify a portion of that Order—specifically, its ruling with respect to the Securities Act claims—for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Requests for interlocutory appeal should be granted "sparingly" and only in "exceptional circumstances." *Tomaine v. Selip & Stylianou, LLP*, 2024 WL 3440170, at *3 (D.N.J. July 17, 2024) (Martinotti, J.).[1] To "justify a departure from the basic policy of postponing review until the entry of a final judgment," *id.*, Defendants bear a heavy burden to demonstrate that all of the following elements are met: (1) the order must involve a dispute over a "controlling question of law"; (2) as to which "there is a substantial ground for difference of opinion"; and (3) for which an

---

[1]    Unless otherwise noted herein, all emphasis is added and all internal citations and quotations are omitted.

immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Defendants' Motion falls far short of this required showing.

*First*, Defendants cannot demonstrate a dispute over a controlling question of law. In analyzing this requirement, "the emphasis is on whether a different resolution of the issue would eliminate the need for trial." *Tomaine*, 2024 WL 3440170, at *3. To start, given that the Court has sustained Plaintiffs' Exchange Act claims, this litigation will proceed to trial regardless of the resolution of this dispute. Moreover, the question Defendants present—whether statistical tracing may be used to plead standing—is not controlling with respect to the Securities Act claims. Rather, even without allegations of statistical tracing, Plaintiffs' allegations regarding the timing and price of their purchases—which this Court relied on in sustaining these claims— are sufficient under controlling Third Circuit precedent. In *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006), the Third Circuit held, in the context of a secondary offering—analogous to Coinbase's direct listing—that Section 11 standing was sufficiently alleged based on the timing of the plaintiffs' purchases. In the nearly twenty years since *Suprema*, courts in this Circuit have consistently found standing based on similar allegations.

*Second*, Defendants cannot establish a substantial ground for difference of opinion. The Third Circuit has squarely addressed the pleading requirements for

traceability under Section 11, and Plaintiffs' allegations suffice under that controlling precedent. Tellingly, Defendants ignore *Suprema* altogether. Instead, they claim that the Ninth Circuit's decision in *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183 (9th Cir. 2025) (*Slack III*), and the Fifth Circuit's decision in *Krim v. pcOrder.com*, 402 F.3d 489 (5th Cir. 2005), somehow create a conflict. But as this Court has repeatedly held, a substantial ground for difference of opinion must arise **within** the Third Circuit, not outside of it. *See, e.g.*, *In re Cortuk*, 2019 WL 1418133, at *2 (D.N.J. Mar. 29, 2019) (Martinotti, J.) ("conflicting decisions of **other courts** do not constitute a substantial ground for difference of opinion"). Moreover, even if the Court were to look outside the Circuit, the *Slack III* court's discussion of statistical tracing is mere *dicta*, and Your Honor already acknowledged *Krim* but nonetheless found Plaintiffs' allegations sufficient.

*Third*, Defendants cannot demonstrate that the narrow interlocutory review they seek here will materially advance the termination of the litigation. To the contrary, regardless of the fate of the Securities Act claims, the lion's share of the case—the Exchange Act claims—will proceed, and the scope of merits discovery will not be meaningfully narrowed. Any additional discovery needed to establish traceability will be far eclipsed by the primary discovery on liability issues. The Securities Act claims should not be the tail wagging the dog.

*Fourth*, even if Defendants could satisfy all three § 1292(b) criteria, their

3

Motion should be denied because it is untimely. Defendants waited more than five months after the Order to tell the Court that they intended to seek an interlocutory appeal and have failed to justify their delay.

*Finally*, Defendants argue that, in the alternative, the Court should reconsider its Order, but they make no attempt to show that the requirements for reconsideration are satisfied, nor could they. There has been no intervening change in the controlling law, no newly emerged evidence, and no need to correct a clear error of law or fact or to prevent manifest injustice.

Unable to meet any of the prerequisites for interlocutory review or reconsideration, Defendants' Motion should be denied.

## BACKGROUND

In this case, Plaintiffs bring claims under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") based on three categories of alleged false and misleading statements: (i) statements regarding the potential loss of customers' assets in the event of a bankruptcy ("Bankruptcy Risk Statements"); (ii) statements regarding Coinbase's engagement in proprietary trading ("Proprietary Trading Statements"); and (iii) statements regarding the regulatory risks associated with Coinbase's business ("Regulatory Statements"). Order at 5 n.9.

In denying Defendants' motion to dismiss, the Court sustained Plaintiffs'

4

Exchange Act and Securities Act claims with respect to many of the Bankruptcy Risk Statements, sustained Plaintiffs' Securities Act claims with respect to all of the Proprietary Trading Statements, and sustained Plaintiffs' Exchange Act claims with respect to all of the Regulatory Statements. *See* Order.

With respect to Plaintiffs' standing under the Securities Act, the Court noted that Plaintiffs Firth and Steinmetz "specifically allege: [1] they purchased Coinbase stock on April 14, 2021, the first day of Coinbase's Direct Listing, at prices near the opening price . . . ; and [2] 88% of shares outstanding were registered pursuant to the Offering Materials when they purchased the Company's stock." Order at 41. The Court also noted that "Lead Plaintiff alleges it purchased the Company's stock on November 30, 2021, when 74% of the shares outstanding were registered pursuant to the Offering Materials." *Id.* Based on these allegations, the Court found that Plaintiffs "plausibly alleged that they purchased shares pursuant and/or traceable to the Offering Materials" and rejected Defendants' standing challenge. *Id.* at 41-42. Based on the same allegations, the Court also found that Plaintiffs "sufficiently alleged standing under Section 12(a)(2) by alleging they purchased Coinbase shares pursuant and/or traceable to the Prospectus." *Id.* at 47.

## ARGUMENT

### I.    DEFENDANTS CANNOT MAKE THE SHOWING REQUIRED UNDER § 1292(b)

"[A] district court should certify an interlocutory appeal pursuant to 28 U.S.C.

5

§ 1292 sparingly and only in exceptional circumstances that justify a departure from the basic policy of postponing review until the entry of the final order." *Tomaine*, 2024 WL 3440170, at *3. "Indeed, the Supreme Court has instructed that certification of a case for ***immediate appeal*** '***should be reserved for the infrequent harsh case***.'" *Advanced Orthopedics & Sports Med. Inst. v. Int'l Union of Operating Eng'rs*, 2020 WL 4345301, at *4 (D.N.J. July 29, 2020) (Martinotti, J.) (quoting *Curtiss-Wright v. Gen. Elec. Co.*, 446 U.S. 1, 5 (1980)).

As the moving party, Defendants must demonstrate that all three of the independent criteria enumerated in 28 U.S.C. § 1292(b) are met: (1) the order must involve a dispute over a "controlling question of law"; (2) as to which "there is a substantial ground for difference of opinion"; and (3) for which an immediate appeal "may materially advance the ultimate termination of the litigation." *W. Coast Life Ins. Co. v. Wells Fargo Bank, N.A.*, 2021 WL 2712152, at *2 (D.N.J. July 1, 2021) (Martinotti, J.). "However, even if all three criteria . . . are met, the district court may still deny certification, as the decision is entirely within the district court's discretion." *Id.*

Here, Defendants cannot show the "exceptional circumstances" required to justify certification under § 1292(b).

### A.    Defendants Fail to Identify a Controlling Question of Law

Under the applicable § 1292(b) framework, a question of law "is 'controlling'

6

if its incorrect disposition would require reversal of the final judgment." *Tomaine*, 2024 WL 3440170, at *3. "When determining whether an issue presents a controlling question of law, the emphasis is on whether a different resolution of the issue would eliminate the need for trial." *Id.* As this Court has stated, "[m]ere disagreement with a district court's ruling is not a substantial ground for difference of opinion for Section 1292(b) purposes." *Advanced Orthopedics*, 2020 WL 4345301, at *7. Moreover, a "mixed question of law and fact" is "inappropriate for interlocutory appeal." *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2021 WL 1016111, at *4 (D.N.J. Mar. 17, 2021).

Here, Defendants fail to establish a controlling question of law sufficient to warrant interlocutory review.

### 1.    The Validity of Statistical Tracing Does Not Present a "Controlling" Question on Plaintiffs' Section 11 Claim

Defendants' first question is whether a plaintiff can rely exclusively on statistical tracing to plead Section 11 standing. But a "different resolution" of this question would not "eliminate the need for trial," *Tomaine*, 2024 WL 3440170, at *3, because the Court's finding that Plaintiffs adequately alleged standing was not premised solely on their allegations of statistical tracing. As the Court found, Plaintiffs also pled standing based on allegations that they purchased on the very

first day of Coinbase's direct listing at the opening price or just above it.[2] Order at 41.

These allegations regarding the timing and price of Plaintiffs purchases are sufficient, standing alone, to allege Section 11 standing under the controlling precedent in this Circuit. In *Suprema*, a Section 11 case based on two secondary offerings, the plaintiffs alleged that they purchased Suprema stock "in" or "traceable" to the two offerings, relying on the dates and prices of their purchases. 438 F.3d at 274 n.7.[3] The Third Circuit found these allegations "sufficient [to allege Section 11 standing] at the pleading stage," notwithstanding that—like the Coinbase direct listing—other shares issued prior to the challenged offerings were outstanding

---

[2]    Specifically, Plaintiff Firth alleged that he purchased 100 shares of Coinbase stock on April 14, 2021 at $381 per share—i.e., the opening price for the direct listing—and Plaintiff Steinmetz alleged that she purchased 250 shares on April 14, 2021 at $398.78 per share—i.e., just above the opening price. Second Amended Consolidated Complaint (ECF No. 68) ("SAC") ¶¶ 8, 41-42, 124.

[3]    The secondary offerings at issue in *Suprema* are analogous to the direct listing at issue here for purposes of Section 11 traceability. In the case of a direct listing, as with a secondary offering, there are both registered and unregistered shares for sale at the same time, thus requiring a plaintiff to trace their purchased shares to the specific challenged offering materials (rather than some other offering).

Indeed, some securities lawyers—including Defendants' counsel—have counseled clients to utilize a direct listing in lieu of a traditional initial public offering to create challenges for shareholders in tracing their shares to offering documents, thereby potentially limiting corporate liability under Section 11. *See, e.g.*, Andrew Clubok, et al., *Complex and Novel Section 11 Liability Issues of Direct Listings,* Corp. Couns. (Dec. 20, 2019), available at https://www.lw.com/en/insights/2019/12/section-eleven-liability-direct-listings.

at the time of the plaintiffs' purchases. *Id.*; *see also Holland v. 9F Inc.*, 2024 WL 5086106, at *4 (D.N.J. Dec. 12, 2024) (observing that plaintiffs' allegations regarding timing of purchases "presumably moved the ball for the *Suprema* court," because "[a]fter all, a look to the timing of a stock buy is often at the core of establishing whether it is 'traceable' to a registration statement").

As the Third Circuit recognized, maintaining reasonable pleading standards is particularly important in this context, where the information needed to undertake a more detailed tracing analysis is likely in the hands of others (including the defendants), and thus the question of "whether plaintiffs can demonstrate the shares they allegedly purchased are in fact traceable to the registration statement" is a "***factual one, to be resolved through discovery***." *Suprema*, 438 F.3d at 274 n.7; *accord Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 286 (3d Cir. 1992), *as amended* (May 27, 1992) ("Before discovery takes place, however, it is impossible for plaintiffs to know whether their shares were newly issued or were purchased in the secondary market.").[4] Ultimately, as the *Suprema* court explained, if the evidence

---

[4]    To that end, there are various avenues to develop evidence of traceability at the discovery stage. As explained in an amicus brief of law professors submitted in the *Slack* case, "modern computing power makes it feasible to trace shares, using the detailed, time-stamped transactional records that broker-dealers, exchanges, and the Financial Industry Regulatory Authority are required to maintain (and are subject to subpoena in discovery)." Brief for Amici Curiae Law and Business Professors in Support of Respondent at *3, *Slack Techs., LLC v. Pirani*, No. 22-200 (U.S. Mar. 3, 2023), 2023 WL 2439655.

adduced in discovery demonstrates that plaintiffs "do not in fact have standing, [defendants] can raise that matter at the summary judgment stage after discovery." 438 F.3d at 274 n.7.

In the years since *Suprema*, multiple courts within this Circuit have found Section 11 standing adequately pled based on allegations that stock purchases were made pursuant or traceable to the challenged offering materials and allegations regarding purchase price and timing, despite arguments from defendants that there were other outstanding, inactionable shares at the time of the plaintiffs' purchases. *See, e.g.*, *In re Schering-Plough Corp./Enhance Sec. Litig.*, 2009 WL 2855457, at *6 (D.N.J. Sept. 2, 2009) (Section 11 and 12(a)(2) standing adequately pled for secondary offering where "Plaintiffs have alleged with supporting details that [one plaintiff] purchased shares 'pursuant and/or traceable to' to the offering documents associated with Schering's common stock offering on August 9, 2007 and its preferred stock offering on August 10, 2007"); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *13-14 (D.N.J. Apr. 28, 2017) (Section 11 standing adequately pled based on allegations that plaintiff "purchased Valeant stock in the March 2015 Stock Offering" notwithstanding defendants' argument that "allegations do not tend to exclude the possibility that [its] shares came from the pool of previously issued shares").[5]

---

[5]    *In re Mun. Mortg. & Equity, LLC, Securities & Derivative Litigation* is also

10

Simply put, Plaintiffs' allegations regarding the timing and price of their purchases are sufficient—on their own—to plead Section 11 standing. Thus, a "different resolution" as to the validity of statistical tracing would not dictate a different result on the question of Plaintiffs' standing, let alone obviate the need for trial.[6] As a result, Defendants cannot demonstrate "a controlling question of law" whose "different resolution of the issue would eliminate the need for trial." *Tomaine*, 2024 WL 3440170, at *3.

---

in accord. 876 F. Supp. 2d 616 (D. Md. 2012), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014). There, the court concluded that the plaintiff "plausibly alleged that he purchased 600 shares at $26.32 per share on February 3, 2005, pursuant to, or traceable to, the SPO registration statement and prospectus." *Id.* at 658. The court noted that "[i]t may well be that [plaintiff] will be unable to prove that he bought directly in the offering" or that he can trace his shares to the offering, but "inasmuch as the allegations present a plausible claim, they are adequate." *Id.*

[6]   Defendants' assertion that "allegations about 'purchase price' and 'purchase timing' . . . *are* the statistical inference theory" (Mot. at 15-16) (emphasis in original) is misplaced. Allegations that a plaintiff, like Plaintiffs here, purchased on the opening day of an offering, at or near the opening price, give rise to a plausible inference that the purchased shares are traceable to the challenged offering documents. Statistical tracing allegations, by contrast, "rel[y] on the statistical inference that given the number of shares [ ] purchased and the fraction of shares on the exchange that were registered . . . the likelihood that none of the [purchased] shares was registered is infinitesimally small." *Slack III*, 127 F.4th at 1190; *see also Krim*, 402 F.3d at 494 (statistical tracing relies on "statistics indicating a high mathematical probability, based on the number of shares purchased by each individual and the number of [ ] shares in the market, that at least some of [the purchased] shares were issued pursuant to the challenged registration statement"). Statistical tracing allegations are therefore distinct from purchase price and timing allegations.

11

Nor is there merit to Defendants' contention that the question presented here is "essentially the same" as "the one on which the Ninth Circuit granted interlocutory review in *Slack*." Mot. at 14, 15. In *Slack*, unlike here, the plaintiff's "inability to trace" was "undisputed" by the parties. *Pirani v. Slack Techs., Inc.*, 2020 WL 7061035, at *1 (N.D. Cal. June 5, 2020). Thus, the issue that the district court certified for § 1292(b) appeal was whether the "plaintiff has adequately pleaded standing under Sections 11 and 12(a)(2) of the Securities Act of 1933 ***even though plaintiff did not and cannot allege that he purchased shares registered under and traceable to Slack's Registration Statement***." *Id.* Here, by contrast, Plaintiffs plainly alleged that they purchased Coinbase stock "pursuant and/or traceable to the Offering Materials" and alleged additional detail in the form of timing of purchase and purchase price, as well as a high statistical inference that the shares were registered. Order at 40-41. As discussed above, these allegations more than satisfy *Suprema*. 438 F.3d at 274 n.7.

> **2.    The Traceability Requirement Does Not Present a "Controlling" Question on Plaintiffs' Section 12(a)(2) Claim**

Defendants' second question—"whether the traceability requirement applies to Section 12(a)(2)" (Mot. at 14)—similarly is not "controlling" within the meaning of § 1292(b). In analyzing Plaintiffs' Section 12(a)(2) claims, the Court expressed skepticism that "Section 12 applies only to registered shares"—to be sure, there is no Third Circuit authority imposing such a requirement. Order at 46-47. However,

12

the Court then found that *even if* Section 12 was limited to registered shares, Plaintiffs "sufficiently alleged standing under Section 12(a)(2) by alleging that they purchased Coinbase shares pursuant and/or traceable to the Prospectus." *Id.* at 47. Because the Court "sidestepped the choice of standard by holding that, even under the strictest pleading standard, Plaintiffs had adequately pled [standing] . . . . selecting among the [two] standards . . . is not controlling because it would not change the outcome of the Court's decision." *Cognizant*, 2021 WL 1016111, at *3.

### 3.    The Sufficiency of Plaintiffs' Tracing Allegations Does Not Present a Pure Question of Law

Defendants also fail to satisfy the first prong of § 1292(b) for a separate reason: the question of whether statistical tracing allegations, in conjunction with other tracing allegations, are sufficient to plead standing is a "mixed question of law and fact" that "indisputably involves the Court's application of the law to the allegations in the [complaint]" and is therefore "inappropriate for interlocutory appeal." *Cognizant*, 2021 WL 1016111, at *4.

In analyzing the sufficiency of Plaintiffs' standing allegations, the Court first articulated the applicable legal standard: "[S]tanding is available to purchasers 'who acquired securities issued "pursuant to" or "traceable to" the specific offering documents that are alleged to be false or misleading,'" Order at 40 (quoting *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *15 (quoting *Suprema*, 438 F.3d at 274 n.7)), and "is satisfied by general allegations that plaintiff purchased pursuant

13

to or traceable to [a] false registration statement." Order at 40 (quoting *Alta Partners, LLC v. Forge Glob. Holdings, Inc.*, 2024 WL 1116682, at *7 (S.D.N.Y. Mar. 13, 2024)). The Court then applied this established standard to the facts and concluded that Plaintiffs "plausibly alleged" standing. *Id.* at 40-41.

Thus, the question of whether Plaintiffs' tracing allegations—i.e., the purchase price and timing allegations, ***in addition to*** the statistical tracing allegations—are sufficient to meet the applicable pleading standard is, at best, a mixed question of law and fact that does not justify certification under § 1292(b). *See, e.g.*, *In re Schering-Plough Corp./Enhance Sec. Litig.*, 2010 WL 2546054, at *4 (D.N.J. June 21, 2010) ("[T]he determination as to whether Plaintiffs' Complaint properly stated a claim involves an interplay between law and facts, and thus is within the discretion of this Court. Therefore, Defendants have failed to demonstrate that this Court's Opinion exclusively concerns a controlling question of law."); *Krishanthi v. Rajaratnam*, 2011 WL 1885707, at *3 (D.N.J. May 18, 2011) (same).[7]

---

[7]    *Mylan Pharms. Inc. v. Celgene Corp.*, 2015 WL 409655, at *1 (D.N.J. Jan. 30, 2015) (Mot. at 14) is not on point. There, the issue was whether a plaintiff was required to plead a particular element—a prior, voluntary course of dealing—to state a claim under Section 2 of the Sherman Act. *Mylan*, 2015 WL 409655, at *1 Here, by contrast, there is no dispute that Plaintiffs must allege that their stock purchases were made pursuant or traceable to the offering materials to plead standing—the question is whether Plaintiffs' specific factual allegations satisfy this requirement.

14

**B.** **Defendants Cannot Demonstrate a Substantial Ground for Difference of Opinion**

Defendants also cannot show that there is a "substantial ground for a difference of opinion" regarding the traceability pleading standard under Section 11. 28 U.S.C. § 1292(b). Where, as here, there is controlling Third Circuit authority, this second requirement for § 1292(b) review is not met, and pointing to conflicting out-of-circuit authorities, as Defendants do, is not sufficient.

**1.** **The Third Circuit Addressed Securities Act Standing in *Suprema***

As Defendants concede, where "the Third Circuit already 'expressly' decided the question at issue . . . there would be no basis to certify a question simply for the Third Circuit to apply its precedent." Mot. at 19 n.4; *see also PNY Techs., Inc. v. Netac Tech. Co.*, 2016 WL 544488, at *2 (D.N.J. Feb. 10, 2016) ("On a question on which the Third Circuit has spoken clearly, the mere possibility of a Supreme Court reversal is not sufficient to establish <u>substantial</u> ground for difference of opinion.") (emphasis in original); *Hu v. BMW of N. Am., LLC*, 2021 WL 1138123, at *3 (D.N.J. Mar. 24, 2021) (same). Here, as discussed above, the Third Circuit has addressed the Section 11 pleading requirements in the analogous context of a secondary offering, and found allegations regarding timing and purchase price sufficient to allege standing. *See supra* § I.A.1.

Defendants do not even mention *Suprema* in their brief, let alone explain why

15

this binding Third Circuit decision—which involved analogous factual circumstances, and which this Court cited multiple times in analyzing Plaintiffs' standing allegations (Order at 40, 47)—does not control here. *See PennEnvironment v. PPG Indus., Inc.,* 2022 WL 2048082, at *3 (W.D. Pa. June 7, 2022) ("Although the Third Circuit has not decided a case precisely like this one, it has addressed a similar situation . . . . [Defendant] offers no basis to conclude that, if presented with this scenario, the Third Circuit would alter course from what it said nearly 30 years ago . . . .").

In short, this Court's Order is consistent with *Suprema* and its progeny. Plaintiffs pled the dates and prices of their purchases which, standing alone, is sufficient under Third Circuit precedent to allege standing.[8] As a result, Defendants cannot meet their burden to demonstrate a substantial ground for difference of opinion. *CFTC v. WorldWide Markets, Ltd.*, 2022 WL 4115708, at *3 (D.N.J. Sept. 9, 2022) (finding no substantial ground for difference of opinion where "the Third

---

[8] Plaintiffs' purchase price and timing and statistical tracing allegations amount to more than "bare allegations of traceability" (Mot. at 25) and set this case apart from Defendants' cited cases. *See De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *17 (D.N.J. Dec. 31, 2018) (plaintiffs asserted "boilerplate allegation of traceability"); *Holland*, 2024 WL 5086106, at *3 ("[A]ssertion [of traceability] stands alone . . . . There are no details as to how the stock that was bought might allegedly be 'traceable' to the registration statement."); *Rose v. Butterfly Network, Inc.*, 2025 WL 501427, at *6 (D.N.J. Feb. 13, 2025) ("Plaintiffs' statistical tracing argument fails because it rests entirely on information that is not in the Complaint that the Court will not opt to consider here.").

16

Circuit, which binds this Court, has spoken").

Moreover, although not necessary in this Circuit, Plaintiffs also pled *additional* facts, alleging that as much as 88% of the shares outstanding at the time of their purchases were registered under the challenged offering materials.[9] Accordingly, there is a high probability that both Plaintiffs purchased one or more registered shares. *See, e.g.*, *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 866 (S.D. Ohio 2016), *aff'd sub nom. on other grounds*, *IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017) (cited in Order at 41) (standing alleged where plaintiffs pled purchases on first day of secondary offering at prices near opening price, "and that 1,7500,000 [sic] shares were sold in the [secondary offering] in comparison to the pre-existing public float of 2,023,000 shares").

These facts only further bolster the "plausibility" of Plaintiffs' standing allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the "plausibility standard" for pleading is "not akin to a 'probability requirement'"); *see*

---

[9]    Specifically, Plaintiffs Firth and Steinmetz allege that they purchased 100 and 250 shares, respectively, of Coinbase common stock on April 14, 2021 (i.e., the first day of Coinbase's direct listing) when 114.9 million of the 130.7 million shares of outstanding Coinbase common stock, or approximately 88%, were registered under the challenged Offering Materials. *See* Order at 12, 41; SAC ¶¶ 41-42. Plaintiff Firth further alleges that he purchased his shares at $381 per share—the opening price for the direct listing—and Plaintiff Steinmetz alleges that she purchased her shares at $398.78 per share—just above the opening price. SAC ¶¶ 8, 41, 42, 124.

*also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (plaintiff's allegations need only "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and "raise a reasonable expectation that discovery will reveal evidence" to establish element of claim) (cleaned up).

At the pleading stage, Plaintiffs need only plausibly allege that they purchased one or more registered shares—the actual number of shares purchased is an issue of damages, not standing. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n.9 (1969) (the "burden of proving the fact of damage" is "satisfied by proof of *some* damage flowing" from the alleged conduct; "inquiry beyond this minimum point goes only to the amount and not the fact of damage"). Similar statistical probabilities underlie other elements of securities litigation and are used to establish or disprove market efficiency, price impact, and loss causation. *See, e.g.*, Jill E. Fisch & Jonah B. Gelbach, *Power and Statistical Significance in Securities Fraud Litigation*, 11 Harv. Bus. L. Rev. 55, 56 (2021). Statistical analyses are also routinely used to establish claims outside the securities context. *See, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) (discussing standard for admission of expert testimony regarding epidemiological evidence establishing that drug caused birth defect); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55 (2016) ("A representative or statistical sample, like all evidence, is a means to

18

establish or defend against liability.").[10]

In sum, Plaintiffs have adequately alleged Section 11 standing under the controlling law in this Circuit and, as a result, Defendants cannot establish substantial grounds for difference of opinion sufficient to justify interlocutory review.

### 2. Even Without *Suprema*, Conflicting Out-of-Circuit Authority Does Not Warrant Review

Defendants' out-of-circuit authorities—*Slack III*, 127 F.4th 1183, and *Krim*, 402 F.3d 489—are also insufficient to give rise to a substantial ground for difference of opinion. *See, e.g.*, *Freedom Med., Inc. v. Gillespie*, 2013 WL 3819366, at *5 (E.D. Pa. July 24, 2013) ("A circuit split between our Court of Appeals and the courts of appeals for other circuits does not make Third Circuit precedent any less binding and cannot be said to create a 'substantial ground for difference of opinion' when it comes to issues of law before this Court.").

As this Court has held repeatedly, "[c]onflicting decisions of **other courts** do not constitute a substantial ground for difference of opinion" and thus "a court may find a lack of substantial grounds for a difference of opinion even if district and

---

[10]    The acceptance of statistical evidence at the pleading stage in finding that Plaintiffs have plausibly alleged that they purchased some registered shares does not mean that this evidence will be sufficient later in the litigation when Plaintiffs must prove how many registered shares they actually purchased. To be sure, "a well-pleaded complaint may proceed even if it strikes a savvy judge that the actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

circuit courts have arrived at contrary holdings, provided those holdings are not controlling." *Cortuk*, 2019 WL 1418133, at *2; *Tomaine*, 2024 WL 3440170, at *3.[11] In other words, "***the substantial ground for difference of opinion must be within the Third Circuit***." *Cosimano v. Twp. of Union*, 2017 WL 4790381, at *2 (D.N.J. Oct. 23, 2017); *see also Ivanovs v. Bayada Home Health Care, Inc.*, 2023 WL 5287815, at *4 (D.N.J. Aug. 17, 2023) ("[Defendant's] citation to out-of-circuit decisions . . . do[es] not compel a different result. The cited decisions are not binding on this Court for the purpose of the present analysis."); *Harris v. Kellogg, Brown & Root Servs., Inc.*, 2009 WL 1248060, at *3 (W.D. Pa. Apr. 30, 2009) ("[G]iven . . . the fact that there are no conflicting decisions from district courts within this Circuit which would establish a need for our Court of Appeals to resolve the same immediately, an interlocutory appeal is not warranted as a substantial basis for differing opinion is not present.").

Moreover, even if it were permissible to consider Defendants' out-of-circuit authorities in evaluating whether a substantial ground for difference of opinion exists (it is not), *Slack III* is inapposite, and the Court already expressly acknowledged, but

---

[11]    In both *Tomaine* and *Cortuk*, the Court set out the applicable § 1292(b) framework and expressly held that non-controlling decisions cannot provide the basis for a substantial ground for difference of opinion. *Tomaine*, 2024 WL 3440170, at *3; *Cortuk*, 2019 WL 1418133, at *2. The fact that the defendants in both cases failed to cite any conflicting authority (Mot. at 19 n.4) is of no moment.

20

declined to adopt, the Fifth Circuit's decision in *Krim*.

In *Slack III*, the Ninth Circuit found that the plaintiff, Pirani, expressly "conceded" at the motion to dismiss stage that he could not allege that the shares he purchased were traceable to the offering at issue. 127 F.4th at 1186. When Pirani later tried to argue that he could establish traceability through a statistical analysis, the Ninth Circuit held that Pirani's "statistical theory . . . is barred by [his] concessions," explaining that his "express acknowledgment that he cannot allege traceability means just that: He cannot allege traceability . . . whether he attempts to do so directly or through statistical inference." *Id.* at 1186-90.[12] Thus, the Ninth Circuit held that Pirani's concessions precluded his standing arguments and its subsequent discussion of statistical tracing amounts to nothing more than non-binding dicta from an out-of-circuit court. *See In re Golden Heaven Grp. Holdings Ltd. Sec. Litig.*, 2025 WL 714171, at *8 n.5 (C.D. Cal. Mar. 3, 2025) (citing *Slack III*, 127 F.4th at 1188) ("[*Slack III*] is inapposite as there, the plaintiff expressly waived any allegation of traceability . . . . Plaintiff has not made such a waiver here.").

---

[12]    By waiving any argument regarding his ability to trace his purchased shares back to the challenged registration statement and conceding that he "did not and cannot allege that he purchased shares registered under and traceable to Slack's Registration Statement," Pirani also effectively mooted any allegations regarding the traceability of his shares. *Cf.* Mot. at 16-17.

21

*Krim* similarly does not create a substantial ground for difference of opinion. 402 F.3d 489. In sustaining Plaintiffs' Securities Act claims, the Court noted that *Krim* rejected a statistical tracing theory but nonetheless found Plaintiffs' standing allegations sufficient. Order at 40-41. *Krim* is also factually inapposite as the plaintiffs there purchased months after the challenged offering such that statistical tracing was their only avenue to allege standing. 210 F.R.D. at 586. Here, by contrast, Plaintiffs Firth and Steinmetz both purchased Coinbase stock on the ***first day*** of the direct listing, substantially bolstering the plausibility of these Plaintiffs' standing allegations. *See supra* n.2. Moreover, to the extent Defendants believed that *Krim*—a twenty-year-old decision—gave rise to a substantial ground for difference of opinion, they should have moved for reconsideration or sought permission to file a § 1292(b) appeal immediately after the Court issued its Order declining to adopt *Krim*. Instead, Defendants waited for months to file this Motion.

### C.    An Immediate Appeal Would Not Materially Advance the Termination of the Litigation

Even assuming that Defendants could satisfy the first two § 1292(b) prerequisites (they cannot), they are unable show that an immediate appeal of the Order would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

*First*, Plaintiffs assert claims under both the Securities Act and the Exchange Act, but only Plaintiffs' Securities Act claims are implicated by Defendants'

22

§ 1292(b) petition. Thus, because the "***litigation will go forward in any event***" and discovery will proceed on Plaintiffs' Exchange Act claims regardless of the fate of their Securities Act claims, Defendants are unable to satisfy the third prong of § 1292(b). *ADP, LLC v. Ultimate Software Grp., Inc.*, 2018 WL 1838003, at *5 (D.N.J. Apr. 17, 2018) (denying § 1292(b) certification where "litigation will go forward in any event," and claims at issue "will probably involve contentions and witnesses that to some extent will overlap with the merits of the [other sustained claims]"); *see also Shevlin v. Phoenix Life Ins. Co.*, 2015 WL 348552, at *7 (D.N.J. Jan. 23, 2015) (denying certification where "***reversal . . . would not end this case***" and finding that certification "would not materially advance termination of the litigation" because "the claims are entwined"); *Lincoln Ben. Life Co. v. Wells Fargo Bank*, *N.A.*, 2017 WL 6539244, at *6 (D.N.J. Dec. 20, 2017) (denying § 1292(b) certification where it "will not eliminate either the need for trial or complex issues that would complicate a trial").

*Second*, the Exchange Act claims for the Bankruptcy Risk Statements are predicated on the *same* underlying facts and theory of liability as the Securities Act claims and, therefore, will involve the same discovery such that dismissal of the Securities Act claims would not "make discovery easier and less costly." *In re Direct Purchaser Insulin Pricing Litig.*, 2023 WL 3431213, at *5-6 (D.N.J. May 12, 2023) (denying § 1292(b) certification where "***discovery in both counts is related to the***

23

*same kickback and bribery scheme*" and immediate appeal "would not eliminate the need for trial, nor eliminate complex issues so as to simplify the trial, because . . . the Counts are related to the same scheme"). In fact, Plaintiffs' Securities Act claims for these statements actually implicate a narrower scope of discovery, as Plaintiffs need not prove scienter for these claims. *See, e.g.*, *Holland*, 2024 WL 5086106, at *2 ("Section 10b plaintiffs must plead and ultimately prove scienter—the 'intent to deceive, manipulate, or defraud' . . . . But Section 11 plaintiffs do not need to establish scienter.").

The fact that some of the Individual Defendants could be dismissed if the Third Circuit were to find Plaintiffs' standing allegations insufficient and reverse the Order does not compel a different conclusion—the Exchange Act claims based on the Bankruptcy Statements and the Regulatory Statements will nevertheless go forward against Defendants Armstrong, Choi, Grewal, Haas, and Coinbase. *See Bush v. Adams*, 629 F. Supp. 2d 468, 475 (E.D. Pa. 2009) (denying § 1292(b) certification where "the parties will still have to litigate the plaintiffs' claims against [three defendants] in full" regardless of whether dismissal of other defendants is upheld). Thus, an interlocutory appeal of the Securities Act claims will not accelerate the "ultimate termination of the litigation." 28 U.S.C. § 1292(b).[13]

---

[13]    Defendants' suggestion that "[a] Third Circuit reversal on traceability grounds would eliminate Plaintiffs' Proprietary Trading theory" (Mot. at 30 n.5) does not alter this analysis. *See, e.g.*, *Piazza v. Major League Baseball*, 836 F. Supp. 269, 272

*Third*, although Defendants assert that "resolving the Securities Act claims would obviate the need for any discovery into the issue of traceability" (Mot. at 26), the additional discovery needed to prove traceability will be limited in comparison to the merits-based discovery that will proceed regardless of whether the Securities Act claims are certified for appellate review. *Vrakas v. United States Steel Corp.*, 2018 WL 6065051 (W.D. Pa. Nov. 20, 2018) is instructive on this point. There, the defendants sought § 1292(b) certification as to whether "a plaintiff [can] satisfy its obligation to plead standing under Section 11 of the Securities Act of 1933 through generalized allegations of purchases in, or traceable to, a challenged securities offering[.]" *Id.* at *1. The court determined that certification would not advance the efficient resolution of the case because "[t]he amount of discovery required to establish traceability is a relatively insignificant portion of the discovery in this case, and the bulk of this case will proceed on course even if the [challenged] claims . . . were to be dismissed." *Id.* at *2. The same is true here: the amount of discovery that will be required to prove traceability pales in comparison to the discovery necessitated by Plaintiffs' overlapping and independent Exchange Act claims, which will go forward with or without the Securities Act claims.

---

(E.D. Pa. 1993) (interlocutory appeal would not materially advance termination of litigation where "several claims may proceed to trial regardless of the disposition of the [challenged] claims").

25

*Finally*, certification of the Order would not materially advance the termination of the litigation because Defendants will be free to challenge Plaintiffs' standing at summary judgment, on a full evidentiary record. *See, e.g.*, *Advanced Orthopedics*, 2020 WL 4345301, at *7 (third § 1292(b) prong not satisfied where "Defendants have avenues to pursue in this litigation, such as a motion for summary judgment, that, assuming their . . . arguments have merit, would result in similar expenses to the litigants as would an appeal"). This accords with *Suprema* which makes clear that standing is a "factual [issue], to be resolved through discovery." 438 F.3d at 274 n.7.

Because Defendants fail to show that any of the § 1292(b) criteria—let alone all three criteria—are satisfied, interlocutory review is not warranted.

### D.    Defendants' Motion is Untimely

Beyond the fact that Defendants cannot establish any of the § 1292(b) requirements, the Court should deny Defendants' Motion for the additional reason that it is untimely. Section 1292(b) states that once a district court grants a party's motion for certification, that party must apply for appellate review with the Court of Appeals within ten days. 28 U.S.C. § 1292(b). In *Milbert v. Bison Labs., Inc.*, the Third Circuit stated that to comply with this requirement, a party should also file its motion for certification within ten days of the issuance of the order that party seeks to appeal. 260 F.2d 431, 435 (3d Cir. 1958). Because Defendants did not alert the

26

Court of their intent to seek certification under § 1292(b) until February 28, 2025—more than ***five months*** after the Order—their Motion is untimely.

Defendants also do not justify their delay in filing the Motion. The ten-day period prescribed by § 1292(b) should be extended "only if there is reason for the delay." *Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990) (Posner, J.) (cited in Defendants' pre-motion letter (ECF No. 110) at 3) (declining to accept appeal under § 1292(b) where delay of more than two months in seeking certification was "gratuitous"). Defendants claim that *Krim*, 402 F.3d 489, creates a substantial ground for a difference of opinion, but *Krim* was decided ***twenty years ago***. Defendants could have filed their Motion immediately after the Court issued its Order but waited months instead. The fact that the Ninth Circuit joined the Fifth Circuit in rejecting statistical tracing twenty years later does not change this calculus—the purported conflict existed from the moment the Order came down last September. *See* Mot. at 22 (*Slack III* "makes the conflict ***even more*** pronounced").

Finally, even if the Court declines to find the Motion untimely, Defendants' delay nonetheless weighs against certifying the Order to the Third Circuit. *See, e.g.*, *Koger, Inc. v. Klco*, 2010 WL 4553522, at *2 (D.N.J. Nov. 3, 2010) ("Delay between entry of the order for which certification is sought and the filing of a motion for this relief has been considered as a factor militating against granting certification.").

## II.    RECONSIDERATION IS NOT WARRANTED

Defendants also argue (once again) that the Court should reconsider its Order. Mot. at 31. But Defendants cannot and do not make the showing required to warrant reconsideration. *See Cherry v. Borough of Tuckerton*, 2016 WL 7030428, at *2 (D.N.J. Dec.1, 2016) (Martinotti, J.) (to prevail on motion for reconsideration, movant must show "(1) an intervening change in the controlling law; (2) the availability of new evidence . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.").

*First*, Defendants point to no "change in the controlling law." *Id.* To the contrary, *Suprema* remains the controlling authority in the Third Circuit. The only new authority Defendants point to—*Slack III*—is an out-of-Circuit decision that is not binding on this Court.

*Second*, Defendants point to no new evidence that merits reconsideration.

*Third*, given that the Order is wholly consistent with Third Circuit law, there is no "clear error of law . . . ." *Cherry*, 2016 WL 7030428, at *2.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully submit that the Court should deny Defendants' Motion.

Dated: May 15, 2025                              Respectfully submitted,

                                                                 **CARELLA, BYRNE, CECCHI,**
                                                                 **BRODY & AGNELLO, P. C.**

28

s/ *James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Liaison Counsel for the Putative Class*

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**

Matthew L. Mustokoff (*pro hac vice*)
Joshua A. Materese
Margaret E. Mazzeo
Austin W. Manning (*pro hac vice*)
Dylan J. Isenberg
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7756
mmustokoff@ktmc.com
jmaterese@ktmc.com
mmazzeo@ktmc.com
amanning@ktmc.com
disenberg@ktmc.com

–and–

Stacey M. Kaplan (*pro hac vice*)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
skaplan@ktmc.com

29

*Counsel for Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiffs Ryan R. Firth and Zvia Steinmetz, and Lead Counsel for the Putative Class*

30

## <u>CERTIFICATE OF SERVICE</u>

I, James Cecchi, hereby certify that on May 15, 2025, I caused a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Certify Order for Interlocutory Review to be filed electronically with the Clerk of the Court using the ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's Electronic Filing System. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 15, 2025

*s/ James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI**
  **BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for the Putative Class*

31