**LATHAM & WATKINS LLP**
Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

*Additional counsel on signature page*

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas, Emilie Choi,*
*Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun,*
*Kelly Kramer, Gokul Rajaram, and Fred Wilson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW <br><br> Hon. Brian R. Martinotti <br> Hon. Leda Dunn Wettre <br><br> **Oral Argument Requested** <br><br> **Motion Day**: June 16, 2025 |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO CERTIFY ORDER FOR INTERLOCUTORY REVIEW

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT.......................................................................................................4

I.      THE ORDER WARRANTS CERTIFICATION ..........................................4

      A.      The Order Implicates Controlling Questions Of Law...........................4

      B.      There Are Substantial Grounds For Difference Of Opinion.................9

      C.      An Immediate Appeal May Materially Advance The Ultimate Termination Of This Litigation.........................................................11

      D.      The Motion Is Timely .......................................................................14

II.     ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO RECONSIDER THE ORDER...................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ADP, LLC v. Ultimate Software Grp., Inc.*,
2018 WL 1838003 (D.N.J. Apr. 17, 2018) ........................................................12

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000)............................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................................................6

*Braden v. Univ. of Pitt.*,
552 F.2d 948 (3d Cir. 1975)..............................................................................14

*Bush v. Adams*,
629 F. Supp. 2d 468 (E.D. Pa. 2009) ................................................................13

*Cupat v. Palantir Techs., Inc.*,
2025 WL 1141534 (D. Colo. Apr. 4, 2025) ........................................................7

*De Vito v. Liquid Holdings Grp.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018) ........................................................5

*Delalla v. Hanover Ins.*,
2010 WL 186172 (D.N.J. Jan. 14, 2010) ..........................................................15

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..........................................................................................8

*Golden Heaven Grp. Holdings Ltd. Sec. Litig.*,
2025 WL 714171 (C.D. Cal. Mar. 3, 2025) ......................................................10

*Holland v. 9F Inc.*,
2024 WL 5086106 (D.N.J. Dec. 12, 2024) ........................................................5

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2021 WL 1016111 (D.N.J. Mar. 17, 2021) ........................................................9

*In re Hollis*,
2010 WL 336132 (D.N.J. Jan. 22, 2010) ..........................................................11

*In re Schering-Plough Corp./Enhance Sec. Litig.*,
   2009 WL 2855457 (D.N.J. Sept. 2, 2009)........................................................................5

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006)......................................................................................2, 5

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
   2017 WL 1658822 (D.N.J. Apr. 28, 2017) .......................................................................5

*Kaplan v. St. Peter's Healthcare Sys.*,
   2014 WL 4678059 (D.N.J. Sept. 19, 2014).......................................................................9

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974) (en banc)..................................................................1, 4, 7, 10

*Koger, Inc. v. Klco*,
   2010 WL 4553522 (D.N.J. Nov. 3, 2010).......................................................................14

*Krim v. pcOrder.com, Inc.*,
   402 F.3d 489 (5th Cir. 2005).......................................................................................6

*Lincoln Benefit Life Co. v. Wells Fargo Bank N.A.*,
   2017 WL 6539244 (D.N.J. Dec. 20, 2017) .....................................................................12

*McNellis ex rel. DeAngelis v. Pfizer, Inc.*,
   2006 WL 2819046 (D.N.J. Sept. 29, 2006), *rev'd sub nom.*
   *Colacicco v. Apotex Inc.*, 521 F.3d 253 (3d Cir. 2008), *vacated*,
   556 U.S. 1101 (2009) ...............................................................................................14

*Milbert v. Bison Labs., Inc.*,
   260 F.2d 431 (3d Cir. 1958).......................................................................................14

*Mylan Pharms. Inc. v. Celgene Corp.*,
   2014 WL 12810322 (D.N.J. Dec. 23, 2014) .....................................................................8

*Mylan Pharms. Inc. v. Celgene Corp.*,
   2015 WL 409655 (D.N.J. Jan. 30, 2015) ..........................................................................8

*Piazza v. MLB*,
   836 F. Supp. 269 (E.D. Pa. 1993) ...............................................................................12

*Pirani v. Slack Techs., Inc.*,
   127 F.4th 1183 (9th Cir. 2025)..........................................................................1, 9, 10, 15

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011)...................................................................13

*SEPTA v. Orrstown Fin. Servs.*,
  2020 WL 4041049 (M.D. Pa. July 17, 2020)....................................................12

*Shevlin v. Phoenix Life Ins. Co.*,
  2014 WL 2965886 (D.N.J. June 30, 2014) ......................................................12

*Slack Techs., LLC v. Pirani*,
  598 U.S. 759 (2023) ..............................................................................2, 5

*Weir v. Propst*,
  915 F.2d 283 (7th Cir. 1990)....................................................................15

## STATUTES

15 U.S.C. § 77l(a)(2) ..............................................................................7

28 U.S.C. § 1292(b)..........................................................................passim

## RULES

Fed. R. App. P. 5 ...................................................................................14

Defendants respectfully submit this Reply Memorandum in Support of their Motion to Certify this Court's Order for Interlocutory Review.  Dkt. 122 ("Mot.").

## PRELIMINARY STATEMENT

Plaintiffs do not seriously dispute that if this exact case were filed in the Fifth or Ninth Circuits, their Securities Act claims would be dismissed.  Nor could they, given that a materially identical set of claims against Coinbase was recently voluntarily dismissed, based on the rule announced in *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183 (9th Cir. 2025) ("*Slack III*").  Sooner or later, therefore, Plaintiffs will have to establish in the appellate courts that the traceability rule in the Ninth Circuit (and the Fifth Circuit) is wrong.  And Plaintiffs do not dispute that this inevitable appellate review will involve the same inquiry, whether it happens now or after final judgment.  Yet, Plaintiffs insist that the parties and the Court risk expending tremendous resources in discovery and "a wasted[,] protracted trial," only to have that decision unwound on a threshold legal determination.  *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) (en banc).  This Court need not follow that senseless path.  An acknowledged conflict with two circuits on a question of law is the quintessential circumstance in which interlocutory review is warranted.

Plaintiffs' response principally revolves around a single contention: that the Third Circuit has already accepted that "allegations regarding the timing and price of Plaintiffs' purchases are sufficient, standing alone, to" plead traceability.  Dkt.

1

131 ("Opp.") at 8 (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006)). But that is incorrect. The *Suprema* plaintiffs relied on exactly the kind of allegation lacking here: that they purchased registered shares from specific underwriters—*i.e.*, entities that "buy[] the[] new *registered* shares at a negotiated price and then sell[] them to investors at a higher price." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 763 (2023) ("*Slack II*") (emphasis added). Accordingly, the *Suprema* plaintiffs could satisfy *Slack III*'s traceability requirement in a way that Plaintiffs cannot. Tellingly, Plaintiffs have never before argued that *Suprema* controls the traceability inquiry; instead, they pressed a statistical inference theory that *Suprema* does not endorse. Dkt. 79 at 44-46; *see also* Dkt. 84 ("Op.") at 41-42. Plaintiffs' late-breaking contention that this issue is settled by a case that they previously had only barely acknowledged is baseless. And, once that argument is stripped away, Plaintiffs have almost nothing to say as to the 1292(b) criteria.

*First*, Section 11's and Section 12(a)(2)'s traceability requirements are controlling questions of law because Plaintiffs cannot prevail under *Slack III*'s standards. Plaintiffs' argument that interlocutory review will not affect their claims' viability rests entirely on their reading of *Suprema*. As noted, that reading is wrong—and, regardless, Plaintiffs' belief that they will prevail on the relevant "question of law" does not make it any less "controlling."

*Second*, multiple circuits' rejections of Plaintiffs' statistical inference theory

2

amply establish "substantial grounds for difference of opinion." This Court acknowledged as much by stating its disagreement with *Krim*, and the Ninth Circuit then expressly adopted and affirmed the reasoning in *Krim* that this Court disagreed with. Plaintiffs' only response, again, is to insist that *Suprema* already resolves the issue. But, as noted, that revisionist claim does not withstand scrutiny.

*Third*, an immediate appeal may materially advance the ultimate termination of litigation. Plaintiffs suggest this factor can only be met if the *entire* case would be dismissed upon resolution of the questions presented. But Third Circuit precedent refutes that assertion; interlocutory review is routinely granted to address a *subset* of claims. Moreover, here, immediate review will not only eliminate claims, but also a distinct theory of liability and over half the Defendants. That is more than enough.

*Fourth*, the motion is timely. Simply put, there is no 10-day deadline for 1292(b) motions. Defendants timely sought review after *Slack III* required chain-of-title allegations in an identical direct listing. That Defendants acted judiciously by not seeking review until a square conflict fully emerged should not be held against them. Indeed, a contrary rule would encourage premature petitions, while precluding valid petitions grounded in later-developing case-law. Congress refused to impose a time limit for 1292(b) motions, and this Court should not invent one.

The motion should be granted.

3

## ARGUMENT

### I.    THE ORDER WARRANTS CERTIFICATION

An order may be certified for interlocutory appeal where it (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Plaintiffs' arguments regarding all three of these factors miss the mark.

#### A.    The Order Implicates Controlling Questions Of Law

#### 1.    The Section 11 Traceability Question Is Controlling

The Section 11 question "is whether the traceability element … requires that a plaintiff actually 'trace the chain of title for their shares back to the [challenged] offering,' or whether a plaintiff may simply allege a high probability that he purchased registered shares." Mot. 14-15. That question is controlling: if the Third Circuit requires chain-of-title tracing and rejects a statistical inference theory, the Order's traceability holding would be "reversible error." *Katz*, 496 F.2d at 755.

Plaintiffs make three arguments to avoid this straightforward conclusion, but none is persuasive. *First*, Plaintiffs claim that this question is not controlling, because the result is already controlled by *Suprema*. In Plaintiffs' telling, *Suprema* held that "allegations regarding the timing and price of [their] purchases are sufficient, standing alone, to allege Section 11 standing." Opp. 8. But *Suprema* held nothing of the sort—which is presumably why this is the first time Plaintiffs cite it

for that broad proposition.  The *Suprema* plaintiffs did not rely on timing and price "alone."  *Id.*  Rather, they alleged purchases of shares "*from underwriter[s]*" in the company's secondary offerings.  438 F.3d at 267 (emphasis added).  Thus, as another court in this District has recognized—and Plaintiffs misleadingly omit, Opp. 9—the *Suprema* plaintiffs alleged both "when the relevant stock buy was made" and "the entity from which the stock was bought."  *Holland v. 9F Inc.*, 2024 WL 5086106, at *4 (D.N.J. Dec. 12, 2024).  Plaintiffs who allege purchases during an offering from an identified seller, such as an underwriter—who necessarily sells "new registered shares"—plead facts that, if true, trace the chain of title for their shares to the challenged offering.  *Slack II*, 598 U.S. at 763.  Those traceability allegations pass the Ninth Circuit's test based on facts that Plaintiffs *cannot* plead here.[1]

Second, Plaintiffs say that the traceability question is not controlling because they can validly plead their claim based on their allegations that "they purchased on

---

[1] Plaintiffs suggest that other courts "have found Section 11 standing adequately pled based on allegations that stock purchases were made pursuant or traceable to the challenged offering materials."  Opp. 10.  But these cases do not support Plaintiffs' purported rule; neither decision even specifies the price or timing of the plaintiffs' purchases.  *See In re Schering-Plough Corp./Enhance Sec. Litig.*, 2009 WL 2855457, at *6 (D.N.J. Sept. 2, 2009); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *13-14 (D.N.J. Apr. 28, 2017).  And regardless, these decisions would at most demonstrate that courts in this District are divided on the adequacy of such allegations—satisfying the difference of opinion requirement.  *See De Vito v. Liquid Holdings Grp.*, 2018 WL 6891832, at *15 (D.N.J. Dec. 31, 2018) (plaintiffs who purchased shares while shares from both the "challenged" offering and a "blameless" offering were available failed to plead traceability).

the very first day of Coinbase's direct listing at the opening price or just above it," and their statistical traceability allegations were just "*additional*" and unnecessary allegations in their complaint.  Opp. 7-8, 17.  But, as Defendants have explained, Plaintiffs' "price and timing" theory of traceability is just the statistical inference theory by another name.  Mot. 15-16.  When registered and unregistered shares are trading on the market, purchase price and timing only suggest a *probability* that a purchased share is registered, not that it is actually registered.  That makes it "conceivable"—not "plausible"—that Plaintiffs purchased traceable shares.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To find these allegations plausible, a court would have to give dispositive weight to a statistical inference.  Plaintiffs' theory thus directly implicates the Ninth and Fifth Circuits' tests, which reject probabilistic allegations that "merely allow a factfinder to 'make ... a bet on the evidence.'"  Mot. 20 (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 497 n.40 (5th Cir. 2005)).  Indeed, the only possible difference between Plaintiffs' "price and timing" theory and a statistical inference theory is that the former is *weaker* because it omits the percentage of registered shares on the market.

*Third*, Plaintiffs assert that their allegations are sufficient because *Suprema*'s "reasonable pleading standard[]" allows litigants to "'resolve[]'" traceability "'through discovery.'"  Opp. 9.  But, again, that overreads *Suprema*.  There, the plaintiffs raised "a reasonable expectation that discovery [would] reveal" traceability

6

because they purchased shares from underwriters selling newly registered shares. *Twombly*, 550 U.S. at 556. In other words, if the plaintiffs proved what they alleged (*i.e.*, purchases from underwriters at the offering price), they could prevail. But *Suprema* does not stand for the proposition that a plaintiff can survive dismissal by asserting that discovery "might" establish actual traceability. *Cupat v. Palantir Techs., Inc.*, 2025 WL 1141534, at *17 (D. Colo. Apr. 4, 2025).

In any event, Plaintiffs' responses are just different ways of saying they should prevail on the *merits* of a controlling question—*i.e.*, they do not have to establish traceability in the way that the Fifth and Ninth Circuits require. But Plaintiffs ultimately do not dispute that if *Slack III*'s chain-of-title test is correct, their complaint is insufficient. That alone makes this a "controlling" question.[2]

### 2.    The Section 12(a)(2) Question Is Controlling

The Section 12(a)(2) traceability question in this case is whether "the same traceability requirement" as Section 11 "applies to Section 12(a)(2) of the Securities Act." Mot. 1. Plaintiffs do not dispute that *Slack III* requires a Section 12(a)(2) plaintiff to trace their purchase to the challenged offering. Nor do they dispute that the Order did not impose such a requirement. If the Order is correct, Plaintiffs are

---

[2] Plaintiffs also suggest in passing that the traceability questions are not controlling because the Exchange Act claims will go forward. Opp. 2. But "reversal of [an] order" *need not* "terminate the litigation." *Katz*, 496 F.2d at 755; Mot. 13.

entirely relieved of or face a reduced burden to establish a statutory element; if the Ninth Circuit's rule is correct, Plaintiffs' claim may fail on that element.  That is a paradigmatic controlling question of law.

Plaintiffs reply that allegations of purchase timing and price would satisfy any Section 12(a)(2) traceability requirement.  Opp. 12-13.  But that is the exact issue that will be resolved by the Section 11 question.  And if Plaintiffs' statistical inference theory is not viable under Section 11, their Section 12(a)(2) claim is also doomed.  Accordingly, resolving the two questions presented in the Motion "controls" whether both the Section 11 and 12(a)(2) claims are adequately pled.

### 3.    The Section 11 and Section 12(a)(2) Questions Are Legal

Plaintiffs contend that whether their "tracing allegations … are sufficient to meet the applicable pleading standard" is a "mixed question of law and fact."  Opp. 14.  But whether a set of undisputed facts establishes an element of a plaintiff's claim is "legal" because it turns on the "correct standard" for pleading that element.[3]  Mot. 14; *see also, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342, 348 (2005) ("find[ing] the plaintiffs' complaint legally insufficient" based on "inadequate"

---

[3] This case is just like *Mylan Pharmaceuticals Inc. v. Celgene Corp.*, 2015 WL 409655 (D.N.J. Jan. 30, 2015).  There, the parties agreed that an antitrust claim required anticompetitive conduct, but disputed whether a prior voluntary course of dealing between the parties was necessary to establish that element. *Mylan Pharms. Inc. v. Celgene Corp.*, 2014 WL 12810322, at *3-4 (D.N.J. Dec. 23, 2014).

allegations of economic loss and loss causation elements).  Under Defendants'

standard, which requires allegations that trace the chain of title to the challenged

offering, Plaintiffs' allegations of purchase price, timing, and statistical inference all

fall short.  This case thus turns on the "selection of a legal standard"—which

Plaintiffs' own authority recognizes is a legal question.  *In re Cognizant Tech. Sols.*

*Corp. Sec. Litig.*, 2021 WL 1016111, at *3 (D.N.J. Mar. 17, 2021).

### B.    There Are Substantial Grounds For Difference Of Opinion

The Order's traceability holding directly conflicts with *Slack III*, *Krim*, and a

growing list of district court opinions that reject statistical inference theories and

instead require a plaintiff to trace purchases to a challenged offering.  Mot. 18-25.

This disagreement is "the clearest evidence" that there are "'substantial grounds for

difference of opinion'" on what a plaintiff must do to establish traceability.  *Kaplan*

*v. St. Peter's Healthcare Sys.*, 2014 WL 4678059, at *3 (D.N.J. Sept. 19, 2014).

Plaintiffs' attempt to downplay the conflict fails.  As to Section 11, they

emphasize that in *Slack III*, Pirani conceded an inability to trace.  Opp. 21.  But *Slack*

*III* squarely held that his statistical inference theory was "legally flawed" and

"contrary to [Ninth Circuit] precedent."  127 F.4th at 1190.  Indeed, *Slack III*'s

traceability holding is already having an effect: a Securities Act plaintiff challenging

Coinbase's direct listing in the Northern District of California elected to dismiss her

claim voluntarily.  Mot. 2.  No rational plaintiff would make that choice if *Slack III*'s

9

holding were actually "dicta."[4]  Opp. 21.  Plaintiffs also assert that *Krim* is "factually inapposite" based on the timing of the plaintiffs' purchases.  Opp. 22.  But Plaintiffs do not dispute that under *Krim*'s legal rule, their Securities Act claims fail.

As to Section 12(a)(2), Plaintiffs do not even try to dispute the existence of a conflict on whether the statute has a traceability requirement.  Nor could they.  Unlike the Order, *Slack III* applied the same strict tracing standard to Section 12(a)(2) as Section 11.  127 F.4th at 1192; *see also* Mot. 23-24.

Because Plaintiffs have no response to the conflict between the Order and other circuits' precedent, Plaintiffs ask this Court not to "consider Defendant's out-of-circuit authorities."  Opp. 19-22; Dkt. 114 at 2.  But the Third Circuit routinely grants interlocutory review based on conflicts with out-of-circuit cases.  Mot. 18-19.  After all, the purpose of 1292(b) review is to resolve uncertain legal questions before they result in "wasted protracted trial[s]."  *Katz*, 496 F.2d at 754.  No matter where a conflict emerges, it signals that the requisite uncertainty exists.[5]

Finally, Plaintiffs return to their familiar refrain that *Suprema* is "controlling

---

[4] In *In re Golden Heaven Group Holdings Ltd. Securities Litigation*, the plaintiff pled traceability because he alleged that "Golden Heaven issued *all* publicly available shares in a single offering under one registration statement," 2025 WL 714171, at *8 (C.D. Cal. Mar. 3, 2025)—which direct listing plaintiffs cannot allege.

[5] Regardless, Plaintiffs' invented in-circuit conflict requirement is met here.  Mot. 22, 24-25 (collecting decisions from this District that reject generic traceability allegations and question statistical inference theory's viability).

Third Circuit authority" that adopts their view of traceability. Opp. 15. But, as discussed, that is wrong. *Supra* at 4-5. In opposing dismissal, Plaintiffs (1) did not rely on *Suprema*; and (2) expressly pressed a statistical inference theory. *See* Dkt. 79 at 44-46. This Court agreed with them on both counts. Op. 41-42. It is not credible for Plaintiffs to now suggest that the inquiry is *controlled* by a two-decade-old case they did not rely on—and that the conflict in authority this Court previously acknowledged does not exist. The difference of opinion factor is plainly satisfied.

### C. An Immediate Appeal May Materially Advance The Ultimate Termination Of This Litigation

Plaintiffs do not contest that an immediate appeal would (1) resolve all of Plaintiffs' Securities Act claims, (2) reduce the scope of discovery by eliminating the need to develop facts on traceability or Plaintiffs' Proprietary Trading theory, and (3) release 7 of the 12 Defendants from this litigation. Mot. 25-31. Plaintiffs nonetheless insist that these developments would not materially advance the ultimate termination of the litigation for four reasons. Opp. 22-26. None is persuasive.

*First*, Plaintiffs argue that whenever "*litigation will go forward in any event,*" the material advancement requirement is not met. Opp. 23. But, Section 1292(b) "does not require the resolution of an interlocutory appeal to resolve the case." *In re Hollis*, 2010 WL 336132, at *2 (D.N.J. Jan. 22, 2010). By arguing that an immediate appeal must "*end th[e] case,*" Opp. 23, Plaintiffs disregard the statute's "materially advance" language and numerous in-Circuit decisions, Mot. 27-29.

11

*Second*, Plaintiffs assert that the Bankruptcy Risk statements will "involve the same discovery" regardless, Opp. 23-24, but that would not be true if the Court grants Defendants' motion for judgment on the pleadings and dismisses the Exchange Act claims based on the Bankruptcy Risk statements, Dkt. 103. And Plaintiffs gloss over the effects of dismissing the Securities Act claims. For example, eliminating the Proprietary Trading theory would dramatically simplify further discovery and any potential trial by removing a third of Plaintiffs' case. *See SEPTA v. Orrstown Fin. Servs.*, 2020 WL 4041049, at *9 (M.D. Pa. July 17, 2020). This appeal's potential to eliminate a host of factual issues unique to the Proprietary Trading theory distinguishes this case from Plaintiffs' cited authority.[6] *See, e.g.*, SAC ¶¶ 467-76, 483-91, 503. Nor would appellate review "likely" take "substantially" longer than proceeding to trial, *Piazza v. MLB*, 836 F. Supp. 269, 271 (E.D. Pa. 1993), because discovery is in its early stages and currently stayed.

Plaintiffs also insist that even if claims against 7 of 12 Defendants are dismissed, that "will not accelerate" the case because other claims will proceed. Opp. 24. But as courts have recognized, an appeal's potential to "take" some

---

[6] *Shevlin v. Phoenix Life Ins. Co.*, 2014 WL 2965886, at *17 (D.N.J. June 30, 2014) (unchallenged claims involved "essentially the same" "factual premise" and "legal theory"); *Lincoln Benefit Life Co. v. Wells Fargo Bank N.A.*, 2017 WL 6539244, at *6 (D.N.J. Dec. 20, 2017) (appeal would not affect whether discovery occurred, only where); *ADP, LLC v. Ultimate Software Grp., Inc.*, 2018 WL 1838003, at *5 (D.N.J. Apr. 17, 2018) (appeal on counterclaims that "overlap[ped] with … main claims").

12

defendants "out of the case" itself constitutes material advancement.  Mot. 29-30

(quoting *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).  In any

event, Plaintiffs' case is inapposite.  In *Bush v. Adams*, plaintiffs sought interlocutory

appeal to *revive* claims against 3 of 6 plaintiffs.  629 F. Supp. 2d 468, 475 (E.D. Pa.

2009).  Bringing defendants *back into* litigation plainly would not advance the

ultimate termination of litigation.  But this appeal would do the exact opposite.

*Third*, Plaintiffs argue that "the additional discovery needed to prove

traceability will be limited in comparison to [other] merits-based discovery."  Opp.

25.  That is entirely speculative.  Plaintiffs refer in passing to using "modern

computing power," Opp. 9 n.4, but methods requiring such computing power are

often highly fact-intensive, and evaluating the validity of such methods may involve

extensive expert discovery.  Plaintiffs' argument also disregards the effect of

eliminating fact discovery on the Proprietary Trading theory.  Mot. 30-31.

*Fourth*, Plaintiffs argue that certification will not materially advance the case

because Defendants can move for summary judgment.  Opp. 26.  But, if that were a

dispositive consideration, then interlocutory review would never be granted from

denials of motions to dismiss.  To the contrary, dismissal decisions are where Section

1292(b) is most valuable, because early review can limit or avoid discovery.

Moreover, the Order's legal rulings on tracing shape the legal framework at

summary judgment.  If the Order stands, Plaintiffs will not need to introduce any

13

evidence of actual tracing because they can rely on statistical inference.  It would make no sense to deny interlocutory review now, only to grant it at the summary judgment stage to review the exact same legal question after the time and expense that interlocutory review seeks to conserve has already been wasted.

### D.      The Motion Is Timely

Plaintiffs make two arguments that the motion is untimely.  Both lack merit. *First*, Plaintiffs argue that Defendants had to seek certification of the Order within 10 days of its issuance.  Opp. 26.  No such requirement exists.  As Plaintiffs' own case recognizes, "neither section 1292(b) nor interpretive caselaw set any time constraints on when a party must file such a motion" in the *district court*.  *Koger, Inc. v. Klco*, 2010 WL 4553522, at *2 (D.N.J. Nov. 3, 2010).  And the 10-day deadline to petition a circuit court after "the district court's 1292(b) order" does not create a "statutory deadline for [a] filing … in the district court."  *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000).  Third Circuit practice confirms the point.[7]  *See, e.g.*, *McNellis ex rel. DeAngelis v. Pfizer, Inc.*, 2006 WL 2819046, at *13 (D.N.J. Sept. 29, 2006) (granting motion filed 31 days after order).

*Second*, Plaintiffs argue that the motion is untimely because *Krim* already

---

[7] An amendment to Federal Rule of Appellate Procedure 5 superseded *Milbert v. Bison Laboratories, Inc.*'s requirement that a petition be filed in the Third Circuit within "the statutory period of 10 days" of an "order."  260 F.2d 431, 435-36 (3d Cir. 1958); *see Braden v. Univ. of Pitt.*, 552 F.2d 948, 952 & n.19 (3d Cir. 1975).

14

conflicted with the Order. Opp. 27. But the "exceptional" circumstances warranting certification, Mot. 5, are not "necessarily [present] immediately after" a court "has issued the order," *Weir v. Propst*, 915 F.2d 283, 286 (7th Cir. 1990). When the Order issued, it picked a side in a legal disagreement. After *Slack III*, that disagreement demands immediate review, because "*numerous*" circuit decisions conflict with the Order. *Delalla v. Hanover Ins.*, 2010 WL 186172, at *3 (D.N.J. Jan. 14, 2010) (emphasis added). And the conflict is now even clearer because, as here, *Slack III* involved a plaintiff who purchased on *a direct listing's first day*. 127 F.4th at 1187; *cf.* Opp. 22 (attempting to distinguish *Krim*). Defendants promptly—and appropriately—sought review after *Slack III* made clear that this exact case would be dismissed if it had been brought in the Ninth Circuit. *See* Mot. 2, 13. That Defendants were judicious in seeking review should not be held against them.

## II. ALTERNATIVELY, THIS COURT SHOULD EXERCISE ITS INHERENT AUTHORITY TO RECONSIDER THE ORDER

Plaintiffs contend that the Order does not warrant reconsideration. Opp. 28. It is true that neither *Slack III* nor *Krim* binds this Court. Nevertheless, this Court has inherent authority to join the emerging circuit consensus, dismiss Plaintiffs' Securities Act claims, and obviate an interlocutory appeal. Mot. 31-32.

## CONCLUSION

This Court should certify the Order for interlocutory appeal or, alternatively, reconsider the Order and dismiss Plaintiffs' Securities Act claims.

15

Dated: June 5, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**


By: */s/ Kevin M. McDonough*
Kevin M. McDonough (N.J. Bar No. 41892005)
Samir Deger-Sen (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com
samir.deger-sen@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Morgan E. Whitworth (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
morgan.whitworth@lw.com

*Attorneys for Defendants Coinbase Global, Inc.,
Brian Armstrong, Alesia J. Haas, Emilie Choi,
Paul Grewal, Jennifer Jones, Marc Andreessen,
Frederick Ernest Ehrsam III, Kathryn Haun,
Kelly Kramer, Gokul Rajaram, and Fred Wilson*

16