**CARELLA BYRNE CECCHI BRODY AGNELLO, P.C.**

| | | | |
|---|---|---|---|
| JAN ALAN BRODY | DONALD F. MICELI | OF COUNSEL | RAYMOND J. LILLIE |
| JOHN M. AGNELLO | MELISSA E. FLAX | PETER G. STEWART | GREGORY G. MAROTTA |
| CHARLES M. CARELLA | DAVID G. GILFILLAN | CARL R. WOODWARD, III | MARYSSA P. GEIST |
| JAMES E. CECCHI | G. GLENNON TROUBLEFIELD | FRANCIS C. HAND | JORDAN M. STEELE |
| | BRIAN H. FENLON | JAMES A. O'BRIEN, III | BRITTNEY M. MASTRANGELO |
| | CAROLINE F. BARTLETT | JOHN G. ESMERADO | GRANT Y. LEE*** |
| CHARLES C. CARELLA | ZACHARY S. BOWER+ | STEVEN G. TYSON | MAYBOL HALL |
| 11/21/33 – 11/4/23 | DONALD A. ECKLUND | MATTHEW J. CERES | WILLIAM J. MANORY |
| | CHRISTOPHER H. WESTRICK* | ZACHARY A. JACOBS*** | NESLIHAN Z. TALU |
| | STEPHEN R. DANEK | JASON H. ALPERSTEIN | |
| | MICHAEL A. INNES | | *CERTIFIED BY THE SUPREME COURT OF NEW JERSEY AS A CIVIL TRIAL ATTORNEY |
| | MEGAN A. NATALE | | ***MEMBER IL BAR ONLY |
| | KEVIN G. COOPER | | +MEMBER FL BAR ONLY |

November 12, 2025

**VIA ECF**
Honorable Brian R. Martinotti, U.S.D.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re: *In re Coinbase Global, Inc. Sec. Litig.*, No. 2:22-cv-04915-BRM-LDW

Dear Judge Martinotti:

We, along with Lead Counsel, represent Plaintiffs and write in response to Defendants' request for a pre-motion conference regarding their contemplated motion to dismiss Plaintiffs' Third Amended Complaint (Dkt. 138) ("TAC"). Dkt. 139 ("Ltr."). For the reasons below, Defendants' request to file another Rule 12 motion should be denied.

The amended allegations in the TAC are narrowly tailored to remedy any potential group pleading issue. Specifically, per the Court's order on Defendants' Rule 12(c) motion, the TAC expressly identifies the speaker of each alleged false statement to ensure that Plaintiffs do not "rely solely on group pleading to attribute the . . . [s]tatement[s] to a Defendant." Dkt. 135 at 42. The TAC also clarifies the connection between Plaintiffs' scienter allegations—which this Court has now found sufficient in the face of two Rule 12 motions—and the Individual Defendants. In addition, Plaintiffs bolster the pleading with new scienter allegations specifically tied to these individuals. However, rather than engage with these allegations, Defendants merely rehash arguments that this Court previously rejected. Defendants' effort to forestall discovery again through a third Rule 12 motion that simply retreads the same ground should not be permitted.

**Bankruptcy Risk Statements.** Defendants do not suggest that either *Handal* or *Walmart* represents a change in the governing law; nor could they—the pleading standards articulated in both cases are the same as those the Court applied in denying Defendants' prior Rule 12 motions. *Compare* Dkt. 84 at 16-17, *and* Dkt. 135 at 8-9, *with Handal v. Innovative Indus. Props., Inc.*, 2025 WL 2922871, at *1 (3d Cir. Oct. 15, 2025), *and In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 112 (3d Cir. 2025). Applying these well-accepted standards, the Court already held that Plaintiffs adequately alleged that the Bankruptcy Risk Statements were materially false and

November 12, 2025
Page 2

misleading. Specifically, the Court concluded that Defendants' admission in the Company's May 10, 2022 Form 10-Q, and the "significant impact on the market" of this admission, evidenced the materiality of these statements. Dkt. 84 at 21-22. The Court further found that Defendants' statements regarding the security of customers' crypto assets gave rise to a duty "to provide the complete picture of known risks to customer[s]' assets" but Coinbase and the Executive Defendants nonetheless "concealed their knowledge of the potential bankruptcy risks to safeguarding customers' assets." *Id.* at 22-23. Thus, the Court already rejected Defendants' falsity challenges and determined that Plaintiffs' allegations regarding the Bankruptcy Risk Statements were sufficient.

*Handal* is also distinguishable and provides no basis for the Court to revisit its prior holdings. *See* Ltr. at 2 (citing *Handal*, 2025 WL 2922871, at *8). In the portion of *Handal* cited by Defendants, the Third Circuit found that the defendants' allegedly misleading response to a pointed analyst question regarding two specific entities would not have been understood by a reasonable investor to refer to a third entity engaged in fraud. *Handal*, 2025 WL 2922871, at *8. Here, by contrast, as the Court already held, Defendants "[put] the safety of customers' assets 'in play'" through statements underscoring the need to safeguard customers' assets and thus were "bound to speak truthfully" and "disclose the risks that its retail customers' assets faced." Dkt. 84 at 21-24.

The Court also already rejected Defendants' contention (Ltr. at 2) that the Bankruptcy Risk Statements were protected by the PSLRA safe harbor. In its order on Defendants' Rule 12(c) motion, the Court held that the safe harbor was inapplicable, reaffirming its prior holding that these statements "are actionable and allege known or present risks a[t] the time such Statements were made." Dkt. 135 at 25. In so holding, the Court reiterated that "Coinbase and the Executive Defendants concealed their knowledge of the potential bankruptcy risks to safeguarding customers' assets," citing Armstrong's admissions and other allegations that Defendants knew of the undisclosed risk. *Id.* at 25 (citing Dkt. 84 at 23); Dkt. 84 at 23 & n.17. The TAC includes the same allegations regarding Armstrong's admissions and other allegations regarding Defendants' knowledge that the Court cited, but now ties those allegations specifically to Defendants Armstrong, Haas, and Choi. *See* SAC ¶¶ 121, 377; TAC ¶¶ 117, 294.[1] Through these amended allegations, Plaintiffs sufficiently plead Defendants' actual knowledge of the omitted risk and also remedy any potential group pleading. And to the extent Plaintiffs plead scienter facts that apply to more than one Individual Defendant, the Court previously recognized that "the same facts can be used to support scienter for multiple corporate executives" so long as, like here, those executives are identified by name. Dkt. 135 at 41.

Given this Court's prior holdings, Defendants' proposed Rule 12 motion is an improper attempt to subvert the law of the case. The purpose of the law of the case doctrine is to "promote[] the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). "Time was

---

[1] The TAC also includes the same insider trading and core operations allegations that the Court previously credited in finding that Plaintiffs adequately alleged scienter. *See* Dkt. 135 at 24, 40-41; Dkt. 84 at 33-35.

November 12, 2025
Page 3

invested, attention was focused, and a decision was made," and "[u]ndoing [the Court's prior] resolution" of the falsity and scienter issues here "does not make sense from the perspective of finality and efficiency," particularly given that "[t]here is no new evidence . . . and no change in the law." *In re Celgene Corp., Inc. Sec. Litig.*, 747 F. Supp. 3d 748, 761 (D.N.J. 2024).

**Regulatory Statements.** Defendants' letter makes clear that they intend to take the same approach with respect to the Regulatory Statements—rather than challenge Plaintiffs' amended allegations, they seek to relitigate previously decided issues under the guise of "[r]ecent Third Circuit" precedent. Ltr. at 3. Defendants first assert that *Walmart* "forecloses Plaintiffs' omission-based theory as to the risk of an SEC enforcement action." *Id.* But as Plaintiffs previously explained in responding to Defendants' submission of the *Walmart* decision in connection with their Rule 12(c) motion, *Walmart* is inapplicable. Dkt. 134 at 1-3. The statements at issue in *Walmart* consisted of language from the "Contingencies" section of Walmart's Forms 10-Q and 10-K, which the plaintiffs alleged was materially misleading because it purported to disclose all "reasonably possible" "material" liabilities but did not disclose that an Assistant U.S. Attorney was investigating the company. *Walmart*, 151 F.4th at 109-13. The Third Circuit found that the investigations did not constitute a "material liability" or even a "reasonably possible liability" such that disclosure was not required. *Id.* at 113-15.

Here, unlike the issue allegedly misrepresented in *Walmart*, Plaintiffs challenge multiple Regulatory Statements across a variety of platforms and media that went to the core of Coinbase's business (facilitating cryptocurrency transactions) and whether that business was being legally conducted. TAC ¶¶ 262-92. Only two of these statements bear any similarity to the statements at issue in *Walmart*. *Id.* ¶¶ 262, 285. But unlike the *Walmart* plaintiffs, Plaintiffs do not allege that the challenged misstatements were misleading because Defendants failed to comply with a technical obligation to disclose "reasonably possible material liabilities." *Walmart*, 151 F.4th at 111. Instead, as the Court aptly summarized, Plaintiffs allege that "Coinbase and the Executive Defendants misrepresented and omitted that Coinbase listed crypto assets that were likely securities from 2019 through 2021 thereby concealing the likelihood of a SEC enforcement action"—one which posed an existential regulatory threat to Coinbase's ability to continue business as an unregistered crypto exchange. Dkt. 84 at 28; *see also, e.g.*, SAC ¶¶ 184, 345. As the Court has found—*twice*—"Plaintiffs have adequately alleged that Defendants misleadingly described a favorable picture of the improbability that the SEC would file an enforcement action by repeatedly emphasizing that the crypto assets they listed were not securities." Dkt. 84 at 28; Dkt. 135 at 40. The distinguishable *Walmart* decision provides no basis for the Court to revisit its prior holdings.

Defendants also claim (again) that the Regulatory Statements are inactionable opinions, citing *Handal*. Ltr. at 3. But the Court already "disagree[d] [with this argument] and f[ound] these statements are actionable as they did not fairly align with the information in [Defendants'] possession." Dkt. 84 at 29 n.19. In rejecting Defendants' argument, the Court, just like the *Handal* court, applied the *Omnicare* framework. *Id.* (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015)); *Handal*, 2025 WL 2922871, at *9-10 (same). Thus, the Court already rejected Defendants' claim that they "evidently were unaware of the information that allegedly undercut their opinions" (Ltr. at 3 (quoting *Handal*, 2025 WL

November 12, 2025
Page 4

2922871, at *10)) based on the same scienter allegations that Plaintiffs re-allege in the TAC and specifically tie to Defendants Armstrong and Grewal. *See* Dkt. 84 at 34; *compare* SAC ¶¶ 378, 379, *with* TAC ¶¶ 295-303, 305. Defendants' attempt to relitigate the same challenges to the Regulatory Statements runs headlong into the law of the case doctrine and should not be permitted.

Plaintiffs respectfully submit that the Court should reject Defendants' request to file another Rule 12 motion. However, to the extent the Court is inclined to allow Defendants to file a third Rule 12 motion, Plaintiffs respectfully submit that it should exercise its inherent authority to control its docket and limit Defendants to challenging the sufficiency of Plaintiffs' new allegations in the TAC.

We thank the Court for its attention to this matter.

> Respectfully submitted,
>
> CARELLA, BYRNE, CECCHI,
> BRODY & AGNELLO, P.C.
>
> */s/ James E. Cecchi*
>
> JAMES E. CECCHI

JEC

cc: All counsel of record

#891604