**LATHAM & WATKINS LLP**
Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

*Additional counsel on signature page*

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas,*
*Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer,*
*Gokul Rajaram, and Fred Wilson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>Hon. Leda Dunn Wettre<br><br>**Oral Argument Requested**<br><br>**Motion Day**: April 20, 2026 |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................1

ARGUMENT .......................................................................................2

I.  PLAINTIFFS' REGULATORY THEORY FAILS .........................................2

    A.  Plaintiffs Fail To Plead A False Or Misleading Statement...................2

    B.  Plaintiffs Fail To Plead Individualized Scienter ..................................7

II. PLAINTIFFS' BANKRUPTCY RISK THEORY FAILS............................9

    A.  Plaintiffs Fail To Plead A Misleading Bankruptcy Risk Statement .......................................................................................9

        1.  Plaintiffs Fail To Plead Contemporaneous Knowledge..............9

        2.  Plaintiffs Fail To Plead A Duty To Disclose ...........................10

    B.  Plaintiffs Fail To Plead Individualized Scienter ................................11

    C.  The Safe Harbor Protects The Bankruptcy Risk Statements .............13

    D.  Plaintiffs Fail To Plead Traceability .................................................15

III. PLAINTIFFS FAIL TO PLEAD CONTROL-PERSON LIABILITY .........15

CONCLUSION...................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alberici v. Recro Pharma, Inc.*,
2021 WL 798299 (E.D. Pa. Mar. 1, 2021) ..........................................................6

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) .............................................................................12

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ...............................................................................5

*Curran v. Freshpet, Inc.*,
2018 WL 394878 (D.N.J. Jan. 12, 2018)...........................................................14

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*,
270 F.3d 645 (8th Cir. 2001) ..............................................................................6

*Handal v. Innovative Indus. Props., Inc.*,
157 F.4th 279 (3d Cir. 2025) .......................................................................passim

*Herskowitz v. Nutri/System, Inc.*,
857 F.2d 179 (3d Cir. 1988) ...............................................................................6

*In re Aetna, Inc. Sec. Litig.*,
617 F.3d 272 (3d Cir. 2010) .............................................................................14

*In re Amarin Corp. PLC Sec. Litig.*,
2022 WL 2128560 (3d Cir. June 14, 2022).....................................................5, 10

*In re Amarin Corp. PLC*,
2015 WL 3954190 (D.N.J. 2015) ......................................................................12

*In re AT&T Corp. Sec. Litig.*,
2002 WL 31190863 (D.N.J. Jan. 30, 2002).......................................................14

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .............................................................................9

*In re Focus Fin. Partners*,
2025 WL 961488 (D. Del. Mar. 31, 2025) ........................................................11

ii

*In re Majesco Sec. Litig.*,
  2006 WL 2846281 (D.N.J. Sept. 29, 2006) ........................................................ 14

*In re Ocugen, Inc. Sec. Litig.*,
  2024 WL 1209513 (3d Cir. Mar. 21, 2024) ........................................................ 3, 5

*In re Philip Morris Int'l Inc. Sec. Litig.*,
  89 F.4th 408 (2d Cir. 2023) .............................................................................. 1, 6

*In re PTC Therapeutics, Inc. Sec. Litig.*,
  2017 WL 3705801 (D.N.J. Aug. 28, 2017) ........................................................ 12

*In re Viatris Sec. Litig.*,
  2025 WL 3224941 (3d Cir. Nov. 6, 2025) ............................................................ 4

*In re Viropharma Inc. Sec. Litig.*,
  21 F. Supp. 3d 458 (E.D. Pa. 2014) .................................................................. 14

*In re Walmart, Inc. Sec. Litig.*,
  151 F.4th 103 (3d Cir. 2025) .................................................................... passim

*Industriens Pensionforsikring A/S v. Becton, Dickinson & Co.*,
  620 F. Supp. 3d 167 (D.N.J. 2022) ...................................................................... 3

*Inst. Invs. Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) .............................................................................. 15

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) .............................................................................. 8

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ...................................................................... 9

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) .............................................................................. 11

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ................................................................................ 4

*SEB Inv. Mgmt. AB v. Endo Int'l, PLC*,
  351 F. Supp. 3d 874 (E.D. Pa. 2018) ................................................................ 12

*Shapiro v. UJB Fin. Corp.*,
  964 F.2d 272 (3d Cir. 1992) .................................................................................10

*Shnayder v. Allbirds, Inc.*,
  2026 WL 533600 (N.D. Cal. Feb. 26, 2026) .......................................................15

*Slack Techs., LLC v. Pirani*,
  598 U.S. 759 (2023)..............................................................................................15

*Sneed v. Talphera, Inc.*,
  147 F.4th 1123 (9th Cir. 2025) ..............................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................................8

*Tomaszewski v. Trevena, Inc.*,
  482 F. Supp. 3d 317 (E.D. Pa. 2020) .....................................................................6

*Williams v. Globus Med., Inc.*,
  869 F.3d 235 (3d Cir. 2017) ...................................................................................9

*Wu v. GSX Techedu Inc.*,
  738 F. Supp. 3d 527 (D.N.J. 2024)...................................................................11, 12

## STATUTES

15 U.S.C. § 78u-5(b)(2)(D).......................................................................................15

## PRELIMINARY STATEMENT

Plaintiffs' Opposition, Dkt. 166 ("Opp"), is an exercise in evasion. Plaintiffs do not contest that Defendants' Motion relies on new, binding precedent. *See In re Walmart, Inc. Sec. Litig.*, 151 F.4th 103 (3d Cir. 2025); *Handal v. Innovative Indus. Props., Inc.*, 157 F.4th 279 (3d Cir. 2025). Nor do Plaintiffs dispute that this Court rejected the group pleading permeating their prior complaint. Dkt. 135 at 26-28, 41-42. Yet they spend page after page arguing that rulings on superseded complaints provide a basis to ignore authority and allegations the Court has not yet analyzed.

Where Plaintiffs engage with Defendants' arguments and new authority, they offer no serious answers. On the **Regulatory** theory, Plaintiffs' wafer-thin distinctions of *Walmart* and *In re Philip Morris International Inc. Securities Litigation*, 89 F.4th 408 (2d Cir. 2023), underscore that these decisions foreclose Plaintiffs' falsity theory. And Plaintiffs' scienter allegations rest on Armstrong's and Grewal's job titles, not particularized facts about either Defendant's state of mind when they spoke. As to **Bankruptcy Risk**, Plaintiffs' omission argument depends on a "complete" disclosure standard that *Handal* squarely rejects. *Infra* at 10. Plaintiffs still resort to sweeping assertions about what a group knew or should have known about bankruptcy risk. And their failures to plead actual knowledge of falsity and traceability independently warrant dismissal of the claims against the Director Defendants and Jones. The TAC should be dismissed with prejudice.

1

## ARGUMENT[1]

### I.    PLAINTIFFS' REGULATORY THEORY FAILS

#### A.    Plaintiffs Fail To Plead A False Or Misleading Statement

**Enforcement.    Statements 17, 18, and 28** are just like the statements in *Walmart*.  Under *Walmart*, a company that discloses an investigation, its subject matter, and its uncertain outcome has done "enough" to avoid misleading investors—even if the government has threatened an "imminent[] indict[ment]." 151 F.4th at 108, 119-20; ¶ 189.  Plaintiffs concede that companies have no "duty to confess that they were, in fact, violating the law," Opp. 10, but they seek to limit *Walmart* to its facts in two ways.  Both attempts to salvage their falsity theory fail.

First, Plaintiffs say the *Walmart* investigation's posture differed because Walmart "continu[ed] to negotiate with prosecutors, such that the investigation 'remained ongoing'" after the threatened indictment.  Opp. 9-10.  That threat of *criminal* action is, if anything, more ominous than the SEC's January 2023 warning that it "*would be shifting back to an enforcement investigation.*"  ¶ 189.  In both cases, threats of "imminent" action by non-final decisionmakers—the prosecutors overruled by DOJ in *Walmart*, and the SEC staff here that needed Commission approval for enforcement—did not render a company's statements about an investigation and its uncertain outcome misleading when made.  Mot. 10-11.

---

[1] This Reply uses the same abbreviations as the Motion.  *See* Dkt. 159-1 at 1 n.1.

Plaintiffs' assertion that Coinbase knew "[d]iscussions were over" and enforcement was "imminent" as of January 20, 2023, is baseless. Opp. 9-10 (quoting ¶ 189). These statements were in Coinbase's June 28, 2023 Answer to the SEC's complaint. Ex. 38 ¶¶ 74, 76. Plaintiffs allege no facts suggesting Armstrong or Grewal knew discussions were over as of February 23, 2023. Rather, the Company continued to ask for meetings after the SEC's threat. Ex. 39 at App'x A at 7.

Second, Plaintiffs assert that the details allegedly omitted in *Walmart* are distinct from the SEC's views about crypto assets and "high" CRC scores that Armstrong and Grewal supposedly had to disclose. Opp. 11, 13. But, as to the SEC's views, by June 2022, the agency had opined *publicly*—not "privately" to Coinbase, Opp. 2—that most crypto assets were securities, Mot. 20. The SEC's skeptical statements about crypto assets were "readily available to any reasonable investor," *In re Ocugen, Inc. Sec. Litig.*, 2024 WL 1209513, at *3 (3d Cir. Mar. 21, 2024), and this "context" makes clear no reasonable investor would have been misled, *Handal*, 157 F.4th at 295, 299. *Industriens Pensionforsikring A/S v. Becton, Dickinson & Co.* is not to the contrary, Opp. 4, 11, because the issuer omitted that non-public FDA communications—not software upgrades—caused a product's "ship hold," 620 F. Supp. 3d 167, 187-88 (D.N.J. 2022).

Plaintiffs' argument regarding CRC scores impermissibly seeks disclosure of details about enforcement risk "down to the lowest common denominator."

3

*Walmart*, 151 F.4th at 119.  This is precisely the sort of detail that *Walmart* unequivocally held need *not* be disclosed when a company has described an investigation, its subject matter, and its uncertain outcome.  *Id.* at 119-20.  Further, CRC scores say nothing about whether Armstrong or Grewal believed that Coinbase was listing securities.  The CRC's framework analyzes the likelihood that regulators "deem[]" a crypto asset "to be a security," Dkt. 159-18 at 2; Mot. 17—not whether Coinbase's "independent" review reached the same conclusion, Mot. 17-18 & n.4.  Plaintiffs also fail to plead that Armstrong or Grewal "knew or suspected" that any particular asset had a high CRC score in the first place, so there was "nothing for them to hold back."  *Handal*, 157 F.4th at 298.  Plaintiffs do not identify a single crypto asset that was listed on Coinbase despite receiving a high CRC risk score.  Mot. 17-18.  Indeed, Plaintiffs do not allege that any of the 13 crypto assets labeled securities in the SEC's suit had a high CRC score.  That is fatal.

Plaintiffs' challenges to **Statements 17 and 18** assert Armstrong knew of the SEC's information request about asset listing "no later than May 2022." ¶ 264; Opp. 12.  That might meet Rule 8.  Opp. 12-13; *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008).  But the PSLRA demands allegations that Armstrong knew before May *10*, 2022, not just "at *some* point" in May.  *In re Viatris Sec. Litig.*, 2025 WL 3224941, at *3 (3d Cir. Nov. 6, 2025) (emphasis in original); Mot. 11-12.

**Listing.**  Plaintiffs claim Grewal's blog posts misled investors "in the face of

4

the SEC's campaign to tamp down . . . unregistered crypto sales, the insider trading action, and later the Wells Notice." Opp. 15. That is absurd. Grewal's July 21, 2022 (**Statement 19**) and March 22, 2023 (**Statement 30**) blog posts hid none of that; rather, they discussed—and "disagree[d]" with—the SEC's insider-trading suit, stance on crypto assets, and Wells Notice. Mot. 13-15. Plaintiffs cannot plead falsity by "selective[ly] reading" the blog posts, *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168-69 (3d Cir. 2014), or ignoring "readily available" information, *Ocugen*, 2024 WL 1209513, at *3-4. And pointing out Plaintiffs' failure to account for the "context surrounding the statement," as required, is not a truth-on-the-market defense. *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025). Even if any CRC scores cut against Grewal's public disagreement, reasonable investors knew his opinions "rest[ed] on a weighing of competing facts," *Walmart*, 151 F.4th at 120, given the SEC's "campaign," Opp. 15. As *Walmart* holds, opinions are "not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." 151 F.4th at 120.

Plaintiffs cast the SEC's later actions dismissing its charges against Coinbase as "irrelevant" hindsight. Opp. 17. But these actions confirm that, at the very least, Grewal had a "reasonable basis" for his opinion. *In re Amarin Corp. PLC Sec. Litig.*, 2022 WL 2128560, at *3 (3d Cir. June 14, 2022). Plaintiffs misunderstand *Philip Morris*, which held that a federal agency's "eventual[]" agreement with a company's

5

statements makes them "contemporaneously *reasonable*." 89 F.4th at 422. Grewal opined on a novel legal question. Court decisions and the SEC's reversal confirmed that there was room for disagreement with the SEC's prior interpretation of the securities laws. Mot. 14. And weeks ago, the SEC and CFTC issued an interpretative rule confirming their position, which aligns with Grewal's. Ex. 40. These evolving interpretations of the same legal standard show that Grewal's opinions were *always* reasonable.[2] Plaintiffs cannot confine *Philip Morris* to "matter[s] of clinical interpretation." Opp. 18 n.4. Here, as in *Philip Morris*, an agency eventually endorsed a company's statements about compliance with legal standards. *See* 89 F.4th at 414-15 (product risk assessments under federal law).

**Staking.** Plaintiffs largely ignore the reasons their staking claims fail. Plaintiffs do not acknowledge that, far from downplaying enforcement risks, Defendants' statements *expressly contemplated* SEC enforcement. Mot. 15-17. Coinbase disclosed ample information about the SEC's staking investigation. *Walmart*, 151 F.4th at 120. And recent SEC guidance agreeing with Coinbase's position shows Armstrong's and Grewal's opinions about staking were

---

[2] Plaintiffs' cases are inapposite. No opinion statements were challenged in *Florida State Board of Administration v. Green Tree Financial Corp.*, 270 F.3d 645, 662, 666-67 (8th Cir. 2001), *Alberici v. Recro Pharma, Inc.*, 2021 WL 798299, at *3-4, 7-8 (E.D. Pa. Mar. 1, 2021), or *Tomaszewski v. Trevena, Inc.*, 482 F. Supp. 3d 317, 330-31 (E.D. Pa. 2020). *Herskowitz v. Nutri/System, Inc.* just upheld a Rule 403 exclusion of subsequent financial performance. 857 F.2d 179, 188 (3d Cir. 1988).

6

contemporaneously reasonable.  Ex. 40 at 47-48; Dkt. 159-16.

**Review Process.**  Plaintiffs challenge Grewal's statements about asset review based on CRC scores.  Opp. 20-21.  But Grewal's opinions were reasonable and did not omit any allegedly known facts.  *Supra* at 5-7; Mot. 17-18.

### B.    Plaintiffs Fail To Plead Individualized Scienter

Plaintiffs fail to plead individualized scienter.  The only compelling inference is that Armstrong and Grewal candidly acknowledged regulatory uncertainty but believed their views would win out—and they did.  Plaintiffs' allegations about Defendants' leadership roles—without confidential witnesses, internal documents, or other indicia of scienter usually cited by plaintiffs—cannot withstand the PSLRA.

**Armstrong.**  Plaintiffs continue to cast Armstrong's June 2023 statement that the SEC's "tone" had "shifted" in June 2022, ¶ 131, as an "admission," Opp. 22.  But Armstrong could hardly "admit" something the SEC told the entire market.  *See* Mot. 20 & n.5.  They next lean on Armstrong's supposed CRC-related "admissions."  But their allegations based on Armstrong's "role[] as . . . CEO" are insufficient.  ¶ 305; *Handal*, 157 F.4th at 301-02.  Plaintiffs allege no facts showing that Armstrong was aware of *any* particular asset's CRC score.

Plaintiffs also fail to plead a financial motive to defraud.  Sales before challenged statements or at unidentified times cannot be deemed suspicious.  Mot. 21-22.  Plaintiffs argue that Armstrong entered his 10b5-1 plan while "in possession

7

of material nonpublic information" about the SEC investigation.  Opp. 24.  But Plaintiffs do not identify with particularity the "information" that Armstrong allegedly knew.  Indeed, his August 26, 2022 trading plan, Dkt. 159-23, began *after* the Company had disclosed SEC's inquiries, Dkt. 159-13 at 46; ¶ 175.

**Grewal.**  Plaintiffs rely on "new admissions" by Grewal, who said in June 2023 that Coinbase was not "'blindsided'" by the SEC's suit.  Opp. 25 (quoting ¶ 303).  Admissions only matter if they reflect a defendant's "state of mind *at the time of*" a challenged statement.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 252, 254 (5th Cir. 2009) (emphasis added).  Plaintiffs do not plead what Grewal knew when he made challenged statements, *id.*, rather than what he believed *after* receiving the (promptly disclosed) Wells Notice in March 2023.  *See* ¶ 303; Mot. 23-24.  Plaintiffs' insistence that their warped reading of Grewal's words must be uncritically accepted is not the law.  *Compare* Opp. 25 (citing non-PSLRA case), *with Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24, 326 (2007).  Regardless, not being "blindsided" hardly supports an inference of fraudulent intent or deliberate recklessness as to Grewal, whose challenged statements started on the day he *criticized* the SEC's suit alleging several assets on Coinbase were securities.

Plaintiffs' CRC score allegations fail for the same reasons that the allegations against Armstrong fail.  *See* Opp. 25.  The only Grewal-specific allegation is that he "authored a blog post . . . detailing the asset review process."  ¶ 305.  But the cited

8

blog post does not mention CRC scores. Ex. 41. Grewal's general references to the "asset review process" do not imply he contemporaneously knew that Coinbase listed *any* crypto asset with a high CRC score. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 554-55 (D.N.J. 2010) (discussing "unsigned change orders" did not show knowledge of misrepresentation).

The motive arguments as to Grewal, dependent on stock sales made pursuant to a 10b5-1 plan at unspecified times, are similarly deficient. *Supra* at 7-8.

## II.  PLAINTIFFS' BANKRUPTCY RISK THEORY FAILS

### A.  Plaintiffs Fail To Plead A Misleading Bankruptcy Risk Statement

#### 1.  Plaintiffs Fail To Plead Contemporaneous Knowledge

Plaintiffs claim they "specifically tie[d]" each Defendant to allegations showing contemporaneous knowledge of the allegedly omitted bankruptcy risk. Opp. 26-27 (citing ¶¶ 101-05, 106-117, 294). Not so. They cite bare assertions about what "Armstrong, Haas, and Choi knew" or "understood." ¶ 101. "[S]imply mouth[ing] the required conclusion of law" does not satisfy the PSLRA. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1430 (3d Cir. 1997); *Handal*, 157 F.4th at 299 & n.15. "[C]onjecture based on subsequent events" does not cut it. *Williams v. Globus Med., Inc.*, 869 F.3d 235, 244-45 (3d Cir. 2017).

Plaintiffs' reliance on a prior ruling about what "*Defendants* had known," Opp. 26 (emphasis added), ignores the Court's rejection of their group pleading, Dkt. 135 at 26. After amending, Plaintiffs still fail to allege that any Defendant knew the

allegedly omitted facts *before* speaking, rather than *after* SAB 121's guidance on March 31, 2022—which highlighted "the lack of legal precedent" governing how assets "would be treated" "in the event of a bankruptcy." Dkt. 159-8 at 4-5. Even if SAB 121 did not change "underlying [*legal*] obligations," Opp. 29-30, Plaintiffs still allege no *facts* about when each Defendant learned of bankruptcy risk.

### 2.    Plaintiffs Fail To Plead A Duty To Disclose

Plaintiffs agree the Bankruptcy Risk statements were neither literally false nor about bankruptcy—which was not a real risk for Coinbase. Mot. 26-32. Without analyzing their "precise language," *Handal*, 157 F.4th at 293, Plaintiffs contend every statement was misleading because it did not provide a "complete picture" of risks to customers' assets, Opp. 27-28 (quoting Dkt. 84 at 22-23). This complete-disclosure rule cannot be reconciled with *Handal*, where disclosure of a problem with King's Garden (rent nonpayment) did not require the defendant "to *also*" disclose every *potential* problem with King's Garden (ongoing investigation and suspected fraud). 157 F.4th at 300 & n.16. Further, no Third Circuit case supports Plaintiffs' expansive view of the "subject of [a] representation." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992) (description of "loan loss reserves" as "'adequate'" may be actionable only if defendant "knows they are inadequate or unstable"); *see Amarin*, 2022 WL 2128560, at *3 (description of "topline results did not put into play … full trial data"). For example, a company's statement that the

10

FDA found that a drug has an "'acceptable safety profile'" did not represent a "complete review of every piece of relevant medical information" and thus was not rendered misleading even if the FDA was unaware of 23 cases of "abnormalities" among drug users. *Oran v. Stafford*, 226 F.3d 275, 284-85 (3d Cir. 2000). Here, none of the statements made a "complete" representation about "every" risk to assets. *Id.*; Mot. 27-29. Plaintiffs' complete-disclosure rule is not the law.

**Statements 11, 12, and 16** independently fail because their "broad terms" demonstrate they are "vague and general statements of optimism." *Handal*, 157 F.4th at 298 n.12; ¶ 249 ("great indication of trust"); ¶ 253 ("*consumers are more than willing to pay*" for "*security*"); ¶¶ 259-60 ("great safe place"); Mot. 31-32.

### B.   Plaintiffs Fail To Plead Individualized Scienter

Plaintiffs' Bankruptcy Risk scienter arguments still rely on "blanket assertions of scienter across a group." *In re Focus Fin. Partners*, 2025 WL 961488, at *10 (D. Del. Mar. 31, 2025); Dkt. 135 at 26-27; Mot. 33. Plaintiffs disregard this Court's instructions, Third Circuit precedent, and the Motion's arguments.

**Choi.** Choi's lone statement was not made with scienter. To connect Choi to the June 2019 Comment Letter, Plaintiffs rely on her alleged leadership role at Coinbase Custody as of July 2020. Opp. 38. But *Handal* rejects scienter based on job titles alone. 157 F.4th at 302. Plaintiffs' allegations are nothing like those in *Wu v. GSX Techedu Inc.*, where confidential witnesses stated that each defendant

11

was "focused on revenue numbers" that were misstated. 738 F. Supp. 3d 527, 562-63 (D.N.J. 2024). Plaintiffs also do not fix their timing problem. Where, as here, a defendant "joined" a company "after" an event, plaintiffs cannot rely on that event to show scienter without "sufficiently alleg[ing]" that each individual defendant "knew about" it. *In re Amarin Corp. PLC*, 2015 WL 3954190, at *12 (D.N.J. 2015).

Plaintiffs next say that because Choi spoke about Coinbase's "custodial services," she must have been "aware of differing protections provided to retail versus institutional customers" under the user agreements. Opp. 38-39. But Choi's generic comments "tout[ing]" Coinbase's custodial services do not show awareness of specific agreement terms or intent to mislead. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493-94 (3d Cir. 2013). Plaintiffs must plead "specifically what information [Choi was] privy to," Dkt. 135 at 27, but fail to do so.

In asserting Choi's "unaware[ness]" is "implausible," Opp. 36, 38, Plaintiffs run headlong into *Handal*, Mot. 35, and rely on distinguishable cases where a defendant spoke about the very thing that was allegedly misrepresented.[3] Here, Choi was not asked about, and did not mention, any user agreement, let alone its terms.

As to motive, new authority recognizes it is "unsurprising" that insiders "trade

---

[3] *See In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *16-17 (D.N.J. Aug. 28, 2017) (drug's regulatory prospects); *SEB Inv. Mgmt. AB v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 900, 906 (E.D. Pa. 2018) ("sufficiency and the results" of product safety data); *Wu*, 738 F. Supp. 3d at 561 (precise metrics allegedly falsified).

12

at high volume" after a direct listing. Mot. 35-36. Plaintiffs have no response.

**Haas.** Plaintiffs' scienter arguments as to Haas mirror Choi's and have the same flaws. *Supra* at 11-12. Tellingly, Plaintiffs do not acknowledge, let alone refute, that Haas's *warnings* to investors are incompatible with scienter. Mot. 36.

**Armstrong.** Plaintiffs concede that Armstrong's May 10, 2022 tweets do not suggest Choi (or Haas) possessed scienter. *Compare* Mot. 37, *with* Opp. 38-39. Nor do they support scienter as to Armstrong. As the Third Circuit and others have recognized, an executive's "admission" that a decision was a mistake does not establish his "actual contemporaneous knowledge" as to prior statements about that decision. Mot. 37-38 (citations omitted). Armstrong's statement that the Company "should have updated our retail terms sooner," Dkt. 159-30 at 2-3—without any indication about when he came to that view—is precisely the sort of "should have known" claim that fails under Rule 10b-5. *Handal*, 157 F.4th at 302. Indeed, Armstrong's tweets underscore that SAB 121's new guidance on an unsettled issue drove Coinbase's May 2022 changes to its risk disclosures and retail user agreement. Plaintiffs cannot survive the PSLRA's mandate to compare the nonfraudulent inference with Plaintiffs' allegations as to *each* Defendant.

## C.    The Safe Harbor Protects The Bankruptcy Risk Statements

**Forward-Looking.** Plaintiffs argue that the Bankruptcy Risk statements omitted "'present facts'" about "the risk of asset loss *in the event of* a bankruptcy."

13

Opp. 32 (emphasis added).  But Plaintiffs concede there was no "short-term risk that Coinbase would go bankrupt" and that these statements "addressed 'contingent future risks.'"  Opp. 28, 33.  And Plaintiffs' cases are inapposite.[4]

Plaintiffs say these statements about future risks are not forward-looking because then-existing terms of the "retail" user agreements could affect the treatment of assets in bankruptcy.  Opp. 33.  That is wrong.  "[H]istoric data" can be relevant to a forward-looking "projection."  *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 280-81 (3d Cir. 2010).  Plaintiffs admit the effect of bankruptcy was "untested," ¶ 96, so the statements' truth "could not be ascertained until later," *Aetna*, 617 F.3d at 281.

Plaintiffs also suggest the Court decided the Bankruptcy Risk statements were not forward-looking.  Opp. 32.  But the Court stated only that "*Defendants* had actual knowledge" of falsity, Dkt. 135 at 25-26 (emphasis added), not that any statement was not forward-looking or that each *Individual* Defendant had actual knowledge.

**Securities Act.**  Because Plaintiffs disavowed scienter, Mot. 38-39, their Securities Act claims fail, ending the case against the Director Defendants and Jones unless Statements 32-35 were "made in connection with an initial public offering"

---

[4] Each case involved the omission of an already-materialized risk.  *See Curran v. Freshpet, Inc.*, 2018 WL 394878, at *4 (D.N.J. Jan. 12, 2018) (manufacturing and sales problems); *In re AT&T Corp. Sec. Litig.*, 2002 WL 31190863, at *17 (D.N.J. Jan. 30, 2002) (operational problems); *In re Majesco Sec. Litig.*, 2006 WL 2846281, at *3 (D.N.J. Sept. 29, 2006) ("defects and technical problems"); *In re Viropharma Inc. Sec. Litig.*, 21 F. Supp. 3d 458, 471 (E.D. Pa. 2014) (regulatory defect).

14

and thus ineligible for safe harbor protection, 15 U.S.C. § 78u-5(b)(2)(D); Opp. 34. But Statements 32-35 were made in connection with a *direct listing*, ¶ 5—a "new" type of offering that lets companies go public "without an IPO," *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 764, 768 (2023). The safe harbor's IPO exception does not extend to direct listings. Because courts must "apply[] the law as [they] find it," *id.* at 770, the Court should dismiss the claims against Director Defendants and Jones.

**Exchange Act.** Plaintiffs cannot plead any Defendant had knowledge of falsity. Mot. 39. What one "'should have'" known or what would be "implausible" not to know, Opp. 35-36, 38, does not show scienter—and fails the "stricter" actual-knowledge test, *Inst. Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 274 (3d Cir. 2009).

### D. Plaintiffs Fail To Plead Traceability

Plaintiffs' allegations based on their purchase's "timing," "price," and a "statistical inference," Opp. 40 & n.8, do not "plausibly allege" traceability, *Shnayder v. Allbirds, Inc.*, 2026 WL 533600, at *3-4 (N.D. Cal. Feb. 26, 2026). The Ninth Circuit rejected "statistical tracing arguments" on the merits, not based on waiver. *Id.* Under the correct rule, Plaintiffs' Securities Act claims fail. Mot. 40.

### III. PLAINTIFFS FAIL TO PLEAD CONTROL-PERSON LIABILITY

Without a primary violation, actual control over an alleged violation, or culpable participation, Plaintiffs' control-person claims necessarily fail. Mot. 40.

### CONCLUSION

For the foregoing reasons, the TAC should be dismissed with prejudice.

Dated: April 10, 2026

Respectfully submitted,


**LATHAM & WATKINS LLP**


By: */s/ Kevin M. McDonough*
Kevin M. McDonough (N.J. Bar No. 41892005)
Samir Deger-Sen (admitted *pro hac vice*)
Peter Trombly (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com
samir.deger-sen@lw.com
peter.trombly@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Morgan E. Whitworth (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
morgan.whitworth@lw.com

*Attorneys for Defendants Coinbase Global, Inc.,*
*Brian Armstrong, Alesia J. Haas, Emilie Choi,*
*Paul Grewal, Jennifer Jones, Marc Andreessen,*
*Frederick Ernest Ehrsam III, Kathryn Haun,*
*Kelly Kramer, Gokul Rajaram, and Fred Wilson*

16