**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC. SECURITIES LITIGATION | Case No. 2:22-cv-04915 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendants Coinbase Global, Inc. ("Coinbase"), Brian Armstrong ("Armstrong"), Alesia J. Haas ("Haas"), Emilie Choi ("Choi"), Paul Grewal ("Grewal"), Jennifer Jones ("Jones"), Marc Andreessen ("Andreessen"), Frederick Ernest Ehrsam III ("Ehrsam"), Kathryn Haun ("Haun"), Kelly Kramer ("Kramer"), Gokul Rajaram ("Rajaram"), and Fred Wilson's ("Wilson") (collectively, "Defendants")[1] successive motion to dismiss (the "Motion") (ECF No. 159) the Third Amended Complaint (the "TAC") (ECF No. 156) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiffs filed an opposition (ECF No. 166), and Defendants filed a reply (ECF No. 167). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, Defendants' successive motion to dismiss is **DENIED**.

[1] Defendants Armstrong, Haas, Choi, and Grewal are collectively hereinafter referred to as the "Executive Defendants." Defendants Andreessen, Ehrsam, Haun, Kramer, Rajaram, and Wilson are collectively hereinafter referred to as the "Director Defendants." Defendants Coinbase, Armstrong, Haas, Jones, and the Director Defendants are collectively hereinafter referred to as the "Securities Act Defendants."

## I. BACKGROUND

For the purposes of the Motion, the Court accepts the factual allegations in the TAC as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The factual background and procedural history of this matter are well known to the parties and were previously detailed in the Court's Opinion on September 5, 2024. (*See* ECF No. 84.) Accordingly, the Court will only briefly recount such information relevant to this Motion.

### A. Factual Background

This case is a federal securities class action on behalf of persons and entities that purchased or otherwise acquired: (i) Coinbase common stock from April 14, 2021, through June 5, 2023, inclusive (the "Class Period"), and were damaged thereby; and (ii) Coinbase common stock in or traceable to Coinbase's Registration Statement and/or Prospectus (collectively, the "Offering Materials"). (ECF No. 156 at 1.) Generally, Plaintiffs allege Defendants misrepresented, concealed, and/or omitted material aspects of Coinbase's business during the Class Period, which enabled Defendants to reap financial benefits such as cashing out existing shares at inflated values following Coinbase's public listing. (*See id.*) More specifically, Plaintiffs allege Defendants misrepresented Coinbase's proprietary trading of crypto assets (the "Proprietary Trading Statements"), concealed the risks associated with a potential bankruptcy (the "Bankruptcy Risk Statements"), and downplayed the likelihood that the U.S. Securities Exchange Commission (the "SEC") would bring an enforcement action (the "Regulatory Statements"). (*See* ECF No. 84 at 3–5.)

### B. Procedural History

On July 16, 2021, the original class action complaint was filed in this matter, previously bearing the caption *Patel v. Coinbase Global, Inc.*, Civ. A. No. 22-4915. (ECF No. 1.) The original class action complaint named Coinbase, Armstrong, and Haas as defendants and brought two claims pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"). (*Id.*) On September 27, 2022, another prospective plaintiff filed a class action complaint—*Laffoon v. Coinbase Global, Inc.*, Civ. A. No. 22-5744—naming Choi as an additional defendant. (Civ. A. No. 22-5744, ECF No. 1.) Thereafter, several motions for consolidation, appointment as lead plaintiff, and approval of lead counsel were filed. (ECF Nos. 12, 13, 18, 20, 21, 22.) On December 12, 2022, the Honorable Leda D. Wettre, U.S.M.J., consolidated *Patel* and *Laffoon*, appointed Sjunde AP-Fonden as Lead Plaintiff, approved Sjunde AP-Fonden's selection of Lead Counsel and Liaison Counsel, and ordered that *Patel* be the Master File bearing the caption *In re Coinbase Global, Inc. Securities Litigation*, Civ. A. No. 22-4915. (ECF Nos. 49, 50.)

On February 22, 2023, Plaintiffs filed a Consolidated Class Action Complaint naming Coinbase, Armstrong, Haas, and Choi as defendants and raising two claims pursuant to the Exchange Act. (ECF No. 59.) Thereafter, on May 10, 2023, Plaintiffs filed the First Amended Consolidated Class Action Complaint (the "FAC") alleging additional claims against Grewal, Jones, Andreessen, Ehrsam, Haun, Kramer, Rajaram, and Wilson. (ECF No. 62.)

On July 20, 2023, Plaintiffs filed the Second Amended Complaint (the "SAC"). (ECF No. 68.) The SAC raised two claims pursuant to the Exchange Act and three additional claims pursuant to the Securities Act of 1933 (the "Securities Act"): Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Promulgated Thereunder Against Coinbase and the Executive Defendants (Count I); Violations of Section 20(a) of the Exchange Act Against the Executive Defendants

(Count II); Violations of Section 11 of the Securities Act Against the Securities Act Defendants (Count III); Violations of Section 12(a)(2) of the Securities Act Against the Securities Act Defendants (Count IV); and Violations of Section 15 of the Securities Act Against Armstrong, Haas, Jones, and the Director Defendants (Count V). (*Id.*)

On December 21, 2023, Defendants filed a motion to dismiss the SAC pursuant to Rule 12(b)(6). (ECF No. 78.) On September 5, 2024, the Court granted the portions of the motion requesting the Court to dismiss Count I of the SAC "to the extent it is premised upon the Proprietary Trading Statements and the Bankruptcy Statements that tout customers' trust in Coinbase." (ECF No. 84 at 40.) The Court denied all remaining portions of the motion. (*See id.*) Notably, the Court held the SAC sufficiently alleged the Bankruptcy Risk Statements and Regulatory Statements are material misrepresentations, which Coinbase and Executive Defendants made with scienter (*see* ECF No. 84 at 21–25, 28–35), and Plaintiffs' Coinbase common stock are traceable to the Offering Materials (*see id.* at 39–42). On September 19, 2024, Defendants filed a motion for reconsideration of the September 5, 2024 Order (ECF No. 89), which the Court denied on April 8, 2025 (ECF No. 119).

On February 10, 2025, Defendants filed a motion for judgment on the pleadings pursuant to Rule 12(c). (ECF No. 103.) In response, Plaintiffs opposed the motion and, alternatively, requested leave to amend the SAC. (ECF No. 117.) On September 30, 2025, the Court granted the portions of the motion requesting the Court to dismiss Count I of the SAC "to the extent any [Bankruptcy Risk Statement or Regulatory Statement] is attributed to a Defendant solely by group pleading" and Count III "to the extent it is premised upon the Proprietary Trading Statements." (ECF No. 135 at 58–59; *see also id.* at 28 n.3 (providing a general ruling based on the parties' failure to identify the statements that allegedly assert group pleading).) The Court also granted

Plaintiffs leave to amend the SAC. (*See* ECF No. 135 at 57–58.) The Court denied all remaining portions of the motion. (*See* ECF No. 135.) Notably, the Court held the SAC sufficiently alleged Coinbase and Executive Defendants made the Bankruptcy Risk Statements and Regulatory Statements with scienter (*see* ECF No. 135 at 23–28, 38–42), and the Bankruptcy Risk Statements are not eligible for safe harbor protection (*see id.* at 25–26). On October 21, 2025, Plaintiffs filed the TAC. (ECF No. 138; *see also* ECF No. 156 (re-filing the TAC with erroneously omitted exhibits).)

On November 4, 2025, Defendants filed a request for a pre-motion conference pursuant to the Court's judicial preferences. (ECF No. 139.) Plaintiffs filed a response letter on November 12, 2025. (ECF No. 141.) On December 11, 2025, the Court conducted the pre-motion conference and ordered the successive motion to dismiss to be filed in January 2026. (*See* ECF No. 148; *see also* ECF No. 162.)

On January 22, 2026, Defendants filed the successive motion to dismiss the TAC pursuant to Rule 12(b)(6). (ECF No. 159.) Plaintiffs filed the opposition on March 16, 2026 (ECF No. 166), and Defendants filed the reply on April 10, 2026 (ECF No. 167).

## II. Legal Standard

### A. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pleaded; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (internal quotation marks omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (second alteration in original) (quoting Fed.

R. Civ. P. 8(a)(2)). Indeed, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a plaintiff must show that the allegations of his or her complaint are plausible. *See id.* at 670.

**B. Heightened Pleading Standard**

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") provides heightened pleading rules that a plaintiff must satisfy in securities class actions. *See Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). "The PSLRA replaced Rule 9(b) as the applicable pleading standard in private securities class actions. Nonetheless, 'Rule 9(b)'s particularity requirement is comparable to and effectively subsumed by the requirements of [15 U.S.C. § 78u–4(b)(1) of] the PSLRA.'" *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 n.3 (3d Cir. 2013) (alteration in original) (citation omitted) (quoting *Avaya*, 564 F.3d at 253).

Pursuant to Rule 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake, although intent, knowledge, and other conditions of a person's mind may be alleged generally." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (quoting Fed. R. Civ. P. 9(b)); *see also United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) ("A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.* (*In re Rockefeller*), 311

F.3d 198, 217 (3d Cir. 2002))). Accordingly, "a party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557.

Likewise, to properly allege that a defendant made a false or misleading statement under the heightened pleading standard of the PSLRA, a private securities complaint "must: (1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading,' and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (alteration in original) (first quoting 15 U.S.C. § 78u-4(b)(1); then quoting 15 U.S.C. § 78u-4(b)(2)). Therefore, the PSLRA requires "a complaint state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Rahman*, 736 F.3d at 241–42 (internal quotation marks omitted).

"To plead falsity, Rule 9(b) and the PSLRA each demand specificity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023). "Although the pleading standards in Rule 9(b) and the PSLRA can be generally reconciled harmoniously for allegations of falsity, the PSLRA's requirements for allegations of *scienter* control over the more lenient standard in Rule 9(b) for mental-state allegations." *Id.* at 681 n.1 (citing *Avaya*, 564 F.3d at 253; *Tellabs*, 551 U.S. at 323–24); *compare* Fed. R. Civ. P. 9(b) (permitting "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally"), *with* 15 U.S.C.

§ 78u-4(b)(2)(A) (requiring a particularized statement of the "facts giving rise to a strong inference that the defendant acted with the required state of mind").

## III. Decision

Although the filing of an amended pleading may revive a defendant's right to file a successive motion under Rule 12(b)(6), *see Fed. Nat'l Mortg. Ass'n v. DuBois*, Civ. A. No. 15-3787, 2018 WL 5617566, at *6 (D.N.J. Oct. 30, 2018), the successive motion to dismiss is a limited motion in two notable respects, *see SEC v. Lucent*, Civ. A. No. 04-2315, 2006 WL 2168789, at *4 n.2 (D.N.J. June 20, 2006).

First, pursuant to the law of the case doctrine, the successive motion to dismiss may not "challenge the sufficiency of the amended complaint with arguments that were previously considered and decided by the court in the first motion to dismiss." *Lucent*, 2006 WL 2168789, at *4 n.2 (quoting *Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.*, 217 F.R.D. 305 (N.D.N.Y. 2003)). Rather, a decision of law relating to the original pleading will continue to govern the amended pleading absent extraordinary circumstances. *See Tenny J. Commc'ns, Inc. v. Verizon New Jersey, Inc.*, Civ. A. No. 19-19183, 2022 WL 1912390, at *3 (D.N.J. June 2, 2022). Second, pursuant to Rule 12(g), the successive motion to dismiss may not raise defenses and objections that were available to the defendant but omitted in the first motion to dismiss. *See Lucent*, 2006 WL 2168789, at *6 (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1388 (3d ed.)). In other words, absent extraordinary circumstances, a plaintiff's filing of an amended pleading merely revives a defendant's right to challenge the sufficiency of the substantively amended portions of the pleading only. *See Lucent*, 2006 WL 2168789, at *4–6; *see also Wye Oak Tech., Inc. v. Republic of Iraq*, Civ. A. No. 10-1182, 2015 WL 13708440, at *1 (D.D.C. July 31, 2015) ("Although the filing of an amended complaint revives the right to file a

Rule 12(b) motion, such revival goes only to arguments for dismissal that were not available under the original pleading."). An amended pleading does not revive the right to challenge the preserved portions of the amended pleading with arguments either previously raised or that should have been raised in the first motion to dismiss. *See Lucent*, 2006 WL 2168789, at *4–6. Rather, the appropriate vehicle to challenge the preserved portions of an amended pleading is a motion for reconsideration. *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) (noting the law of the case doctrine "does not limit the power of trial judges to reconsider their [own] prior decisions" (alteration in original) (quoting *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997))).

Here, Defendants move to dismiss the TAC with prejudice to the extent any statement is attributed to an individual defendant solely by group pleading pursuant to Rule 12(b)(6) (*see* ECF No. 159-1 at 24–31, 39–44, 46), which was the primary purpose of amendment (*compare* ECF No. 84 at 24–25 (dismissing Count I "to the extent it is premised upon the Proprietary Trading Statements and the Bankruptcy Risk Statements that tout customers' trust in the Company"); ECF No. 135 at 58–59 (dismissing Count I to the extent the Bankruptcy Risk Statements and Regulatory Statements "is attributed to a [d]efendant solely by group pleading" and Count III "to the extent it is premised upon the Proprietary Trading Statements"), *with* ECF No. 156-1 (amending the pleading to address group pleadings and omit the Bankruptcy Risk Statements that tout customers' trust and the Proprietary Trading Statements)).

However, Defendants also move to dismiss on the following grounds: the Bankruptcy Risk Statements and Regulatory Statements are not misleading statements (ECF No. 159-1 at 13–24, 31–39); the Bankruptcy Risk Statements and Regulatory Statements were not made with scienter (ECF No. 159-1 at 24–31, 39–44); Plaintiffs' Coinbase shares are not traceable (ECF No. 159-1 at

46); and the Bankruptcy Risk Statements are eligible for safe harbor protection under the PSLRA (ECF No. 159-1 at 44–45). Defendants raised these additional arguments in their prior motion to dismiss and in their motion for judgment on the pleadings to dismiss the SAC. (*See* ECF No. 78-1 at 24–30, 35–41 (arguing the Bankruptcy Statements and Regulatory Risk Statements are not misleading statements); *id.* at 42–50 (arguing the Bankruptcy Risk Statements and Regulatory Statements were not made with scienter); *id.* at 53–55 (arguing Plaintiffs' Coinbase shares are not traceable); ECF No. 103-1 at 22–37 (further arguing the Bankruptcy Risk Statements and Regulatory Statements were not made with scienter); *id.* at 20–22 (arguing the Bankruptcy Risk Statements are not eligible for safe harbor protection); *see also* ECF No. 89-1 (moving for reconsideration of the Court's order denying the motion to dismiss the SAC on alternative grounds)). The Court addressed and denied each of these arguments in its opinions and orders granting in part and denying in part the motions to dismiss the SAC. (*See* ECF Nos. 84, 135; *see also* ECF No. 118 (denying the motion for reconsideration)). Having previously determined (1) the SAC sufficiently alleges the Bankruptcy Risk Statements and Regulatory Statements are misleading statements, which Coinbase and the Executive Defendants made with scienter (*see* ECF No. 84 at 21–25, 28–35; *see also* ECF No. 135 at 23–28, 38–42), (2) Plaintiffs' Coinbase shares are traceable (*see* ECF No. 84 at 39–42), and (3) the Bankruptcy Risk Statements are not eligible for safe harbor protection (*see* ECF No. 135 at 25–26), the Court construes Defendants' additional arguments as requests for reconsideration of the prior determinations.

The Court reviews Defendants' successive motion to dismiss and requests for reconsideration in turn.

### A. Defendants' Motion to Dismiss the TAC

Defendants move to dismiss the TAC to the extent any statement is attributed to an individual defendant solely by group pleading. (*See* ECF No. 159-1 at 24–31, 39–44, 46.) Specifically, Defendants claim Plaintiffs "ignored this Court's instruction not to 'rely on group pleading.'" (*Id.* at 41 (quoting ECF No. 135 at 26.); *see also id.* at 39 (claiming "Plaintiffs simply replaced references to 'Defendants' with 'Armstrong, Haas, and Choi'").)

In relevant part, Count One of the SAC alleged Defendants made seventeen misleading Bankruptcy Risk Statements (*see* ECF No. 68 ¶¶ 258–91) and seventeen Regulatory Risk Statements (*see* ECF No. 68 ¶¶ 340–75). Of these statements, thirteen Bankruptcy Risk Statements and three Regulatory Risk Statements pertained to corporate group-published documents (the "Corporate Bankruptcy Risk Statements" and "Corporate Regulatory Risk Statements," respectively). (*See* ECF No. 68 ¶¶ 258–65 (alleging four Bankruptcy Risk Statements pertaining to Coinbase's 2021 Form S-1 Registration Statement); ECF No. 68 ¶¶ 270–72 (alleging two Bankruptcy Risk Statements pertaining to Coinbase's Q1 2021 Form 10-Q); ECF No. 68 ¶¶ 273–75 (alleging two Bankruptcy Risk Statements pertaining to Coinbase's Q2 2021 Form 10-Q); ECF No. 68 ¶¶ 276–78 (alleging two Bankruptcy Risk Statements pertaining to Coinbase's Q3 2021 Form 10-Q); ECF No. 68 ¶¶ 284–88 (alleging three Bankruptcy Risk Statements pertaining to Coinbase's 2021 Form 10-K); ECF No. 68 ¶¶ 340–42 (alleging two Regulatory Risk Statements pertaining to Coinbase's Q1 2022 Form 10-Q); ECF No. 68 ¶¶ 368–69 (alleging one Regulatory Risk Statement pertaining to Coinbase's 2022 Form 10-K.)) Additionally, one Regulatory Risk Statement was directly attributed to an unidentified Coinbase spokesperson. (ECF No. 68 ¶¶ 348–49.) The remaining four Bankruptcy Risk Statements and thirteen Regulatory Risk Statements were directly attributed individually to the Executive Defendants. (ECF No. 68 ¶¶ 279–80, 355,

357, 358–63, 370–71 (alleging Armstrong directly published one Bankruptcy Risk Statement and four Regulatory Risk Statements); *id.* ¶¶ 281–83 (alleging Choi directly published one Bankruptcy Risk Statement); *id.* ¶¶ 266–69, 289–91, 350–53 (alleging Haas directly published two Bankruptcy Risk Statements and two Regulatory Risk Statements); *id.* ¶¶ 343–47, 349, 354, 356, 358–61, 364–67, 372–75 (alleging Grewal directly published seven Regulatory Risk Statements).)

Notably, the Court held the SAC sufficiently alleged the Bankruptcy Risk Statements and the Regulatory Risk Statements are material misrepresentations and had been made with scienter by both Coinbase and the Executive Defendants (*see* ECF No. 84 at 21–25, 28–35; *see also* ECF No. 135 at 23–28, 38–42) except to the extent the Bankruptcy Risk Statements "tout customers' trust in Coinbase" (*see* ECF No. 84 at 24, 50 (citing ECF No. 68 ¶¶ 268, 279, 281–82, 289–90)) and to the extent either the Bankruptcy Risk Statements or the Regulatory Statements are attributed to an Executive Defendant "solely by group pleading" (ECF No. 135 at 58–59). In response, Plaintiffs amended the pleading primarily to address group pleadings and to omit the Bankruptcy Risk Statements that tout customers' trust and the Proprietary Trading Statements. (*Compare generally* ECF No. 68, *with* ECF No. 156.)

As a result, Count One of the TAC alleges Defendants made sixteen misleading Bankruptcy Risk Statements (*see* ECF No. 156 ¶¶ 232–61) and fifteen Regulatory Risk Statements (*see* ECF No. 156 ¶¶ 262–92). The TAC omits the Regulatory Risk Statement attributed to an unidentified Coinbase spokesperson (ECF No. 68 ¶¶ 348–49) as well as one Bankruptcy Risk Statement and one Regulatory Risk Statement attributed to Haas (*see* ECF No. 68 ¶¶ 266–69, 350–53). Haas's Bankruptcy Risk Statement appears to have been omitted as the statement allegedly

touts the customers' trust in compliance with the September 5, 2024 Order.[2] (ECF No. 84 at 50.) The TAC made no substantive changes to the thirteen Corporate Bankruptcy Risk Statements. (*Compare* ECF No. 68 ¶¶ 258–65, 270–78, 284–88, *with* ECF No. 156 ¶¶ 232–48, 254–58.) However, the TAC amended the three Corporate Regulatory Risk Statements to attribute the statements to Armstrong as the certifying corporate officer. (*Compare* ECF No. 68 ¶¶ 340–42, 368–69, *with* ECF No. 156 ¶¶ 262–64, 285–86.) In response, Defendants challenge both the Corporate Bankruptcy Risk Statements and the Corporate Regulatory Risk Statements under the

[2] Defendants also claim to challenge three Bankruptcy Risk Statements to the extent the statements "tout customers' trust in Coinbase" pursuant to the September 5, 2024 Order (*see* ECF No. 159-1 at 37–38), which are attributed to Armstrong (ECF No. 156 ¶¶ 249–50), Choi (ECF No. 156 ¶¶ 251–53), and Haas (ECF No. 156 ¶¶ 259–61). Defendants previously challenged these same statements in the first motion to dismiss arguing the statements were non-actionable puffery and opinion. (*See* ECF No. 84 at 24 (citing ECF No. 68 ¶¶ 268, 279, 281–82, 289–90); *compare also* ECF No. 156 ¶¶ 249–53, 259–61, *with* ECF No. 68 ¶¶ 279–83, 289–91.) In response, the Court held these statements were neither puffery nor opinion to the extent the statements "highlight Coinbase's alleged ability to safely store customers' assets" but are non-actionable to the extent the statements "emphasize customers' trust in Coinbase." (*See* ECF No. 84 at 24; *see also* ECF No. 156 ¶¶ 249–50 (stating Coinbase offers the benefits of custodial services, which "makes sure [the crypto assets are] never going to be seized"); *id.* ¶¶ 251–53 stating Coinbase offers "world-class security in custody"); *id.* ¶¶ 259–61 (stating Coinbase is "a great, safe place to buy your fist Bitcoin to trade [and] to safely store").) Although Defendants claim to re-challenge these statements as touting Coinbase is a "trust[ed] place for customers to store their crypto assets," they raise no substantive argument in support of same and instead attempt to relitigate the issue of whether these statements are mere puffery or opinion. (*See* ECF No. 15-1 at 37–38); *see also John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing[,] . . . but not squarely argued, are considered waived."). To the extent Defendants request the Court reconsider Defendants' prior arguments or to consider new arguments that should have been raised in the first motion to dismiss as to whether these statements are non-actionable, Defendants fail to demonstrate an extraordinary circumstance justifying reconsideration. *See supra* Section III. Accordingly, the Court declines to reconsider its prior determination that these statements are neither puffery nor opinion.

group pleading doctrine to the extent the statements are attributed to an individual defendant pursuant to the September 30, 2025 Order.[3] (*See* ECF No. 159-1 at 24–31, 39–44, 46).

"The group pleading doctrine is a judicial presumption that statements in group-published documents[,] including annual reports and press releases[,] are attributable to officers and directors who have day-to-day control or involvement in regular company operations." *Winer Fam. Tr. v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007); *In re Intelligroup Sec. Litig.* (*In re Intelligroup*), 527 F. Supp. 2d 262, 281 n.8 (D.N.J. 2007) ("The group pleading doctrine allows plaintiffs in securities fraud cases to attribute corporate statements to one or more individual defendants based solely on their corporate titles." (internal quotation marks omitted)). Under the group pleading doctrine, "a securities fraud plaintiff could name corporate officers as individual defendants without pleading the particulars of the defendants' respective participation in the preparation and dissemination of corporate [group-published documents]." *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 583–84 (D.N.J. 2005). It is well-established, however, "the group pleading doctrine is no longer viable in private securities actions after the enactment of the PSLRA." *Winer Fam.*, 503 F.3d at 337; *accord Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 194 n.27 (D.N.J. 2022). Rather, "[t]he PSLRA provides two distinct pleading requirements, both of which must be met in order for a complaint to survive a motion to dismiss." *Avaya*, 564 F.3d at 252; *accord Handal v. Innovative Indus. Props., Inc.*, 157 F.4th 279, 292 (3d

[3] Defendants again fail to provide the Court with a comprehensive list detailing which assertions are claimed to be impermissible group pleadings. (*See generally* ECF No. 159; *see also* ECF No. 135 at 28 n.3.) As the group pleading doctrine is generally reserved for statements in corporate group-published documents, such as annual reports and press releases, *see Winer Fam.*, 503 F.3d at 335; *In re Intelligroup*, 527 F. Supp. 2d at 281 n.8, the Court construes Defendants successive motion to dismiss based on group pleading to be limited to the Corporate Bankruptcy Risk Statements (*see* ECF No. 156 ¶¶ 232–48, 254–58) and the Corporate Regulatory Risk Statements (*see* ECF No. 156 ¶¶ 262–64, 285–86).

Cir. 2025); *see also Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 528 (D.N.J. 2010) (noting "the PSLRA replaced Rule 9(b) as the pleading standard governing private securities class actions").

First, "the complaint must specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity." *Avaya*, 564 F.3d at 252 (quoting *Winer Fam.*, 503 F.3d at 326). This standard requires a plaintiff "to set forth the details of allegedly fraudulent statements or omissions, including who was involved, where the events took place, when the events took place, and why any statements were misleading." *City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, Civ. A. No. 23-4146, 2024 WL 4370833, at *6 (D.N.J. Oct. 2, 2024) (quoting *In re Rockefeller*, 311 F.3d at 217); *see also Handal*, 157 F.4th at 293 (requiring "a plaintiff to 'plead the who, what, when, where, and how'" (quoting *Avaya*, 564 F.3d at 253)).

Second, with respect to each misleading statement and omission, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (internal quotation marks omitted); *see also Hayward Holdings*, 2024 WL 4370833, at *7 ("The PSLRA requires a plaintiff to specify scienter either directly or indirectly with respect to each defendant."). This standard requires a plaintiff "to allege facts giving rise to a 'strong inference' of 'either reckless or conscious behavior.'" *Avaya*, 564 F.3d at 267 (quoting *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534–35 (3d Cir. 1999)). In the Third Circuit, an inference of scienter may be sufficiently demonstrated if a complaint shows: (1) the misleading statement or omission relates to a critical part of the company's operations; (2) the critical operations were important to the defendant's executive position; and (3) based on the defendant's position he or she knew or should have known the statement or omission was false or misleading.

*See Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 559–64 (D.N.J. 2024) (citing, in part, *Avaya*, 564 F.3d at 269–71); *see also Handal*, 157 F.4th at 302–03 (noting "refus[ing] to see the obvious[] or to investigate the doubtful can support a strong inference of scienter when the facts left undiscovered are those that made a statement false or misleading"); *see*, *e.g.*, *Biondolillo v. Roche Holding Ag*, Civ. A. No. 17-4056, 2018 WL 4562464, at *6 (D.N.J. Sept. 24, 2018) (finding scienter sufficiently pled against CEO, who issued statements following a press release, with respect to his statements, but not with respect to those misrepresentations or omissions found within the preceding press release). A motion to dismiss a complaint against an individual defendant under the group-pleading doctrine should generally be granted without prejudice. *See Winer Fam.*, 503 F.3d at 337 ("If a private securities case proceeds past the pleadings stage against a corporation and discovery reveals individual culpability, a plaintiff may seek permission to amend the complaint to assert claims against individual defendants.").

Here, the TAC alleges Armstrong and Haas, as Coinbase's CEO and CFO, respectively, certified the Corporate Bankruptcy Risk Statements and Armstrong certified the Corporate Regulatory Risk Statements. (*See* ECF No. 156 ¶¶ 40–41, 232–48, 254–58, 262–64, 285–86.) Neither the Corporate Bankruptcy Risk Statements nor the Corporate Regulatory Risk Statements include allegations against the other Executive Defendants. (*See generally* ECF No. 156.) Although it is well-established the first PSLRA heightened pleading requirement necessitates a complaint to sufficiently set forth the role and involvement of a corporate officer in the publication of a corporate group-published document, *see Winer Fam.*, 503 F.3d at 335, it is also well-established this requirement is generally satisfied if the corporate officer certified the allegedly fraudulent document, *see Carmack v. Amaya Inc.*, 258 F. Supp. 3d 454, 467–68 (D.N.J. 2017); *In re Intelligroup*, 527 F. Supp. 2d at 355–58; *In re Toronto-Dominion Bank Sec. Litig.*, Civ. A. No.

17-1665, 2018 WL 6381882, at *10 (D.N.J. Dec. 6, 2018) (reviewing whether the pleading sufficiently alleges the defendant corporate officer had scienter under the second heightened pleading requirement); *see also City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 419–20 (D. Del. 2009) ("[A] false or misleading certification may form the basis of a § 10(b) and Rule 10b–5 claim."). Accordingly, neither the Corporate Bankruptcy Risk Statements nor the Corporate Regulatory Risk Statements are improper group pleadings. Having previously held both Coinbase and the relevant Executive Defendants made these statements with the requisite scienter (*see* ECF No. 84 at 21–25, 28–35; *see also* ECF No. 135 at 23–28, 38–42), the Court need not re-consider the second PSLRA heightened pleading requirement at this time. *See infra* n.6.

Based on the foregoing, Defendant's successive motion to dismiss the TAC is **DENIED**.

**B. Defendants' Requests for Reconsideration**

"The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786–87 (3d Cir. 2003) (quoting *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). The doctrine precludes relitigation of issues "actually decided, either expressly or by implication," *In re City of Philadelphia Litig.*, 158 F.3d 711, 718 (3d Cir. 1998), and was "developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit," *Council of Alternative Pol. Parties v. Hooks*, 179 F.3d 64, 69 (3d Cir. 1999) (internal quotation marks omitted) (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 4478 at 788 (1981)); *see also Hamilton*, 322 F.3d at 787 (noting the doctrine "promote[s] finality, consistency, and judicial economy"). However, the Third Circuit has recognized reconsideration of a previously decided issue may be

appropriate under the following extraordinary circumstances: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Tenny J. Commc'ns*, 2022 WL 1912390, at *3; *accord Hooks*, 179 F.3d at 69; *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The moving party bears the "heavy burden" of demonstrating the existence of an extraordinary circumstance justifying reconsideration, which "cannot be met through 'recapitulation of the cases and arguments considered by the court before rendering its original decision.'" *United States v. $7,599,358.09*, 953 F. Supp. 2d 549, 565 (D.N.J. 2013) (quoting *G–69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)). In short, "[m]ere 'disagreement with the [original] decision' does not suffice." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, Civ. A. No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (internal quotation marks omitted); *see also P. Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001) (noting a motion for reconsideration "may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment").

Here, Defendants request the Court reconsider whether the TAC sufficiently alleges: (1) whether the Bankruptcy Risk Statements and Regulatory Statements are misleading statements (ECF No. 159-1 at 13–24, 31–39); (2) whether the TAC sufficiently alleges Coinbase and/or the Executive Defendants made the Bankruptcy Risk Statements and Regulatory Statements with scienter (ECF No. 159-1 at 24–31, 39–44); (3) whether Plaintiffs' Coinbase shares are traceable (ECF No. 159-1 at 46) and; (4) whether the Bankruptcy Risk Statements are eligible for safe harbor protection under the PSLRA (ECF No. 159-1 at 44–45). Defendants argue reconsideration of whether the Bankruptcy Risk Statements and Regulatory Statements are misleading statements is appropriate based on an intervening change in the controlling law, citing *Handal v. Innovative*

*Industrial Properties, Inc.*, 157 F.4th 279 (3d Cir. 2025).[4] (*See* ECF No. 159-1 at 13–15, 31–39.) Defendants do not claim reconsideration of this determination to be appropriate based on either new evidence or to prevent manifest injustice. (*See generally id.*) However, Defendants do not provide a valid basis in support of their requests to reconsider the Court's prior determinations that the TAC sufficiently alleges Coinbase and the Executive Defendants made the Bankruptcy Risk Statements and Regulatory Statements with scienter,[5] Plaintiffs' Coinbase shares are traceable,[6]

---

[4] Plaintiff also argues reconsideration is appropriate based on an intervening change in the controlling law citing *In re Walmart, Inc. Securities Litigation*, 151 F.4th 103 (3d Cir. 2025). (*See* ECF No. 159-1 at 13–15.) *Walmart*, however, is not an *intervening* change in the law and, as such, cannot serve as a basis for reconsideration. *See Trently v. United States*, Civ. A. No. 19-1836, 2025 WL 84138, at *3 (M.D. Pa. Jan. 13, 2025) (requiring the change in the law to have occurred following the court's decision), *vacated and remanded on other grounds*, No. 25-1352, 2026 WL 1817251 (3d Cir. June 23, 2026). (*But see* ECF No. 135 at 38 n.4 (reviewing *Walmart* and finding it to be inapplicable to this matter)).

[5] Although Defendants request the Court reconsider whether the Bankruptcy Risk Statements and Regulatory Statements were made with scienter (*see* ECF No. 159-1 at 18–31, 39–44), Defendants fail to set forth a valid basis for reconsideration of same (*see generally id.*), *i.e.*, (1) the availability of new evidence; (2) the announcement of a supervening new law; or (3) clear manifest injustice. *See Tenny J. Commc'ns*, 2022 WL 1912390, at *3. Rather, Defendants appear to request reconsideration based on their disagreement with the decision, which does not suffice. *See ABS Brokerage Servs.*, 2010 WL 3257992, at *6; *Schoenfeld Asset Mgmt.*, 161 F. Supp. 2d at 352; *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."). Accordingly, Defendants have failed to set forth a valid basis for reconsideration and, as such, the Court declines to reconsider the determination that the Bankruptcy Risk Statements and Regulatory Statements were made with scienter.

[6] Defendants request the Court reconsider whether Plaintiffs' Coinbase shares are traceable based on an intervening change in the controlling law citing *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1190, 1192–93 (9th Cir. 2025). (ECF No. 159-1 at 13-15, 31-39.) *Pirani*, however, is not a change in the *controlling* law and, as such, does not serve as a basis for reconsideration. *See Pine Belt Auto., Inc. v. Royal Indem. Co.*, Civ. A. No. 06-5995, 2009 WL 424384, at *2 (D.N.J. Feb. 19, 2009) (holding an opinion in another district "is not controlling law for the purposes of a motion for reconsideration"), *aff'd*, 400 F. App'x 621 (3d Cir. 2010); *see also Interfaith Cmty. Org. Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 319 (D.N.J. 2010) ("[C]ases in other districts and circuit courts of appeal . . . are not controlling on this [c]ourt."); *Engers v. AT & T*, Civ. A. No. 98-3660, 2006 WL 3626945, at *2 (D.N.J. Dec.12, 2006) (requiring the party moving for reconsideration to

and the Bankruptcy Risk Statements are not eligible for safe harbor protection.[7] Accordingly, the Court declines to reconsider its prior determinations.

Defendants have failed to demonstrate an intervening change in the controlling law justifying reconsideration of the prior determinations. In *Handal*, the plaintiffs alleged the company's press release statement—that "*any* reimbursements relate only to verified, qualified improvements to the buildings for [infrastructure improvements]"—in response to a short-seller report criticizing its tenants and arguing its stock was overvalued was misleading. *See* 157 F.4th at 290–91, 298–99. The Third Circuit agreed the statement was misleading because the defendants had reimbursed a tenant for reimbursements that were neither verified nor qualified. *See id.* Nevertheless, the Third Circuit affirmed the dismissal of the plaintiff's complaint because it found the pleading had failed to plead with particularity a defendant had scienter. *See id.* at 300–03. Accepting the allegations that the defendant should have known it had released reimbursements without first verifying the request and had the defendant verified the request it would have uncovered the tenant's fraudulent conduct earlier as true, the Third Circuit held it could not

---

cite an intervening decision entered by either the Third Circuit or the United States Supreme Court). Accordingly, Defendants have failed to set forth a valid basis for reconsideration and, as such, the Court declines to reconsider the determination that Plaintiffs' Coinbase shares are traceable.

[7] Although Defendants request the Court reconsider whether the Bankruptcy Risk Statements are eligible for safe harbor protections (*see* ECF No. 159-1 at 44–45), Defendants fail to set forth a valid basis for reconsideration of same (*see generally id.*), *i.e.*, (1) the availability of new evidence; (2) the announcement of a supervening new law; or (3) clear manifest injustice. *See Tenny J. Commc'ns*, 2022 WL 1912390, at *3. Rather, Defendants appear to request reconsideration based on their disagreement with the decision, which does not suffice. *See ABS Brokerage Servs.*, 2010 WL 3257992, at *6; *Schoenfeld Asset Mgmt.*, 161 F. Supp. 2d at 352; *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."). Accordingly, Defendants have failed to set forth a valid basis for reconsideration and, as such, the Court declines to reconsider the determination that the Bankruptcy Risk Statements are not eligible for safe harbor protections.

reasonably infer the defendant had willfully ignored the fraudulent requests as "such an allegation would implausibly imply that [the defendant] turned a blind eye to its own victimization." *See id.* at 302–03. "[I]t is significant that the [plaintiff's] [c]omplaint does not allege what would have motivated [the defendant] or its agents to bury their heads in the sand about the company's own victimization." *Id.* at 303. Therefore, the Third Circuit held the plaintiff had failed to sufficiently plead that a defendant had scienter because the plaintiff's complaint alleged neither specific facts regarding the defendant's willful ignorance nor facts to support the assertion a defendant had some motive to engage in wrongful conduct. *See id.*

Here, unlike in *Handal*, the facts do not relate to the fraudulent actions of a third-party and, more importantly, support the assertion Defendants had motive to engage in wrongful conduct at the time of the allegedly misleading statements—the reaping of billions of dollars in financial benefits by cashing out existing shares at inflated values following Coinbase's public listing before the public could learn about the risks associated with a potential bankruptcy and/or an enforcement action. (*See*, *e.g.*, ECF No. 156 ¶ 121.) Specifically, the TAC alleges Armstrong sold for an amount exceeding $323,000,000; Choi for $429,000,000; Haas for $115,000,000; Grewal for $65,000,000; Jones for $51,000,000; Andreessen for $311,000,000; Ehrsam for $111,000,000; and Haun for $61,000,000. (*Id.*) It is not difficult to infer from the facts alleged that Defendants had a significant financial motive and, as such, knowingly issued the statements in an effort to willfully mislead Plaintiffs. *See Handal,* 157 F.4th at 303. Because the facts support the reasonable assertion Defendants had a significant financial motive to engage in wrongful conduct, *Handal* is of limited value to Defendants. Accordingly, Defendants have failed to set forth a valid basis for reconsideration and, as such, the Court declines to reconsider the determination that the Bankruptcy Risk Statements and Regulatory Statements are misleading statements.

Based on the foregoing, Defendants' requests for reconsideration of the prior determinations relating to the SAC is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Defendants' successive motion to dismiss (ECF No. 159) pursuant to Rule 12(b)(6) is **DENIED**. An appropriate order follows.

Date: August 18, 2026

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**