**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

*Additional counsel on signature page*

*Attorneys for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>Hon. Leda Dunn Wettre<br><br>**DEFENDANTS' ANSWER TO PLAINTIFFS' THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Defendants Coinbase Global, Inc. ("Coinbase"), Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson ("Individual Defendants," and collectively with Coinbase, "Defendants"),[1] by and through their undersigned counsel, hereby submit their Answers and Affirmative Defenses to the operative claims and allegations made by Lead Plaintiff Sjunde AP-Fonden and Additional Plaintiffs Ryan R. Firth and Zvia Steinmetz ("Plaintiffs") in their Third Amended Consolidated Class Action Complaint (ECF No. 156) (the "TAC").

Except as otherwise affirmatively stated below, Defendants deny all allegations of the TAC. Any factual averment admitted herein is admitted only to the specific facts and not as to any conclusions, characterizations, implications, innuendos, or speculation contained in any averment or in the TAC as a whole. Moreover, except to the extent expressly admitted herein, Defendants specifically deny any allegations contained in the TAC's headings, footnotes, table of contents, or exhibits. With respect to any purported document cited to or quoted in the TAC, Defendants do not admit that the documents are accurate, relevant, or admissible in

[1] Defendants Coinbase, Armstrong, Haas, Choi, and Grewal are herein referred to, collectively, as "Exchange Act Defendants." Defendants Coinbase, Armstrong, Haas, Jones, Andreessen, Ehrsam, Haun, Kramer, Rajaram, and Wilson are herein referred to, collectively, as "Securities Act Defendants."

this action, and Defendants reserve all objections regarding admissibility. The TAC contains purported excerpts from, and references to, a number of documents and third-party publications; such documents and third-party publications speak for themselves, and Defendants refer to the respective documents and third-party publications for their contents. Defendants did not search for or review those documents to determine whether Plaintiffs correctly quoted or interpreted them. The TAC, by its own terms, pleads its Exchange Act claims separately from its Securities Act claims, and Exchange Act Defendants and Securities Act Defendants respond herein accordingly. To the extent the Court finds any Defendant must answer any paragraph to which that Defendant did not respond, each Defendant denies every allegation therein and reserves the right to submit supplemental responses.

Additionally, with respect to the Exchange Act Claims, the TAC alleges that separate subsets of the Exchange Act Defendants are liable for the Bankruptcy Statements and Regulatory Risk Statements. Plaintiffs allege only that Defendants Coinbase, Armstrong, Haas, and Choi (and not Grewal) are liable for the alleged Bankruptcy Statements. Similarly, Plaintiffs allege only that Defendants Armstrong and Grewal are liable for the Regulatory Risk Statements. The Exchange Act Defendants have responded to these allegations accordingly. In some instances, however, the Exchange Act Defendants respond collectively to Exchange Act allegations; this collective response does not constitute an admission or concession

that any particular allegation applies to any Defendant not expressly named in that allegation. To the extent the Court finds any Defendant must answer any paragraph to which that Defendant did not respond, each Defendant denies every allegation therein and reserves the right to submit supplemental responses.

Defendants expressly reserve the right to amend and/or supplement this Answer, seek leave to amend this Answer, or to modify or assert all claims, defenses, counterclaims, and third-party claims permitted by law.

The unnumbered paragraphs on page 1 of the TAC do not contain allegations of fact to which a response is required. To the extent a response is required, Defendants deny the allegations to the extent they purport to assert that there is a basis in fact or law for Plaintiffs' claims against Defendants. Defendants admit that Plaintiffs purport to bring a federal securities class action on behalf of themselves and (i) a class consisting of all persons and entities that purchased or otherwise acquired the common stock of Coinbase, from April 14, 2021 through June 5, 2023, inclusive (the "Class Period"), and were allegedly damaged thereby (the "Class"); and (ii) a subclass consisting of all persons and entities that purchased or otherwise acquired Coinbase common stock in or traceable to the Offering Materials (the "Securities Act Subclass"), but Defendants deny that this action meets the prerequisites for a class action under Federal Rule of Civil Procedure 23. Defendants lack knowledge or information sufficient to form a belief as to the second paragraph

on page 1 of the TAC as it pertains to the investigation undertaken by Plaintiffs or their representatives and therefore deny those allegations. To the extent that the unnumbered paragraphs contain legal conclusions, no response is required. To the extent a response is required, Defendants deny the allegations in the unnumbered paragraphs on page 1.

With respect to specific paragraphs of the TAC, Defendants respond on information and belief as follows:

**ANSWER RESPONSES**

1. Exchange Act Defendants deny that Coinbase "launch[ed]" in 2012. Exchange Act Defendants aver that Coinbase, Inc., a subsidiary of Coinbase Global, Inc. ("Coinbase"), was incorporated in 2012, while Coinbase was incorporated in 2014. Exchange Act Defendants further aver that in April 2014, Coinbase, Inc. became a wholly owned subsidiary of Coinbase. Exchange Act Defendants admit that Coinbase is a consumer-facing trading platform on which crypto assets may be traded, and that it is the "most popular" platform in the United States insofar as it is the largest digital asset trading platform in the United States. To the extent Paragraph 1 purports to characterize the TAC, Exchange Act Defendants respectfully refer the Court to the TAC for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 1.

2. Exchange Act Defendants admit that Defendant Armstrong is a co-founder of Coinbase. Exchange Act Defendants further admit that Coinbase provides an end-to-end financial infrastructure platform and has referred to the "flywheel" in which retail users and institutions store assets and drive liquidity, enabling Coinbase to expand the depth and breadth of crypto assets that it offers, and launch new, innovative products and services that attract new customers. Exchange Act Defendants further admit that a large portion of Coinbase's total revenue is generated by transaction fees paid by customers to buy and sell cryptocurrency assets on its platform, and that Coinbase also generates revenues by serving as a cryptocurrency custodian. Exchange Act Defendants further admit that Coinbase offers customers various options to store their assets with Coinbase. Exchange Act Defendants otherwise deny the allegations in Paragraph 2.

3. Exchange Act Defendants admit that Coinbase generated over $3.4 billion in total revenue between its inception and December 31, 2020, largely from transaction fees that it earned from volume-based trades on its platform by retail users and institutions. Exchange Act Defendants further admit that Coinbase's customers had stored over $90 billion in digital assets across Coinbase's platform as of December 31, 2020. To the extent Paragraph 3 purports to characterize Coinbase's Offering Materials, Exchange Act Defendants respectfully refer the

Court to those Offering Materials for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 3.

4. Exchange Act Defendants admit that there is no governmental agency that backstops or guarantees crypto assets from losses of customer assets due to any event. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, including because Exchange Act Defendants lack knowledge regarding the mental states of "would-be retail customers."

5. To the extent Paragraph 5 purports to characterize an announcement by Defendant Armstrong in January 2021, Exchange Act Defendants respectfully refer the Court to that announcement for its complete and accurate contents. Exchange Act Defendants admit that direct listings are an alternative to a traditional IPO, and that in a direct listing, the company's existing shareholders sell stock directly to the public. Exchange Act Defendants otherwise deny the allegations in Paragraph 5.

6. Exchange Act Defendants admit that in August 2020, Coinbase's Board granted the "2020 CEO Performance Award" to Defendant Armstrong and respectfully refer the Court to the Offering Materials for a complete and accurate description of the terms of that award. Exchange Act Defendants further admit that Armstrong received proceeds greater than $310 million from the sale of a small

fraction of his Coinbase stock holdings during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans. Defendants Coinbase, Haas, Choi, and Grewal lack knowledge or information sufficient to form a belief as to the knowledge of Defendant Armstrong. Exchange Act Defendants otherwise deny the allegations in Paragraph 6.

7. To the extent Paragraph 7 purports to characterize and quote from a newsletter published by The Hustle, Exchange Act Defendants respectfully refer the Court to that newsletter for its complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, including because Exchange Act Defendants lack knowledge regarding the mental states of "[m]arket commentators."

8. Exchange Act Defendants deny that the prerequisites for a class action have been met or that the TAC is maintainable as a class action, but admit that Plaintiffs purport to bring a securities class action with a class period starting on April 14, 2021. Exchange Act Defendants admit that on April 14, 2021, Coinbase became the first major cryptocurrency exchange to go public on a U.S. stock exchange. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether Coinbase was the "first cryptocurrency company in the world to go public." Exchange Act Defendants further admit that the stock was listed on Nasdaq and opened at $381 per share and that the reference price set prior

to the Direct Listing was $250. Exchange Act Defendants further admit that Coinbase's market capitalization reached $112 billion during the first day of trading. Exchange Act Defendants further admit Defendants Armstrong, Haas, and Choi sold shares of Coinbase common stock in the Direct Listing. Exchange Act Defendants deny that Defendant Grewal sold in the Direct Listing. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, including because the phrase "Coinbase insiders" is vague and ambiguous.

9. To the extent Paragraph 9 purports to characterize and quote from a statement by CNBC, Exchange Act Defendants respectfully refer the Court to that statement for its complete and accurate contents. To the extent Paragraph 9 purports to characterize the Offering Materials, Exchange Act Defendants respectfully refer the Court to the Offering Materials for their complete and accurate contents. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 9.

10. To the extent Paragraph 10 purports to characterize and quote from Coinbase's SEC filings and statements made by certain Defendants, Exchange Act Defendants respectfully refer the Court to those filings and statements for their

complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 10.

11. To the extent Paragraph 11 contains legal conclusions, no response is required. Exchange Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Exchange Act Defendants otherwise deny the allegations in Paragraph 11.

12. To the extent Paragraph 12 purports to characterize and quote from statements made by certain Defendants on May 10, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. Each of Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 12.

13. Defendants Coinbase, Armstrong, Haas, and Choi admit that Defendants Haas and Choi have served as managers for Coinbase Custody at various points in time. To the extent Paragraph 13 purports to characterize a comment letter

submitted to the SEC, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that letter for its complete and accurate contents. Each of Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to what each other personally "understood." Exchange Act Defendants otherwise deny the allegations in Paragraph 13.

14. To the extent Paragraph 14 contains legal conclusions, no response is required. To the extent Paragraph 14 purports to characterize Coinbase's user agreements with institutional customers, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those agreements for their complete and accurate contents. Each of Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 14.

15. To the extent Paragraph 15 purports to characterize and quote from Coinbase's user agreements with retail customers, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi deny that Coinbase commingled retail customers' assets to the extent that the TAC alleges that Coinbase did not utilize a ledgering system that protects and identifies retail customers' assets. Defendants Coinbase, Armstrong, Haas, and Choi admit that

retail customers' assets were (and continue to be) held in an omnibus manner on the blockchain and separately recorded using a ledger system. Defendants Coinbase, Armstrong, Haas, and Choi admit that retail transaction revenue comprised 94.9% of its transaction fee revenues from 2020 through 2022. Each of Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 15.

16. To the extent Paragraph 16 purports to characterize and quote from Twitter posts made by Defendant Armstrong on May 10, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those Twitter posts for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi admit that as of May 10, 2022, certain Defendants were aware that no U.S. court had overseen a bankruptcy of a cryptocurrency exchange as of that date. Each of Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 16.

17. Exchange Act Defendants admit that the first tranche of 3,159,930 stock options vested on July 8, 2021. Exchange Act Defendants further admit that this first tranche vested after the volume weighted average price of Coinbase's shares was at or above $200 for 60 consecutive days. Exchange Act Defendants further

admit that Coinbase's stock price closed at $244.29 on July 8, 2021, and that the value of 3,159,930 stock options with an exercise price of $23.46 per share, based on that closing price, was over $697 million. Exchange Act Defendants otherwise deny the allegations in Paragraph 17.

18. Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 18.

19. To the extent Paragraph 19 purports to characterize laws and regulations, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to such laws and regulations for the complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 19.

20. Defendants Coinbase, Armstrong, and Grewal admit that Defendants Armstrong and Grewal made statements providing accurate descriptions of Coinbase's asset listing process, including with regard to the process's consideration of *Howey*. Defendants Coinbase, Armstrong, and Grewal further admit that Armstrong and Grewal expressed Coinbase's position that none of the digital assets listed on its platform were securities, while fully and repeatedly disclosing the risk that the SEC could disagree with Coinbase's listing determinations. Defendants Coinbase, Armstrong, and Grewal lack knowledge or information sufficient to form a belief about whether "the Company's susceptibility to adverse regulatory action

grew exponentially," including because the term "grew exponentially" is vague with respect to an unquantifiable concept like "susceptibility to adverse regulatory action." Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 20. With respect to the allegations in Footnote 2, Defendants Coinbase, Armstrong, and Grewal admit that Coinbase makes available to its users "staking" services[2] by which it facilitates their participation in transaction validation activities for certain proof-of-stake networks. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase runs software and provides certain administrative services to allow customers to stake Ether and other select digital assets that operate on a proof-of-stake network. Defendants Coinbase, Armstrong, and Grewal further admit that as a fee for this service, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls between 15% and 35%, inclusive. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Footnote 2. Defendants Coinbase, Armstrong, and Grewal aver that rewards for staking are determined by the blockchain protocol to which a digital asset is staked, not Coinbase. Coinbase further avers that the fees it earns for its staking services are for administration and IT services, not managerial expertise or effort.

---

[2] Coinbase offers staking services to individual users through its Coinbase Earn program, and Defendants' responses regarding staking services herein relate to those services.

21. Defendants Coinbase, Armstrong, and Grewal lack knowledge or information sufficient to form a belief as to "when the SEC began to investigate Coinbase." To the extent Paragraph 21 purports to characterize and quote from certain statements made by Defendants Armstrong and Grewal, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 21.

22. Defendants Coinbase, Armstrong, and Grewal admit that in September 2019, Coinbase and other digital asset businesses founded the Crypto Rating Council ("CRC"), and that the CRC subsequently released a framework based on factors the SEC had identified as relevant to the SEC's securities law analysis with respect to digital assets. To the extent Paragraph 22 purports to characterize and quote from the CRC's website, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that website for its complete and accurate contents. To the extent Paragraph 22 contains legal conclusions, no response is required. To the extent Paragraph 22 purports to characterize the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that action for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 22.

23. Defendants Coinbase, Armstrong, and Grewal admit that in January 2023, the day before a scheduled meeting for the SEC to provide its first substantive responses to Coinbase, the SEC canceled the meeting and told Coinbase it would proceed to enforcement instead. To the extent Paragraph 23 purports to characterize and quote from Defendants Armstrong and Grewal's public statements, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 23.

24. To the extent Paragraph 24 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 24.

25. To the extent Paragraph 25 purports to characterize and quote from the Consent Order, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that order for its complete and accurate contents. To the extent Paragraph 25 purports to characterize the contents of the Bank Secrecy Act of 1970, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that statute for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase, Inc. entered a settlement with the NYDFS in which it agreed to pay a civil monetary penalty in the amount of $50 million and committed to spending $50 million on improvements and enhancements to its compliance program over two

years. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 25.

26. To the extent Paragraph 26 contains legal conclusions, no response is required. To the extent Paragraph 26 purports to characterize and quote from statements made by Coinbase and Defendant Armstrong on May 10, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 26.

27. To the extent Paragraph 27 purports to characterize and quote from reports by analysts and market commentators, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those reports for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 27.

28. To the extent Paragraph 28 purports to characterize and quote from a July 25, 2022, Bloomberg article, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that article for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal admit that the price of Coinbase common stock closed at $67.07 on July 25, 2022, and that it closed at $52.93 on July 26, 2022. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 28.

29. To the extent Paragraph 29 purports to characterize and quote from statements Coinbase made on March 22, 2023, related to the Wells Notice, or "later" statements, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 29.

30. To the extent Paragraph 30 purports to characterize the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that complaint for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase's stock price closed at $58.71 on June 5, 2023, opened at $47.10 on June 6, 2023, and closed at $51.61 on June 6, 2023. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 30.

31. Paragraph 31 purports to characterize the TAC, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents. Exchange Act Defendants deny that the TAC states any actionable claim.

32. To the extent that Paragraph 32 contains legal conclusions, no response is required. To the extent Paragraph 32 purports to characterize the TAC, Exchange Act Defendants respectfully refer the Court to the TAC for its complete

and accurate contents. Exchange Act Defendants admit that Plaintiffs purport to bring claims arising under Sections 10(b) and 20(a) of the Exchange Act and the rules and regulations promulgated thereunder. Exchange Act Defendants deny that the TAC states any actionable claim. Exchange Act Defendants otherwise deny the allegations in Paragraph 32.

33. To the extent that Paragraph 33 contains legal conclusions, no response is required. To the extent Paragraph 33 purports to characterize the TAC, Exchange Act Defendants respectfully refer the Court to the TAC for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 33.

34. To the extent that Paragraph 34 contains legal conclusions, no response is required. To the extent Paragraph 34 purports to characterize the TAC, Exchange Act Defendants respectfully refer the Court to the TAC for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 34.

35. To the extent Paragraph 35 contains legal conclusions, no response is required. To the extent that a response is required, Exchange Act Defendants admit that Coinbase has used the United States mails, interstate telephone communications, and the facilities of Nasdaq. Exchange Act Defendants otherwise deny the allegations in Paragraph 35.

36. Defendants deny that any person or entity purchased or otherwise acquired Coinbase common stock at artificially inflated prices during the Class Period. Defendants further deny that any person or entity suffered damages as a result of any purchase or other acquisition of Coinbase common stock. Defendants further deny that Defendants have committed any violations of any federal securities laws. To the extent Paragraph 36 purports to characterize Coinbase's SEC filings, Defendants respectfully refer the Court to those filings for their complete and accurate contents. Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.

37. Defendants deny that any person or entity purchased or otherwise acquired Coinbase common stock at artificially inflated prices during the Class Period. Defendants further deny that any person or entity suffered damages as a result of any purchase or other acquisition of Coinbase common stock. Defendants further deny that Defendants have committed any violations of any federal securities laws. To the extent Paragraph 37 purports to characterize Coinbase's SEC filings, Defendants respectfully refer the Court to those filings for their complete and accurate contents. Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37.

38. Defendants deny that any person or entity purchased or otherwise acquired Coinbase common stock at artificially inflated prices during the Class

Period. Defendants further deny that any person or entity suffered damages as a result of any purchase or other acquisition of Coinbase common stock. Defendants further deny that Defendants have committed any violations of any federal securities laws. To the extent Paragraph 38 purports to characterize Coinbase's SEC filings, Defendants respectfully refer the Court to those filings for their complete and accurate contents. Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38.

39. Defendants admit that at the time this action was initiated, Coinbase was a Delaware corporation, and further aver that as of the filing of the TAC, Coinbase has since converted to a Texas corporation. Defendants further admit that Coinbase does not maintain a principal executive office. Defendants further admit that Coinbase is one of the world's leading providers of end-to-end financial infrastructure and technology for the cryptoeconomy. Defendants further admit that Coinbase's platform provides products and services that enable its retail and institutional customers to buy, sell, and store certain crypto assets. Defendants deny that Coinbase operates its business through approximately eleven subsidiaries. Defendants aver that Coinbase lists the names of its subsidiaries in its annual Form 10-K filings, excluding the names of subsidiaries that, considered in the aggregate, would not constitute a significant subsidiary as of the end of the year covered by each Form 10-K, in accordance with Item 601(b)(21)(ii) of Regulation S-K.

Defendants further aver that Coinbase's 2022 Form 10-K listed 15 subsidiary names, and Coinbase's 2023 Form 10-K listed 18 subsidiary names. Defendants admit that Coinbase Custody Trust Company, LLC is a wholly owned subsidiary of Coinbase that holds certain crypto assets in trust for the benefit of its institutional customers. Defendants further admit that Coinbase Custody Trust Company, LLC provides custodial services to Coinbase's institutional customers in the United States. Defendants further admit that as of December 31, 2021, Coinbase stored over 11.5% of global cryptocurrency assets, worth over $278 billion. Defendants further admit that Coinbase's registration statement in connection with its Direct Listing was declared effective by the SEC on April 1, 2021. Defendants further admit that on April 14, 2021, Coinbase commenced the Direct Listing. Defendants further admit that since that date, Coinbase common stock has traded on the Nasdaq under the ticker symbol "COIN." Defendants otherwise deny the allegations in Paragraph 39.

40. Defendants admit that Defendant Armstrong co-founded Coinbase in 2012 and served as its CEO and Chairman of the Board throughout the Class Period. Defendants further admit that Armstrong was CEO when the Company went public in April 2021 and that he signed the Company's SEC filings in his capacity as CEO. Defendants otherwise deny the allegations in Paragraph 40.

41. Defendants admit Defendant Haas served as Coinbase's CFO since April 2018 and in that capacity, she signed the Company's SEC filings. To the extent

Paragraph 41 purports to characterize Coinbase Custody's July 7, 2020, and July 21, 2022, Foreign Registration Statements, Defendants respectfully refer the Court to those Foreign Registration Statements for their complete and accurate contents. Defendants otherwise deny the allegations in Paragraph 41.

42. Defendants admit that Defendant Choi has served as Coinbase's COO since June 2019 and President since November 2020, and thus served in those positions throughout the Class Period. Defendants deny that Choi previously served as Coinbase's Vice President of Corporate and Business Development. Defendants aver that Choi previously served as Coinbase's Vice President of Business, Data and International from March 2018 to June 2019. To the extent Paragraph 42 purports to characterize Coinbase Custody's July 7, 2020, Foreign Registration Statement, Defendants respectfully refer the Court to that Foreign Registration Statement for its complete and accurate contents. Defendants otherwise deny the allegations in Paragraph 42.

43. Defendants deny that Defendant Grewal served as Coinbase's Chief Legal Officer starting in July 2020. Defendants aver that Grewal served as Coinbase's Chief Legal Officer from August 2020, and admit that he remained in that role through the end of the Class Period. Defendants further admit that Grewal served as a manager of Coinbase Custody during the Class Period. Defendants further admit that Grewal spoke on behalf of Coinbase through posts on Coinbase's

blog during the Class Period. Defendants otherwise deny the allegations in Paragraph 43.

44. Defendants admit the allegations in Paragraph 44.

45. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45 because it provides a vague and overly broad reference to "Executive Defendants" and provides a vague and overly broad reference to Coinbase's "public statements and disclosures."

46. Exchange Act Defendants admit the allegations in Paragraph 46.

47. Exchange Act Defendants admit that "crypto assets" is a term used for any digital asset built using blockchain technology. Exchange Act Defendants further admit that a blockchain is a secure digital ledger that maintains a record of all transactions that occur on the network. Exchange Act Defendants further admit that "token" may be used synonymously with "crypto asset." Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47.

48. Exchange Act Defendants aver that "tokens" or crypto assets refer to digital assets built using blockchain technology. Exchange Act Defendants admit that the terms "native coin" or "native token" are used to refer to coins or tokens that are created on a given blockchain and therefore include the original coin or token of a particular blockchain, but deny the allegations in Paragraph 48 to the extent they

suggest that the terms "native coin" or "native token" refer only to the original coin or token created for a given blockchain. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether the private key is "often" controlled by the asset's owner. Exchange Act Defendants otherwise admit the allegations in Paragraph 48.

49. Exchange Act Defendants admit that crypto platforms like Coinbase create marketplaces for crypto transactions that do not require the buyer and seller to know one another. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

50. Exchange Act Defendants admit that the price of Bitcoin has ranged from $77 to $67,617 per coin during an approximately nine-year span prior to the filing of the TAC. To the extent Paragraph 50 purports to characterize and quote from statements made by Defendant Haas on May 20, 2021 at the Barclays Emerging Payments and Fintech Forum, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

51. Exchange Act Defendants admit that Coinbase operates as a crypto trading platform for retail and institutional customers. Exchange Act Defendants

admit that Coinbase defined retail users in its Prospectus to include any individual user with a Coinbase account and defined institutional customers in its Prospectus to include hedge funds, small to large financial institutions, and corporations. Exchange Act Defendants further admit that Coinbase offers institutional prime services through the Prime platform and that Prime offers institutional customers access to deep pools of liquidity across the crypto marketplace and best price execution due to its ability to route trades through a network of connected trading venues. To the extent Paragraph 51 purports to characterize and quote from statements made in Coinbase's SEC filings, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 51.

52. To the extent Paragraph 52 purports to characterize and quote from statements made in Coinbase's SEC filings, Exchange Act Defendants respectfully refer the Court to those filings for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 52.

53. Exchange Act Defendants admit that Coinbase stated in its Offering Materials that it was focused on becoming the "primary financial account" for retail users to access the cryptoeconomy. Exchange Act Defendants further admit that Coinbase offers retail and institutional customers the ability to store and transact in

crypto assets. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54. Paragraph 54 purports to characterize and quote from statements made by Defendant Haas on May 20, 2021 at the Barclays Emerging Payments and Fintech Forum, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

55. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

56. Exchange Act Defendants admit that recording public and private keys on paper or in a computer file runs the risk that such keys could be copied, lost, or destroyed. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56.

57. To the extent Paragraph 57 purports to characterize Coinbase's Retail User Agreement, Exchange Act Defendants respectfully refer the Court to that agreement, as it has been amended from time to time, for its complete and accurate contents. Exchange Act Defendants admit that during the Class Period, when creating a Coinbase.com account, retail users were prompted to accept the terms of Coinbase's Retail User Agreement, but deny that retail users were prompted to "sign" that agreement, and aver that retail users were prompted to click to accept the terms of that agreement. Exchange Act Defendants otherwise admit the allegations

in Paragraph 57. With respect to Footnote 3, to the extent Footnote 3 purports to characterize or quote from the earliest version of Coinbase's Retail User Agreement during the Class Period, Exchange Act Defendants respectfully refer the Court to that version of that agreement for its complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Footnote 3.

58. To the extent Paragraph 58 purports to characterize and quote from Coinbase's Retail User Agreement, as it has been amended from time to time, Coinbase's Prospectus, or its website, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 58.

59. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether the "wide array of crypto assets available for exchange" is a "distinguishing feature" of DEXs. Exchange Act Defendants otherwise admit the allegations in Paragraph 59.

60. To the extent Paragraph 60 purports to characterize and quote from the Coinbase Wallet Terms of Service or Coinbase's website, Exchange Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 60.

61. To the extent Paragraph 61 purports to characterize and quote from Coinbase's website, Exchange Act Defendants respectfully refer the Court to the

website for its complete and accurate contents. Exchange Act Defendants admit that Coinbase Custody is a wholly owned subsidiary of Coinbase. Exchange Act Defendants otherwise deny the allegations in Paragraph 61.

62. To the extent Paragraph 62 purports to characterize and quote from Coinbase's website, Exchange Act Defendants respectfully refer the Court to the website for its complete and accurate contents. Exchange Act Defendants admit that Coinbase offered users the opportunity to "stake" certain crypto assets on Coinbase during the Class Period. Exchange Act Defendants further admit that Coinbase participated in networks with "proof-of-stake" consensus algorithms, including through the use of affiliate and third-party validators, and that Coinbase users (but not Coinbase) earned "rewards" from Coinbase users' staking activities. Exchange Act Defendants deny that Coinbase incentivized crypto-asset owners to lock up their assets through Coinbase's staking program by offering no, or low, staking minimums. Exchange Act Defendants admit that there are no transaction fees associated with staking or unstaking and that Coinbase takes a commission based on staking rewards that a user receives from the network. Exchange Act Defendants admit that as a fee for staking services, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls between 15% and 35%, inclusive. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62.

63. Exchange Act Defendants admit that Coinbase began offering staking services to certain U.S. residents in 2019 to facilitate the staking of XTZ on the Tezos blockchain network. Exchange Act Defendants further admit that the staking program expanded to include ATOM (as of September 29, 2020), ETH (as of April 16, 2021), ADA (as of March 23, 2022), SOL (as of June 29, 2022), and DOT (as of May 2023). Exchange Act Defendants further admit that, prior to March 2023, for certain digital assets (ADA, ATOM, SOL, and XTZ), Coinbase users were enrolled automatically to participate in Coinbase's staking services if they held the required minimum balances of those assets but could opt out of those services at any time, and that, as of March 2023, users must opt in to Coinbase's staking services.

64. Paragraph 64 purports to characterize and quote from Coinbase's SEC filings, to which Exchange Act Defendants respectfully refer the Court for their complete and accurate contents.

65. To the extent Paragraph 65 purports to characterize Coinbase's SEC filings, Exchange Act Defendants respectfully refer the Court to those filings for their complete and accurate contents. Exchange Act Defendants deny that Coinbase's total net revenue in 2021 included $6.50 billion in net retail transaction fee revenue. Exchange Act Defendants aver that Coinbase's total net revenue included $6.49 billion in net retail transaction fee revenue. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether

a "custody fee" for retail users was "built into Coinbase's transaction fees" because the vague reference to "custody fee" is undefined. To the extent Paragraph 65 purports to characterize statements made by Defendant Armstrong in a CNBC Squawk Box interview on April 14, 2021, Exchange Act Defendants respectfully refer the Court to that interview for its complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 65.

66. To the extent Paragraph 66 purports to characterize and quote from Coinbase's Prospectus, Exchange Act Defendants respectfully refer the Court to the Prospectus for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 66.

67. Paragraph 67 purports to characterize Coinbase's 2021 Form 10-K, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

68. To the extent Paragraph 68 purports to characterize a January 28, 2021, blog post, Exchange Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents. Exchange Act Defendants otherwise admit the allegations in Paragraph 68.

69. Exchange Act Defendants deny that all company insiders "inherently" have more knowledge about that company than the public. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth

of whether new shares are never issued in a direct listing. Exchange Act Defendants otherwise admit the allegations in Paragraph 69.

70. Exchange Act Defendants admit that it is customary in an underwritten initial public offering for an issuer's officers, directors, and most or all of its other stockholders to enter into a contractual lock-up arrangement to help promote orderly trading immediately after such initial public offering. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to whether, in a direct listing, a company's board of directors always decides for itself whether to enforce a lock-up period on corporate insiders. Defendants Armstrong, Choi, and Haas admit that they attended a Board meeting on February 23, 2021, and the materials for that Board meeting indicated that the "[e]xecutive team aligned on no lock-ups for all stockholders (investors and employees)." Exchange Act Defendants further admit that none of Coinbase's registered stockholders or existing stockholders entered into contractual lock-up agreements or other contractual restrictions on transfer in the Direct Listing and that directors and officers were able to sell immediately into the Direct Listing. Exchange Act Defendants otherwise deny the allegations in Paragraph 70.

71. Exchange Act Defendants admit the allegations in Paragraph 71.

72. To the extent Paragraph 72 purports to characterize and quote from reports or articles from market analysts, including The Hustle, and Yahoo, Exchange

Act Defendants respectfully refer the Court to those reports and articles for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 72.

73. Exchange Act Defendants admit the allegations in Paragraph 73.

74. To the extent Paragraph 74 purports to characterize and quote from the Offering Materials, Exchange Act Defendants respectfully refer the Court to the Offering Materials for their complete and accurate contents. Exchange Act Defendants admit the TAC purports to refer to the Registration Statement, Prospectus, and Free Writing Prospectus as the Offering Materials in this Paragraph.

75. To the extent Paragraph 75 purports to characterize the Prospectus, Exchange Act Defendants respectfully refer the Court to the Prospectus for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 75.

76. To the extent Paragraph 76 purports to characterize the Prospectus, Exchange Act Defendants respectfully refer the Court to the Prospectus for its complete and accurate contents. Exchange Act Defendants admit that Defendants Armstrong, Choi, and Haas sold Coinbase common stock as described in Paragraph 76. Exchange Act Defendants further admit that Armstrong converted 1,050,000 shares of Class B common stock to Class A common stock and received a pro rata distribution of 357 shares of Class A common stock by Andreessen Horowitz LSV

Fund I, L.P. on April 1 and April 14, 2021, respectively. Exchange Act Defendants further admit that Haas converted 255,500 employee stock options into shares of Class A common stock on April 14, 2021. Exchange Act Defendants deny that Choi increased her beneficial holdings by 776,282 between April 1 and April 14, 2021. Exchange Act Defendants aver that Choi converted 551,629 employee stock options into shares of Class A Common Stock on April 14, 2021. Exchange Act Defendants otherwise deny the allegations in Paragraph 76.

77. Exchange Act Defendants admit that Defendant Armstrong received over $290 million in proceeds from the sale of stock in the Direct Listing, which constituted less than 2% of his Coinbase stock holdings. Exchange Act Defendants further admit that in August 2020, the Company's Board of Directors granted Defendant Armstrong an option award (the "CEO Performance Award") to purchase 9,293,911 shares of the Class A common stock of the Company at an exercise price of $23.46 per share, vesting of which would depend on both performance-based and market-based conditions being met. Exchange Act Defendants otherwise deny the allegations in Paragraph 77.

78. To the extent that Paragraph 78 purports to characterize Coinbase's Prospectus and other SEC filings, Exchange Act Defendants respectfully refer the Court to those documents for their complete and accurate contents. Exchange Act Defendants admit that in August 2020, Coinbase's Board granted the "2020 CEO

Performance Award" to Defendant Armstrong and respectfully refer the Court to the Offering Materials for a complete and accurate description of the terms of that award. Exchange Act Defendants otherwise deny the allegations in Paragraph 78.

79. Exchange Act Defendants admit that for the year ended December 31, 2020, Defendant Armstrong earned an annual base salary of $1,000,000 and the grant date fair value of his stock options and stock awards granted at the time was $56.67. Exchange Act Defendants further admit that Armstrong could unlock the first tranche of stock options to vest under the CEO Performance Award if the volume weighted average price of Coinbase's shares was at or above $200 for 60 consecutive trading days after the Direct Listing. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of Paragraph 79's allegations about, "[p]rior to the Direct Listing," the amounts Armstrong was "poised" to earn, or the extent to which the value of his compensation "could [be] boost[ed]" at that time. Exchange Act Defendants otherwise deny the allegations in Paragraph 79.

80. Exchange Act Defendants admit that Defendant Armstrong unlocked the first tranche of 3,159,930 stock options to vest of the CEO Performance Award on July 8, 2021. Exchange Act Defendants further admit that this first tranche was unlocked after the volume weighted average price of Coinbase's shares was at or above $200 for 60 consecutive days. Exchange Act Defendants further admit that

Coinbase's stock price closed at $244.29 on July 8, 2021, and that the value of 3,159,930 stock options, with an exercise price of $23.46 per share, based on that closing price, was over $697 million. Exchange Act Defendants otherwise deny the allegations in Paragraph 80.

81. To the extent Paragraph 81 purports to characterize and quote from a post on Reddit, and comments made thereupon, Exchange Act Defendants respectfully refer the Court to that post and those comments for their complete and accurate contents. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 81.

82. Paragraph 82 purports to characterize and quote from Coinbase's posted YouTube video responding to questions from the public submitted through Reddit, entitled "Investor Day," to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

83. Exchange Act Defendants admit the allegations in Paragraph 83.

84. To the extent Paragraph 84 purports to characterize and quote from Coinbase's press release on April 6, 2021, announcing preliminary results for the first quarter of FY 2021 and a full year outlook, Exchange Act Defendants respectfully refer the Court to that press release for its complete and accurate

contents. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the truth of what Coinbase's revenue was "largely dependent on," including because that phrase is vague. Exchange Act Defendants otherwise admit the allegations in Paragraph 84.

85. Paragraph 85 purports to characterize and quote from Coinbase's First Quarter 2021 Estimated Results call on April 6, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

86. Paragraph 86 purports to characterize and quote from Coinbase's First Quarter 2021 Estimated Results call on April 6, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents.

87. To the extent Paragraph 87 purports to characterize and quote from reports by market analysts, Exchange Act Defendants respectfully refer the Court to those reports for their complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87.

88. Paragraph 88 purports to characterize and quote from an interview with Defendant Armstrong on CNBC's Squawk Box on April 14, 2021, to which Exchange Act Defendants respectfully refer the Court for its complete and accurate contents. Exchange Act Defendants deny the accuracy of the quotation attributed to Armstrong in Paragraph 88, and aver that, during that interview, Armstrong stated,

"There's really a custody fee that's sort of baked into the transaction fees, which is a little different than traditional brokerage world and things like that."

89. Defendants Coinbase, Armstrong, Haas, and Choi admit that Coinbase held over $90 billion in Assets on Platform—defined as the total U.S. dollar equivalent value of both fiat currency and crypto assets held or managed in digital wallets on Coinbase's platform, including its custody services, calculated based on the market price on the date of measurement—as of December 31, 2020, and that that figure rose to as much as $278 billion during the Class Period. Defendants Coinbase, Armstrong, Haas, and Choi otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89.

90. To the extent Paragraph 90 purports to characterize and quote from an article by Reuters, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those reports for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi admit that Mt. Gox declared bankruptcy in February 2014 after an estimated 700,000 Bitcoins were stolen from its wallets. Defendants Coinbase, Armstrong, Haas, and Choi otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, including because they relate to cryptocurrency exchanges other than Coinbase.

91. To the extent Paragraph 91 purports to characterize and quote from various public announcements and reports, Defendants Coinbase, Armstrong, Haas,

and Choi respectfully refer the Court to those sources for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, including because they relate to cryptocurrency exchanges other than Coinbase.

92. To the extent Paragraph 92 purports to characterize and quote from Coinbase's Offering Materials and subsequent SEC filings signed by Armstrong and Haas, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those sources for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 92.

93. To the extent Paragraph 93 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 93.

94. To the extent Paragraph 94 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in Coinbase's custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured

creditors." Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 94.

95. To the extent Paragraph 95 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi admit that, as described, inter alia, in Coinbase's user agreement, crypto assets are not "backed by the United States government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections." Defendants Coinbase, Armstrong, Haas, and Choi otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95.

96. To the extent Paragraph 96 contains legal conclusions, no response is required. To the extent Paragraph 96 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 96.

97. To the extent Paragraph 97 purports to characterize and quote from Defendant Armstrong's statements in May 2022 and Coinbase's Prospectus, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those sources for their complete and accurate contents. Defendants Coinbase,

Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 97.

98. Paragraph 98 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

99. To the extent Paragraph 99 contains legal conclusions, no response is required. To the extent Paragraph 99 purports to characterize and quote from Coinbase's Prospectus and Q1 2022 Form 10-Q, signed by Armstrong and Haas, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those filings for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 99.

100. To the extent Paragraph 100 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 100.

101. To the extent Paragraph 101 contains legal conclusions, no response is required. Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other, including what

any "understood." Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 101.

102. Defendants Coinbase, Armstrong, Haas, and Choi admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other, including what any "understood." Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 102.

103. Defendants Coinbase, Armstrong, Haas, and Choi admit that Coinbase Custody is a wholly owned subsidiary of Coinbase. Defendant Coinbase further admits that on June 11, 2019, Sam McIngvale, Chief Executive Officer of Coinbase Custody at the time, submitted a comment letter to the SEC regarding a proposal by NYSE Arca, Inc. to list and trade shares of a certain crypto asset. Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to this allegation. Defendant Coinbase further admits that McIngvale was an employee of Coinbase Custody during the Class Period. Defendants Armstrong,

Haas, and Choi lack knowledge or information sufficient to form a belief as to this allegation. Defendants Coinbase, Haas, and Choi further admit that Defendants Haas and Choi were identified as Governors of Coinbase Custody in a Foreign Registration Statement filed with the State of Washington on July 7, 2020. Defendant Armstrong lacks knowledge or information sufficient to form a belief as to this allegation. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 103.

104. Paragraph 104 purports to characterize and quote from the June 2019 Comment Letter, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

105. To the extent Paragraph 105 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 105.

106. To the extent Paragraph 106 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." To the extent Paragraph 106 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106.

107. Defendants Coinbase, Armstrong, Haas, and Choi admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." To the extent Paragraph 107 purports to characterize posts that Defendant Armstrong

made on Twitter on May 10, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those Twitter posts for their complete and accurate contents. Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 107.

108. Defendants Coinbase, Armstrong, Haas, and Choi deny the allegations in Paragraph 108.

109. To the extent Paragraph 109 purports to characterize and quote from the June 2019 Comment Letter and Coinbase's Institutional User Agreement, as amended from time to time, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those documents for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 109.

110. To the extent Paragraph 110 purports to characterize and quote from Coinbase's Retail User Agreement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that agreement, as amended from time to time, for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi deny that Coinbase commingled retail customers' assets to the extent that the TAC alleges that Coinbase did not utilize a ledgering system that protects and

identifies retail customers' assets. Defendants Coinbase, Armstrong, Haas, and Choi admit that retail customers' assets were (and continue to be) held in an omnibus manner on the blockchain and separately recorded using a ledger system. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 110.

111. To the extent Paragraph 111 purports to characterize and quote from Coinbase's Retail User Agreement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that agreement, as amended from time to time, for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 111.

112. To the extent Paragraph 112 purports to characterize and quote from Coinbase's Retail User Agreement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that agreement for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi deny that Coinbase commingled retail customers' assets with Coinbase's own assets to the extent that the TAC alleges that Coinbase did not utilize a ledgering system that protects and identifies retail customers' assets. Defendants Coinbase, Armstrong, Haas, and Choi further deny that Coinbase commingled retail customers' assets to the extent that the TAC alleges that Coinbase did not utilize a ledgering system that protects and identifies retail customers' assets. Defendants Coinbase, Armstrong, Haas, and Choi

admit that retail customers' assets were (and continue to be) held in an omnibus manner on the blockchain and separately recorded using a ledger system. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 112.

113. To the extent Paragraph 113 purports to characterize and quote from Coinbase's Prospectus or Retail User Agreement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that filing and agreement, as amended from time to time, for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi admit that, prior to March 2023, for certain digital assets, Coinbase users were enrolled automatically to participate in Coinbase's staking services if they held the required minimum balances of those assets but could opt out of those services at any time, and that, as of March 2023, users must opt in to Coinbase's staking services. To the extent Paragraph 113 contains legal conclusions, no response is required. To the extent Paragraph 113 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 113.

114. To the extent Paragraph 114 contains legal conclusions, no response is required. To the extent Paragraph 114 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 114.

115. To the extent Paragraph 115 contains legal conclusions, no response is required. To the extent Paragraph 115 purports to characterize and quote from the Institutional User Agreement and Coinbase's Retail User Agreements, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those agreements, as amended from time to time, for their complete and accurate contents. To the extent Paragraph 115 purports to characterize Article 8 of the Uniform Commercial Code and Division 8 of the California Commercial Code, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those provisions for its complete and accurate contents. Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 115.

116. To the extent Paragraph 116 contains legal conclusions, no response is required. To the extent Paragraph 116 purports to characterize and quote the

Institutional User Agreement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that agreement, as amended from time to time, for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116.

117. To the extent Paragraph 117 purports to characterize Coinbase's Retail User Agreement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that agreement for its complete and accurate contents. To the extent Paragraph 117 purports to characterize and quote from Defendant Armstrong's statements on May 10, 2022, and Coinbase's Q1 2022 Form 10-Q, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those sources for their complete and accurate contents. Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 117.

118. To the extent Paragraph 118 purports to characterize and quote from various news articles and media reports, Defendants respectfully refer the Court to those sources for their complete and accurate contents. Defendants otherwise deny the allegations in Paragraph 118.

119. Defendants admit that on April 14, 2021, Coinbase commenced its Direct Listing, and its common stock began trading on the Nasdaq under the ticker symbol "COIN." Defendants admit that on April 14, 2021, Coinbase became the first major cryptocurrency exchange to go public on a U.S. stock exchange. Defendants lack knowledge or information sufficient to form a belief as to whether Coinbase was the "first cryptocurrency company in the world to go public." Defendants otherwise deny the allegations in Paragraph 119.

120. To the extent Paragraph 120 purports to characterize and quote from an article published by AP News, Defendants respectfully refer the Court to that article for its complete and accurate contents. Defendants admit that the initial reference price of Coinbase common stock was $250, and that Coinbase common stock opened at $381.00, reached a high of $429.54, and closed at $328.28 on April 14, 2021. Defendants otherwise deny the allegations in Paragraph 120.

121. Defendants admit that certain Defendants sold Coinbase shares during the Class Period. Defendants further admit that the chart in Paragraph 121 accurately reflects the number of shares Defendants Armstrong, Haas, Grewal, Jones, and Haun sold between April 14 and 15, 2021, and during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, and the proceeds received from those sales. Defendants deny that the chart in Paragraph 121 is accurate as to Defendant Ehrsam. Defendants aver that the chart in Paragraph 121

reflects 273,085 shares sold by Defendant Ehrsam and 25,704 shares sold by Paradigm Fund, L.P., a fund with which Defendant Ehrsam is affiliated. Defendants Coinbase, Armstrong, Haas, and Choi deny that the chart in Paragraph 121 is accurate as to Defendant Andreessen. Defendants Coinbase, Armstrong, Haas, and Choi aver that the chart in Paragraph 121 reflects shares sold by funds managed by AH Capital Management, LLC between April 14 and April 15, 2021. Defendants further aver that the chart in Paragraph 121 reflects shares sold by LAMA Community Trust and funds managed by AH Capital Management, LLC during the Class Period. Defendants deny that the chart in Paragraph 121 is accurate as to Defendant Wilson. Defendants aver that the chart in Paragraph 121 reflects shares sold by funds advised by Union Square Ventures, LLC between April 14 and April 15, 2021. Defendants admit that the chart accurately reflects the number of shares sold by Defendant Choi between April 14 and 15, 2021, and during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, as well as the proceeds she received from her sales between April 14 and 15, 2021. Defendants deny that Choi's gross proceeds exceeded $429 million during the Class Period. Defendants aver that Choi's gross proceeds during the Class Period were $235.5 million. Defendants otherwise deny the allegations in Paragraph 121.

122. Defendants admit the allegations in Paragraph 122.

123. Paragraph 123 purports to characterize and quote from articles published by market commentators on April 14, 2021, to which Defendants respectfully refer the Court for their complete and accurate contents.

124. To the extent Paragraph 124 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Haas otherwise deny the allegations in Paragraph 124.

125. To the extent Paragraph 125 purports to characterize and quote from various statements made by certain Exchange Act Defendants on December 7, 2021 and March 9, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 125.

126. To the extent Paragraph 126 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 126.

127. To the extent Paragraph 127 purports to characterize and quote from Staff Accounting Bulletin No. 121, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that bulletin for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 127.

128. To the extent Paragraph 128 purports to characterize and quote from Staff Accounting Bulletin No. 121, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that bulletin for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 128.

129. Defendants Coinbase, Armstrong, and Grewal admit that not long after Coinbase went public, the SEC's regulatory appetite began to change. Defendants Coinbase, Armstrong, and Grewal further admit that following Coinbase's Direct Listing and during the Class Period, the SEC doubled the size of its crypto enforcement unit and ramped up investigations of digital asset players, including by issuing several subpoenas to Coinbase. Defendants Coinbase, Armstrong, and Grewal lack knowledge or information sufficient to form a belief about whether "the Company's exposure to adverse regulatory action, primarily from the SEC, grew exponentially," including because the term "grew exponentially" is vague with respect to an unquantifiable concept like "exposure to adverse regulatory action." To the extent Paragraph 129 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 129.

130. Defendants Coinbase, Armstrong, and Grewal admit that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its

listings and listing process. Defendants Coinbase, Armstrong, and Grewal further admit that the May 2022 subpoena was promptly disclosed in Coinbase's next quarterly SEC filings. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase's position was and continues to be that Coinbase does not list securities on its platform, and that Coinbase's staking services are not securities. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 130.

131. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase's position was and continues to be that in the spring of 2022, there was significant regulatory uncertainty in the crypto industry, to Coinbase's detriment. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase's position was and continues to be that since its inception, Coinbase has sought to comply with all applicable laws and regulations and to work cooperatively with U.S. regulators of all kinds. To the extent Paragraph 131 purports to characterize and quote from an interview published in The Wall Street Journal, the Company's Wells Notice submission filed with the SEC on April 19, 2023, and Defendant Grewal's interview on the Bankless podcast on June 6, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those sources for their complete and accurate contents. Defendants Armstrong and Grewal lack knowledge or information

sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 131.

132. To the extent Paragraph 132 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase has made digital assets available for trading or staking through its platform. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase had and continues to have an obligation to comply with all applicable U.S. laws, including any applicable securities laws. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 132. Defendants Coinbase, Armstrong, and Grewal aver that the likelihood of becoming the subject of an SEC investigation or enforcement action is influenced by numerous factors outside of a potential subject's control, and that the SEC's Enforcement Action lacked any merit.

133. To the extent Paragraph 133 sets forth legal conclusions, no response is required. To the extent Paragraph 133 purports to characterize and quote from various sources of federal securities law, including the Supreme Court's decision in *Howey*, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those sources for their complete and accurate contents.

134. Defendants Coinbase, Armstrong, and Grewal admit that, beginning as early as 2017, the SEC has partially and inconsistently asserted various interpretations of the federal securities laws to distributed ledger technology and

digital assets in certain publications and statements. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 134.

135. To the extent Paragraph 135 purports to characterize and quote from the DAO Report, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to the DAO Report for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 135.

136. Paragraph 136 purports to characterize and quote from the DAO Report, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

137. To the extent Paragraph 137 purports to characterize and quote from the DAO Report and the Exchange Act of 1934, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that report and statute for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 137.

138. To the extent Paragraph 138 purports to characterize and quote from the DAO Report, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that report for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 138.

139. To the extent Paragraph 139 purports to characterize and quote from the SEC's Digital Asset Framework, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that source for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 139.

140. To the extent Paragraph 140 purports to characterize and quote from the SEC's Digital Asset Framework, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that source for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 140.

141. To the extent Paragraph 141 purports to characterize and quote from statements made by former SEC Chair Gary Gensler, including in Congressional testimony on May 26, 2021, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 141.

142. To the extent Paragraph 142 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in an August 3, 2021, speech, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that

speech for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 142.

143. To the extent Paragraph 143 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in an August 3, 2021, speech, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that speech for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 143.

144. Paragraph 144 purports to characterize and quote from remarks made by former SEC Chair Gary Gensler on April 4, 2022, at the Penn Law Capital Markets Association Annual Conference, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

145. Paragraph 145 purports to characterize and quote from remarks made by former SEC Chair Gary Gensler on April 4, 2022, at the Penn Law Capital Markets Association Annual Conference, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

146. Paragraph 146 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in a September 8, 2022, speech, to which

Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

147. Paragraph 147 purports to characterize and quote from guidance materials promulgated by the NYDFS, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

148. Paragraph 148 purports to characterize and quote from comments submitted by the SEC on the NYDFS's proposed framework, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

149. Paragraph 149 purports to characterize and quote from comments submitted by the SEC on the NYDFS's proposed framework, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

150. Paragraph 150 purports to characterize and quote from comments submitted by the SEC on the NYDFS's proposed framework, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

151. To the extent Paragraph 151 purports to characterize and quote from statements made by former SEC Chair Gary Gensler in a September 8, 2022, speech, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that

speech for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 151.

152. Defendants Coinbase, Armstrong, and Grewal lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 152.

153. To the extent Paragraph 153 purports to characterize several court actions and administrative proceedings brought by the SEC, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those court actions and administrative proceedings for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 153.

154. To the extent Paragraph 154 purports to characterize and quote from the SEC's action against Ripple, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that action for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal admit that XRP was listed for trading on Coinbase's platform prior to SEC's filing of its action against Ripple. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase decided to suspend trading of XRP on its platform in light of the SEC's action against Ripple. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 154.

155. Paragraph 155 purports to characterize and quote from the SEC's action against LBRY, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

156. Paragraph 156 purports to characterize and quote from briefing and a court opinion in the SEC's action against LBRY, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

157. To the extent Paragraph 157 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 157.

158. To the extent Paragraph 158 purports to characterize and quote from a guide made accessible on Coinbase's website on December 7, 2016, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that guide for its complete and accurate contents. Defendants Armstrong and Grewal each lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 158.

159. To the extent Paragraph 159 purports to characterize and quote from Coinbase's announcement of a "New Asset Listing Process" on September 25, 2018, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that announcement for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 159.

160. To the extent Paragraph 160 purports to characterize and quote from the SEC Complaint, which itself quotes from Coinbase's listing application, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to the SEC Complaint and Coinbase's listing application for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 160.

161. Defendants Coinbase, Armstrong, and Grewal admit that in September 2019, Coinbase and other digital asset businesses founded the CRC, and that the CRC subsequently released a framework based on factors the SEC had identified as relevant to the Commission's securities law analysis with respect to digital assets. To the extent Paragraph 161 purports to characterize and quote from a May 15, 2021, Twitter post by Defendant Armstrong, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that Twitter thread for its complete and accurate contents. To the extent Paragraph 161 purports to characterize and quote from the CRC's website, Defendants Coinbase, Armstrong, and Grewal respectfully

refer the Court to that website for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 161.

162. To the extent Paragraph 162 purports to characterize and quote from Coinbase's Website, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that website for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 162.

163. Defendants Coinbase, Armstrong, and Grewal admit that before any token may be listed on Coinbase's platform it must be approved by the Company's Digital Asset Support Group ("DASG"), previously known as the Digital Asset Listing Group. Defendants Coinbase, Armstrong, and Grewal further admit that the DASG's review protocol, developed with the advice of outside legal counsel, focuses on factors the SEC itself had identified as pertinent—including the factors deemed relevant in the SEC's Digital Asset Framework, as well as in SEC no-action letters, speeches, and other statements. Defendants Coinbase, Armstrong, and Grewal further admit that the DASG review process is designed to identify and screen assets posing a high risk that the SEC might deem them "securities." To the extent Paragraph 163 purports to characterize and quote from the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to the SEC Complaint for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 163.

164. To the extent Paragraph 164 purports to characterize and quote from the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to the SEC Complaint for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 164.

165. Defendants Coinbase, Armstrong, and Grewal admit that certain outcomes of an SEC investigation or enforcement action, including "substantial penalties" or certain restrictions on the assets Coinbase is able to offer in the U.S., could adversely impact Coinbase's business operations or its competitive position. Defendants Coinbase, Armstrong, and Grewal further admit that the risks associated with these potential outcomes were disclosed before, during, and after the Class Period. Defendants Coinbase, Armstrong, and Grewal admit that a majority of Coinbase's total revenues are generated from customers in the United States. To the extent Paragraph 165 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that video for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise lack information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 165. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 165.

166. To the extent Paragraph 166 purports to characterize and quote from Coinbase's Offering Materials, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to the Offering Materials for their complete and accurate contents. To the extent Paragraph 166 suggests that Defendants Coinbase, Armstrong, and Grewal sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 166. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 166.

167. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase's "flywheel"—in which retail users and institutions store assets and drive liquidity, enabling Coinbase to expand the depth and breadth of crypto assets that it offers, and launch new, innovative products and services that attract new customers—has been a driver of Coinbase's growth. Defendants Coinbase, Armstrong, and Grewal further admit that for the year ended December 31, 2020, transaction revenue represented over 96% of Coinbase's net revenue, excluding crypto asset sales revenue and corporate interest income. To the extent Paragraph 167 purports to characterize and quote from the Offering Materials, Defendants Coinbase,

Armstrong, and Grewal respectfully refer the Court to the Offering Materials for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 167.

168. To the extent Paragraph 168 purports to characterize and quote from Coinbase's Investor Day YouTube video responding to questions from the public submitted through Reddit, entitled "Coinbase Reddit Ask Us Anything," Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that video for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168.

169. Paragraph 169 purports to characterize and quote from Coinbase's Offering Materials, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

170. To the extent Paragraph 170 suggests that Defendants Coinbase, Armstrong, and Grewal sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 170. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 170. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 170.

171. To the extent Paragraph 171 purports to characterize and quote from analyst reports, including an April 15, 2021, report by BTIG analysts, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those reports for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171.

172. To the extent Paragraph 172 purports to characterize and quote from Coinbase's Offering Materials and 2021 Form 10-Q filings, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those filings for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal deny that on April 14, 2021, Coinbase had 51 crypto assets listed for trading on its platform. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase added AMP, RLY, DDX, XYO, and RGT to its platform for trading in the second and third quarters of 2021. Defendants Coinbase, Armstrong, and Grewal deny that LCX and POWR were available for trading on Coinbase's platform on October 27, 2021, and November 15, 2021, respectively. Defendants Coinbase, Armstrong, and Grewal aver that transfers of those tokens were permitted on those days, while trading for LCX and POWR first became available on October 28, 2021, and November 16,

2021, respectively. Defendants Coinbase, Armstrong, and Grewal admit that AMP, RLY, DDX, XYO, RGT, LCX and POWR were identified by the SEC as purported "crypto asset securities" in *Securities and Exchange Commission v. Wahi*, No. 2:22-cv-01009-TL (W.D. Wash. July 21, 2022), a case brought by the SEC against a former Coinbase employee and two others for insider trading. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase supported 139 crypto assets for trading as of December 31, 2021. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172.

173. Paragraph 173 purports to characterize and quote from various analyst reports, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

174. Defendants Coinbase, Armstrong, and Grewal admit that on May 31, 2022, Coinbase had 172 crypto assets listed for trading on its platform. Defendants Coinbase, Armstrong, and Grewal deny the accuracy of the graph in Paragraph 174.

175. To the extent Paragraph 175 suggests that Defendants Coinbase, Armstrong, and Grewal sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 175. Defendants Coinbase, Armstrong,

and Grewal admit that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its listings and listing process. Defendants Coinbase, Armstrong, and Grewal further admit that in July 2022, the SEC filed a complaint accusing three individuals with securities fraud related to crypto asset trading, including with respect to certain crypto assets listed on Coinbase's platform. Defendants Coinbase, Armstrong, and Grewal further admit that the defendants in that action included a former Coinbase employee, and that Coinbase provided information to the SEC as part of their investigation into the alleged frontrunning. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 175.

176. To the extent Paragraph 176 purports to quote from and characterize Coinbase's Q1 2022 Form 10-Q and other subsequent disclosures, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that Form 10-Q and other subsequent disclosures for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 176.

177. To the extent Paragraph 177 purports to characterize and quote from actions brought by the SEC and DOJ and their announcements of the same, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those actions and announcements for their complete and accurate contents. Defendants

Coinbase, Armstrong, and Grewal lack knowledge or information sufficient to form a belief as to the criminal sentencing or civil settlements of Ishan Wahi or Nikhil Wahi, or as to whether Sameer Ramani remains at large.

178. Defendants Coinbase, Armstrong, and Grewal lack information and knowledge sufficient to form a belief as to whether "[i]mmediately, investors clamored for information," including because the terms of that allegation are vague. To the extent Paragraph 178 purports to characterize and quote from statements Defendant Grewal made via Coinbase's blog, the Twitter accounts of Defendants Armstrong and Grewal, and via "major publications and news outlets," Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those sources for their complete and accurate contents. To the extent Paragraph 178 suggests that Defendants Coinbase, Armstrong, and Grewal sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 178. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 178.

179. To the extent Paragraph 179 contains legal conclusions, no response is required. To the extent Paragraph 179 suggests that Defendants Coinbase, Armstrong, and Grewal sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of

Coinbase's regulatory compliance or risks, Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 179. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Defendants Coinbase, Armstrong, and Grewal admit that by the time of July 2022, the SEC had sent Coinbase a voluntary request for information, including about its listings and listing process. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase met with the SEC many times over a nine-month period prior to March 2023. Defendants Coinbase, Armstrong, and Grewal further admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff neither agreed nor disagreed with Coinbase's staking analysis in connection with approving Coinbase's public listing. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 179.

180. To the extent Paragraph 180 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 180.

181. Paragraph 181 purports to characterize and quote from a report from Bloomberg, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

182. To the extent Paragraph 182 purports to characterize and quote from reports by market analysts, Defendants Coinbase, Armstrong, and Grewal

respectfully refer the Court to those reports for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 182.

183. To the extent Paragraph 183 purports to characterize and quote from a post Defendant Grewal made on Twitter on July 25, 2022, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 183.

184. Paragraph 184 purports to characterize and quote from statements Defendants Coinbase, Armstrong, and Grewal purportedly made "[a]cross numerous forums," to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents. To the extent Paragraph 184 suggests that Defendants Coinbase, Armstrong, and Grewal sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 184. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 184.

185. Paragraph 185 purports to characterize and quote from a statement made by former SEC Chair Gary Gensler, to which Defendants Coinbase,

Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

186. To the extent Paragraph 186 purports to characterize and quote from a statement made by John Reed Stark, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that statement for its complete and accurate contents. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 186.

187. To the extent Paragraph 187 purports to quote from and characterize reports by market analysts, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those reports for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 187.

188. To the extent Paragraph 188 suggests that Defendants Coinbase, Armstrong, and Grewal sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Defendants Coinbase, Armstrong, and Grewal deny the allegations in Paragraph 188. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Defendants Coinbase, Armstrong, and Grewal further admit that

Coinbase met with the SEC many times over a nine-month period prior to March 2023. To the extent Paragraph 188 purports to characterize and quote from statements made on Coinbase's website on March 22, 2023, and from statements in Coinbase's answer to the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 188.

189. To the extent Paragraph 189 suggests that Defendants Coinbase, Grewal and Armstrong sought to create or created any impression of Coinbase's regulatory compliance or risks that differed from their own understanding of Coinbase's regulatory compliance or risks, Defendants Coinbase, Grewal and Armstrong deny the allegations in Paragraph 189. Defendants Coinbase, Grewal and Armstrong admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. To the extent Paragraph 189 purports to characterize and quote from statements made on Coinbase's website on March 22, 2023, the Company's Wells Notice submission filed with the SEC on April 19, 2023, a June 2023 interview response by Defendant Armstrong reflected in The Wall Street Journal, and Defendant Grewal's interview on the Bankless podcast on June 6, 2023, Defendants Coinbase, Grewal and Armstrong respectfully refer the Court to those sources for

their complete and accurate contents. Defendants Coinbase, Grewal, and Armstrong otherwise deny the allegations in Paragraph 189.

190. Defendants Coinbase, Armstrong, and Grewal lack information and knowledge sufficient to form a belief as to the allegation that Kraken is a "rival," including because that term is vague. To the extent Paragraph 190 purports to characterize filings in an action brought by the SEC against Kraken, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those filings for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 190.

191. Paragraph 191 purports to characterize and quote from a comment by former SEC Chair Gary Gensler, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

192. To the extent Paragraph 192 purports to characterize and quote from a post Armstrong made on Twitter, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 192.

193. To the extent Paragraph 193 purports to characterize reports from market analysts, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those reports for their complete and accurate contents. Defendants

Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 193.

194. To the extent Paragraph 194 contains legal conclusions, no response is required. To the extent Paragraph 194 purports to characterize and quote from posts on Coinbase's blog by Grewal or other statements made by Armstrong and Grewal, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those blog posts and statements for their complete and accurate contents. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 194.

195. To the extent Paragraph 195 contains legal conclusions, no response is required. To the extent Paragraph 195 purports to characterize and quote from reports from market analysts, including Needham and J.P. Morgan, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those reports for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 195.

196. To the extent Paragraph 196 contains legal conclusions, no response is required. To the extent Paragraph 196 purports to characterize and quote from a post on Twitter by Defendant Grewal on February 9, 2023, a March 10, 2023, email from Coinbase, and Coinbase's User Agreement as of March 10, 2023, Defendants

Coinbase, Armstrong, and Grewal respectfully refer the Court to those sources for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 196.

197. To the extent Paragraph 197 contains legal conclusions, no response is required. To the extent Paragraph 197 purports to characterize the SEC's action against Kraken, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that action for its complete and accurate contents. To the extent Paragraph 197 purports to characterize and quote from a March 10, 2023, email from Coinbase and from Coinbase's User Agreement as of March 10, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those documents for their complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 197.

198. To the extent Paragraph 198 contains legal conclusions, no response is required. To the extent Paragraph 198 purports to characterize and quote from Coinbase's 2022 Form 10-K, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that Form 10-K for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 198.

199. To the extent Paragraph 199 contains legal conclusions, no response is required. To the extent Paragraph 199 purports to characterize and quote from a

Form 8-K that Coinbase filed on March 22, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that Form 8-K for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 199.

200. To the extent Paragraph 200 contains legal conclusions, no response is required. To the extent Paragraph 200 purports to characterize and quote from a blog post made by Coinbase on March 22, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that blog post for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 200.

201. To the extent Paragraph 201 contains legal conclusions, no response is required. To the extent Paragraph 201 purports to characterize the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that complaint for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 201.

202. To the extent Paragraph 202 contains legal conclusions, no response is required. To the extent Paragraph 202 purports to characterize and quote from the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that complaint for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 202.

203. To the extent Paragraph 203 contains legal conclusions, no response is required. To the extent Paragraph 203 purports to characterize the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that complaint for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 203.

204. To the extent Paragraph 204 contains legal conclusions, no response is required. To the extent Paragraph 204 purports to characterize and quote from a statement made by Gurbir S. Grewal, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that statement for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 204.

205. To the extent Paragraph 205 contains legal conclusions, no response is required. To the extent Paragraph 205 purports to characterize and quote from a statement made by Gurbir S. Grewal, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that statement for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 205.

206. To the extent Paragraph 206 contains legal conclusions, no response is required. To the extent Paragraph 206 purports to characterize and quote from news reports published on June 6, 2023, along with various filings made by state

securities regulators on that day, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those sources for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 206.

207. Defendant Coinbase admits that in September 2020, NYDFS transmitted to Coinbase a Report of Examination detailing the results of its supervisory examination of Coinbase for the time period July 1, 2018, through December 31, 2019. Defendants Armstrong, Haas, Choi, and Grewal lack the knowledge or information sufficient to form a belief as to this allegation. To the extent Paragraph 207 purports to characterize and quote from the Consent Order, Exchange Act Defendants respectfully refer the Court to that Consent Order for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 207.

208. To the extent Paragraph 208 purports to characterize and quote from the Consent Order, Exchange Act Defendants respectfully refer the Court to that Consent Order for its complete and accurate contents. Exchange Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 208.

209. To the extent Paragraph 209 purports to characterize and quote from the Consent Order, Exchange Act Defendants respectfully refer the Court to that

order for its complete and accurate contents. Exchange Act Defendants admit that Coinbase, Inc. entered a settlement with the NYDFS in which it agreed to pay a civil monetary penalty in the amount of $50 million and committed to spending $50 million on improvements and enhancements to its compliance program over two years. Exchange Act Defendants otherwise deny the allegations in Paragraph 209.

210. To the extent Paragraph 210 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 210.

211. To the extent Paragraph 211 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that Form 10-Q for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 211.

212. Paragraph 212 purports to characterize and quote from Twitter posts by Armstrong, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 212.

213. Defendants Coinbase, Armstrong, Haas, and Choi admit that Coinbase's stock price closed at $72.99 on May 10, 2022, and closed at $53.72 on

May 11, 2022, following the publication of a quarterly earnings report. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 213.

214. To the extent Paragraph 214 purports to characterize and quote from a Piper Sandler report published on May 11, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that report for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 214.

215. Paragraph 215 purports to characterize and quote from a New Constructs article published on May 13, 2022, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

216. Paragraph 216 purports to characterize and quote from The Financial Times article published on May 11, 2022, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

217. Paragraph 217 purports to characterize and quote from a Protocol article published on May 11, 2022, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

218. Paragraph 218 purports to characterize and quote from a Bloomberg article published on July 25, 2022, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

219. Defendants Coinbase, Armstrong, and Grewal admit that the price of Coinbase common stock closed at $67.07 per share on July 25, 2022, and that it closed at $52.93 per share on July 26, 2022. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 219.

220. To the extent Paragraph 220 purports to characterize and quote from reports published by market commentators, including a July 26, 2022, Morningstar report, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those reports for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 220.

221. Paragraph 221 purports to characterize and quote from a Form 8-K Coinbase filed on March 22, 2023, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

222. Paragraph 222 purports to characterize and quote from a blog post published by Coinbase on March 22, 2023, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

223. Defendants Coinbase, Armstrong, and Grewal admit that the price of Coinbase common stock closed at $77.14 on March 22, 2023, and closed at $66.30 on March 23, 2023. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 223.

224. To the extent Paragraph 224 purports to characterize and quote from a March 23, 2023, analyst report, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that report for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 224.

225. Paragraph 225 purports to characterize and quote from a March 23, 2023, analyst report, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

226. Paragraph 226 purports to characterize and quote from a March 24, 2023, analyst report, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

227. Paragraph 227 purports to characterize and quote from the SEC Complaint, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

228. Paragraph 228 purports to characterize and quote from a June 6, 2023, Bloomberg article, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

229. Exchange Act Defendants admit that the price of Coinbase common stock closed at $58.71 on June 5, 2023, opened at $47.10 on June 6, 2023, and closed at $51.61 on June 6, 2023. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 229.

230. Paragraph 230 purports to characterize and quote from a June 6, 2023, report from Barclays, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

231. Paragraph 231 purports to characterize and quote from a June 6, 2023, report from Barclays, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

232. To the extent Paragraph 232 purports to characterize and quote from Coinbase's Registration Statement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that document for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi admit that Coinbase filed its Form S-1 Registration Statement with the SEC on March 23, 2021. Defendants Coinbase, Armstrong, Haas, and Choi further admit that the SEC deemed Coinbase's Form S-1 Registration Statement effective on April 1, 2021.

Defendants Coinbase, Armstrong, Haas, and Choi further admit that Coinbase filed its Prospectus on April 14, 2021. Defendants Coinbase, Armstrong, Haas, and Choi further admit that Coinbase's Prospectus incorporated and formed part of Coinbase's Form S-1 Registration Statement.

233. Paragraph 233 purports to characterize and quote from Coinbase's Registration Statement, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

234. Paragraph 234 purports to characterize and quote from Coinbase's Registration Statement, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

235. To the extent Paragraph 235 contains legal conclusions, no response is required. To the extent Paragraph 235 purports to characterize and quote from statements made by Defendant Armstrong on May 11, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 235.

236. To the extent Paragraph 236 contains legal conclusions, no response is required. To the extent Paragraph 236 purports to characterize and quote from Coinbase's Prospectus, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that document for their complete and accurate

contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 236.

237. To the extent Paragraph 237 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 237.

238. Paragraph 238 purports to characterize and quote from Coinbase's Registration Statement, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

239. To the extent Paragraph 239 contains legal conclusions, no response is required. To the extent Paragraph 239 purports to characterize and quote from Coinbase's Registration Statement, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that document for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi admit that as a fee for staking services, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls between 15% and 35%, inclusive. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 239.

240. To the extent Paragraph 240 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that document for its complete and accurate contents.

Defendants Coinbase, Armstrong, Haas, and Choi otherwise admit the allegations in Paragraph 240.

241. Paragraph 241 purports to characterize and quote from Coinbase's Q1 2021 Form 10-Q, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

242. To the extent Paragraph 242 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 242.

243. To the extent Paragraph 243 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that document for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise admit the allegations in Paragraph 243.

244. Paragraph 244 purports to characterize and quote from Coinbase's Q2 2021 Form 10-Q, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

245. To the extent Paragraph 245 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 245.

246. To the extent Paragraph 246 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that document for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise admit the allegations in Paragraph 246.

247. Paragraph 247 purports to characterize and quote from Coinbase's Q3 2021 Form 10-Q, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

248. To the extent Paragraph 248 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 248.

249. To the extent Paragraph 249 purports to characterize and quote from statements made at the J.P. Morgan Crypto Economy Forum on November 30, 2021, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that transcript for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise admit the allegations in Paragraph 249.

250. To the extent Paragraph 250 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 250.

251. To the extent Paragraph 251 purports to characterize and quote from statements made at the Goldman Sachs US Financial Services Conference on December 7, 2021, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that transcript for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise admit the allegations in Paragraph 251.

252. Paragraph 252 purports to characterize and quote from Defendant Choi's statements made at the Goldman Sachs US Financial Services Conference on December 7, 2021, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

253. To the extent Paragraph 253 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 253.

254. To the extent Paragraph 254 purports to characterize and quote from Coinbase's 2021 Form 10-K, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that document for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise admit the allegations in Paragraph 254.

255. Paragraph 255 purports to characterize and quote from Coinbase's 2021 Form 10-K, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

256. To the extent Paragraph 256 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 256.

257. Paragraph 257 purports to characterize and quote from Coinbase's 2021 Form 10-K, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

258. To the extent Paragraph 258 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 258.

259. To the extent Paragraph 259 purports to characterize and quote from statements made at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that transcript for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi admit that Armstrong and Haas represented Coinbase at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022.

260. Paragraph 260 purports to characterize and quote from Defendant Haas's statements made at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for its complete and accurate contents.

261. To the extent Paragraph 261 contains legal conclusions, no response is required. To the extent Paragraph 261 purports to characterize and quote from Defendant Haas's statements made at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that transcript for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 261.

262. Paragraph 262 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

263. Paragraph 263 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

264. To the extent Paragraph 264 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Defendants

Coinbase, Armstrong, and Grewal further admit that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its listings and listing process. Defendants Coinbase, Armstrong, and Grewal further admit that in July 2022, the SEC filed a complaint accusing three individuals with securities fraud related to crypto asset trading, including with respect to certain crypto assets listed on Coinbase's platform. Defendants Coinbase, Armstrong, and Grewal further admit that the defendants in that action included a former Coinbase employee, and that Coinbase provided information to the SEC as part of their investigation into the alleged frontrunning. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase interacts with individuals providing information about a digital asset that Coinbase is evaluating for listing on its platform, including when needed to collect information Coinbase requires for its listing review process. To the extent Paragraph 264 purports to characterize alleged communications between Coinbase and an unidentified "issuer," Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to such communications for their complete and accurate contents. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 264.

265. To the extent Paragraph 265 purports to characterize and quote from a blog post Coinbase published on July 21, 2022, Defendants Coinbase, Armstrong,

and Grewal respectfully refer the Court to that blog post for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise admit the allegations in Paragraph 265.

266. To the extent Paragraph 266 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal admit that by the time of July 2022, the SEC had sent Coinbase a voluntary request for information, including about its listings and listing process. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase met with the SEC many times over a nine-month period prior to March 2023. To the extent Paragraph 266 purports to characterize and quote from statements made by Defendant Grewal in July 2021, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. To the extent Paragraph 266 purports to characterize and quote from a statement made by Defendant Armstrong in August 2022, Defendants Coinbase, Armstrong, and Grewal respectfully refer the court to that statement for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 266.

267. To the extent Paragraph 267 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase interacts with individuals providing information about a digital asset that Coinbase is evaluating for listing on its platform, including when needed to collect information

Coinbase requires for its listing review process. Defendants Coinbase, Armstrong, and Grewal further admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff neither agreed nor disagreed with Coinbase's staking analysis in connection with approving Coinbase's public listing. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 267.

268. Paragraph 268 purports to characterize and quote from a July 25, 2022, post by Defendant Grewal on his Twitter account, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

269. Defendants Coinbase, Armstrong, and Grewal admit that Reuters published an article entitled, Crypto Exchange Coinbase Faces SEC Probe Over Securities, on July 25, 2022. To the extent Paragraph 269 purports to characterize and quote from a July 25, 2022, article published by Reuters, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that article for its complete and accurate contents.

270. To the extent Paragraph 270 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 270.

271. To the extent Paragraph 271 purports to characterize and quote from a February 8, 2023 post by Defendant Grewal on his Twitter account, Defendants

Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 271.

272. Paragraph 272 purports to characterize and quote from a February 8, 2023 post by Defendant Armstrong on his Twitter account, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

273. To the extent Paragraph 273 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Defendants Coinbase, Armstrong, and Grewal further admit that by the time of July 2022, the SEC had sent Coinbase a voluntary request for information, including about its listings and listing process. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase met with the SEC many times over a nine-month period prior to March 2023. Defendants Coinbase, Armstrong, and Grewal further admit that in January 2023, the day before a scheduled meeting for the SEC to provide its first substantive responses to Coinbase, the SEC canceled the meeting and told Coinbase it would proceed to enforcement instead. To the extent Paragraph 273 purports to characterize and quote from Coinbase's statements following the public disclosure of the Wells Notice it received on March 22, 2023, including Defendant Grewal's

interview on the Bankless podcast on June 6, 2023, Exchange Act Defendants respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase interacts with individuals providing information about a digital asset that Coinbase is evaluating for listing on its platform, including when needed to collect information Coinbase requires for its listing review process. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 273.

274. To the extent Paragraph 274 purports to characterize and quote from a February 8, 2023, Twitter post by Defendant Armstrong, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. To the extent Paragraph 274 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 274.

275. Defendants Coinbase, Armstrong, and Grewal lack information and knowledge sufficient to form a belief as to the allegation that Kraken is a "rival," including because that term is vague. Defendants Coinbase, Armstrong, and Grewal otherwise admit the allegations in Paragraph 275.

276. To the extent Paragraph 276 purports to characterize and quote from a blog post made by Defendant Grewal on February 10, 2023, Exchange Act Defendants respectfully refer the Court to that blog post for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 276.

277. Paragraph 277 purports to, via Paragraph 276, characterize and quote from posts made on the Twitter accounts of Defendants Armstrong and Grewal, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for their complete and accurate contents.

278. To the extent Paragraph 278 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff neither agreed nor disagreed with Coinbase's staking analysis in connection with approving Coinbase's public listing. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 278.

279. To the extent Paragraph 279 purports to characterize and quote from a February 12, 2023, post by Defendant Armstrong on his Twitter account, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 279.

280. To the extent Paragraph 280 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 280.

281. Defendants Coinbase, Armstrong, and Grewal admit the allegations in Paragraph 281.

282. Paragraph 282 purports to characterize and quote from Coinbase's Q4 and FY 2022 earnings call, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

283. Paragraph 283 purports to characterize and quote from Coinbase's Q4 and FY 2022 earnings call, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

284. To the extent Paragraph 284 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 284.

285. To the extent Paragraph 285 purports to characterize and quote from Coinbase's 2022 Form 10-K, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that filing for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise admit the allegations in Paragraph 285.

286. To the extent Paragraph 286 contains legal conclusions, no response is required. To the extent Paragraph 286 purports to characterize and quote from Coinbase's statements following public disclosure of the Wells Notice, and Defendant Grewal's interview on the Bankless podcast on June 6, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 286.

287. To the extent Paragraph 287 purports to characterize and quote from a statement by Defendant Armstrong during an interview with Bloomberg Television, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that statement for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise admit the allegations in Paragraph 287.

288. To the extent Paragraph 288 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 288.

289. Defendants Coinbase, Armstrong, and Grewal admit the allegations in Paragraph 289.

290. To the extent Paragraph 290 purports to characterize and quote from a blog post by Defendant Grewal dated March 22, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that blog post for its complete

and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 290.

291. Paragraph 291 purports to characterize and quote from a blog post by Defendant Grewal dated March 22, 2023, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

292. To the extent Paragraph 292 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 292.

293. To the extent Paragraph 293 contains legal conclusions, no response is required. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 293.

294. To the extent Paragraph 294 contains legal conclusions, no response is required. To the extent Paragraph 294 purports to characterize Twitter posts made by Defendant Armstrong on May 10, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those Twitter posts for their complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-

K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 294.

295. To the extent Paragraph 295 contains legal conclusions, no response is required. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Defendants Coinbase, Armstrong, and Grewal further admit that in May 2022, the SEC sent Coinbase a voluntary request for information, including about its listings and listing process. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase met with the SEC many times over a nine-month period prior to March 2023. Defendants Coinbase, Armstrong, and Grewal further admit that in over a dozen presentations and many phone calls, Coinbase shared with the SEC its views on a potential structure for registered digital asset securities trading platforms, as well as the feasibility of trading securities and non-securities on a single platform. To the extent Paragraph 295 purports to characterize and quote from interviews of Defendant Armstrong, Defendants Coinbase, Armstrong, and Grewal respectfully

refer the Court to those interviews for their complete and accurate contents. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 295.

296. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Defendants Coinbase, Armstrong, and Grewal further admit that Coinbase met with the SEC many times over a nine-month period prior to March 2023. Defendants Coinbase, Armstrong, and Grewal further admit that in over a dozen presentations and many phone calls, Coinbase shared with the SEC its views on a potential structure for registered digital asset securities trading platforms, as well as the feasibility of trading securities and non-securities on a single platform. To the extent Paragraph 296 purports to characterize and quote from a Coinbase blog post authored by Armstrong dated September 8, 2021, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. To the extent Paragraph 296 purports to characterize and quote from Defendant Grewal's testimony before the U.S. House Committee on Financial Services, Subcommittee on Digital Assets, Financial Technology and Inclusion Subcommittee on March 9, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that testimony for its complete and accurate contents. To the extent

Paragraph 296 purports to characterize and quote from a Coinbase blog post authored by Grewal dated March 22, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 296.

297. To the extent Paragraph 297 purports to characterize and quote from the Company's Wells Notice submission filed with the SEC on April 19, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that submission for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 297.

298. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. To the extent Paragraph 298 purports to characterize and quote from an April 27, 2023 Coinbase YouTube video and Defendant Grewal's interview on the Bankless podcast on June 6, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those interviews for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 298.

299. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. To the extent Paragraph 299 purports to characterize and quote from an interview of Defendant

Armstrong at the Piper Sandler Global Exchange & FinTech Conference, Defendants Coinbase, Armstrong, and Grewal respectfully note that this event occurred on June 7, 2023 (not June 6, 2023) and refer the Court to that interview for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 299.

300. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. To the extent Paragraph 300 purports to characterize and quote from a Coinbase blog post on April 27, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. To the extent Paragraph 300 purports to characterize and quote from an interview with Defendant Grewal on the Bankless podcast on April 27, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that source for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 300.

301. Defendants Coinbase, Armstrong, and Grewal admit that Coinbase engaged with the SEC throughout late 2022 and into early 2023. Defendants Coinbase, Armstrong, and Grewal deny that Armstrong and Grewal personally participated in each of the meetings and communications with the SEC during this time period. Defendants Coinbase, Armstrong, and Grewal admit that Armstrong

and Grewal received periodic reports regarding Coinbase's engagement with the SEC in late 2022 and early 2023. Defendants Coinbase, Armstrong, and Grewal deny that they had complete knowledge of what had been discussed with the SEC at each meeting or phone call. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 301.

302. To the extent Paragraph 302 contains legal conclusions, no response is required. To the extent Paragraph 302 purports to characterize and quote from a Coinbase blog post, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that document for its complete and accurate contents. To the extent Paragraph 302 purports to characterize and quote from Coinbase's answer to the SEC Complaint filed on June 28, 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that document for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 302.

303. To the extent Paragraph 303 contains legal conclusions, no response is required. To the extent Paragraph 303 purports to characterize and quote from interviews of Defendant Armstrong following the filing of the SEC Complaint in June 2023, the Company's April 19, 2023 Wells Notice submission filed with the SEC, an interview of Defendant Grewal on the Bankless podcast on June 6, 2023, and an interview of Defendant Grewal on the Chain Reaction podcast on June 8,

2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those sources for their complete and accurate contents. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 303.

304. Defendants Coinbase, Armstrong, and Grewal admit that in February 2021, Coinbase acknowledged in a public SEC filing that the SEC Staff neither agreed nor disagreed with Coinbase's staking analysis in connection with approving Coinbase's public listing. To the extent Paragraph 304 purports to characterize and quote from an article by Reuters, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that source for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 304.

305. Defendants Coinbase, Armstrong, and Grewal admit that in September 2019, Coinbase and other digital asset businesses founded the CRC, and that the CRC subsequently released a framework based on factors the SEC had identified as relevant to the SEC's securities law analysis with respect to digital assets and that CRC said was designed to address the *Howey* test factors. To the extent Paragraph 305 purports to characterize and quote from the SEC Complaint, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that complaint for

its complete and accurate contents. To the extent Paragraph 305 purports to characterize and quote from a January 22, 2022 Coinbase blog post, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that post for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 305.

306. To the extent Paragraph 306 purports to characterize Coinbase's SEC filings or other statements, Exchange Act Defendants respectfully refer the Court to those filings and other statements for their complete and accurate contents. Exchange Act Defendants admit that Defendants Haas and Choi have served as managers for Coinbase Custody at various points in time. Exchange Act Defendants further admit that Defendants Haas and Choi were identified as Governors of Coinbase Custody in a Foreign Registration Statement filed with the State of Washington on July 7, 2020. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Exchange Act Defendants otherwise deny the allegations in Paragraph 306.

307. To the extent Paragraph 307 contains legal conclusions, no response is required. Exchange Act Defendants admit that certain Defendants made certain statements relating to the topics of (i) Coinbase's revenues derived from retail customers, safeguarding customers assets, and the risk of loss or destruction of private keys required to access any crypto assets for its customers and (ii) the SEC's

investigation of and the regulatory risks facing Coinbase, including whether the Company had offered securities or made securities available for trading. Exchange Act Defendants further admit that such statements were made during earnings calls, investor conferences, congressional testimony, media appearances, or social media. Exchange Act Defendants otherwise deny the allegations in Paragraph 307.

308. Exchange Act Defendants admit that certain Defendants made statements acknowledging that Coinbase's retail transactions accounted for nearly 95% of transaction fee revenues. To the extent that Paragraph 308 purports to characterize or quote Twitter posts from February 14, 2022, Exchange Act Defendants respectfully refer the Court to those posts for their complete and accurate contents. To the extent that Paragraph 308 purports to characterize a Wired article, Exchange Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Exchange Act Defendants otherwise deny the allegations in Paragraph 308.

309. Defendants Coinbase, Armstrong, and Grewal admit that, during the Class Period, Defendant Armstrong generally possessed knowledge regarding the crypto-regulatory environment as it pertains to Coinbase. To the extent Paragraph 309 purports to characterize and quote from statements made by Defendant Armstrong on Coinbase's Q1 2021 and Q2 2021 earnings calls, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those earnings calls

for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 309.

310. To the extent Paragraph 310 purports to characterize and quote from statements made by Defendant Armstrong on September 9, 2021, at the Deutsche Bank Tech Conference, and on Coinbase's Q3 2021 earnings call, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal deny that Armstrong made the September 9, 2021, statement that Plaintiffs attribute to him in Paragraph 310.

311. To the extent Paragraph 311 contains legal conclusions, no response is required. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 311.

312. Exchange Act Defendants admit that in August 2020, Coinbase's Board granted the "2020 CEO Performance Award" to Defendant Armstrong and respectfully refer the Court to the Offering Materials for a complete and accurate description of the terms of that award. Exchange Act Defendants further admit that as of December 31, 2020, the grant date fair value of Armstrong's stock options and stock awards granted at the time was $56.67 million. Exchange Act Defendants lack

knowledge or information sufficient to form a belief as to the profit Armstrong would obtain from the sale of shares obtained via the CEO Performance Award. To the extent Paragraph 312 purports to characterize and quote from a Protos report, Exchange Act Defendants respectfully refer the Court to that report for its complete and accurate contents. Exchange Act Defendants admit that the first tranche of 3,159,930 stock options vested on July 8, 2021. Exchange Act Defendants further admit that this first tranche vested after the volume weighted average price of Coinbase's shares was at or above $200 for 60 consecutive days. Exchange Act Defendants further admit that Coinbase's stock price closed at $244.29 on July 8, 2021, and that the value of 3,159,930 stock options with an exercise price of $23.46 per share, based on that closing price, was over $697 million. Exchange Act Defendants otherwise deny the allegations in Paragraph 312.

313. Exchange Act Defendants admit that the Executive and Director Defendants' gross proceeds from the Direct Listing totaled approximately $2.7 billion dollars. Exchange Act Defendants further admit that Defendant Armstrong sold 749,999 shares (representing less than 2% of his Coinbase stock holdings) for proceeds of over $290 million in the Direct Listing. Exchange Act Defendants further admit that Defendant Choi sold 614,170 shares for proceeds of $223,967,619.79 on April 14, 2021. Exchange Act Defendants deny that Choi received proceeds of over $429 million from sales during the Class Period.

Exchange Act Defendants aver that she received proceeds of $235,542,099.79 during the Class Period from sales of a fraction of her Coinbase stock holdings and with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans. Exchange Act Defendants otherwise deny the allegations in Paragraph 313.

314. To the extent Paragraph 314 contains legal conclusions, no response is required. To the extent Paragraph 314 purports to characterize and quote from Defendant Haas's statements made at the virtual Morgan Stanley Technology, Media, and Telecom Conference on March 9, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those statements for their complete and accurate contents. To the extent Paragraph 314 purports to characterize Coinbase's Q1 2022 Form 10-Q filed on May 10, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that filing for its complete and accurate contents. To the extent Paragraph 314 purports to characterize Twitter posts by Defendant Armstrong on May 10, 2022, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to those posts for their complete and accurate contents. Defendants Armstrong, Haas, and Choi lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 314.

315. To the extent Paragraph 315 purports to characterize statements made by certain Defendants on July 21, 2022, and in February and March 2023, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to those statements for their complete and accurate contents. To the extent Paragraph 315 purports to characterize media coverage of SEC activities published on July 25, 2022, Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court to that coverage for its complete and accurate contents. Defendants Coinbase, Armstrong, and Grewal admit that on March 22, 2023, Defendants Coinbase, Armstrong, and Grewal published a blog post on Coinbase's website, which discussed the Wells notice Coinbase received that same day. Defendants Coinbase, Armstrong, and Grewal further admit that the Wells notice referenced an undefined portion of Coinbase's listed digital assets, its staking service Coinbase Earn, Coinbase Prime, and Coinbase Wallet. Defendants Coinbase, Armstrong, and Grewal further admit that Grewal's post stated that in January 2023, on the day before a scheduled meeting, the SEC canceled on Coinbase and told Coinbase that they would be shifting back to an enforcement investigation. Defendants Armstrong and Grewal lack knowledge or information sufficient to form a belief as to the personal knowledge of each other. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 315.

316. To the extent Paragraph 316 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 316.

317. To the extent Paragraph 317 contains legal conclusions, no response is required. Exchange Act Defendants admit that the price of Coinbase common stock closed at $342.98 per share on November 12, 2021. Exchange Act Defendants otherwise deny the allegations in Paragraph 317.

318. To the extent Paragraph 318 contains legal conclusions, no response is required. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to what Plaintiffs and members of the putative Class would or would not have done under different circumstances. Exchange Act Defendants otherwise deny the allegations in Paragraph 318.

319. To the extent Paragraph 319 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 319.

320. To the extent that Paragraph 320 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court to that filing for its complete and accurate contents. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 320.

321. Paragraph 321 purports to characterize and quote from Defendant Armstrong's Twitter posts on May 10, 2022, to which Defendants Coinbase, Armstrong, Haas, and Choi respectfully refer the Court for their complete and accurate contents.

322. Defendants Coinbase, Armstrong, Haas, and Choi admit that the price of Coinbase common stock closed at $72.99 per share on May 10, 2022, and at $53.72 on May 11, 2022. Defendants Coinbase, Armstrong, Haas, and Choi otherwise deny the allegations in Paragraph 322.

323. Paragraph 323 purports to characterize and quote from a July 25, 2022, article published by Bloomberg, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

324. Defendants Coinbase, Armstrong, and Grewal admit that the price of Coinbase common stock closed at $67.07 per share on July 25, 2022, and closed at $52.93 per share on July 26, 2022. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 324.

325. Paragraph 325 purports to characterize and quote from Coinbase's March 22, 2023, Form 8-K, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

326. Paragraph 326 purports to characterize and quote from a March 22, 2023, blog post on Coinbase's website, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

327. Defendants Coinbase, Armstrong, and Grewal admit that the price of Coinbase common stock closed at $77.14 on March 22, 2023, and closed at $66.30 on March 23, 2023. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 327.

328. Paragraph 328 purports to characterize and quote from the SEC Complaint, to which Defendants Coinbase, Armstrong, and Grewal respectfully refer the Court for its complete and accurate contents.

329. Defendants Coinbase, Armstrong, and Grewal admit that the price of Coinbase common stock closed at $58.71 on June 5, 2023, and closed at $51.61 on June 6, 2023. Defendants Coinbase, Armstrong, and Grewal otherwise deny the allegations in Paragraph 329.

330. To the extent that Paragraph 330 contains legal conclusions, no response is required. Exchange Act Defendants admit that Coinbase common stock was traded on the Nasdaq exchange. Exchange Act Defendants further admit that Coinbase has filed periodic reports with the SEC. Exchange Act Defendants further admit that Coinbase has communicated with investors via various public disclosures. Exchange Act Defendants further admit that multiple analysts have followed

Coinbase and issued publicly available reports regarding the Company. Exchange Act Defendants otherwise deny the allegations in Paragraph 330.

331. To the extent that Paragraph 331 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 331.

332. To the extent that Paragraph 332 contains legal conclusions, no response is required. Exchange Act Defendants lack knowledge or information sufficient to form a belief as to what Plaintiffs and members of the putative Class would or would not have done under different circumstances. Exchange Act Defendants otherwise deny the allegations in Paragraph 332.

333. To the extent that Paragraph 333 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 333.

334. To the extent that Paragraph 334 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 334.

335. To the extent that Paragraph 335 contains legal conclusions, no response is required. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Exchange Act

Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 335.

336. Exchange Act Defendants incorporate their answers to Paragraphs 1 through 335. To the extent that Paragraph 336 contains legal conclusions, no response is required. Exchange Act Defendants admit that Plaintiffs purport to bring Count I as described in Paragraph 336. Exchange Act Defendants otherwise deny the allegations in Paragraph 336.

337. To the extent that Paragraph 337 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 337.

338. To the extent that Paragraph 338 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 338.

339. To the extent that Paragraph 339 contains legal conclusions, no response is required. Each Exchange Act Defendant lacks knowledge or information sufficient to form a belief as to the knowledge of the other Exchange Act Defendants. Exchange Act Defendants otherwise deny the allegations in Paragraph 339.

340. To the extent that Paragraph 340 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 340.

341. To the extent that Paragraph 341 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 341.

342. To the extent that Paragraph 342 contains legal conclusions, no response is required. Exchange Act Defendants otherwise deny the allegations in Paragraph 342.

343. Defendants Armstrong, Haas, Choi, and Grewal incorporate their answers to Paragraphs 1 through 342. To the extent that Paragraph 343 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Choi, and Grewal admit that Plaintiffs purport to bring Count II as described in Paragraph 343. Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 343.

344. To the extent that Paragraph 344 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 344.

345. To the extent that Paragraph 345 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 345.

346. To the extent that Paragraph 346 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Choi, and Grewal otherwise deny the allegations in Paragraph 346.

347. To the extent that Paragraph 347 contains legal conclusions, no response is required. To the extent Paragraph 347 purports to characterize the TAC, Securities Act Defendants respectfully refer the Court to the TAC for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 347.

348. To the extent that Paragraph 348 contains legal conclusions, no response is required. To the extent Paragraph 348 purports to characterize the TAC, Securities Act Defendants respectfully refer the Court to the TAC for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 348.

349. To the extent that Paragraph 349 contains legal conclusions, no response is required. To the extent Paragraph 349 purports to characterize the TAC, Securities Act Defendants respectfully refer the Court to the TAC for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 349.

350. To the extent that Paragraph 350 contains legal conclusions, no response is required. To the extent that a response is required, Securities Act

Defendants admit that Coinbase has used the United States mails, interstate telephone communications, and the facilities of Nasdaq. Securities Act Defendants otherwise deny the allegations in Paragraph 350.

351. Securities Act Defendants admit the allegations in Paragraph 351.

352. Securities Act Defendants deny that Paragraph 352 accurately describes the number of shares sold and the proceeds received by Defendant Andreessen. Securities Act Defendants aver that Paragraph 352 describes shares sold by AH Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC between April 14 and April 15, 2021. Securities Act Defendants further aver that Paragraph 352 describes shares sold by LAMA Community Trust, AH Parallel Fund III, L.P.; Andreessen Horowitz Fund III, L.P.; Andreessen Horowitz LSV Fund I, L.P.; CNK Fund I, L.P.; a16z Seed-III, LLC; AH Capital Management, L.L.C.; and AD Holdings, LLC during the Class Period. Securities Act Defendants otherwise admit the allegations in Paragraph 352.

353. Securities Act Defendants admit the allegations in Paragraph 353.

354. Securities Act Defendants deny that Defendant Haun is currently a Coinbase Director. Securities Act Defendants aver that Haun stepped down from her position in April 2024. Securities Act Defendants otherwise admit the allegations in Paragraph 354.

355. Securities Act Defendants deny that the Board of Directors determined that Defendant Kramer was qualified under Item 470(d) of Regulation S-K. Securities Act Defendants aver that Kramer was identified as an "audit committee financial expert" as defined in Item 407(d) of Regulation S-K. Securities Act Defendants otherwise admit the allegations in Paragraph 355.

356. Securities Act Defendants admit the allegations in Paragraph 356.

357. Securities Act Defendants deny that Paragraph 357 accurately describes the proceeds received by Defendant Wilson during the first two trading days following the commencement of the Direct Listing. Securities Act Defendants aver that Paragraph 357 describes shares sold by Union Square Ventures 2012 Fund, L.P.; USV Investors 2012 Fund, L.P.; USV Opportunity 2014, LP; and USV Opportunity Investors 2014, LP between April 14 and April 15, 2021. Securities Act Defendants otherwise admit the allegations in Paragraph 357.

358. Securities Act Defendants admit the allegations in Paragraph 358.

359. To the extent Paragraph 359 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 359.

360. To the extent that Paragraph 360 contains legal conclusions, no response is required. To the extent Paragraph 360 purports to characterize the TAC, Securities Act Defendants respectfully refer the Court to the TAC for its complete

and accurate contents. Securities Act Defendants admit that Plaintiffs purport to bring claims under Sections 11, 12, and 15 of the Securities Act. Securities Act Defendants otherwise deny the allegations in Paragraph 360.

361. To the extent that Paragraph 361 contains legal conclusions, no response is required. Securities Act Defendants admit that Plaintiffs assert control person liability under Section 15 of the Securities Act against Defendants Armstrong, Haas, Jones, and the Director Defendants. Securities Act Defendants otherwise deny the allegations in Paragraph 361.

362. To the extent that Paragraph 362 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 362.

363. To the extent that Paragraph 363 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 363.

364. To the extent that Paragraph 364 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 364.

365. To the extent Paragraph 365 purports to characterize a January 28, 2021, blog post, Securities Act Defendants respectfully refer the Court to that blog

post for its complete and accurate contents. Securities Act Defendants otherwise admit the allegations in Paragraph 365.

366. Securities Act Defendants lack knowledge or information sufficient to form a belief as to the truth of whether new shares are never issued in a direct listing. Securities Act Defendants otherwise deny the allegations in Paragraph 366.

367. To the extent that Paragraph 367 purports to characterize Coinbase's posted YouTube video responding to questions from the public submitted through Reddit, entitled "Investor Day," Securities Act Defendants respectfully refer the Court to that video and/or its transcript for its complete and accurate contents. Securities Act Defendants otherwise admit the allegations in Paragraph 367.

368. Securities Act Defendants admit the allegations in Paragraph 368.

369. Securities Act Defendants admit the allegations in Paragraph 369.

370. Paragraph 370 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

371. Paragraph 371 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

372. Securities Act Defendants admit the allegations in Paragraph 372.

373. Securities Act Defendants admit the allegations in Paragraph 373.

374. Defendants admit that certain Defendants sold Coinbase shares during the Class Period. Defendants further admit that the chart in Paragraph 374 accurately reflects the number of shares Defendants Armstrong, Haas, Grewal, Jones, and Haun sold between April 14 and 15, 2021, and during the Class Period, with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, and the proceeds received from those sales. Defendants deny that the chart in Paragraph 374 is accurate as to Defendant Ehrsam. Defendants aver that the chart in Paragraph 374 reflects 273,085 shares sold by Defendant Ehrsam and 25,704 shares sold by Paradigm Fund, L.P., a fund with which Defendant Ehrsam is affiliated. Defendants Coinbase, Armstrong, Haas, and Choi deny that the chart in Paragraph 374 is accurate as to Defendant Andreessen. Defendants Coinbase, Armstrong, Haas, and Choi aver that the chart in Paragraph 374 reflects shares sold by funds managed by AH Capital Management, LLC between April 14 and April 15, 2021. Defendants further aver that the chart in Paragraph 374 reflects shares sold by LAMA Community Trust and funds managed by AH Capital Management, LLC during the Class Period. Defendants deny that the chart in Paragraph 374 is accurate as to Defendant Wilson. Defendants aver that the chart in Paragraph 374 reflects shares sold by funds advised by Union Square Ventures, LLC between April 14 and April 15, 2021. Defendants admit that the chart accurately reflects the number of shares sold by Defendant Choi between April 14 and 15, 2021, and during the Class Period,

with all sales following the Direct Listing being made pursuant to 10b5-1 trading plans, as well as the proceeds she received from her sales between April 14 and 15, 2021. Defendants deny that Defendant Choi's gross proceeds exceeded $429 million during the Class Period. Defendants aver that Defendant Choi's gross proceeds during the Class Period were $235.5 million. Defendants otherwise deny the allegations in Paragraph 374.

375. Paragraph 375 purports to characterize and quote from Coinbase's SEC filings, to which Securities Act Defendants respectfully refer the Court to those filings or other statements for their complete and accurate contents.

376. To the extent Paragraph 376 purports to characterize Coinbase's SEC filings, Securities Act Defendants respectfully refer the Court to those filings for their complete and accurate contents. Securities Act Defendants deny that Coinbase's total net revenue in 2021 included $6.50 billion in net retail transaction fee revenue. Securities Act Defendants aver that Coinbase's total net revenue included $6.49 billion in net retail transaction fee revenue. Securities Act Defendants lack knowledge or information sufficient to form a belief as to whether a "custody fee" for retail users was "built into Coinbase's transaction fees" because the vague reference to "custody fee" is undefined. To the extent Paragraph 376 purports to characterize statements made by Defendant Armstrong in a CNBC Squawk Box interview on April 14, 2021, Securities Act Defendants respectfully

refer the Court to that interview for its complete and accurate contents. Securities Act Defendants otherwise admit the allegations in Paragraph 376.

377. To the extent Paragraph 377 purports to characterize and quote statements made in Coinbase's Prospectus, Securities Act Defendants respectfully refer the Court to the Prospectus for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 377.

378. Paragraph 378 purports to characterize Coinbase's 2021 Form 10-K, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

379. Securities Act Defendants admit that Coinbase held over $90 billion in Assets on Platform—defined as the total U.S. dollar equivalent value of both fiat currency and crypto assets held or managed in digital wallets on Coinbase's platform, including its custody services, calculated based on the market price on the date of measurement—as of December 31, 2020 and that figure rose to as much as $278 billion during the Class Period. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 379.

380. To the extent Paragraph 380 purports to characterize and quote from an article by Reuters, Securities Act Defendants respectfully refer the Court to those reports for their complete and accurate contents. Securities Act Defendants admit

that Mt. Gox declared bankruptcy in February 2014 after an estimated 700,000 Bitcoins were stolen from its wallets. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 380, including because they relate to cryptocurrency exchanges other than Coinbase.

381. To the extent Paragraph 381 purports to characterize and quote from Coinbase's Offering Materials and subsequent SEC filings, Securities Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 381.

382. To the extent Paragraph 382 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 382.

383. To the extent Paragraph 383 contains legal conclusions, no response is required. Securities Act Defendants admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could

be treated as [Coinbase's] general unsecured creditors." Securities Act Defendants otherwise deny the allegations in Paragraph 383.

384. To the extent Paragraph 384 contains legal conclusions, no response is required. Securities Act Defendants admit that, as described, *inter alia*, in Coinbase's user agreement, crypto assets are "not backed by the United States government, and accounts and value balances are not subject to Federal Deposit Insurance Corporation or Securities Investor Protection Corporation protections." Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 384.

385. To the extent Paragraph 385 contains legal conclusions, no response is required. To the extent Paragraph 385 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, Securities Act Defendants respectfully refer the Court to that article for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 385.

386. To the extent Paragraph 386 purports to characterize and quote from Defendant Armstrong's statements in May 2022 and Coinbase's Prospectus, Securities Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 386.

387. Paragraph 387 purports to characterize and quote from the Texas Law Review Article entitled *Not Your Keys, Not Your Coins*, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

388. To the extent Paragraph 388 contains legal conclusions, no response is required. To the extent Paragraph 388 purports to characterize and quote from Coinbase's Prospectus and Q1 2022 Form 10-Q, Securities Act Defendants respectfully refer the Court to those filings for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 388.

389. To the extent Paragraph 389 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 389.

390. Paragraph 390 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

391. Paragraph 391 purports to characterize and quote from Coinbase's Offering Materials, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

392. Paragraph 392 purports to characterize and quote from Coinbase's Registration Statement, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

393. To the extent Paragraph 393 contains legal conclusions, no response is required. To the extent Paragraph 393 purports to characterize and quote from Coinbase's Offering Materials, Securities Act Defendants respectfully refer the Court to those documents for their complete and accurate contents. Securities Act Defendants further admit that, as described in Coinbase's filings with the SEC, including Coinbase's 2023 Form 10-K, "because custodially held crypto assets may be considered to be the property of a bankruptcy estate, in the event of a bankruptcy, the crypto assets [Coinbase] hold[s] in custody on behalf of [its] customers could be subject to bankruptcy proceedings and such customers could be treated as [Coinbase's] general unsecured creditors." Securities Act Defendants otherwise deny the allegations in Paragraph 393.

394. Paragraph 394 purports to characterize and quote from Coinbase's Registration Statement, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

395. To the extent Paragraph 395 contains legal conclusions, no response is required. To the extent Paragraph 395 purports to characterize and quote from Coinbase's Registration Statement, Securities Act Defendants respectfully refer the Court to that document for its complete and accurate contents. Securities Act Defendants admit that as a fee for staking services, Coinbase receives a fixed percentage of participating customers' staking rewards, which typically falls

between 15% and 35%, inclusive. Securities Act Defendants otherwise deny the allegations in Paragraph 395.

396. To the extent Paragraph 396 contains legal conclusions, no response is required. To the extent Paragraph 396 purports to characterize and quote from Item 105 of Regulation S-K, Securities Act Defendants respectfully refer the Court to that rule for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 396.

397. To the extent Paragraph 397 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 397.

398. To the extent Paragraph 398 contains legal conclusions, no response is required. To the extent Paragraph 398 purports to characterize and quote from Item 303 of Regulation S-K and the SEC's related interpretive releases, Securities Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 398.

399. Paragraph 399 purports to characterize and quote from an SEC interpretative release on Item 303 from May 1989, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

400. Paragraph 400 purports to characterize and quote from an SEC interpretative release on Item 303 from May 1989, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

401. Paragraph 401 purports to characterize and quote from the SEC's final rule addressing registrant's disclosure obligations under Item 303 modified on May 7, 2003, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

402. Paragraph 402 purports to characterize and quote from Item 303 of Regulation S-K, to which Securities Act Defendants respectfully refer the Court for its complete and accurate contents.

403. To the extent Paragraph 403 contains legal conclusions, no response is required. To the extent Paragraph 403 purports to characterize Item 303 of Regulation S-K and the SEC's related interpretive releases, Securities Act Defendants respectfully refer the Court to those sources for their complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 403.

404. To the extent Paragraph 404 purports to characterize and quote from Coinbase's Q1 2022 Form 10-Q, Securities Act Defendants respectfully refer the Court to that filing for its complete and accurate contents. Securities Act Defendants otherwise deny the allegations in Paragraph 404.

405. Paragraph 405 purports to characterize and quote from Defendant Armstrong's Twitter posts on May 10, 2022, to which Securities Act Defendants respectfully refer the Court for their complete and accurate contents.

406. Securities Act Defendants admit that the price of Coinbase common stock closed at $72.99 per share on May 10, 2022, and at $53.72 on May 11, 2022. Securities Act Defendants otherwise deny the allegations in Paragraph 406.

407. To the extent that Paragraph 407 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 407.

408. To the extent that Paragraph 408 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 408.

409. To the extent that Paragraph 409 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 409.

410. To the extent that Paragraph 410 contains legal conclusions, no response is required. Each Securities Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Securities Act Defendants. Securities Act Defendants otherwise deny the allegations in Paragraph 410.

411. To the extent that Paragraph 411 contains legal conclusions, no response is required. Each Securities Act Defendant lacks knowledge or information sufficient to form a belief as to the personal knowledge of the other Securities Act Defendants. Securities Act Defendants otherwise deny the allegations in Paragraph 411.

412. Securities Act Defendants incorporate their answers to Paragraphs 360 through 406. To the extent that Paragraph 412 contains legal conclusions, no response is required. Securities Act Defendants admit that Plaintiffs purport to bring Count III as described in Paragraph 412. Securities Act Defendants otherwise deny the allegations in Paragraph 412.

413. To the extent that Paragraph 413 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 413.

414. To the extent that Paragraph 414 contains legal conclusions, no response is required. Securities Act Defendants otherwise admit the allegations in Paragraph 414.

415. To the extent that Paragraph 415 contains legal conclusions, no response is required. Securities Act Defendants otherwise admit the allegations in Paragraph 415.

416. To the extent that Paragraph 416 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 416.

417. To the extent that Paragraph 417 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 417.

418. To the extent that Paragraph 418 contains legal conclusions, no response is required. Securities Act Defendants otherwise admit the allegations in Paragraph 418.

419. To the extent that Paragraph 419 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 419.

420. To the extent that Paragraph 420 contains legal conclusions, no response is required. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 420.

421. To the extent that Paragraph 421 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 421.

422. To the extent that Paragraph 422 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 422.

423. To the extent that Paragraph 423 contains legal conclusions, no response is required. Securities Act Defendants lack knowledge or information sufficient to form a belief as to when Plaintiffs discovered, or reasonably could have discovered, the facts upon which the initial complaint filed in this action is based. Securities Act Defendants otherwise deny the allegations in Paragraph 423.

424. Securities Act Defendants incorporate their answers to Paragraphs 360 through 406. To the extent that Paragraph 424 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 424.

425. To the extent that Paragraph 425 contains legal conclusions, no response is required. Securities Act Defendants admit that Plaintiffs Firth and Steinmetz purport to bring Count IV as described in Paragraph 425. Securities Act Defendants otherwise deny the allegations in Paragraph 425.

426. To the extent that Paragraph 426 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 426.

427. To the extent that Paragraph 427 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 427.

428. To the extent that Paragraph 428 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 428.

429. To the extent that Paragraph 429 contains legal conclusions, no response is required. Securities Act Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 429.

430. To the extent that Paragraph 430 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 430.

431. To the extent that Paragraph 431 contains legal conclusions, no response is required. Securities Act Defendants otherwise deny the allegations in Paragraph 431.

432. To the extent that Paragraph 432 contains legal conclusions, no response is required. Securities Act Defendants lack knowledge or information sufficient to form a belief as to when Plaintiffs Firth and Steinmetz discovered, or

reasonably could have discovered, the facts upon which this Count is based. Securities Act Defendants otherwise deny the allegations in Paragraph 432.

433. Defendants Armstrong, Haas, Jones, and the Director Defendants incorporate their answers to Paragraphs 360 through 406. To the extent that Paragraph 433 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 433.

434. To the extent that Paragraph 434 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Jones, and the Director Defendants admit that Plaintiffs purport to bring Count V as described in Paragraph 434. Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 434.

435. To the extent that Paragraph 435 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Jones, and the Director Defendants admit that Defendants Armstrong, Haas, Jones, and the Director Defendants signed the Registration Statement. Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 435.

436. To the extent that Paragraph 436 contains legal conclusions, no response is required. Defendants Armstrong, Haas, Jones, and the Director Defendants lack knowledge or information sufficient to form a belief as to when

Plaintiffs discovered or reasonably could have discovered the facts upon which the initial complaint filed in this action is based. Defendants Armstrong, Haas, Jones, and the Director Defendants otherwise deny the allegations in Paragraph 436.

437. Defendants admit that Plaintiffs purport to bring a class action against Defendants on behalf of a putative class of purchasers of Coinbase securities. However, Defendants deny that the prerequisites to a class action have been met or that the TAC is maintainable as a class action. To the extent that Paragraph 437 contains other legal conclusions, no response is required. Defendants otherwise deny the allegations in Paragraph 437.

438. To the extent that Paragraph 438 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the TAC is maintainable as a class action. Defendants admit that Coinbase stock was traded on the Nasdaq exchange under the symbol "COIN" from April 14, 2021, through and beyond June 5, 2023. Defendants admit that as of March 15, 2021, there were approximately 196 million shares of Coinbase's common stock outstanding and that from at least April 30, 2021, on, there were more than 200 million shares of Coinbase common stock outstanding. Defendants otherwise deny the allegations in Paragraph 438.

439. To the extent that Paragraph 439 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have

been met or that the TAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 439.

440. To the extent that Paragraph 440 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the TAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 440.

441. To the extent that Paragraph 441 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the TAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 441.

442. To the extent that Paragraph 442 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the TAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 442.

443. To the extent that Paragraph 443 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the TAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 443.

444. To the extent that Paragraph 444 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have

been met or that the TAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 444.

445. To the extent that Paragraph 445 contains legal conclusions, no response is required. Defendants deny that the prerequisites to a class action have been met or that the TAC is maintainable as a class action. Defendants otherwise deny the allegations in Paragraph 445.

## DEFENSES

### First Defense

The TAC fails to state a claim upon which relief can be granted.

### Second Defense

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because Plaintiffs have not suffered any concrete injury in fact and have not lost money or property that is traceable to any wrongful act by any Defendant and/or traceable to stock purchased in Coinbase's Direct Listing.

### Third Defense

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because Plaintiffs lack standing to assert their claims against Defendants.

### Fourth Defense

Plaintiffs' claims, and those of the putative class, are not actionable because some or all of the purported misrepresentations or misleading statements or

omissions alleged in the TAC were (a) immaterial, (b) general statements of corporate optimism or puffery on which no reasonable investor would rely, and/or (c) statements of opinions that Defendants subjectively believed, and/or (d) true and accurate statements that did not contain any false or misleading information or omissions.

**Fifth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, by the "bespeaks caution" and/or the Private Securities Litigation Reform Act's "safe harbor" doctrines to the extent that they are based on predictions, expressions of opinion, or forward-looking statements.

**Sixth Defense**

Defendants are not liable to Plaintiffs or other members of the putative class because Coinbase's publicly filed documents contained sufficient cautionary language advising investors about the risks associated with the subject matter of each misrepresentation or omission alleged in the TAC.

**Seventh Defense**

Defendants are not liable to Plaintiffs or other members of the putative class because the substance of the allegedly omitted or misrepresented material information was disclosed in Defendants' own filings and announcements and/or in

other sources that were publicly available or widely known to the market, the investing community, Plaintiffs, and other members of the putative class.

**Eighth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because at all relevant times Defendants acted in good faith, including by acting in conformity with the law and rules and regulations of the SEC.

**Ninth Defense**

Defendants are not liable to Plaintiffs or other members of the putative class for statements made by Defendants because Defendants had, after reasonable investigation, reasonable grounds to believe and did believe, at the time of the statements at issue, that their statements were true and that there was no omission of any required material fact necessary to make the statements not misleading.

**Tenth Defense**

With respect to portions of the Offering Materials purporting to be made on the authority of experts, Defendants had no reasonable ground to believe and did not believe, at the time such part of the Registration Statement became effective, that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

**Eleventh Defense**

Each and every one of Defendants alleged to be a controlling person under Section 20 of the Securities Exchange Act of 1934 or under Section 15 of the Securities Act of 1933 had no knowledge of, or had reasonable grounds to believe in the existence of, the facts by reason of which liability of the control person is alleged to exist.

**Twelfth Defense**

Plaintiffs' Exchange Act claims, and those of the putative class, are barred, in whole or in part, because Defendants' conduct was not the proximate cause of any damage or injury allegedly suffered by Plaintiffs or other members of the putative class.

**Thirteenth Defense**

Plaintiffs' Securities Act claims, and those of the putative class, are barred, in whole or in part, because none of the alleged misrepresentations or misleading statements or omissions caused, or was a substantial factor in, any increase or decrease in the market value of Coinbase's securities owned by Plaintiffs or other members of the putative class.

**Fourteenth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because superseding or intervening events caused some or all of the change in the value of Coinbase's securities, or any other harm alleged in the TAC.

**Fifteenth Defense**

Plaintiffs' claims against Defendants are barred, in whole or in part, by the applicable statute of limitations or statute of repose.

**Sixteenth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because Plaintiffs and/or other members of the putative class had actual or constructive knowledge of any allegedly misstated facts or omissions or other wrongful conduct upon which Defendants' purported liability rests.

**Seventeenth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because Plaintiffs and/or other members of the putative class had actual or constructive knowledge of the risks involved in Coinbase's business, and in failing to consider these risks, each such purported plaintiff class member assumed the risk that the value of Coinbase stock would decline if such risks materialized.

**Eighteenth Defense**

Plaintiffs and other members of the putative class are barred from recovery for injury or damages because they failed to make reasonable efforts to mitigate any such injury or damages.

**Nineteenth Defense**

Plaintiffs' claims are barred, in whole or in part, by the actions, omissions, and/or comparative fault and contributory negligence of Plaintiffs, other members of the putative class, or other third parties, including the failure to undertake their own due diligence.

**Twentieth Defense**

Any recovery for damages allegedly incurred by Plaintiffs and other members of the putative class is subject to offset in an amount including, but not limited to, any tax benefits actually received by Plaintiffs or other members of the putative class throughout their investments.

**Twenty-First Defense**

Under any theory of liability, Plaintiffs and other members of the putative class may not recover damages based on depreciation in the value of Coinbase securities that resulted from factors other than the material devices, schemes, or artifices to defraud, misstatements or omissions, acts, practices, or courses of business alleged in the TAC.

**Twenty-Second Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, by the doctrines of laches, equitable estoppel, waiver, unclean hands, and other related equitable defenses.

**Twenty-Third Defense**

Any damage, loss, or liability sustained by Plaintiffs and other members of the putative class must be reduced, diminished, and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants under the principles of equitable allocation, recoupment, set-off, and contributory or comparative fault.

**Twenty-Fourth Defense**

Plaintiffs' claims are barred, in whole or in part, because at all relevant times Defendants had no duty to disclose any information that the TAC alleges was omitted from the Offering Materials, to the extent that such information existed at the time the Offering Materials were filed or became effective.

**Twenty-Fifth Defense**

Any recovery for damages allegedly incurred by Plaintiffs or members of the putative class is barred, in whole or in part, by the damages limitations of the Securities Act.

**Twenty-Sixth Defense**

This action is not properly maintainable as a class action, including because it does not meet the requirements for certification under Federal Rule of Civil Procedure 23.

**Twenty-Seventh Defense**

Defendants hereby adopt and incorporate by reference any and all other defenses asserted, or that may hereafter be asserted, by any other defendant not expressly set forth herein to the extent such defense may be applicable to Defendants.

**Twenty-Eighth Defense**

Plaintiffs' claims, and those of the putative class, are barred, in whole or in part, because awarding Plaintiffs' requested damages would result in unjust enrichment to Plaintiffs and the putative class.

**PRAYER FOR RELIEF**

WHEREFORE, the Defendants request that the Court enter judgment for them by adjudging and decreeing that:

A. The Plaintiffs take nothing by reason of their TAC and that judgment be rendered in favor of Defendants;

B. That the TAC, and each purported cause of action against Defendants, be dismissed with prejudice;

C. That the Court determine that this action may not proceed as a class action and dismiss all purported class allegations with prejudice;

D. That the Court award Defendants the cost, disbursements, and attorneys' fees incurred by them in defending this action; and

E. That the Court award Defendants any such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Defendants demand a trial by jury on all issues triable by a jury.

Dated: September 30, 2026

**LATHAM & WATKINS LLP**

By: /s/ Kevin M. McDonough
Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

Morgan E. Whitworth (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
morgan.whitworth@lw.com

*Attorneys for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson*

**LATHAM & WATKINS LLP**
Kevin M. McDonough (N.J. Bar No. 41892005)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
kevin.mcdonough@lw.com

Andrew B. Clubok (admitted *pro hac vice*)
Susan E. Engel (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
andrew.clubok@lw.com
susan.engel@lw.com

*Attorneys for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer Jones, Marc Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE COINBASE GLOBAL, INC., SECURITIES LITIGATION | Civil Action No. 2:22-cv-04915-BRM-LDW<br><br>Hon. Brian R. Martinotti<br>Hon. Leda Dunn Wettre<br><br>**CERTIFICATE OF SERVICE** |

I, Kevin M. McDonough, hereby certify pursuant to 28 U.S.C. § 1746 that:

1. I am a partner of the law firm Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020, and counsel for Defendants Coinbase Global, Inc., Brian Armstrong, Alesia J. Haas, Emilie Choi, Paul Grewal, Jennifer N. Jones, Marc L. Andreessen, Frederick Ernest Ehrsam III, Kathryn Haun, Kelly Kramer, Gokul Rajaram, and Fred Wilson (collectively, the "Defendants") in the above-captioned matter. I am admitted to the Bar of the State of New Jersey and of this Court.

2. On September 30, 2026, I caused a true and correct copy of Defendants' Answer to Plaintiffs' Third Amended Consolidated Class Action Complaint, dated September 30, 2026 to be filed electronically using the Court's Case Management/Electronic Case Filings System (CM/ECF), and accordingly served on all parties who receive notice of the filing via CM/ECF.

I hereby certify under the penalty of perjury that the foregoing is true and correct.

Dated: September 30, 2026

Respectfully submitted,

/s/ Kevin M. McDonough
Kevin M. McDonough